No. 24-11175-H

_____

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

_____

Daniel Frishberg, *Plaintiff-Appellant,*

v.

University Of South Florida Board Of Trustees, HRSE-Capstone Tampa, LLC, *et. al, Defendant-Appellee(s)*


Appeal from the United States District Court for the Middle District of Florida

No. 8:24-cv-00022-TPB-NHA[1]

_____

## APPELLANT'S OPENING BRIEF[2]

_____

Daniel Frishberg, *Pro Se*

danielfrishberg@usf.edu[3]

754-237-8472

---

[1] https://ecf.flmd.uscourts.gov/cgi-bin/DktRpt.pl?422507

[2] The Plaintiff Appellant filed a *Motion For Simplification Of Procedures* on June 11, 2024 (Pacific Standard Time). Among the requested relief, the Plaintiff Appellant requested that he is not required to mail in physical copies of the brief and appendix. Currently there is no way for the Plaintiff Appellant to feasibly print out, and mail physical copies to the Court. As of the time of this filing, the *Motion For Simplification Of Procedures* has not been ruled on. The Plaintiff Appellant will wait for the motion to be adjudicated until he attempts to send physical copies to the Court. The Plaintiff Appellant also will hold off on preparing, and filing an appendix until the motion is adjudicated.

[3] The Plaintiff-Appellant does not have an "Office Address", so he has put an email instead.

**Statement Regarding Oral Argument**

The Plaintiff Appellant requests oral arguments. Among other reasons, it will allow the Plaintiff Appellant to make clear his arguments, in case his lack of legal training leads to any potential confusion in his written arguments. The oral arguments would also allow the Plaintiff Appellant to clarify any misunderstandings, should they arise.

*[Rest of the page is intentionally left blank.]*

## **TABLE OF CONTENTS**

  I.   **Introduction**

 II.   **Argument**

    1. **Pro Se Status**

    2. **Federal Rules Of Civil Procedures On Amendments**

    3. **The District Court Should Have Granted Leave To Amend**

    4. **The Plaintiff Appellants Claims Are More Than Sufficient To Survive A Motion To Dismiss**

III. **Factual Errors With The District Court's Interpretation Of The Events/Facts**

    a. **Timeline Errors**

    b. **Timeline According To Defendant Appellees**

    c. **Emotional Support Animal Status**

    d. **The Presence Of The Plaintiff Appellant With The ESA Was Excluded**

IV. **Conclusion**

**Exhibit A:**

**Certificate Of Interested Persons And Corporate Disclosure Statement**

**Certificate Of Compliance With Rule 27(d)(2)(A)**

*[Rest of the page is intentionally left blank.]*

# **Introduction**

This appeal stems from the District Court's dismissal (without leave to amend) of the Plaintiff Appellants complaint[4] against USF *et. al*.  The Defendant Appellees own/manage an on campus housing dormitory at the University of South Florida. The complaint (among other things) alleged that the Defendant Appellees discriminated against the Plaintiff Appellant by (I) prohibiting him from having his emotional support animal (the "ESA") in the common areas of the dwelling (II) forcing the Plaintiff Appellant to disclose his disabilities, and use a "required" form when applying for a accommodation (having the ESA on campus) (III) making the Plaintiff Appellant sign a contract (as a condition of having the accommodation granted) which de facto bans the ESA being anywhere other than inside the Plaintiff Appellant's room. The ESA Agreement was signed under duress, and de facto signs away rights provided by both Federal, and State law. (IV) that the Defendant Appellee' policies/rules (which denied the Plaintiff Appellant the ability to use the common areas of the dwelling with his ESA) were discriminatory, and illegal.

---

[4] For the avoidance of doubt, the Plaintiff Appellant is not appealing the dismissal of Count 3, which was brought under the Americans with Disabilities Act (the "ADA").

Rule 8(d)(e) of the Federal Rules of Civil Procedure provides that "[p]leadings must be construed so as to do justice", the Plaintiff Appellant does not believe that this occurred in this case.

The District Court erred in its failure to liberally interpret the Plaintiff Appellants' filings. The Plaintiff Appellant admits that he (due to his lack of legal training) likely had a "confusion of legal theories" when he brought claims under the Fair Housing Act, which would have been better[5] brought under the Rehabilitation Act.

The District Court erred by dismissing the Plaintiff Appellants complaint without leave to amend. The District Court also misunderstood critical facts of the case, including key facts which were undisputed by either party (*See* **III. Factual Errors With The District Court's Interpretation Of The Events/Facts**). The District Court's confusion with the facts of the case caused it to incorrectly dismiss the case, and even if all of the other issues were not considered, is fatal to the District Court's dismissal of the complaint.

## II.

---

[5] By him as an *individual*, due to the Defendants' likely 11th Amendment Immunity. The Plaintiff Appellant would have succeeded under his Fair Housing Act claims but for the Defendants' immunity. The Department of Housing and Urban Development ("HUD") has an ongoing action against the Defendant Appellees, and HUD would not be bound by the same limitations as the Plaintiff Appellant.

## **Argument**

The District Court's ruling is fatally flawed, and must be overturned, in part because it misunderstands several key details[6] of the case, including the timeline/order of events. The District Court's misunderstanding of the facts led it to conclude that an amendment would be "futile"[7]. Which is incorrect, as an amendment would not be "futile". The District Court also abused its discretion by denying leave to amend when an amendment would have corrected deficiencies within the Plaintiff Appellants' Complaint.

### 1. *Pro Se* **Status**

It is both true, and undisputed that the Plaintiff Appellants *pro se* status "does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based", and the Plaintiff Appellant has **not** argued that it does.

The Plaintiff Appellant believes that the District Court has failed to follow the instructions of the Supreme Court. The Supreme Court has instructed the federal courts to apply the standard that a pleading filed pro se is "to be liberally

---

[6] The majority of these details are not disputed by either the Defendant Appellees, or the Plaintiff Appellant.

[7] This finding was specifically about Claim 3, which was brought under the Americans with Disabilities Act (the "ADA"). While an amendment may be futile to correct the claim brought under the ADA, it would not be futile to correct the claims brought under the Fair Housing Act.

construed." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018) (per curiam) (holding that "[i]n considering the defendants' motion to dismiss, the District Court was required to interpret the pro se complaint liberally"); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). The District Court has incorrectly done so here, as it has changed the timeline of events, and seemingly invented facts, such as implying that if the Plaintiff Appellant completed the "sanctions" assigned[8] by the Defendant Appellees, he would not have been evicted.

The Plaintiff Appellants complaint may be deficient, but it is deficient because he was not allowed to amend it to correct the minor deficiencies which exist. He should be allowed to amend it. The Plaintiff Appellant's "factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, [and he] should be allowed to amend his complaint, *Reynoldson v. Shillinger*, 907 F.2d 124, 126-27 (10th Cir.1990)." *Hall v. Bellmon*, 935 F. 2d 1106 - Court of Appeals, 10th Circuit 1991.

---

[8] As seen hereinafter, the "sanctions" were not assigned until November 21st, 2022, while the purported termination of the Housing Agreement took place on November ***17th***, 2022.

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner*, 404 U.S. 519, 520-521(1972), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "If the court can **reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories**, poor syntax and sentence construction, or **litigant's unfamiliarity with pleading requirements**." (emphasis added). *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C.Cir. 1992); *Freeman v. Department of Corrections*, 949 F.2d 360 (10th Cir. 1991). The District Court could have "**reasonably read pleadings to state a valid claim on which the litigant could prevail**", to interpret the claims as being brought under the Rehabilitation Act. Doing so would **not** require the court to "act as de facto counsel" on behalf of the Plaintiff Appellant. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019). Nor would it require the District Court to "rewrite an otherwise deficient pleading in order to sustain an action". The District Court

either interpreting the claims as being brought under the Rehabilitation Act, or allowing the Plaintiff Appellant to amend the complaint to bring the claims under the Rehabilitation Act would **not** require the District Court to act as de facto counsel. In fact, the District Court's interpretation of the claims being brought under the Rehabilitation Act would not be rewriting anything[9].

The District Court erred by denying leave to amend, as the defect in the Plaintiff Appellants' complaint can be corrected by an amendment.  "*[If] it is **at all** possible* that the party against whom the dismissal is directed can <u>correct the defect in the pleading</u> *or* state a claim for relief, **the court should dismiss with leave to amend**." 6 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure,* Civil 2d § 1483 (West 1990)." (emphasis added) *Reynoldson v. Shillinger*, 907 F. 2d 124 - Court of Appeals, 10th Circuit 1990

The deficiencies in the Plaintiff Appellant's complaint largely were because he did not *specifically* bring a claim under the Rehabilitation Act, but instead brought his claims under the Fair Housing Act, which is something that can be *easily* remedied with an amendment. "Particularly where deficiencies in a

---

[9] It is like how changing the title of an essay would not constitute "rewriting" of the essay, this is much more like what would occur in this case. The Plaintiff Appellant was not asking for the Court to act as his counsel, but to simply allow the Plaintiff Appellant to correct his (relatively minor) mistake.

complaint are attributable to oversights likely the result of an untutored pro se

litigant's ignorance of special pleading requirements, dismissal of the complaint

without prejudice is preferable" *Reynoldson v. Shillinger*, 907 F. 2d 124 - Court of

Appeals, 10th Circuit 1990.  Simply changing the claims to the Rehabilitation Act

would be sufficient to negate the Defendant Appellees' 11th Amendment

Immunity. *See* 42 U.S. Code § 2000d–7:

"(1) A State shall not be immune under the Eleventh Amendment of the
Constitution of the United States from suit in Federal court for a violation of
section 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], title IX of the
Education Amendments of 1972 [20 U.S.C. 1681 et seq.], the Age Discrimination
Act of 1975 [42 U.S.C. 6101 et seq.], title VI of the Civil Rights Act of 1964 [42
U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting
discrimination by recipients of Federal financial assistance.
(2) In a suit against a State for a violation of a statute referred to in
paragraph (1), remedies (including remedies both at law and in equity) are
available for such a violation to the same extent as such remedies are available for
such a violation in the suit against any public or private entity other than a State".

The Plaintiff Appellant did improperly attempt to bring claims under the

Rehabilitation Act without amending the complaint, and requested within a

footnote in his reply to the Defendant-Appellees' *Motion To Dismiss* that the

District Court allow him to amend the complaint, *if necessary*, since the Plaintiff

Appellant was unsure if it was necessary to amend.  This oversight was "the result

of an untutored pro se litigant's ignorance" (*Reynoldson v. Shillinger)* around

pleading requirements. The District Court should have allowed the Plaintiff

Appellant to amend his complaint to correct the deficiencies within it.

### 2. Federal Rules Of Civil Procedure on Amendments

The purpose of the Federal Rules of Civil Procedure is to encourage final dispositions on the **merits** of a case, and ***not*** the skill (or the lack thereof) of the person pleading the case. *See Cf. Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir.1981) ("The policy of the federal rules is to permit **liberal amendment** to facilitate determination of claims ***on the merits*** and ***to prevent litigation from becoming a technical exercise in the fine points of pleading***"). (emphasis added.) The District Court's dismissal of the Plaintiff Appellants complaint was not on the merits of it, but largely because of hyper technicalities, the Court misinterpreting the facts of the case, and because the Plaintiff Appellant did not plead it well. The facts of the case are overwhelmingly in the favor of the Plaintiff Appellant.

As the Supreme Court held in *Foman v. Davis*: "Rule 15(a) declares that leave to amend "**shall** be freely given when justice so requires"; **this mandate is to be heeded**." (emphasis added) *Foman v. Davis*, 371 U.S. 178, 181–82 (1962). *Foman v. Davis*, also states that "in the absence of any apparent reason (e.g., undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party, futility),

leave to amend should be freely given, as Rule 15 requires." None of these "apparent reasons" existed in this case.

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief", as they are in this case, "he ought to be afforded an opportunity **to test his claim on the merits**. In the absence of any apparent or declared reason… the leave sought should, **as the rules require, be "freely given**."" (emphasis added) *Foman v. Davis*

As the Supreme Court noted, granting or denying an opportunity to amend is within the discretion of the District Court, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules". *Foman v. Davis*

"The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome, and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U. S. 41, 48. The Federal Rules themselves provide that they are to be construed "to secure the just, speedy, and inexpensive

determination of every action." Rule 1. *Foman v. Davis*, 371 U.S. 178, 181–82 (1962). This case was not decided upon the merits, but was quickly dismissed due to the Defendant Appellees' 11th Amendment immunity. The 11th Amendment immunity would disappear simply by changing the claims from being brought under the Fair Housing Act, to under the Rehabilitation Act.

### 3. The District Court Should Have Granted Leave To Amend

The District Court both erred, and abused its discretion by denying leave to amend. The District Court also erred in it's conclusion that the Plaintiff Appellant was arguing that "because the state may waive immunity for one type of claim (such as the Rehabilitation Act)....it waives immunity for all possible claims (such as those under the FHA or FFHA)". The Plaintiff Appellant was **not** arguing that the Defendant Appellee' waived immunity to all possible claims. The Plaintiff Appellant was showing ways in which the Defendant Appellees waived immunity, *including* to claims brought under the Rehabilitation Act. In short, the Plaintiff Appellant was arguing that he could bring claims under the Rehabilitation Act, and (improperly) attempted to do so.

The issue is not whether the Plaintiff Appellant "will ultimately prevail but whether the [Plaintiff Appellant] is entitled to offer evidence to support the claims.

Indeed **it may appear on the face of the pleadings that a recovery is very
remote and unlikely** *but that is not the test*." *See Scheuer v. Rhodes*, 416 US 232 -
Supreme Court 1974. The Plaintiff Appellant believes that if he is allowed to offer
evidence (some of which will be obtained through discovery) to support his claims,
then he will be able to clearly establish that the Defendants violated both Federal,
and state law. The Plaintiff Appellant believes that he should be allowed to amend
his complaint to specifically bring claims under the Rehabilitation Act, as initiating
another, separate lawsuit[10] under the Rehabilitation Act would be inefficient and
judicially wasteful.

"Rule 15(a) declares that leave to amend "**shall** be <u>freely given</u> when justice
so requires"; **this mandate is to be heeded**." (emphasis added) *Foman v. Davis*,
371 U.S. 178, 181–82 (1962).

### 4. The Plaintiff Appellants Claims Are More Than Sufficient To Survive A Motion To Dismiss

It is well established that, "the allegations of the complaint should be
construed favorably to the pleader." *See Scheuer v. Rhodes*. The Plaintiff

---

[10] The District Court also did not make it clear to the Plaintiff Appellant if (after the Order granting
the Motion to Dismiss) he could bring a claim under the Rehabilitation Act in the District Court.
When the Plaintiff Appellant asked the District Court for clarification, the District Court replied
with "The Court is unable to give you legal advice."

Appellants allegations, if accepted as true[11], would be more than sufficient for a claim under the Rehabilitation Act to succeed. The Plaintiff Appellants' allegations, (as described by the District Court) allege that "[the] Defendants' refusal to accommodate his request to have his emotional support animal outside of his room and other actions – including their imposition of sanctions, termination of his rental agreement, and locking him out of his room – constitute discrimination and retaliation in violation of the federal Fair Housing Act ("FHA"), as well as breaches of Defendants' duties under other statutes and common law principles." That allegation alone is sufficient to survive a motion to dismiss, as it is a claim that can be brought under the Rehabilitation Act.

The Defendants argue that they are immune to the Plaintiff Appellants' claims, and in the event that they are not, that their actions were not discrimination, and as proof of their actions not being discriminatory, they cite their policies. It should be noted that USF's policies are considered discriminatory[12] by the Department of Housing and Urban Development ("HUD"), and the Plaintiff Appellant argued that to the District Court.  The issue of whether the Defendant

---

[11] The District Court cited *Scheur* when stating that "a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff."' Specifically, the facts alleged by the Plaintiff Appellant.
[12] Per HUD's Guidance:
https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf (the "HUD Guidance")

Appellees' policies are discriminatory or not, was not addressed by the District Court.

## III. Factual Errors With The District Court's Interpretation Of The Events/Facts

The District Court made numerous errors with the interpretation of the Plaintiff Appellants complaint/filings, including key factual errors which are not disputed by either side. The errors made by the District Court make the Court's Order dismissing the case fatally flawed.

### a. Timeline Errors

The District Court also erroneously[13] stated that "While Plaintiff's filings do not set forth a clear timeline of events, it appears that…. USF imposed a requirement that Plaintiff pay a fee and take educational courses on civility as a sanction for his violation of the rules. When Plaintiff failed to comply and failed to comply with a directive to remove the animal, Defendants terminated Plaintiff's lease for the room, changed the lock system so that Plaintiff no longer had access to the room, and removed his personal belongings." **That is not so**. The "requirement that Plaintiff pay a fee and take educational courses on civility as a

---

[13] The Plaintiff Appellant may not have done the best job laying out the exact timeline of events due to his lack of legal training, and part of the District Court's confusion may stem from that.

sanction for his violation of the rules" was both implemented *after* USF purported to have terminated the Plaintiff Appellants' Housing Agreement, *and* **would have no impact on the eviction** (so the Plaintiff Appellant completing the "sanction" would **not** enable him to be able to live in on campus housing). As can be seen hereinafter, the District Court, at a bare minimum, misunderstood the order of events, and why the termination of the lease occurred. While the Plaintiff Appellant's filings may have not made the timeline clear, the Defendant Appellees' filings did. The termination of the lease, and subsequent eviction did not occur because of the Plaintiff Appellants' refusal to complete the "sanctions", *but occurred because of* **the Plaintiff Appellant's ESA.**

### b. Timeline According To Defendant Appellees

According to the Defendant Appellees, "On November 9, 2023, Johnson informed Frishberg that his waiver to have an animal on-campus was being rescinded" (District Court Dkt. No. 16). According to the Defendants Appellees, "On November 17, 2023, after confirming that Frishberg failed to comply with the directive to remove the cat, Johnson informed Frishberg that USF would be administratively cancelling [sic] Frishberg's Student Housing Agreement effective Monday, November 27, 2023, at 12:00 p.m. and he needed to checkout by that date." (District Court Dkt. No. 16). As confirmed by the Defendant Appellees'

statements, the SCED hearing did not occur until after the purported termination of the Housing Agreement, so the Plaintiff Appellant could not have been evicted due to his refusal to complete the sanctions since the sanctions would not have been issued yet: "On November 21, 2023, SCED held Frishberg's formal hearing. (See Johnson Decl., Ex. 21). Based on the information provided at the hearing, the UCB determined that Frishberg was responsible for the violations of USF policy. " (District Court Dkt. No. 16)

To summarize, on November 9th, 2023, USF told the Plaintiff Appellant to "remove" his ESA. The Plaintiff Appellant refused. On November 17th, 2023, USF purported to terminate the Housing Agreement, because of the Plaintiff Appellants' failure to "get rid of" his ESA. On November 21st, 2023, the SCED hearing was held, and without much deliberation found the Plaintiff Appellant "responsible", and then assigned sanctions. This timeline which is undisputed by both the Plaintiff Appellant, and the Defendant Appellees, does not line up with the findings of the District Court.

The Defendants were informed of their violations of Federal and State law no later than December 11th, 2023. The Defendants mention an email seeking "reconsideration" of the SCED decision:  "On December 13, 2023, after the

deadline to file an appeal, Frishberg sent an email to SCED seeking reconsideration of the conduct decision." (District Court Dkt. No. 16). What the Defendants do not mention is that the Plaintiff Appellant was not so much as trying to "file an appeal" as tell them that they should strongly reconsider their decisions as they are in violation of Federal and State laws.

### c. Emotional Support Animal Status

The District Court stated that the Plaintiff Appellant "owns a cat which he alleges he uses as an emotional support animal", while technically correct, is misleading as it omits the fact that its status as an emotional support animal has not been disputed by any of the parties.

The District Court also incorrectly states that "USF initially recognized the cat as an emotional support animal". At no point did USF allege that the Plaintiff Appellants cat is not an emotional support animal, and it appears that USF continues[14] to recognize the emotional support animal for what it is: an emotional support animal. USF never argued that the ESA was not necessary, nor did USF ever argue that the ESA prescribed by the Plaintiff Appellants' physician would not help with the symptoms of his disability (*See* **Exhibit A**). USF did argue that

---

[14] USF simply purported to "rescind" the waiver to have his ESA on campus.

the Plaintiff Appellant violated their policies (which prohibited[15] the Plaintiff

Appellant from having his ESA in the common area of the dwelling). USF also did

not dispute the Plaintiff Appellants' physician's "professional opinion" that "Mr.

Frishberg has medical difficulties to function publicly without the assistance of his

ESA". The Defendant Appellees also did not dispute that the Plaintiff Appellant

"will therefore **require the ESA's company in all public locations**, that would not

cause an inconvenience to other patrons" (emphasis added). Whether or not the

ESA would "cause an inconvenience to other patrons" is not relevant to this case,

as the Defendants did not exclude the ESA from the common area for that reason.


### d. The Presence Of The Plaintiff Appellant With The ESA Was Excluded

The District Court missed key details when it stated that: "it appears that …

Plaintiff allowed the cat outside of his room and into common areas of the dorm".

The District Court's finding makes it appear that the Plaintiff Appellant was

allowing his ESA to roam outside of his room unattended, which did **not** occur.

The key detail missing is that the **<u>Plaintiff was with his ESA outside of his room</u>**.

Both Federal, and State law specifically protect the right for the Plaintiff Appellant

to be in all common areas of the dwelling with the ESA. The Defendant Appellees

---

[15] The Defendant Appellees seemed to argue that the Plaintiff Appellant could have put his ESA on a leash, **<u>but they never informed the Plaintiff Appellant of that</u>** until after this case was already brought (and after he was evicted). USF's representative (a RA in the dorm) told the Plaintiff Appellant that the only way his ESA could be outside of his room (inside of the dormitory building, not outside as in on the exterior of the building) **was if the ESA was in a carrier**.

attempted to argue that the ESA was roaming around unattended[16], but have failed to provide any evidence[17] of that which stands up to the least bit of scrutiny. The Defendant Appellees' arguments are grossly misleading **at best**.

# IV.

# CONCLUSION

The District Court erred by (I) not liberally interpreting the Plaintiff Appellants' filings, (II) erred by not granting leave to amend the complaint (which would have remedied the defects), (III) erred in numerous key facts of the case, and (IV) abused its discretion by denying leave to amend without "any justifying reason". The District Court's Order should be vacated and overturned[18]. This case was decided on the basis of a hypertechnicality, and not on the merits of the facts

---

[16] The Defendant Appellees cite reports from students stating that the cat is in the common area. Those reports do not definitively state anything about the location of the Plaintiff Appellant. The reports state that the Plaintiff Appellant "had the cat on the couch", and reference the Plaintiff Appellant "having" the cat in the common area. At all times that the ESA was outside of the Plaintiff Appellants' room, the Plaintiff Appellant was with his ESA. The students who submitted those reports are biased against the Plaintiff Appellant and his ESA. Those students were the same ones who sent numerous pictures of dead cats (including ones being cooked) in the group chat. The Defendant Appellees have omitted that portion of the chat.

[17] The Defendant Appellees provided as evidence of the ESA being alone in the common area two screenshots taken of a video from a surveillance camera. They omitted to provide the third screenshot (which they originally provided the Plaintiff Appellant) showing the Plaintiff Appellant clearly with his ESA. In short, they cherry picked a handful of seconds when the ESA peaked around a corner. It should also be noted that they did not provide an angle from another camera which would show the Plaintiff Appellant in the common area as the ESA peaked snuck around the corner. In one of the screenshots provided by the Defendant Appellees, you can clearly see the ESA turn its head backwards (because the Plaintiff Appellant was calling for the ESA to come back). In the excluded photo, you can see the Plaintiff Appellant and his ESA.

[18] The Plaintiff Appellant is not sure what the specific legal term for the requested relief is, but basically the case should be reinstated and allowed to proceed.

within the complaint. Just because the Plaintiff Appellant brought the claims under the wrong act, does not mean that the claims should not be heard. It goes against the spirit of the Federal Rules of Civil Procedure to dismiss a case, such as this one, when a simple amendment can correct the defects.

Respectfully submitted,

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
June 27, 2024
Santa Clara County, California

Case No. 24-11175-H.

Frishberg v. University of South Florida

Board Trustees, et al.

*[Rest of the page is intentionally left blank.]*



EAST FLORIDA
BEHAVIORAL
HEALTH NETWORK
BEHAVIORAL HEALTH SPECIALISTS
OF SOUTH FLORIDA

January 10, 2024

Re: Frishberg, Daniel - Emotional Support Animal (ESA)

Date of Birth: ██████2003

To whom it may concern,

Daniel Frishberg is my patient, and has been under my care since February 2023. I am familiar with this patient's history, and with the functional limitations imposed by their condition.

I am a Licensed Adult, Adolescent and Child Psychiatrist in the state of Florida, my license number is ME116041. In my professional opinion, this patient meets criteria for DSM 5 diagnostic disorder. My patient has had significant functional impairment due to the disorders that has significantly affected patient's quality of life. As result of these disorders, patient has had difficulty performing the usual activities of daily living. The functional "disability" corresponds to the description annotated in the American with Disabilities Act, Air Carrier Access Act and Fair Housing Act.

In order to help alleviate these difficulties and to enhance the patient's ability to live independently within the community, I have prescribed an ESA. Patient would benefit from the assistance and company of his ESA, a grey Russian Blue breed cat in coping with the above-stated conditions. It is my professional opinion that Mr. Frishberg has medical difficulties to function publicly without the assistance of his ESA, and will therefore require the ESA's company in all public locations, that would not cause an inconvenience to other patrons.

I am familiar with the professional literature concerning the assistive and/or therapeutic benefits of the ESAs for people with mental illness. I acknowledge that this letter may be relied upon in determining whether or not to grant reasonable accommodations by making an exception to rules, policies, practices, or services, when such accommodation may be necessary to afford the herein named individual an equal opportunity to use their emotional support/service animal in his daily endeavors. This letter has been issued with the patient's consent and, as per his/her request. Any questions please contact our office directly at (305) 692-3270.

Sincerely,

Samuel A. Neuhut, M.D.

HCA Florida Behavioral Health Specialists

SN/igb

**EXHIBIT A**:    21150 Biscayne Blvd, Suite 202   Aventura, FL 33180    (P) 305-692-3270    (F) 305-792-1425

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure as well as Eleventh Circuit Rule 26.1-2, the undersigned Plaintiff Appellant hereby certifies that the following is a complete list of the trial judges, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Adams, Natalie Hirt, United States Magistrate Judge, Middle District of Florida;

2. Barber, Thomas, United States District Judge, Middle District of Florida;

3. Black, Melissa C., County Court Judge, Thirteenth Judicial Circuit, Hillsborough County, Florida

4. Bush Graziano Rice & Hearing, P.A., counsel for Defendants, University of South Florida Board of Trustees and HRSE-Capstone Tampa, LLC, Defendants/Appellees;

5. Capstone Development Partners, LLC;

6. Daniel Frishberg, Pro Se Plaintiff/Appellant;

7. Dyson, Sacha, counsel for Defendants, University of South Florida

Board of Trustees and HRSE-Capstone Tampa, LLC,

Defendants/Appellees;

8. Harrison Street Real Estate Capital LLC;

9. HSRE-Capstone Tampa, LLC, Defendant/Appellee;

10. Sullivan, Kevin M., counsel for Defendants, University of South

Florida Board of Trustees and HRSE-Capstone Tampa, LLC,

Defendants/Appellees

11. University of South Florida Board of Trustees, Defendant/Appellee;

12. Department of Housing and Urban Development;

13. United States of America


No other trial judge, attorney, person, association of persons, firm, partnership,

or corporation known to the Appellant, has any current interest in the

outcome of this matter.


I hereby certify pursuant to 11th Circuit Rule 26.1-3(b) that no publicly traded

company or corporation has an interest in the outcome of the case or appeal.

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg

## **Certificate Of Compliance With Rule 27(d)(2)(A)**

The Appellant hereby certifies that this Motion complies with Rule 27(d)(2)(A) as the word count is less than 13,000 words and has been prepared in a proportionally spaced typeface in fourteen-point font of Times New Roman.


*/s/ Daniel A. Frishberg*
Daniel A. Frishberg




*[Rest of the page is intentionally left blank.]*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2024, a true and correct copy of Daniel A.

Frishberg's *Appellant's Opening Brief* was filed in the United States Court for

Appeals For The 11th Circuit (via PACER/ECF) and electronically served upon the

Defendants in the case.

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
June 27, 2024

*[Rest of the page is intentionally left blank.]*