No. 24-11175-H

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

_____

Daniel Frishberg, *Plaintiff-Appellant,*

v.

University Of South Florida Board Of Trustees, HRSE-Capstone Tampa, LLC, *et. al, Defendant-Appellee(s)*

Appeal from the United States District Court for the Middle District of Florida

No. 8:24-cv-00022-TPB-NHA[1]

_____

## APPELLANT'S AMENDED APPENDIX FOR THE OPENING BRIEF

_____

Daniel Frishberg, *Pro Se*

danielfrishberg@usf.edu[2]

754-237-8472

---

[1] https://ecf.flmd.uscourts.gov/cgi-bin/DktRpt.pl?422507
[2] The Plaintiff-Appellant does not have an "Office Address", so he has put an email instead.

# **Index**[3]

Exhibit A, District Court Docket Sheet…………. A,  Page 3-7

Exhibit B, Plaintiff's Complaint……..………… B,  Page 8-53

Exhibit C Plaintiff's Emergency Motion For An Injunction, Or In The Alternative,

A Temporary Restraining Order……..………… C,  Page 54-80

Exhibit D HUD Guidance……..………….……..D,  Page 81

Exhibit E Note From Plaintiff Appellants Doctor..E,  Page 82

Exhibit F Order On Appeal……..…………….....F,  Page 83-92

CIP And Corporate Disclosure Statement……….G,  Page 93-94

Certificate Of Compliance, Rule 27(d)(2)(A)H…H,  Page 95

Certificate Of Service……………………………I,  Page 96

*[Rest of the page is intentionally left blank.]*

---

[3] The Plaintiff Appellant apologies for any and all formatting errors that exist throughout this appendix. The current form is the best that the Plaintiff Appellant could do, since (for these particular errors present within this Appendix) whenever he fixed one formatting error, several more would pop up.

# EXHIBIT[4] A[5], DISTRICT COURT DOCKET SHEET:

| | | |
|---|---|---|
| **Plaintiff**<br>**Daniel A. Frishberg** | represented by | **Daniel A. Frishberg**<br>284 Monroe Drive<br>Mountain View, CA 94040<br>754−237−8472<br>PRO SE |

V.

| | | |
|---|---|---|
| **Defendant**<br>**University of South Florida Board of Trustees** | represented by | **Sacha Dyson**<br>Bush, Graziano, Rice & Platter, P.A.<br>100 S. Ashley Drive<br>Suite 1400<br>Tampa, FL 33602<br>813−228−7000<br>Fax: 813−273−5145<br>Email: sdyson@bgrhlaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| **Defendant**<br>**HRSE−Capstone Tampa, LLC** | represented by | **Sacha Dyson**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 01/03/2024 | 1 | COMPLAINT against HRSE−Capstone Tampa, LLC, University of South Florida Board of Trustees filed by Daniel A. Frishberg.(AA) (e−portal) (Entered: 01/03/2024) |
| 01/03/2024 | 2 | MOTION to Proceed In Forma Pauperis / Affidavit of Indigency by Daniel A. Frishberg. (AA) Motions referred to Magistrate Judge Natalie Hirt Adams. (e−portal) (Main Document 2 replaced on 1/10/2024 to flatten pdf image.) (AG) (Entered: 01/03/2024) |

---

[4] "Exhibit" may not be the proper term, but the Plaintiff Appellant assumed that labeling it as such would be better than not labeling it at all.

[5] Documents attached within the already attached Exhibits are also included. The Plaintiff Appellant did not want to duplicate them by attaching them separately.

| 01/03/2024 | 3 | MOTION to allow Electronic Service and other related relief by Daniel A. Frishberg. (AA) (e-portal) (Entered: 01/04/2024) |
|---|---|---|
| 01/08/2024 | 4 | MOTION for Preliminary Injunction, MOTION for Temporary Restraining Order by Daniel A. Frishberg. (AA) (e-portal) (Entered: 01/08/2024) |
| 01/08/2024 | 5 | **ORDER granting 2 Motion to Proceed In Forma Pauperis, and directing Plaintiff to to complete and return the "Summons in a Civil Action" AO 440 form and the "Process Receipt and Return" USM-285 form to the Clerk. Signed by US Magistrate Judge Natalie Hirt Adams on 1/8/2024. (Adams, Natalie)** (Entered: 01/08/2024) |
| 01/08/2024 | 6 | PROPOSED summons to be issued as to University of South Florida by Daniel A. Frishberg. (Attachments: # 1 USM-285)(AA) (e-portal) Modified on 1/10/2024 – summons not issued as missing information on forms.) (AG) (Entered: 01/09/2024) |
| 01/09/2024 | 7 | NOTICE to Counsel of Local Rule 3.02(a)(2), which requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge. (Signed by Deputy Clerk). (SRC) (Entered: 01/09/2024) |
| 01/09/2024 | 8 | NOTICE informing the parties that they may consent to the jurisdiction of a United States magistrate judge by filing Form AO 85 Notice, Consent, and Reference of a Civil Action to a Magistrate Judge using the event **Consent to Jurisdiction of US Magistrate Judge**. (Signed by Deputy Clerk). (SRC) (Entered: 01/09/2024) |
| 01/09/2024 | 9 | **ORDER. "Plaintiff's Emergency Motion for [an] Injunction, or in the Alternative, a Temporary Injunction/Restraining Order." (Doc. 4) is granted in part and denied in part. This matter will be scheduled for a preliminary injunction hearing by separate notice on Tuesday January 16, 2024, at 2:00 p.m. Plaintiff is directed– before noon on January 10, 2024 – to serve on Defendants through email to their counsel, at the email address listed on counsel's filings in the parallel state court case, the following: 1) a copy of the complaint and its exhibits; (2) a copy of the motion and its exhibits; and (3) a copy of this Order. Plaintiff is further directed to file with the Court on or before January 11, 2020, a statement that service on Defendants has been provided as directed. Defendants are directed to file a response to Plaintiff's motion on or before noon on January 15, 2024. Defendants' response should include any affidavits, declarations, or documentary evidence Defendants wish the Court to consider. See Order for details. Signed by Judge Thomas P. Barber on 1/9/2024. (EKB)** (Entered: 01/09/2024) |
| 01/09/2024 | 10 | CERTIFICATE of service by Daniel A. Frishberg re 9 Order on Motion for Preliminary Injunction, Order on Motion for Temporary Restraining Order. (e-portal) (AG) Modified text on 1/10/2024 (AG). (Entered: 01/10/2024) |
| 01/10/2024 | 11 | PROPOSED summons to be issued by Daniel A. Frishberg. (Attachments: # 1 Proposed Summons HRSE-Capstone Tampa, LLC, # 2 USM – 285) (e-portal)(AG) Modified text on 1/10/2024 (AG). (Entered: 01/10/2024) |

| 01/10/2024 | 12 | SUMMONS issued as to HRSE–Capstone Tampa, LLC, University of South Florida Board of Trustees. (AG) (Entered: 01/10/2024) |
|---|---|---|
| 01/10/2024 | 13 | **ENDORSED ORDER: The second sentence in paragraph 7 on page 7 of the Court's January 9, 2024, "Order Granting in Part and Denying in Part Plaintiff's Motion for Temporary Restraining Order" (Doc. 9) is hereby amended, *nunc pro tunc*, to read as follows: "Plaintiff is further DIRECTED to file with the Court on or before January 11, 2024, a statement that service on Defendants has been provided as directed." Signed by Judge Thomas P. Barber on 1/10/2024. (EKB)** (Entered: 01/10/2024) |
| 01/11/2024 | 15 | STATUS report by Daniel A. Frishberg. (Attachments: # 1 Exhibit)(AA) (e–portal) (Entered: 01/12/2024) |
| 01/12/2024 | 14 | NOTICE of hearing: Preliminary Injunction Hearing set for JANUARY 16, 2024, at 02:00 PM in Tampa Courtroom 14 A before Judge Thomas P. Barber. (SRC) (Entered: 01/12/2024) |
| 01/15/2024 | 16 | RESPONSE to Plaintiff's Emergency Motion for an Injunction and Defendant's MOTION to Dissolve by HRSE–Capstone Tampa, LLC, University of South Florida Board of Trustees. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Dyson, Sacha) (Modified on 1/16/2024 to edit docket text) (JDR). (Entered: 01/15/2024) |
| 01/15/2024 | 17 | DECLARATION of Andrew Johnson re 16 MOTION for Miscellaneous Relief, specifically to Dissolve *and Defendants' Response to Plaintiff's Emergency Motion for an Injunction* by HRSE–Capstone Tampa, LLC, University of South Florida Board of Trustees. (Attachments: # 1 Appendix 1–5, # 2 Exhibit 6–10, # 3 Exhibit 11–15, # 4 Exhibit 16–20, # 5 Exhibit 21–27)(Dyson, Sacha) (Entered: 01/15/2024) |
| 01/16/2024 | 18 | Minute Entry. Virtual Proceedings held before Judge Thomas P. Barber: MOTION HEARING held on 1/16/2024 re 4 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order filed by Daniel A. Frishberg. Court Reporter: Rebekah Lockwood (SRC) (Entered: 01/16/2024) |
| 01/16/2024 | 19 | NOTICE by HRSE–Capstone Tampa, LLC, University of South Florida Board of Trustees re 1 Complaint *of Acceptance of Service of Summons and Plaintiff's Complaint* (Dyson, Sacha) (Entered: 01/16/2024) |
| 01/17/2024 | 20 | **ENDORSED ORDER: For the reasons discussed at the January 16, 2024, hearing in this matter, Defendants' motion to dissolve the temporary restraining order (Doc. 16) is granted. The temporary restraining order (Doc. 9) is hereby dissolved. To the extent "Plaintiff's Emergency Motion for [an] Injunction, or, in the Alternative, a Temporary Injunction/Restraining Order" (Doc. 4) seeks a preliminary injunction, ruling is deferred pending resolution of the Eleventh Amendment sovereign immunity and related issues raised by Defendants in their response to Plaintiff's motion (Doc. 16). The Court will treat Defendants' response as a motion to dismiss based on: (1) Eleventh Amendment sovereign immunity as to the Fair Housing Act and state law claims, and (2) failure to state a claim under the Americans with Disabilities Act. *See* (Doc. 16 at 14–15 & nn. 11–12; *id.* at 22 n.13). On or before January 31, 2024, Plaintiff may file a response to Defendants' motion, limited to these issues and complying in all respects with the Local Rules, including Local Rule 3.01(b). Based on the agreement of Defendants' counsel, service of process is deemed to have been made on Defendants as of January 16, 2024. Defendants' time to respond to the complaint is stayed pending resolution of the threshold issues described above. In the event** |

| | | |
|---|---|---|
| | | the Court does not dismiss the case on these grounds, the Court will set a deadline for Defendants to respond to the complaint. Defendants may at that point assert by way of answer or motion to dismiss any arguments available to them under Rule 12. Signed by Judge Thomas P. Barber on 1/17/2024. (EKB) (Entered: 01/17/2024) |
| 01/18/2024 | 21 | RETURN of service executed on 1/17/2024 by Daniel A. Frishberg as to University of South Florida Board of Trustees. (LNR) (Entered: 01/22/2024) |
| 01/28/2024 | 22 | MOTION to Increase Page Limit for Plaintiff's Response to the Defendant's Memorandum of Law/Motion to Dismiss. by Daniel A. Frishberg. (AA) (e–portal) (Entered: 01/29/2024) |
| 01/30/2024 | 23 | **ENDORSED ORDER: "Plaintiff's Motion to Increase Page Limits for Plaintiff's Response to the Defendants' Memorandum of Law/Motion to Dismiss" (Doc. 22) is granted in part and denied in part. To the extent Plaintiff requests an extension of the 20–page limit for his responsive memorandum, the motion is denied. Plaintiff's response will be limited to "twenty pages inclusive of all parts."** *See* **Local Rule 3.01(b). The Court notes, however, that any exhibits attached to the responsive memorandum will not be considered part of the memorandum for purposes of the 20–page limit. Construing Plaintiff's motion to additionally or alternatively seek an extension of time to file his response, the motion is granted. Plaintiff may file his response on or before February 6, 2024. The Court notes that for most types of motions, Local Rule 3.01(g) requires that the moving party confer with the opposing party regarding the relief sought and include in the motion a certificate describing the outcome of the conference. Plaintiff's motion fails to include the required certificate of conference. Although the Court has granted the motion in part, any future motions that require but fail to include a certificate of conference will be denied or stricken. As the Court previously reminded Plaintiff (Doc. 9),** *pro se* **litigants are required to comply with the rules of procedure and Local Rules. Signed by Judge Thomas P. Barber on 1/30/2024. (EKB)** (Entered: 01/30/2024) |
| 02/06/2024 | 24 | REPLY to Response to Motion re 16 MOTION to dismiss filed by Daniel A. Frishberg. (AA) (e–portal) Modified text on 2/14/2024 (AG). (Entered: 02/07/2024) |
| 02/06/2024 | 25 | DECLARATION of Daniel Frishberg re 24 Reply to Response to Motion by Daniel A. Frishberg. (AA)(e–portal) (Entered: 02/07/2024) |
| 03/04/2024 | 26 | **ENDORSED ORDER: Plaintiff's motion to allow electronic service (Doc. 3) is denied. "It is the District's preferred policy to disallow** *pro se* **litigants access to electronic filing unless extenuating circumstances exist to justify waiving CM/ECF procedures."** *Fisher v. District School Bd. of Collier County,* **No. 2:10–cv–512–FtM–29SPC, 2010 WL 3522215, at \*1 (M.D. Fla. Sept. 7, 2010). Plaintiff has not shown good cause. In addition, the Court declines to seal the information requested, except to the extent that personal identifying information – as defined in Federal Rule of Civil Procedure 5.2 – may be redacted. Signed by Judge Thomas P. Barber on 3/4/2024. (ANL)** (Entered: 03/04/2024) |
| 04/11/2024 | 27 | **ORDER: Defendants' motion to dismiss (Doc. 16) is hereby granted. Counts 1, 2, 4, 6, 7, 8, 9, 10, 11 (in part), 13, 14, 15, 16, and 17 are dismissed without prejudice, without leave to amend, for lack of jurisdiction on the basis of Eleventh Amendment immunity. If Plaintiff wishes to pursue these claims, he may choose to do so in state court to the extent possible, but they may not be re–filed in this** |

| | | |
|---|---|---|
| | | Court. Count 3 is dismissed with prejudice for failure to state a claim. Count 5, 11 (in part), and 12 are dismissed as independent causes of action, without leave to amend. The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case. See Order for details. Signed by Judge Thomas P. Barber on 4/11/2024. (ANL) (Entered: 04/11/2024) |
| 04/12/2024 | 28 | NOTICE of Local Rule 1.11(e), which provides that, unless an order states another time, a seal under Rule 1.11 expires ninety days after a case is closed and all appeals are exhausted. To prevent the content of a sealed item from appearing on the docket after the seal expires, a party or interested non–party must move for relief before the seal expires. (Signed by Deputy Clerk). (ELM) (Entered: 04/12/2024) |
| 04/15/2024 | 29 | NOTICE OF APPEAL as to 27 Order on Motion for Miscellaneous Relief, by Daniel A. Frishberg. Filing fee not paid. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(AA) (e–portal) (Additional attachment(s) added on 4/16/2024: # 3 Exhibit C) (AA). (Entered: 04/16/2024) |
| 04/16/2024 | 30 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 29 Notice of Appeal. (AA) (Entered: 04/16/2024) |

**EXHIBIT B (Plaintiff's Complaint):**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

_____

|  |  |  |
|---|---|---|
| Daniel A. Frishberg, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case Number:_____ |
| | ) | |
| University Of South Florida, Board Of Trustees, | ) | |
| HRSE-Capstone Tampa, LLC, | ) | |
| Defendants. | ) | |

_____

## COMPLAINT

Daniel A. Frishberg (a tenant at the University of South Florida's dorms), ("Mr.
Frishberg'[6]', the "Plaintiff") respectfully files this complaint (the "Complaint") against the
University of South Florida Board Of Trustees ("USF"), and HRSE-Capstone Tampa, LLC
("Capstone"), together the "Defendants" due to violations of the Federal Fair Housing Act[7] (the
"FFHA"), Title II of the Americans with Disabilities Act (the "ADA"), Denial of Dwelling,
Failure to Accommodate, Discrimination in the Terms and Conditions of Housing, breach of
contract, unconscionable contract, retaliation, intimidation, discrimination, fraudulent
inducement into disclosing confidential medical[8] information, violation of the implied covenant

---

[6] As well as various first person variations. I am sorry if this is weird for it to be partially in the first person,
and partially in the third person, but all of the filings I have read are in the third person (not _pro se_).
[7] As well as the Florida Fair Housing Act, and related state claims. _See_ 28 U.S.C. § 1367(a).
[8] As well as related claims such as FERPA and HIPAA violations.

of good faith and fair dealing, and other claims that may exist, but ones that I do not know how to correctly phrase due to my lack of legal training (*See* **Request For *Pro Se* Relief**).

Plaintiff is requesting equitable remedies to rescind the purported "administrative cancel[ation]" of the Housing Agreement and injunctive relief (potentially under 42 U.S.C § 3613(c)(1), but there may be a better code/section to grant it under) to prevent the Defendants from taking further retaliatory actions against the Plaintiff, as well as monetary damages[9].

In support of his complaint, and requested relief, Mr. Frishberg respectfully states as follows:

## **VENUE**

Venue is correct and proper pursuant to 42 U.S. Code § 3613, 28 U.S. Code § 1391(a), 28 U.S. Code § 1391(b)(2) and 28 U.S. Code § 1391(c)(2). The actions which the complaint is stemming from occurred within this district (in Tampa, Florida), and the Defendant is physically located in Tampa, Florida. This Court also has jurisdiction over the state claims arising from a dispute over the Federal Fair Housing act due to 28 U.S.C. § 1367(a).

## **State Court Case**

This case was originally filed[10] in the Hillsborough County Court[11]. It is Case No. 23-CC-125805, and can be viewed at https://hover.hillsclerk.com. The Defendants responded,

---

[9] This includes expenses incurred due to the direct actions of the Defendant.

[10] The original complaint is largely irrelevant, and can be ignored, as it is superseded by this one. The only important parts of it are the exhibits, which are the contracts. It was also filed as a small claims court lawsuit, which I did not realize until after the Defendants mentioned it. I intended to file it in the County Court.

[11] The "County Court".

and filed a motion to dismiss at ECF Docket No. 11, and among other things argued that the wrong entity was sued, so I amended my complaint, at ECF Docket No. 13[12], and filed a time sensitive motion for an injunction at ECF Docket No. 12. The Defendants filed a motion to strike both my amended complaint, and my time sensitive motion for an injunction, in part because they alleged that the small claims court was the improper Court to bring the claim, and that the small claims court could not grant the relief I was seeking. So, out of an abundance of caution I am filing in this Court, which I believe is the proper Court to bring this claim in. Classes resume on January 8th, and I need to regain access to my on campus housing by then[13] (or as close to then as possible), so there is no time to waste.

## **Background**

Mr. Frishberg requested an accommodation from USF to have an Assistance Animal (in this case, an emotional support animal), his request for an accommodation was approved by USF. Later, the Defendants discriminated, and retaliated against the Plaintiff in violation of the Federal Fair Housing Act (and other related laws), largely because of his Emotional Support Animal ("ESA"), which is classified as an Assistance Animal[14]. The retaliation led to his (illegal) eviction from the university on campus housing, which is a de facto exclusion from participating in any non-online classes since the Plaintiff has been unable to find alternative housing. The eviction stemmed from a dispute over policies of USF which the Plaintiff alleges are illegal, discriminatory, and in conflict with the Federal Fair Housing Act (the "FFHA"), as well as other (related/equivalent) laws.

---

[12] The amended complaint is materially similar to this complaint.
[13] Otherwise permanent, irreparable harm will occur.
[14] For the avoidance of confusion, the terms "Emotional Support Animal", "ESA" and "Assistance Animal" are used interchangeably, and all refer to the same animal.

Mr. Frishberg is a tenant of USF, and has a lease for a room extending from August 2023, to May 2024. The Defendants purport[15] to have terminated (*See* **Exhibit B**) Mr. Frishberg's rental agreement due to Mr. Frishberg refusing to waive his right to use the common area alongside his assistance animal[16]. The Defendants have prevented Mr. Frishberg from accessing his room by both disabling his key card that allows him access to the building, and changing the locks on his room. Mr. Frishberg would not be able to (physically) attend school due to the Defendants' actions due to the lack of housing near enough to campus to be able to attend classes. Unless Mr. Frishberg is able to obtain either court relief, or relief via one of the complaints (for disability discrimination/violation of numerous laws, including the Federal Fair Housing Act, and Florida Fair Housing Act) he filed with various agencies such as the Department of Housing and Urban Development, he will be attempting[17] to take remote classes.

The Defendants **have not at any point stated that they believe that Mr. Frishberg does not qualify for/need an assistance animal**. Also, the Defendant's actions are "unlawful" according to the Department of Housing and Urban Development ("HUD"), and run contrary to the guidance[18] issued by HUD in **FHEO-2020-01**.

---

[15] The contract is likely unenforceable in part as it contains numerous unconscionable clauses which would allow the Defendants to terminate it, and kick out any renters for any number of reasons which they could quite literally make up, including vague ones like "[t]he Department may cancel the Agreement or change Student's Space assignment in the interest of order, discipline, health, safety, security, maximum utilization of Department facilities and resources, and/or educational delivery", including violating any rules/policies they have (the contract allows them to create new ones also).

[16] Per HUD, "[t]here are two types of assistance animals: (1) service animals, and (2) other trained or untrained animals that do work, perform tasks, provide assistance, and/or provide therapeutic emotional support for individuals with disabilities (referred to in this guidance as a "support animal")".

[17] It may not be fully possible due to a combination of both threatened disciplinary "sanctions" (*See: Plaintiff's Time Sensitive Motion For An Injunction, Or In The Alternative A Temporary Injunction*) and lack of availability of online classes. As well as the lack of suitable online classes. Thus far, I have been able to only sign up for one of the four classes online that I was going to be taking in person.

[18] https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf
FHEO Notice: **FHEO-2020-01**

The Defendants attempted to coerce/intimidate the Plaintiff into waiving his right to have his Assistance Animal in the common areas of the dwelling. The Plaintiff refused. As retaliation, the Defendants initiated "disciplinary action" against the Plaintiff, and found him "[r]esponsible" for the allegation of having his Assistance Animal outside of his room (*See* **Exhibit E**), **which he is _allowed_ to do according to HUD, the FFHA, and various other state/federal laws**. The Defendants also assigned the Plaintiff a "Civility and Community Standards Workshop" to attend and complete, as well as a $25 fee for said workshop. The Plaintiff refused the workshop, and is seeking injunctive relief barring the Defendants from requiring him to complete the workshop until this case is resolved.

The Defendants also purported to charge the Plaintiff fees (including for changing the locks to his room), and threatened further sanctions against him (after he started exercising his rights, such as filing a complaint in the County Court), including "additional sanctions up to permanent removal and restriction from the University"[19] (expulsion). This further highlights the extreme power disbalance, and need for immediate judicial relief.

The dispute at question arose over the Defendants' purported revocation of Mr. Frishberg Emotional Support Animal Agreement[20] (the "ESA Agreement"), which Mr. Frishberg was _required_ to sign **_to be able to have his Assistance Animal in the dorm_**—that is illegal. Mr.

---

[19] Email from USF General Counsel on November 27th, 2023, at 1:40pm EST.
[20] It is unclear to me if the purported breach of the agreement is even relevant, since I couldn't find anything (relevant) that allowed USF to prevent me from having an Assistance Animal regardless of if I broke some university rule/policy (which is superseded by Federal and state laws/acts).

Frishberg's Assistance Animal is a *hypoallergenic*[21] cat. The Defendants allege that Mr. Frishberg breached the ESA Agreement by allowing his Assistance Animal to leave his room. It is unclear to me if they can "revoke" something that is covered as a right[22] under the Federal Fair Housing Act (among other acts/laws). Title II of the ADA applies to USF[23] as it is an extension of the state government. In the event that the ESA Agreement is actually valid, *and not* superseded by federal/state law, *and* USF is able to revoke the ESA Agreement in the event of a breach, they would need to prove a breach of contract occurred, they have not done so.

The Defendants' in-house counsel stated that my property was removed from the room, and that "you will not be permitted back into your previously assigned room. Your belongings have been removed and are available to you and may be retrieved by contacting the University Police". The Defendants gave the Plaintiff until January 8th, 2024 to pick up said belongings.

The Plaintiff seeks injunctive[24] relief to permanently enjoin the Defendants from continuing to take actions to prevent the Plaintiff from accessing his room, being able to fully use all common areas with his Assistance Animal, and permanently enjoining the Defendants

---

[21] The definition of hypoallergenic is "relatively unlikely to cause an allergic reaction". The Defendants' stated that one of the reasons Mr. Frishberg's assistance animal could not be in the common area is it causing ***potential*** allergies.

[22] It is like USF attempting to "revoke" the 1st Amendment by banning any speech that is negative against USF.

[23] "Public entities that operate housing facilities must ensure that they apply the reasonable accommodation requirements of the FHAct in determining whether to allow a particular animal needed by a person with a disability into housing and may not use the ADA definition as a justification for reducing their FHAct obligations." https://www.ada.gov/law-and-regs/title-ii-2010-regulations/ (Accessed December 9th, 2023).

"Moreover, as discussed above, the Department's definition of "service animal" in the title II final rule does not affect the rights of individuals with disabilities who use assistance animals in their homes under the FHAct or who use "emotional support animals" that are covered under the ACAA and its implementing regulations. *See* 14 CFR 382.7 *et seq"* https://www.ada.gov/law-and-regs/title-ii-2010-regulations/ (Accessed December 9th, 2023).

[24] Or equitable/whatever the correct legal term is.

from taking any further retaliatory actions against the Plaintiff (including forcing him to traveling a long distance to end up throwing away most of his belongings before taking the rest home—this constitutes irreparable harm). The Plaintiff needs to attend in person classes for the best academic results. Remote learning simply does not work for him, as his disabilities (including ADHD) make it hard to both focus on, and understand online/remote classes. The Plaintiff's Dr. also said that not being able to attend in person classes would be detrimental to the Plaintiff. The Plaintiff will submit supplemental exhibits at a later date, including a Dr.'s note.

HUD's guidance states that the issue at hand makes up the majority of the complaints they receive, and the amounts of complaints are increasing: "As of the date of the issuance of this guidance, FHA complaints concerning denial of reasonable accommodations and disability access comprise almost 60% of all FHA complaints and those involving requests for reasonable accommodations for assistance animals are significantly increasing. In fact, such complaints are one of the most common types of fair housing complaints that HUD receives. In addition, most HUD charges of discrimination against a housing provider following a full investigation involve the denial of a reasonable accommodation to a person who has a physical or mental disability that the housing provider cannot readily observe". Not all disabilities are visible. Universities (let alone public universities) are not above the law[25] (*See* footnote 3 and 4 of HUD guidance).

## Preliminary Statement

I have done my best to use the proper legal terms for all of my requested relief, but I may have made mistakes, or mixed some of them up. In plain english, what I am requesting is that the

---

[25] *See* Case Number 4:11-cv-03209-JMG-CRZ, ECF Docket No. 80. https://archive.ada.gov/kearney_order.pdf (one among many examples).

Court prevent any further imminent irreparable harm (*See Time Sensitive Motion For An Injunction*[26]), as well as reverse the discriminatory/retaliatory acts committed by the Defendants until this issue can be properly adjudicated. Classes begin on January 8th, 2024, which is less than a week away from today. I need immediate judicial relief to be able to attend school in person (which is critical to me being able to succeed academically) while this case is adjudicated. The academic school year/semester ends in the first week of May, so if this case was adjudicated on a normal timeline, it would still be ongoing by the end of the school year. The Defendants would de facto win simply by dragging this out, and excluding me from the university. That cannot be allowed to happen. Every day that I am not attending in person class (as is hereinafter, there is no other housing other than the on campus housing that the Defendants are excluding me from) constitutes permanent, irreparable harm. My psychiatrist recommended I stay in the on campus housing as it is the best option for me (and at this point in the year, it is the only option due to a lack of availability in off campus housing) to succeed. Whatever the proper term for preventing the Defendants from discriminating against me further, and harming me further, this Court should implement it, whether it be an injunction, restraining order, or other legal term.

## REQUEST FOR *PRO SE* RELIEF

As I am a *pro se* filer, and have not gone to law school, I do not understand the law as well as a lawyer would. I ask that the Court interpret my filings liberally, and to allow me to correct any mistakes in my pleadings, and to give me a clear opportunity to have my exhibits entered into the record. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) ("This policy of liberally construing

---

[26] Which will be filed contemporaneously with this complaint.

pro se submissions is driven by the understanding that "[i]mplicit in the right of

self-representation is an obligation on the part of the court to make reasonable allowances to

protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of

legal training.").

As the Supreme Court of the United States said in *Haines v. Kerner*, "a pro se complaint,

'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings

drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief.'" 404 U.S. 519, 520-521 (1972), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

This Court has the ability to "liberally" construe my requests. The Supreme Court has

instructed the federal courts to apply the standard that a pleading filed pro se is "to be liberally

construed." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S.

97, 106 (1976)); *see also Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018) (per curiam) (holding that

"[i]n considering the defendants' motion to dismiss, the District Court was required to interpret

the pro se complaint liberally"); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). I

ask that if anything is in the wrong format, or cites the wrong state statute/code or the wrong

subsection or law, or I make citation mistakes, or my filings do not perfectly set forth all facts

needed to plead my claims, that you allow me to correct any deficiencies. If I also misunderstand

some of the local rules, or have defects by technicality (like not suing the Board of Trustees, and

suing the University instead), I request that you allow me to correct it. I will act in good faith to

ensure that the Defendants have sufficient notice of all filings.

*See Chambers v. Eppolito*, No. 11-cv-355-PB, 2011 WL 4436285, at *1 (D.N.H. Aug. 24, 2011) (holding that "[i]n conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals"). *See also Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) ("[I]f [the pro se litigants] present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled.").

As the Supreme Court of the United States said in *Haines v. Kerner*, "the district judge should have explain[ed] the correct form to the *pro se* plaintiff so that [he] could have amended his pleadings accordingly. Instead of simply dismissing the complaints for naming federal agencies as the defendants, it would have been appropriate for the district judge to explain the correct form to the *pro se* plaintiff so that [he] could have amended his pleadings accordingly." 404 U.S. 519, 521 (1972), citing *Henry Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991). I apologize if any of my arguments/citations are not up to the standard of an attorney's, I am doing the best that I can. Thank you for your consideration.

## **ARGUMENT**

While my complaint does not need to prove my entire case, I believe that it may, as the facts of the case are mostly undisputed, and the law is crystal clear on it. '"The plausibility standard is not akin to a `probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. Therefore, an initial complaint is not required to prove the plaintiff's entire case, but should "`possess enough heft' to set forth `a plausible entitlement to relief.'" *Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1282

(11th Cir. 2007)". The Defendants in this case have flagrantly ignored large parts of the FFHA, FHA and have retaliated against Mr. Frrishberg because he told them that they're wrong (they also cherry picked quotes[27] out of context in their justification for disciplinary sanctions).

I do not believe that my need for an Assistance Animal is disputed[28] by the Defendants (they have obtained substantial documentation explaining why I need one). The Defendants also approved (*See* **Exhibit A**) my request to have my Assistance Animal in the dorm, so it is an admission of the validity of my request.

The Defendants have violated the Federal Fair Housing Act (and other similar laws/acta) numerous times, even when their own policies say that they follow it. (*See* **Exhibit G**). In fact, their own policies directly contradict their statement of policy (Policy 6-033, Section II(C)), which says: "USF will follow all federal and state laws in regard to accommodations". **Not so**. Their own policies, and actions contradict the Federal Fair Housing Act, as will be shown hereinafter.

## 1. FEDERAL FAIR HOUSING ACT (AND FEDERAL EQUIVALENTS)

The Federal Fair Housing Act and the Florida Fair Housing Act are substantively identical, and therefore the same legal analysis applies to each. *See Loren v. Sasser,* 309 F.3d 1296, 1299 n. 9 (11th Cir.2002).

---

[27] Even if the Plaintiff said everything the Defendants alleged, without any of the context that exists, it still does not justify their actions. Disability discrimination is still illegal, and state/federal law and acts override university policies.

[28] In the event that it is disputed, I can submit documentation (which was sufficient for the Defendants to allow me to have my Assistance Animal in the first place) to the court filed under seal.

## COUNT 1: VIOLATIONS OF THE FEDERAL FAIR HOUSING ACT SECTION
## 42 U.S.C. § 3604 & 3604(b)

The actions of the Defendants constitute numerous violations of the Federal Fair Housing Act.

42 U.S.C. § 3604 & 3604(b)[29]:

"As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—[](b) To discriminate against any person in the **terms, conditions, or privileges** of sale or rental of a dwelling, or in the **provision of services or facilities** in connection therewith, because of race, color, religion, sex, familial status, or national origin"[30] (emphasis added).

My right to have my Assistance Animal outside of my room, and have my Assistance Animal in all parts of the dwelling (including in any common areas, such as lounges) is clearly established in federal and state law, as well as Supreme Court precedent.

The Office Of Fair Housing And Equal Opportunity issued notice FHEO-2020-01[31] which *unambiguously* stated that assistance animals (like my ESA) are able to be in housing, "**including public and common use areas**" (emphasis added).

---

[29] https://www.govinfo.gov/content/pkg/USCODE-2010-title42/pdf/USCODE-2010-title42-chap45-subchapI-sec3604.pdf

[30] Even though "disability" is not explicitly listed in this particular statute, it is my understanding that it also covers disabilities.

[31] https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf

## COUNT 2: VIOLATIONS OF THE FEDERAL FAIR HOUSING ACT SECTION 42 U.S.C.§ 3604(f)(3)(B)

Discrimination covered by the FHA includes **"a refusal to make reasonable accommodations in rules, policies, practices**, or services, when such **accommodations *may* be necessary to afford** [a handicapped] person **equal opportunity to use and enjoy a dwelling**." § 3604(f)(3)(B)."). (emphasis added).

Pursuant to U.S.C 42 §3602(b): "[a] "Dwelling" means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." The dormitories are a dwelling.

Pursuant to U.S.C 42 §3602(c)

"[a] "Family" includes a single individual". Mr. Frishberg is a single individual, so he constitutes a "family".

## COUNT 3: VIOLATIONS OF SECTION § 36.302

USF failed to make *extremely* reasonable accommodations despite them being requested numerous times. § 36.302 (Modifications in policies, practices, or procedures) of the ADA states:

"(a) *General.* A public accommodation *shall* make reasonable modifications in <u>policies, practices, or procedures</u>, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless ***the public accommodation can demonstrate*** that making the modifications would **<u>fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations</u>**." (emphasis added). Making minor modifications to the rules/policies (i.e allowing me to have my Assistance Animal in the common area) will not "fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodation" in any material way, shape or form. The burden of the proof (from my understanding of it) would be upon the Defendants to "demonstrate" that making those modifications would "fundamentally alter" the use of the common area. They have done no such thing. My Assistance Animal *may* ever so slightly alter the facility by having a space on the couch potentially occupied by the Assistance Animal, but it is far from fundamentally altering it.

## COUNT 4: VIOLATIONS OF THE FEDERAL FAIR HOUSING ACT SECTION 42 U.S.C.§ 3604(f)(2)(A) / DISCRIMINATION IN THE TERMS AND CONDITIONS OF HOUSING

The Defendants also committed Discrimination in the Terms and Conditions of Housing when they required Mr. Frishberg to sign the ESA Agreement, and have a (remote) meeting with the RLC. People who did not have assistance animals, were not required to sign the ESA Agreement, or attend a separate meeting (remotely). This case has a lot of similarities[32] to *Siler v.*

---

[32] In Siler, the disabilities were different, and the assistance animal in question was a service animal.

*ABBOTT HOUSE INC.*, Dist. Court, SD Florida 2017, where the Plaintiff had to conduct a meeting, and sign a liability waiver (the ESA Agreement also contains clauses which act like liability waivers). "Section 3604(f)(2)(A) of the FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person." § 3604(f)(2)(A)". *See Siler v. ABBOTT HOUSE INC.*, Dist. Court, SD Florida 2017.

## COUNT 6: FAILURE TO ACCOMMODATE

The FFHA prohibits discriminating against a person on the basis of a "handicap", or a disability, by refusing to make reasonable accommodations when necessary to afford the person equal opportunity to use and enjoy a dwelling. Fair Housing Amendments Act of 1988, Pub.L. No. 100-430, § 6, 102 Stat. 1619 (codified at 42 U.S.C. § 3604(f)(3)(B)). Mr. Frishberg has a disability.

The Defendants should be ordered to change their policies which are contrary/in violation of the FFHA (and other equivalents), as well as implement training so an incident like this does not occur again.

**The Legal Standard:**

A successful failure-to-accommodate claim has four elements. To prevail, one must prove[33] that:

(1) he is disabled within the meaning of the FHA,

(2) he requested a reasonable accommodation,

(3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and

(4) the defendants refused to make the accommodation.

Element one has been proven due to the Defendants' acceptance of Mr. Frishberg's disability, and approval of the request to have an Assistance Animal in on-campus housing. I am also willing to file under seal the documents (or provide them for *in camera* review) which were provided to the Defendants, as I do not want sensitive medical information to be public.

Element two is supported by the Defendants' November 21st, 2023 letter with the results of the purported disciplinary hearing that took place on the same day (*See* **Exhibit E**). It stated in relevant part: "[t]he Resident Assistant verbally warned the student to keep the [Assistant animal/emotional support] cat inside the charged student's room, to which the student disagreed". What it does not mention is me asking the Defendants verbally numerous times if they could let me let my Assistance Animal out into the common area for "15 minutes or so a day". To obtain

---

[33] I will further prove (if necessary/requested by the Court) this standard at a later date with a supplemental filing, amendment, or whatever the proper procedure that the Court would like me to use.

further proof, I would need to conduct discovery, and thus far the Defendants have refused to provide any discovery.

Element three is met since I have numerous diagnoses including social anxiety which make it very hard for me to socially interact with people (especially my peers), much like the Plaintiff in *Bhogaita v. Altamonte Heights Condominium Ass'n*, 765 F. 3d 1277 - Court of Appeals, 11th Circuit.

Element four is met due to the numerous written refusals of the Defendants, as well as subsequent disciplinary action they initiated. The attached exhibits have (*See* **Exhibit B** and **Exhibit E**) sufficient documentation. The fact that the Defendant's attempted to order Mr. Frishberg to get rid of his Assistance Animal, and then effectively evicted Mr. Frishberg, also weighs *extremely* heavily in favor of proving discrimination.

## COUNT 7: VIOLATIONS OF THE

## FLORIDA FAIR HOUSING ACT SECTION 760.27(2)

This Court has supplemental jurisdiction over state claims since they arise from the same dispute as ones that are covered under the Federal Fair Housing Act, *See* 28 U.S.C. § 1367(a). The Florida Fair Housing Act[34] (in relevant part) states:

---

[34] http://www.leg.state.fl.us/statutes/index.cfm?App_mode=Display_Statute&Search_String=&URL=0700-0799/0760/Sections/0760.27.html

"760.27   Prohibited discrimination in housing provided to persons with a disability or disability-related need for an emotional support animal.—

(1)   DEFINITIONS.—As used in this section, the term:

(a)   "Emotional support animal" means an animal that does not require training to do work, perform tasks, provide assistance, or provide therapeutic emotional support by virtue of its presence which alleviates one or more identified symptoms or effects of a person's disability.

(b)   "Housing provider" means any person or entity engaging in conduct covered by the federal Fair Housing Act or s. 504 of the Rehabilitation Act of 1973, including the owner or lessor of a dwelling.

(2)   REASONABLE ACCOMMODATION REQUESTS.—To the extent required by federal law, rule, or regulation, it is **unlawful to discriminate in the provision of housing** to a person with a disability or disability-related need for, and **who has or at any time obtains, an emotional support animal**. A person with a disability or a disability-related need must, upon the person's request and **approval by a housing provider, be allowed to keep such animal in his or her _dwelling_ as a reasonable accommodation in housing**, and such person may not be required to pay extra compensation for such animal. Unless otherwise prohibited by federal law, rule, or regulation, a housing provider may:

(a)   Deny a reasonable accommodation request for an emotional support animal **_if_** such animal poses a direct threat to the safety or health of others or poses a direct threat of physical damage to the property of others, which threat cannot be reduced or eliminated by another reasonable accommodation"  (emphasis added). My Assistance Animal does not pose a direct threat (or indirect threat for that matter) to anyone's health or safety, and there is no threat of physical damage to property. Far from being threatening, my Assistance Animal is extremely

well behaved, calm and small. Candidly he is more afraid of people than they are of him, in fact I have yet to meet anybody afraid of my cat, quite the opposite, people tend to want to pet him.

The remainder of the various subsections of the Fair Housing Act (b, c, d, and e) are not relevant, since documentation has been provided to USF, and they approved the Assistance Animal.

I am not aware of any relevant laws that allow the Defendants to act on subsection t[35] of the ESA agreement, or if it is even an enforceable provision due to it seemingly violating the Fair Housing Act and potentially the ADA (as well as being entered into due to fraudulent inducement). My Assistance Animal is not a pet, it is a treatment tool. Removing my Assistance Animal from me would significantly impact me emotionally, mentally, academically and socially. My Assistance Animal has a right to be outside of my (roughly 100 square foot) room, as it is an extremely reasonable accommodation (that I have requested numerous times). Keeping a cat locked in a 100 square foot room is borderline animal cruelty, as well as detrimental to my mental health/sleep due to the feeling of isolation from others. From early November until November 21st, 2023, I did not go into the common area with my Assistance Animal, and my social interactions, as well as overall mental health significantly suffered. Whenever my Assistance Animal is in the common areas of the dwelling with me there is a drastic improvement in my social interactions, and overall mental health. My Assistance Animal also

---

[35] Which states: "Any violation of the above rules or University Policy may result in immediate removal of the Assistance Animal from USF System premises and the owner being prohibited from continuing to keep an Assistance Animal on University property. For students, such removal may be reviewed through USF Student Rights and Responsibilities and the student will be afforded all rights of due process and appeal as outlined in that process."

has a right to be outside of my room contractually (assuming the contract is valid and enforceable).

No one has *actually* been harmed due to my Assistance Animal being outside of my room, nor has it been alleged that anyone has been harmed. I (among other things) have social anxiety, and have been significantly harmed by being denied the ability to use the common area with my Assistance Animal. It is extremely difficult for me to engage in protracted social interactions with my peers without my Assistance Animal. It quite literally assists in social interactions in more ways than just reducing my stress and anxiety to manageable levels. My Assistance Animal is a surprisingly good ice breaker. I shouldn't be forced to be a (socially) borderline prisoner in my own room, since having a protracted conversation with my peers (without my assistance animal) induces a large amount of anxiety and stress.

Congress found that "physical or mental disabilities in no way diminish a person's right to **fully participate in all aspects of society**," 42 U.S.C. § 12101 (emphasis added). Evicting me, due to me exercising rights granted to me under various laws, (as they did) is discrimination. The 11th Circuit Court stated that the "FHA protects renters not only from eviction, but also from discriminatory actions that would lead to eviction but for an intervening cause" (*See Hunt v. Aimco Properties*, LP, 814 F. 3d 1213 - Court of Appeals, 11th Circuit 2016). Both occurred here, but there was not yet an intervening cause.

## COUNT 8: VIOLATIONS OF THE

## **FLORIDA FAIR HOUSING ACT SECTION 760.27(3) (AND ALL**

## **FEDERAL/OTHER EQUIVALENTS)**

This Court has supplemental jurisdiction over state claims since they arise from the same dispute as ones that are covered under the Federal Fair Housing Act, *See* 28 U.S.C. § 1367(a).

The Defendants violated the Fair Housing Act *numerous* times, including when they purported that "[t]he **required questionnaire** that was attached to the email **must** be completed by the prescribing provider of the ESA." (*See* **Exhibit H** and **Exhibit I**) (emphasis added in bold[36]). That is in clear violation of Florida Statutes Section 760.27(3) (which is in all caps and titled "REQUEST LIMITATIONS") states:

"Notwithstanding the authority to request information under subsection (2), a housing provider **may not request information that discloses the diagnosis or severity of a person's disability** or any medical records relating to the disability. However, a person may disclose such information or medical records to the housing provider at his or her discretion.

(b)    A housing provider may develop and make available to persons a routine method for receiving and processing reasonable accommodation requests for emotional support animals; however, **a housing provider may not require the use of a specific form** or notarized statement, or deny a request solely because a person did not follow the housing provider's routine method". (emphasis added).

The Defendants' "required questionnaire" (which in-of-itself is illegal) contains several (also illegal) questions which "request information that discloses the… severity of a person's disability" such as question 1a, which says to: "please state the type of impairment and what major life activities are the subject of the disability (i.e., the current impact and functional

---

[36] The Defendants' communications and documents/forms include emphasis originally, which is why I will specifically label what emphasis I added (if I add any).

limitations resulting from the disability)". Question 2b asks to "please describe the relation between the requested accommodation (the [assistance] animal) and the disability (i.e., how the [assistance] animal will alleviate or mitigate a symptom(s) or effect(s) associated with the person's disability or otherwise assist the resident in using and enjoying University housing?".

## COUNT 9: VIOLATIONS OF THE

## FLORIDA FAIR HOUSING ACT SECTION 760.27

This Court has supplemental jurisdiction over state claims since they arise from the same dispute as ones that are covered under the Federal Fair Housing Act, *See* 28 U.S.C. § 1367(a).

Section 760.27 of the Fair Housing Act states that: "upon the person's request and approval by a housing provider, [they] be allowed to keep such [assistance] animal in his or her dwelling as a reasonable accommodation in housing".

Section 760.22(4)[37] defines "dwelling" as: "any building or structure, or portion thereof, which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location on the land of any such building or structure, or portion thereof". The term "Dwelling" covers the entirety of the dorm, including the common areas. Section 760.22(6) states: "Family" includes a single individual", which would put the USF dormitories (where I rent a room) squarely within the jurisdiction of the Fair Housing Act (Chapter 760 ss. 760.20-760.37).

---

[37] https://www.flsenate.gov/Laws/Statutes/2019/Chapter760/All

Section 760.22(10) states that: '"To rent" includes to lease, to sublease, to let, and otherwise to grant for a consideration the right to occupy premises not owned by the occupant." The common room that the Defendants purport is off limits to my Assistance Animal falls squarely within the literal four corners of the definition of a dwelling since it is "any building or structure, or portion thereof" of the dormitory. The Defendants purport to have terminated my rental agreement with them, due to my refusal to get rid of my Assistance Animal, after they unilaterally decided that it suddenly isn't a needed medical tool anymore. Their actions are illegal, and constitute retaliation.

## COUNT 10: VIOLATIONS OF THE

## FLORIDA FAIR HOUSING ACT SECTION 760.23(8)(a) AND SECTION

## 760.23(8)(b)

This Court has supplemental jurisdiction over state claims since they arise from the same dispute as ones that are covered under the Federal Fair Housing Act, *See* 28 U.S.C. § 1367(a).

Section 760.23(8)(a) and Section 760.23(8)(b) state that: "It is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a disability of:

(a)  That buyer or renter;

(b)  A person residing in or intending to reside in that dwelling after it is sold, rented, or made available" (emphasis added). By preventing the Plaintiff from using his assistance animal in the common areas, the Defendants de facto took away the Plaintiff's ability to fully use and enjoy the space.

USF advertised[38] "activity lounges" (the common area) as "Hall Amenities" on their website. The advertisement came with the implied promise that the common area would be open to be used, and that I would not be discriminated against.

---

### HALL AMENITIES

- Ground floor features a full kitchen, gaming area, TV/media lounge, a multipurpose room, and a laundry room
- Activity lounges and quiet lounges on every floor
- Ethernet connection in-room and WiFi throughout the building
- 250Mbps average internet speed (speeds up to 1Gbps)
- 24-hour, on-call emergency maintenance

---

## COUNT 11: INTIMIDATION

The Defendants attempted to intimidate me into first giving up my Assistance Animal (by threatening disciplinary action/expulsion/housing cancellation), and then later into either being evicted, or "getting rid of the cat". When that didn't work in scaring me into getting rid of my Assistance Animal, USF (unsuccessfully) threatened the me on November 17th, at approximately 2pm EST by saying that "the police will drag you out on Monday [November 21st, 2023] if you don't leave" and "if you're not out of here by 9 am on Monday [November 21st, 2023], the USF Police Department will remove you, and your stuff". After I refused, they eventually left. I emailed the Defendants and asked to confirm that I heard them correctly, and in response I got an email purporting to "administratively cancel" the Housing Agreement (*See* **Exhibit B**). This all happened directly[39] in front of/next to a camera (that is looking down the

---

[38] https://www.usf.edu/housing/housing-options/suite-style/pinnacle-hall.aspx (Accessed on December 10th, 2023)
[39] Within approximately 6 feet if you do not take into account height/elevation,

dorm hall). I specifically instructed the Defendants' in-house counsel to preserve that footage (in addition to the general litigation hold I issued). I requested that footage during Discovery, and have yet to receive it (or for that matter any discovery). The Defendants filed a Motion To Stay Discovery within the state court lawsuit.

## COUNT 12: ENFORCEMENT UNDER 42 U.S.C. § 3613

I seek to enforce the law with this action. Relief under 42 U.S.C. § 3613(b)(1) and 3613(b)(2) would be helpful, and if this court is so inclined, should grant it. This Court should also grant relief under 42 U.S.C. § 3613(c)(1).

## COUNT 13: RETALIATION

As was stated elsewhere in this complaint, the Defendants retaliated against the Plaintiff in numerous ways, including by attempting to have him "get rid of" his Assistance Animal, initiating disciplinary proceedings against him (which they extremely quickly decided that he was guilty of), attempting to intimidate him into moving out, and later evicting him (and attempting to charge him fees for it) when he went on Thanksgiving break. The Defendants are now threatening to issue an academic hold on my academic record (which would prevent me from registering for classes, and requesting a transcript to transfer schools), and even expel me.

## 2.  CONTRACT RELATED CLAIMS

### The ESA Agreement is Unenforceable, Unconscionable and Void

This argument is made in the alternative. The Plaintiff does not believe that this is necessary, but is making it out of an abundance of caution. The ESA Agreement is unenforceable

and void for numerous reasons, including that the plaintiff was fraudulently induced into signing it.

## COUNT 14: FRAUDULENT INDUCEMENT(S)

This Court has supplemental jurisdiction over any state law claims since they arise from the same dispute as ones that are covered under the Federal Fair Housing Act, *See* 28 U.S.C. § 1367(a).

The Defendants said that Mr. Frishberg would be unable to have his Assistance Animal in the dorm if he did not sign the contract (*See* **Exhibit A**) that is materially false. According to HUD, a "housing provider"[40] ***must*** make a reasonable accommodation of allowing the ESA in common areas. Per HUD, it is illegal "to refuse to make a reasonable accommodation that a person with a disability may need in order to have equal opportunity to enjoy and use a dwelling". Contrary to what USF purported, Mr. Frishberg did not need to sign any agreement to have his Assistance Animal in the dorm, nor does the HUD guidance say anything about "conditionally" approving Assistance Animals. If Mr. Frishberg knew at the time that he did not need to sign an extremely unconscionable and one sided agreement to have his Assistance Animal in the dorm, he would have never signed it. Nothing in the Fair Housing Act says anything about housing providers being allowed to coerce renters into signing agreements restricting/limiting their rights.

---

[40] Per HUD, "[t]he term "housing provider" refers to any person or entity engaging in conduct covered by the FHA. Courts have applied the FHA to individuals, corporations, partnerships, associations, property owners, housing managers, homeowners and condominium associations, cooperatives, lenders, insurers, real estate agents, brokerage services, state and local governments, colleges and universities, as well as others involved in the provision of housing, residential lending, and other real estate-related services." Page 3, footnote 3 https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf

The Defendants also fraudulently induced Mr. Frishberg into disclosing confidential information, such as his diagnosis which is covered under HIPAA (via requiring his psychiatrist to fill out a premade form, which is also illegal). That is in violation of Florida Statutes Section 760.27(3) (which is all capitalized and titled "REQUEST LIMITATIONS") which states: "Notwithstanding the authority to request information under subsection (2), a housing provider **may not request information that discloses the diagnosis or severity of a person's disability** or any medical records relating to the disability. However, a person may disclose such information or medical records to the housing provider at his or her discretion.

(b)    A housing provider may develop and make available to persons a routine method for receiving and processing reasonable accommodation requests for emotional support animals; however, **a housing provider may not require the use of a specific form** or notarized statement, or deny a request solely because a person did not follow the housing provider's routine method" (emphasis added). Mr. Frishberg would have never disclosed information surrounding his diagnosis unless the Defendants fraudulently induced him into doing so. According to HUD, "[h]ousing providers are not entitled to know an individual's diagnosis". The Defendants likely are also not properly safeguarding the confidential medical information they obtained via fraudulent means, since they instructed me to send it to housing@usf.edu, which is able to be accessed by a (likely) very large number of people. Those people more than likely never had proper training on how to protect confidential information, since if any of them actually read the HUD guidance, they would know that what they are doing is illegal.

The Defendants also committed Discrimination in the Terms and Conditions of Housing when they required Mr. Frishberg to sign the ESA Agreement, and have a (remote) meeting with the RLC. People who did not have assistance animals, were not required to sign the ESA Agreement, or attend a separate meeting (remotely). This case has a lot of similarities[41] to *Siler v. ABBOTT HOUSE INC.*, Dist. Court, SD Florida 2017, where the Plaintiff had to conduct a meeting, and sign a liability waiver (the ESA Agreement also contains clauses which act like liability waivers). "Section 3604(f)(2)(A) of the FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person." § 3604(f)(2)(A). The Florida FHA provides the same relief. § 760.23(8)." *See Siler v. ABBOTT HOUSE INC.*, Dist. Court, SD Florida 2017.

Due to numerous reasons, including the large amount of misrepresentation that went into the signing of the contract, it is unenforceable, and null and void.

## COUNT 15: BREACH OF IMPLIED TERMS OF CONTRACT INCLUDING COVENANT OF GOOD FAITH

The Defendants breached numerous implied terms, including the implied terms of good faith (in both the ESA and Housing Agreements). Section 17 of the Housing Agreement (as well as the contract as a whole) implies that the Defendant will not discriminate, or retaliate against protected persons requesting accommodations. The Defendants breached the implied covenant of good faith with their discriminatory practices.

---

[41] In Siler, the disabilities were different, and the assistance animal in question was a service animal.

## COUNT 16: UNCONSCIONABILITY

The Housing Agreement is unconscionable and unenforceable due to the extremely one sided terms in it. The terms allow USF to effectively do whatever they want, including unilaterally canceling the lease agreement, restricting what areas (including lounges/common areas) can be used, changing room assignments, and even denying a student canceling the agreement *even when the agreement allows the student to cancel it*. And there are extremely hefty fees for cancellation if they do choose to "allow" you to cancel the agreement. The same provision of an effective veto of cancellation unsurprisingly is not granted to students. Students are required to comply with university policies, and federal/state law (in that order). They're also not responsible for any damage to property except for Florida Statutes Section 768.28, and USF can unilaterally make up new rules/regulations.

The Housing Agreement is the single most one sided, unconscionable contract I have ever read. No reasonable person would sign it if they had the option to live in on campus housing without it (since the area directly adjacent to campus is fairly rough). Fletcher Street (near campus) is nicknamed 'Sketchy[42] Fletchy' by the student body. There have been numerous shootings/homicides near campus, including one that left two dead, and one wounded in March of 2023[43]. A man was found dead near campus in August of 2022[44], and there was yet another

---

[42] "Sketchy" is defined by Dictionary.com as:  "unreliable or unsafe" and  "disreputable or shady". https://www.dictionary.com/browse/sketchy (under "See More").

[43] https://www.wfla.com/news/hillsborough-county/2-killed-1-wounded-in-shooting-at-tampa-apartment-complex/

[44] https://www.wtsp.com/article/news/local/hillsboroughcounty/1-person-dead-tampa-shooting-usf/67-00773577-5d9a-4382-bff9-c1aa02986e42

shooting in September of 2019 near campus which left 1 dead and 1 wounded[45], and those are just some examples that took literally two minutes to find. The other so-called alternative off campus options are not really actual options that are comparable to on campus housing. Even if you ignore the housing complexes that have been condemned, or have bug infestations, simply finding housing anywhere near campus (that does not have black mold) is extremely difficult. In short, there was no real option other than to sign the Housing Agreement.

### COUNT 17: BREACH OF CONTRACT[46]

The Defendants' claim that Mr. Frishberg violated the ESA Agreement is false, it was the Defendants who breached the contract's implied terms of good faith. The relevant section (subsection b) of the agreement states: "The approved Assistance Animal must be controlled by its owner and <u>must be contained within the residential area</u> (room, suite, apartment, **building**, enclosed balcony or yard spaces) at all times, except when transported outside the private residential area in an animal carrier or controlled by leash or harness." (Emphasis added).

Another potentially relevant part (subsection i) of the ESA Agreement states: "The owner is responsible for assuring that the approved Assistance Animal does not unduly interfere with the routine activities of the residence or cause difficulties for students who reside there. Assistance Animals must not make excessive noise or display behavior that will disrupt other community members. Individuals with disabilities who are accompanied by Assistance Animals

---

[45] https://www.tampabay.com/news/crime/2019/09/11/one-person-killed-another-hospitalized-after-shooting-in-temple-terrace/

[46] This argument is made in the alternative, and in the event that the ESA agreement is found to be a valid, enforceable contract.

must comply with the same rules regarding noise, safety, disruption, and cleanliness as people without disabilities. Sensitivity to residents with allergies and to those who fear animals is important to ensure the peace of the residential community". My Assistance Animal did not "unduly interfere with the routine activities of the residence or cause difficulties for students who reside there". One resident complained about my Assistance Animal walking on counters/tables, and I promptly resolved that issue by ensuring that he never was on counters or tables.

USF has alleged that at least one resident had an issue with my Assistance Animal, but has failed to both specify who it was, and what their issues were. They allege that several students have allergies to cats, but (and this is the key part) **no one is allergic**[47] to my Assistance Animal since he is hypoallergenic. If any allergies existed, reasonable accommodations could have been made to ensure that it was not an issue.  I also attempted to compromise with the student(s) who had issues with my Assistance Animal by attempting to work out a schedule as to when my Assistance Animal would leave my room. The students refused.

Subsection m of the ESA agreement states: "The owner must ensure that the Assistance Animal does not: Attack, harass, sniff, jump on/at or disrupt others or their personal belongings[.] Display any repeated behaviors or noises that are disruptive to others. Block evacuation routes or egress in case of an emergency. Leave the owner's room except when accompanied by the owner." (slight format change, including removing bullet points). The Defendants did not allege that my Assistance Animal "unduly interfere[d]" with anyone, or harassed anyone. To the contrary, he usually liked to hide from new people as he is (sometimes

---

[47] I know this both because I asked the people who said they had allergies, and because during the disciplinary hearing they held about this matter, the witness testified that no one had allergies to my ESA.

literally) scared of his own shadow, and for lack of a better term, is a coward. A large number of people enjoyed him being out, and liked petting him. The Defendants also have not alleged that my Assistance Animal left "the owner's room except when accompanied by the owner".

## <u>CONCLUSION</u>

While my complaint may not be as well organized as one drafted by a lawyer, it is should more than meet the minimum requirement for a *pro se* complaint. This Court should **<u>GRANT</u>** the relief requested (after a hearing/further motion practice), and any other relief that it sees fit.

The Defendants' actions are clear cut examples of discrimination and retaliation. Without relief from the Court, the Plaintiff will suffer permanent irreparable harm. ***Immediate*** judicial relief is both needed, and requested. I will be filing a motion for an injunction shortly after this case is docketed.

## <u>RESERVATION OF RIGHTS</u>

I reserve any and all rights, and request that This Court "liberally interpret" this Reservation of Rights as including the most stringent, strong, broad, and effective/appropriate reservations of rights. Nothing contained herein shall be considered as an admission of the validity of any claim, counterclaim, or claims against the Plaintiff, nor shall it be construed as a waiver of any right. I also reserve the right to include more exhibits in later filings.

I hereby swear under threat of perjury that all of the information contained herein is true and correct to the best of my knowledge, information and belief.

Respectfully Signed,

Daniel A. Frishberg. *Pro Se*.

/s/*Daniel A. Frishberg*

Santa Clara, California

January 2nd, 2024,

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 2nd day of January, 2024, I electronically filed the foregoing with the Clerk of the Court by using the online *pro se* portal. A copy of the foregoing was also served via electronic email upon the Defendants

EXHIBIT[48] A[49]:

Dear Daniel,

Thank you submitting all of your documentation to support your Emotional Support Animal (ESA). At this time, we have approved your request under the following conditions. **You will not be eligible to bring your animal on campus until the following conditions are met:**

- Schedule a Meeting with your Residence Life Coordinator (RLC) to go over and agree to the Animals On-Campus Agreement (attached). It is your responsibility to reach out to your RLC to schedule a meeting.
- Talk to your roommates (if applicable) to make them aware of the animal entering their community

**RLC Information:** Your RLC is copied on this email. Their information can also be found here.

Please print and fill out the attached form and have your emergency contacts sign and agree to the terms. You can e-mail a scanned copy to housing@usf.edu.

If you have any questions, you can contact us via email at housing@usf.edu or by phone at 813-974-0001 during normal business hours, Monday through Friday from 9:00am until 4:00pm. We are located in the Argos Building, 2nd Floor (Above Argos Exchange).

*Sincerely,*

*Housing & Residential Education*
**University of South Florida**
4202 E. Fowler Ave, RAR 229
Tampa, FL 33620
Office: 813-974-0001   Fax: 813-974-5152

---

[48] **Exhibit A** and **Exhibit B** that were filed with the original complaint filed in the state court (Case No. 23-CC-125805) are incorporated by reference as Exhibit 1 and 2.
[49] Email received from USF housing at 12:32pm EST on August 10th, 2023, approving my request for my Assistance Animal. For the avoidance of doubt, the "conditions" that USF stated must be met before my Assistance Animal was to be brought on campus were met before I brought my Assistance Animal. (For the avoidance of doubt, "ESA" was not highlighted in the email, but is highlighted due to me running a keyword search).

EXHIBIT B[50]:



**Andrew Johnson**
To: Daniel Frishberg                                                                                    Fri 11/17/2023 4:31 PM

Cc: Ana Hernandez;  David Kloiber;  Amy Chilcutt;  Megan Bucalos;  Xiomara Talavera Mercedes;  Jimmy Surin;  Jan Serpan;  Sherrelle Findley;  **+3 others**

Dear Mr. Frishberg,

Following my correspondence dated November 14, 2023, Residential Education staff members contacted you on or around 2:00 PM to confirm that you complied with USF's directive to remove your animal from the residence hall.  I was informed by the USF Housing and Residential Education staff that you stated that the animal was still present in your residential room.  Given that you have not complied with USF Housing and Residential Education department's directives, USF is administratively cancelling your 2023-24 Student Housing Agreement effective Monday, November 27, 2023 at 12:00 PM under section IV.1.d as stated in the excerpt below.

*IV. CANCELLATION: Notwithstanding anything contained herein, and even when Student's Cancellation is permitted under the terms of the Agreement, the Agreement may not be canceled without the prior written approval of the Department. The Department may, within its sole discretion, deny any Cancellation requests. Where Cancellation of the Agreement is subject to the Cancellation fees set forth in the Agreement, any fees will be added to the Student's financial account and will be due and owing immediately. Non-payment of the fees may result in a Student registration hold or restriction on graduation and ability to obtain a transcript. Late payments may also include collection fees. Students should refer to Section III of this Agreement for more information regarding the Payment Schedule.*

1.  *Cancellation by Department: The Department may, in accordance with applicable rules of the University, initiate reassignment or cancel the Agreement if deemed necessary by the Department in the best interest of order, health, conduct, safety, security, disaster, failure to comply with any and all University regulations, policies, or directives.*

    d. *Cancellation Due to Administrative Dismissal: Students who are removed from the Residence Halls and/or dismissed from the University for administrative reasons will be responsible for a daily-prorated Hall Rate.*

Please schedule your check-out with RLC Cordero and return your keys to the HUB Service Desk by 12:00 PM on Monday, November 27, 2023.  Failure to complete these steps by the deadline may result in additional fees or referrals to the Office of Student Conduct and Ethical Development.  ID card access to any residential space will also end at that time.  Your rent charges will cease on Monday, November 27, 2023 and a credit be issued for the balance of the fall term.  The credit will be issued to your OASIS account.

You are expected to comply with the rules, policies, regulations of the University of South Florida and all applicable laws until your check-out from housing.  Failure to comply with the previous statement will result in your immediately removal from housing and a referral to the Office of Student Conduct and Ethical Development.

Sincerely,

Dr. Johnson

EXHIBIT C[51]:

---

[50] Email received from Mr. Andrew Johnson (an employee of USF working in the housing department) at 4:31pm EST on November 17th, 2023.
[51] Email received from USF Housing at 4:06pm EST on February 13th, 2023. This email is unmodified, and the emphasis was added by USF.

Dear Daniel,

Thank you for contacting the University of South Florida Housing Services Team!

In order to review your request, please provide current documentation (**within the past 90 days/ 3 months**) showing **diagnosis, date of diagnosis, and reasonable accommodations requested from your medical care professional**. This letter needs to be on your **medical care professional's letterhead**. You will need to provide this documentation to the housing assignments office within <u>5 business days of receipt of this email</u>, in order for us to process your request. Failure to provide this documentation by the stated date will result in a denial of this request. Please make sure that you reference your U# and ticket number on every sheet of documentation. Please note that the deadline for all ADA/Medical Accommodation are as follows:

Fall-Spring Agreement deadline- June 1st
Spring Only Agreement deadline- November 1st
Summer A, AB, C Agreement deadline- April 15th
Summer B, SSS, ACE Agreement deadline- June 1st

If you are applying after the deadlines listed above for the upcoming term, we will still process your request and attempt to honor it. We cannot guarantee placement after the deadline.

If you have any questions, you can contact us via email at housing@usf.edu or by phone at 813-974-0001 during normal business hours, Monday through Friday from 9:00am until 4:00pm. We are located in the Argos Building, 2nd Floor (Above Argos Exchange).

*Sincerely,*

*Housing & Residential Education*
**University of South Florida**
4202 E. Fowler Ave, RAR 229
Tampa, FL 33620

# EXHIBIT D[52]:

Dear Daniel,

Thank you submitting all of your documentation to support your Emotional Support Animal (ESA). At this time, we have approved your request under the following conditions. You will not be eligible to bring your animal on campus until the following conditions are met:

- Schedule a Meeting with your Residence Life Coordinator (RLC) to go over and agree to the Animals On-Campus Agreement (attached). It is your responsibility to reach out to your RLC to schedule a meeting.
- Talk to your roommates (if applicable) to make them aware of the animal entering their community

**RLC Information:** Your RLC is copied on this email. Their information can also be found here.

Please print and fill out the attached form and have your emergency contacts sign and agree to the terms. You can e-mail a scanned copy to housing@usf.edu.

If you have any questions, you can contact us via email at housing@usf.edu or by phone at 813-974-0001 during normal business hours, Monday through Friday from 9:00am until 4:00pm. We are located in the Argos Building, 2nd Floor (Above Argos Exchange).

*Sincerely,*

*Housing & Residential Education*
**University of South Florida**
4202 E. Fowler Ave, RAR 229
Tampa, FL 33620
Office: 813-974-0001   Fax: 813-974-5152

# EXHIBIT E[53]:

"Dear Daniel,

---

[52] Email sent by USF Housing at 1pm EST on 06/09/2023. (For the avoidance of doubt, "ESA" was not highlighted in the email, but is highlighted due to me running a keyword search).

[53] The letter was sent via a link only accessible by being logged into my student email account, so I copied and pasted it (in relevant part) as **Exhibit E**. The formatting of the letter may be a bit off, but I have done my best to restructure it as it was. The contents of it were not changed. All of the bolded lettering was not modified or added.

This letter is to notify you of the outcome of the SCED-University Conduct Board Formal Hearing held on November 21, 2023.

### Allegations

Student Conduct and Ethical Development received a report regarding an alleged incident that occurred on Thursday, October 5, 2023 in Pinnacle Hall at 6:30 PM. Specifically, Resident Daniel Frishberg has openly and repeatedly violated the ESA agreement within Pinnacle Hall.

### Findings

Using the preponderance of the evidence standard and the information presented during the formal hearing, the findings for the violation(s) of the USF Student Code of Conduct in this case are as follows:

- Residence Hall Policies -- Responsible
  Failure to abide by any policy or regulation governing University Housing (e.g. rental agreement, Resident Handbook).

- Failure to Comply -- Responsible
  Failure to comply with an official request or directive of a University Official acting within the scope of their assigned duties. Failure to identify oneself or produce USF identification upon request by a University Official.

**Rationale**

Based on the available information, it is more likely than not that the violation of the Student Code of Conduct occurred. The Housing and Residence Education policy says animals should not leave the area. While this can be interpreted differently, there were several instances where it was explained that the cat must remain inside the charged student's room. According to the relevant information and the charged student's narrative, it was confirmed that the cat was found on several occasions outside the charged student's living space, which caused unease among fellow community residents. The Resident Assistant verbally warned the student to keep the cat inside the charged student's room, to which the student disagreed. Based on the conversation with the Resident Assistant, the student was then invited to meet with the Residence Life Coordinator for an Informational Meeting due to not complying with the Resident Assistant's words. For the above reasons, the University Conduct Board finds the student responsible for the listed charges.

**Learning Outcomes**

The learning outcomes determined for this incident include:
1. The student will be able to acknowledge the housing policies while respecting the wishes of fellow housing community members.
2. The student will be able to improve conflict resolution skills.

**Sanctions**

The sanction(s) assigned to meet the determined learning outcomes include:

**Civility and Community Standards Workshop Part 1**

You must submit your $25 payment (cashier's check or money order) along with the completed section of the attached form to: University of South Florida, P.O. Box 864571, Orlando, FL 32886 or in one of the designated Cashier's Office Drop Boxes (see attached form). A money order can be obtained at Publix. If the form is not submitted, Student Conduct and Ethical Development will not receive credit for the payment and will not be able to consider the payment complete. After proof of payment is received, you will be contacted by Student Conduct and Ethical Development with information regarding available workshop dates and times. The payment must be submitted by December 15, 2023.

**Civility and Community Standards Workshop Part 2**
You must attend and complete the Civility and Community Standards Workshop facilitated by Student Conduct and Ethical Development by February 15, 2024. Once you have completed the Civility and Community Standards Workshop Part 1, you will be contacted by a Student Conduct and Ethical Development staff member to register for the first available workshop. You must attend the workshop on your assigned date, actively participate, and complete all workshop requirements successfully before this sanction will be considered complete.

**Civility and Community Standards Workshop Part 3**
You must submit one (1) of the reflection assignment options provided at the Civility and Community Standards Workshop seven (7) days after your assigned workshop date to Student Conduct and Ethical Development - studentconduct@usf.edu.

Failure to complete the sanction(s) by the date(s) indicated will result in an Administrative Hold being placed on your student record. This hold may affect your ability to register for courses, request academic transcripts, and receive a degree and diploma."

**EXHIBIT F[54]:**
"In the event you have not complied with the University directive and related

contractual obligations, the University will initiate the steps in the highlighted

section below [there was no highlighted section below] and appropriate referrals

with related sanctions may be imposed."

(Email from USF General Counsel at 12:13pm EST on November 27th, 2023, font

increased).

---

[54] Size of the text increased. This is an excerpt from the email.

**EXHIBIT G:** (excerpts of relevant sections of USF Policy 6-033[55]):

---

[55] I am not stating that their policy is legal or enforceable, but just that this is the policy. II(C) of the policy is contradicted by numerous policies that require Assistance animals to stay within the individual's room. Section 760 and HUD guidance is crystal clear about how Assistance animals are allowed within the common area of a building, and are allowed in the entire dwelling.



**POLICY**

| | |
|---|---|
| **Number:** | **6-033** |
| **Title:** | **Animals on Campus** |
| **Responsible Office:** | **Administrative Services** |

**Date of Origin:** 3-20-13   **Date Last Amended:** 11-30-18 (technical)   **Date Last Reviewed:** 12-12-19

---

### I.   PURPOSE & INTENT

This policy is designed to protect the health, safety, and welfare of the University of South Florida (USF) students, faculty, staff and the general public.

### II.   STATEMENT OF POLICY

**A.** All animals brought on to any USF campus property must be under physical restraint. The animals must be under the complete control of and physically restrained by the owner/responsible party who is also responsible for ensuring the animal is safe and healthy.

**B.** Pet animals are to remain only on public places  and are not permitted in University patio areas adjacent to swim facilities, in or on the spectator areas or recreational fields or facilities, such as racquetball and tennis courts, in dining or residence halls, inside USF buildings, or at special events, except as provided in Section V, Exceptions.

**C.** USF will follow all federal and state laws with regard to accommodations.

### III.   DEFINTION OF TERMS

**A. Approved Animal:** The Office of Students with Disabilities Services (SDS) (to be known as Student Accessibility Services (SAS) effective July 1, 2020) or Human Resources has determined the person with a disability has established their eligibility for reasonable accommodation and the animal's qualifications as a "Service or Assistance" Animal. The animal is an *Approved Accommodation* for the Eligible Person under the applicable laws.

**B. Assistance Animals:** As defined by The Fair Housing Act, *Assistance Animals* are animals that work, provide assistance, or perform tasks for the benefit of a person with a disability, or animals that provide emotional support that alleviates one or more identified symptoms or effects of a person's disability. Assistance Animals perform many disability-related functions, including but not limited to guiding individuals who are blind or have low vision, alerting individuals who are deaf or hard of hearing to sounds, providing minimal protection or rescue assistance, pulling a wheelchair, fetching items, alerting persons to impending seizures, or providing emotional support to persons with disabilities who have a disability-related need for such support. Some, but not all, animals that assist persons with disabilities are professionally trained. Other assistance animals are trained by the owners themselves and, in some cases, no special training is required. The question is whether or not the animal performs the assistance or provides the benefit needed as a reasonable accommodation by the person with the disability. Assistance Animals are not considered Service Animals and are not permitted in public spaces, classroom or work places.

**C. Eligible Person:** A person with a disability who because of a functional limitation of his/her disabling condition requires a Service Animal to perform a task or function.

**D. Emotional Support Animal:** An animal whose sole function is to provide *emotional support. Emotional support animals* do not qualify as service animals under ADAAA and are not permitted on campus except to the extent the animals are considered Assistance Animals under the FHA as provided in Section (B) above.

**V.   EXCEPTIONS**

Types of Animals with Exceptions: The following animals and specific instances are an exception to [II. B.] above as they are permitted on USF properties so long as they are under the complete control of and physically restrained by the Responsible Party and/or maintained as provided below:

**A. Assistance Animals** are permitted on campus with approval from the Office of Housing and Residential Education and must be contained within the private residential area (room, suite, and/or apartment) of at all times except when transported outside the private residential area in an animal carrier or controlled by leash or harness. Assistance Animals are not permitted in public spaces, classrooms, or work places unless they also meet the definition of Service Animal as provided by law and as permitted as part of an accommodation as provided in this Policy.

**EXHIBIT H**[56]:

---

[56] Email from USF Housing Department at 3:08pm EST on 02/14/2023.

Dear Daniel,

Thank you for submitting an ADA/Medical Accommodation Request for an Emotional Support Animal (ESA).

**In order to be approved for an ESA you must meet the following criteria:**

- Have an ongoing relationship with a medical professional- for at least 90-days- who is able to prescribe ESAs
- Have the same medical professional complete the attached questionnaire and attach their professional business card to page #2
- Turn in required veterinary records (current vaccinations)
- Submit your Emergency Contact Information

**If your ESA is approved there is a 14-day grace period where you must complete the following steps before your animal is allowed on-campus:**

- Meet with your RLC and Assignments Coordinator to go over and agree to the Animals On-Campus Policy
- Talk to your roommates (if applicable) to make them aware of the animal entering their community

Please have the questionnaire, emergency contact information form, and veterinary records submitted **within 2 weeks of the receipt of this email.**

If you do not yet have an ESA, please let us know. You will need to resubmit a request once you have the ESA.

**EXHIBIT I**: (the "required questionnaire" in its entirety. For the avoidance of doubt, it has not been modified in any way, and no emphasis was added):

**EMOTIONAL SUPPORT ANIMAL**
**FAIR HOUSING ACT INTERACTIVE PROCESS QUESTIONNAIRE**

From: _____
            Student Name and University ID #

To: _____
            Healthcare Provider Name

<div style="border: 1px solid red;">

**The remainder of this form is to be filled out in its entirety by the health care professional responsible for the above patient. The patient is not to fill out the below section.**

</div>

Please answer and return the following questionnaire to your patient. The questionnaire format is a guide and we would appreciate a response to every question. We need your complete medical opinion, so please feel free to include a more detailed narrative response to any and all questions if needed to answer more fully. Thank you for your anticipated cooperation.

Name of Patient for whom you are completing this questionnaire: _____

Date Patient Started under your care: _____

1. Does this resident have a disability – i.e, a physical or mental impairment that substantially limits one or more major life activities?

                                    Yes            No

    a. If yes, please state the type of impairment and what major life activities are the subject of the disability (i.e., the current impact and functional limitations resulting from the disability).

    _____
    _____
    _____

2. Has an Emotional Support Animal been prescribed by you to this resident for treatment purposes?

                                    Yes            No

    a. If yes, does the person have a *disability-related need* for this animal? (In other words, does the animal provide some type of disability-related assistance or emotional support that alleviates or mitigates one of more symptoms or effects associated with the person's existing disability, to help the person use and enjoy University housing?)

                                    Yes            No

Updated: February 11, 2020

    b. If yes to 2(a), please describe the relation between the requested accommodation (the animal) and the disability (i.e., how the animal will alleviate or mitigate a symptom(s) or effect(s) associated with the person's disability or otherwise assist the resident in using and enjoying University housing?

    _____
    _____
    _____

_____
_____
_____

By signing below, you as the Healthcare Provider are confirming that in prescribing this animal for the resident you have (1) considered the impact on the resident if the animal's behavior or reaction to university housing results in the removal or loss of the animal to the resident; (2) discussed the risk to the animal and/or resident in cases of emergency or adverse reaction to the setting  and (3) determined with the resident understands, accepts and can manage those risks  Please note that the University Policy (link to Policy) outlines that in the event of emergency the animal is not the responsibility of the university and the animal will be considered abandoned if the resident is not present or able to care for the animal.

Please attach a
professional business
card or the medical
professional completing
this questionnaire

_____
Signature

_____
Title

_____
Date

Printed Name and Address:

_____

_____

_____

**Exhibit C** (*Plaintiff's Emergency Motion For An Injunction, Or In The Alternative, A Temporary Restraining Order*):

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

_____

|  |  |
|---|---|
| Daniel A. Frishberg, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 8:24-cv-00022-TPB-NHA |
|  | ) |
| University Of South Florida's Board Of Trustees, | ) |
| HRSE-Capstone Tampa, LLC, | ) |
| Defendants[57]. | ) |

_____

## PLAINTIFF'S EMERGENCY MOTION FOR A INJUNCTION[58], OR IN THE ALTERNATIVE A TEMPORARY INJUNCTION/RESTRAINING ORDER

Daniel A. Frishberg (a tenant at the University of South Florida's dorms), the Plaintiff ("Mr. Frishberg", "I"[59], "Plaintiff") respectfully files this motion (the "Motion") for a preliminary injunction to enjoin the University of South Florida Board of Trustee ("USF"), HRSE-Capstone Tampa, LLC ("Capstone") and all associated parties from taking further retaliatory action against the Plaintiff, including via the USF "disciplinary" process.

---

[57] All of the Defendants are represented by the same counsel. A summons has not yet been issued since there is a pending *in forma pauperis* motion pending, but the Defendants were served with all filings in this case on the same day that they were docketed. I will serve the Defendants with this Motion immediately after I file it (even before it is docketed) via the *pro se* portal.

[58] Potentially a preliminary injunction. Or restraining order/temporary restraining order. I am unsure of what the proper term for the requested relief should be, but it is to prevent the Defendants from taking any further action (including disciplinary action), such as preventing me from registering for classes, accessing my room, etc, as well as reversing the actions they took.

[59] And other versions of the first person.

### Local Rule 3.01[60](e) Statement

This Motion is being filed as an Emergency Motion due to the Defendants recently[61] instituting an academic hold (preventing Mr. Frishberg from registering for even online classes) on Mr. Frishberg's academic account. Immediate judicial relief is needed to prevent further irreparable harm. Classes commence **today**, January 8th, 2024. The deadline to register for classes is Friday, January 12th[62]. Relief is being requested that would require the Defendants to undo their eviction (which stemmed from discriminatory actions, i.e attempting to coerce the Plaintiff into getting rid of his Assistance Animal, among other things), thereby allowing Mr. Frishberg to attend in person classes while this case is pending, or at a bare minimum allow Mr. Frishberg to register for online[63] classes. Preventing Mr. Frishberg from enrolling in and attending (online) classes constitutes immediate, irreparable harm (assuming there is any availability, which there is not[64]). **No amount of money** can make up for missed educational

---

[60] I have done my best to comply with all local rules, but I was unable to get the amount of pages below 25 without sacrificing eye appeal (such as reducing the font size). It is approximately half a page over, and that is because of a spacing issue with the exhibits. This Court can interpret this statement as a request to increase the page limit, or simply use its judicial discretion to overlook this small violation.

[61] Today is the first business day that this hold has shown up on my account, so this Emergency Motion is being filed as soon as possible.

[62] Scroll slightly down this page, the deadlines are under "Spring 2024", and specifically "January". https://www.usf.edu/registrar/calendars/#spring2024

[63] As is explained hereinafter, online classes (basically teaching myself, since it is instructional videos for the most part) do not work well for me, and my psychiatrist advised me to take only in person classes.

[64] Mr. Frishberg contacted his academic advisor and explained the situation, and asked if there are any alternatives including online only classes which would not cause delays in his education. Mr. Frishberg's academic advisor replied (in relevant part) with: "Unfortunately, what you can see in OASIS [an online portal where you register for classes, among other things] is what is available right now. Online courses get full immediately! Therefore, I advise you [to] keep an eye our [sic] should someone drop a spot. Currently there are no spots in any of the online courses". Hoping that a spot opens up, **and** it is for a class that Mr. Frishberg needs to take, **and** that Mr. Frishberg is able to sign up for it before someone else does, is not a plan. Hoping is not a viable plan. Even if Mr. Frishberg obtained a spot in an online class, it is both only a temporary fix, significantly disadvantageous to Mr. Frishberg, and puts Mr. Frishberg at an even bigger disadvantage compared to his peers (who are attending in person classes).

content and time, and it would leave me at a severe disadvantage compared to my peers. I need

an injunction as soon as possible, but no later[65] than Friday the 12th of January, 2024. .

## State Court Case

I incorporate by reference as if fully set forth herein my previous statements on the State

Court Case.

## REQUEST FOR *PRO SE* RELIEF

I incorporate by reference as if fully set forth herein my previously requested *Pro Se*

relief.

## Preliminary Statement

The retaliation and discrimination continues, and this Motion for an Injunction seeks to

enjoin the Defendants from their discriminatory actions. Mr. Frishberg applied for transfers to

other universities, and will be unable to do so with the academic hold in place (since he needs

more credits to be able to transfer, and he is unable to obtain the necessary credits without taking

the needed classes). This academic hold is retaliatory against the Plaintiff, and prevents him from

registering for, and attending classes, even remote ones. Every single day of class that the

Plaintiff misses puts him further, and further behind. Mr. Frishberg's case is extremely strong, to

a point where the Defendants would have an insurmountable burden to prove that their

discriminatory actions, which they put in writing, bolded, underlined, and made bright red (*See*

**Exhibit 4**), are *somehow* not discriminatory.

---

[65] A short, temporary injunction/restraining order to allow me to appeal the denial of the longer term
injunction/restraining order is also requested if needed.

In relevant part (unmodified[66]): "In order to review your request, please provide current documentation (**within the past 90 days/ 3 months**) showing **diagnosis, date of diagnosis, and reasonable accommodations requested from your medical care professional**.  This letter needs to be on your **medical care professional's letterhead**.  You will need to provide this documentation to the housing assignments office within **5 business days of receipt of this email**, in order for us to process your request. Failure to provide this documentation by the stated date will result in a denial of this request. Please make sure that you reference your U# and ticket number on every sheet of documentation.''

The Defendants refused to accommodate Mr. Frishberg's request for an Emotional Support Animal (after they already approved it previously) when they instructed Mr. Frishberg to "get rid off" his ESA. When Mr. Frishberg refused; he was evicted from on-campus housing.

This Motion is not meant to fully argue the merits of the case, nor is it meant to do anything other than stopping the discrimination and retaliation by obtaining a preliminary injunction, or in the alternative a temporary injunction. Mr. Frishberg faces significant academic and emotional[67] harm, retaliation, and potentially expulsion due to his refusal to be coerced into waiving his rights. An injunction should be **<u>GRANTED</u>** ordering the Defendants to stop any further retaliation and irreparable harm[68] to the Plaintiff. The merits of the case will be argued elsewhere, but I have provided some arguments to support my request for an injunction. I believe that they clearly show that the actions the Defendants engaged in are discriminatory, and illegal, and that I have a very high chance of success. This Court should take immediate action to prevent any further harm from befalling the Plaintiff due to retaliatory acts of the Defendants. There is insufficient time to litigate this whole case before further irreparable harm occurs, since

---

[66] No emphasis, or color changes were added. Formatting may be slightly different, but no material changes occurred.

[67] This an extremely stressing and anxiety inducing event for me. Among other things, I have had a hard time sleeping for the past month.

[68] By excluding me from on campus housing, the Defendants are causing me imminent, permanent, irreparable harm. Every day I miss of on-campus education puts me further and further behind my peers. I already have a hard time keeping up with them due to learning disabilities, such as ADHD.

classes started on January 8th, 2024. Which is why injunctive relief should be granted to preserve the pre-discrimination status quo.

Some undisputed[69] facts:

1. Mr. Frishberg was determined to have a disability (by USF), and, as an accommodation, approved to have a Emotional Support Animal ("ESA") live with him in the dwelling.

2. The issue currently at hand arose from the Defendants instructing Mr. Frishberg to not allow his assistance animal outside of his room.

3. Defendants would not make any accommodation to their policies about assistance animals being in common areas even though Mr. Frishberg requested that they make one multiple times.

4. USF initiated disciplinary proceedings against Mr. Frishberg, and determined that he was "responsible" for violating rules/policies by being in the common area with his ESA.

5. Defendants issued "sanctions" against Mr. Frishberg, including paying a fee and attending a workshop.

6. Defendants stated that "**[f]ailure to complete the sanction(s) by the date(s) indicated will result in an Administrative Hold being placed on your student record**. This hold may affect your **ability to register for courses, request academic transcripts**, and receive a degree and diploma." (emphasis added).

---

[69] For the avoidance of doubt, the Plaintiff does not agree that the "disciplinary proceedings" are valid, or correct in their assessment, nor does he waive any rights, or agree that any of the Defendants' claims are valid. Some of the undisputed facts are that the Defendants made statements, or performed certain actions.

I am a *pro se* individual, so I request that This Court take that into consideration when construing this Motion, and the requests within it. I do not have the knowledge to fully lay out the legal tests, or case law that a lawyer would.

## BACKGROUND[70]

The Plaintiff was discriminated against, and retaliated against. The retaliation led to his (illegal) eviction. The eviction stemmed from a dispute over policies of USF which the Plaintiff alleges are illegal, discriminatory, and in conflict with the Federal Fair Housing Act (the "FFHA"), the Florida State Fair Housing Act (Section 760, the "FHA"), and other (related/equivalent) laws.

The issue currently at hand arose from the Defendants ordering Mr. Frishberg to not allow his assistance animal outside of his room. Mr. Frishberg refused, as the Fair Housing Act, Federal Fair Housing Act, and various other laws/acts (and case law precedent) allow Assistance Animals to be in *all* common areas. Mr. Frishberg is a tenant of USF, and has a lease for a room extending from August 2023, to May 2024. The Defendants then took retaliatory action including "disciplinary sanction", purporting to have terminated (*See* **Exhibit B**[71]) Mr. Frishberg's rental agreement, and have prevented Mr. Frishberg from accessing his room by both disabling his key card that allows him access to the building, and changing the locks on his room (as well as allegedly removing his property from his room). This constitutes irreparable harm, as Mr. Frishberg is unable to attend university classes in person due to lack of any housing near campus, and injunction will fix this, and it will not materially prejudice the Defendants. It is

---

[70] It is my understanding that a background section is customary for all filings to basically restate the case thus far, if it is not, feel free to skip it.
[71] Exhibits including letters (like "A", "B", etc) refer to Exhibits filed in the *Plaintiff's Complaint*.

critical for the Plaintiff's academic success to attend in person classes. The Plaintiff's psychiatrist said[72] that living in on campus housing, and attending in person classes is the best way for him to learn.

The Defendants have previously stated that "[f]ailure to complete your check-out by November 29, 2023 will result in USF implementing our Abandoned Property protocol which will result in additional charges being to [sic] applied to your OASIS [portal where tuition and other payments are made] account". As of now, it seems that the Defendants have applied numerous charges to the Plaintiff's OASIS account. Plaintiff requests that the Defendants be enjoined from attempting to collect any and all additional/punitive fees (including the ones already added to Plaintiff's account) until this case is resolved.

## **ARGUMENT**

The facts in this case are quite simple, and I believe merit a summary judgment in my favor, but that is a matter for another motion. The Defendants engaged in what constitutes unlawful, discriminatory conduct under numerous laws/acts.

The Defendants are covered under both the Federal Fair Housing Act (the "FFHA") and the Florida Fair Housing Act (the "FHA"). The Florida Fair Housing Act contains statutory provisions that are substantively identical to the Federal Fair Housing Act, and the facts and circumstances that comprise the federal and state fair housing claims are the same. *See* 28 U.S.C. § 1367(a) (permitting "supplemental jurisdiction over all other claims that are so related to

---

[72] The Plaintiff will file a supplemental exhibit with a Dr's note once he is able to obtain it. Mr. Frishberg's Dr. is currently still on vacation.

claims in the action within such original jurisdiction that they form part of the same case or controversy").

Courts have consistently ruled that University Housing is covered under the Federal Fair Housing Act (and local equivalents). *See* generally *United States v. University of Nebraska at Kearney* (D. Neb.)[73]. *See also* generally *United States v. Notre Dame de Namur University* (N.D. Cal.)[74].

The 11th Circuit stated that the "FHA protects renters not only from eviction, but also from discriminatory actions that would lead to eviction but for an intervening cause" (*See Hunt v. Aimco Properties*, LP, 814 F. 3d 1213 - Court of Appeals, 11th Circuit 2016). This Motion is not the proper place for me to fully lay out my arguments, which are made in my *Complaint*, and are fully incorporated by reference for all relevant parts herein.

This injunction is not seeking to make the Defendants simply "obey the law", but it is seeking to prevent further discrimination, and harm to the Plaintiff: "there is a difference between trying to enjoin a defendant to "obey the law" and trying to enjoin the defendant to stop discriminating against the plaintiff, which is a permissible form of relief. *See Hous. Opportunities Project for Excellence, Inc. v. Wedgewood Condo. Ass'n, Inc.,* No. 12-60172-CIV, 2012 WL 4193969, at *10 (S.D. Fla. Sept. 19, 2012) (denying motion to dismiss injunctive relief within two FHA claims that sought to "enjoin the Defendants from discriminating against resident Plaintiffs based upon familial status and from retaliating against Plaintiffs for their

---

[73]Order approving the Joint Motion to enter a consent order.  https://www.justice.gov/d9/unksettle_0.pdf
[74] DOJ Overview of the case.
https://www.justice.gov/crt/case/united-states-v-notre-dame-de-namur-university-nd-cal-0

participation in this suit."); *see also* § 3613(c)(1)." *See* S*iler v. ABBOTT HOUSE INC*., Dist. Court, SD Florida 2017. Every day of attending in person classes at USF that I miss, constitutes irreparable harm to me, not only academically, but socially[75] also. I was evicted from the on campus housing because I refused to waive my rights, while I was engaging in a protected activity. While this injunction will not undo all of the harm done to me, it will prevent them from taking further retaliatory action, and prevent them from inflicting even more irreparable harm. This Court may grant relief under 42 U.S.C. § 3613(c)(1).

1. <u>**Chances Of Success On The Merits**</u>

The chances of a success on the merits of the case are ***extremely*** high. The only way I will not succeed, is if I make a mistake, such as a procedural one. This is a clear cut case of University administrators overstepping. There have been numerous similar cases in the past decade or so, and they all ended with the University losing. *See* generally *United States v. University of Nebraska at Kearney* (D. Neb.)[76]. *See also* generally *United States v. Notre Dame de Namur University* (N.D. Cal.)[77].


A party moving for preliminary injunctive relief need not demonstrate a likelihood of *absolute* success on the merits. Instead, he must only show that his chances to succeed on his claims are "better than negligible." *Cooper v. Salazar,* 196 F.3d 809, 813 (7th Cir. 1999). This is a low threshold, which I have more than overcome. My chances of success on the merits are extremely high.

---

[75] Part of attending college is the social aspect. The social aspect is completely removed when I am forced to take online classes.
[76] Order approving the Joint Motion to enter a consent order.  https://www.justice.gov/d9/unksettle_0.pdf
[77] DOJ Overview of the case.
https://www.justice.gov/crt/case/united-states-v-notre-dame-de-namur-university-nd-cal-0

The moving party must also demonstrate that he has no adequate remedy at law should the preliminary injunction not issue. There is no adequate remedy, both at law, and one that I can implement myself, other than an injunction, or similar court order.

My right to have my ESA outside of my room, and in "**public and common use areas**" (emphasis added) is clearly established in federal law, state law, and (indirectly) in Supreme Court precedent (*See City of Edmonds v. Oxford House, Inc.*, 514 US 725 - Supreme Court 1995: "**Discrimination covered by the FHA includes "a refusal to make reasonable accommodations in rules, policies**, practices, or services, when such accommodations **_may_** be necessary to afford [handicapped] person[s] **equal opportunity to use and enjoy a <u>dwelling</u>**." § 3604(f)(3)(B)." (emphasis added, brackets not added/are there originally). The Office Of Fair Housing And Equal Opportunity of the Department of Housing and Urban Development ("<u>HUD</u>")  issued notice FHEO-2020-01[78] (the "<u>HUD Notice</u>") which **_unambiguously_** stated that assistance animals (like Emotional Support Animals) are able to be in housing, "**including public and common use areas**" (emphasis added). The HUD notice also restates what the law makes clear, that "[a]ssistance animals are not pets".

In the 2022-2023 academic year, I stayed in the same dorm, and the exact same dorm room as in the 2023-2024 academic year. Not a single person on the floor had an issue with my ESA being in the common area. In fact, people wanted me to let him into the common area **more**. This case as a whole bears similarities in *some*[79] regards to *Whitaker v. Kenosha Unified*

---

[78] https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf

[79] This is not an instance of transgender discrimination, but similarities can be drawn, such as a academic institution enforcing illegal, discriminatory rules and policies, while causing significant harm to the target of the discrimination.

*School District,* 858 F. 3d 1034 - Court of Appeals, 7th Circuit 2017. In *Whitaker*, none of the people the school district was purporting to protect (the students) had any issues with Whitaker using the boys bathroom. Just as Whitaker used the boys bathroom for over six months before a staff member filed a report, I had my ESA in the common area for almost the entirety of the 2022-2023 academic year, and almost nobody[80] minded. This year, only a small minority of the students in the dorm had issues with the ESA being in the common area.

The Defendants have made numerous claims about the validity of their actions before a lawsuit was brought in the Small Claims Court. They are wrong, since any purported contract/agreement (assuming it is valid), and university policies are overridden by state and federal law, which ban discrimination based on disability. It should be noted that the Defendants have not disputed any of my claims, the facts at hand or addressed any of the allegations on their merits, instead they simply argued it should be dismissed on procedural grounds (as well as stalled for time). While campus rules/policies are important, they are largely irrelevant when state or federal (in this case both) laws supersede them. A public college or public university (or for that matter almost any entity) cannot create rules/policies that allow them to ignore the law.

The FFHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" its provisions. § 3617. The Defendants having numerous staff members show up outside of my dorm room door threatening me with having "the police drag you out",

---

[80] A couple of RA's, whose job it is to enforce the university policies halfheartedly told me to put the ESA back in my room, before leaving to continue their rounds of the dorm. No other student had an issue with my ESA being in the common area.

and saying that "the USF police department will remove you by dragging you out" if I did not move out by November 21st, 2023 (the incident occurred on November 17th, 2023) is s retaliation, intimidation and "threaten[ing]". The Defendants' actions, including ones they intend to take (described hereinafter) constitute retaliation under *Fernandez v. Orlando Housing Authority,* No. 615CV1341ORL40DAB, 2016 WL 2784989 (M.D. Fla. May 13, 2016). While the actions are not a firebombing or cross burning, they seek to punish me, and exclude me from the University of South Florida because I engaged in protected action. I have suffered significant harm already, which will de facto exclude me from being on campus physically since I have nowhere to live (within hundreds of miles of campus) due to the less than ideal housing supply near campus, and the Defendants seek to do even more harm. Locking me out of the dorm, and de facto evicting me, leaves me no choice but to not only "have the effect of causing a protected person to abandon the exercise of his or her housing rights", but my housing[81] as well.

Just like in *Whitaker*, the main problem stemmed from policies which were clearly discriminatory. The "requirements" set by the Defendants to be approved for an ESA are clearly illegal, such as their blatant disregard for Florida Statutes Section 760.23(3), which clearly and unambiguously states that "**a housing provider may not require the use of a specific form** [] or deny a request solely because a person did not follow the housing provider's routine method" (emphasis added), as well as clearly laying out limitations, such as: "Notwithstanding the authority to request information under subsection (2), a housing provider **may not request information that discloses the diagnosis or severity of a person's disability** or any medical records relating to the disability". (emphasis added).

---

[81] For the avoidance of doubt, I have not abandoned the housing by choice, but I was left with no choice since the locks were changed.

The Defendants do not, and cannot dispute that they made several requests/demands, which are illegal, and discriminatory. Nor can they dispute that they required people with ESAs to sign a separate contract, and hold a separate meeting with a USF Housing Department staff member.

2. **Balance Of The Harms Test**

To put it mildly, I do not do well with online learning, and my psychiatrist has stated as much in the past (he recommended that I live in the on campus housing, and avoid any online or hybrid classes). Attending in person classes is the only way I can succeed in college.

The Balance Of The Harms test weighs overwhelmingly in Mr. Frishberg's favor. Mr. Frishberg will suffer ***immediate, irreparable*** harm absent an injunction. USF would suffer **no harm** if the injunction is granted, it would simply prevent them from further discriminating against Mr. Frishberg. An injunction would simply preserve the pre-discrimination *status quo*, which is me being able to register for classes, drop classes, attend classes (both online and in person), live in the dorm with my Assistance Animal, and transfer out of USF (if I choose to, and if I am accepted). USF will suffer no harm by being required to allow me to stay in my room in on campus housing, as I will be paying rent, etc. USF also will not suffer any harm by allowing me to register for classes, including (in the alternative) online ones.

Harm is considered irreparable if it "cannot be prevented or fully rectified by the final judgment after trial." *Girl Scouts of Manitou Council, Inc.,* 549 F.3d at 1089 (quoting *Roland*

*Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir. 1984)) (internal quotation marks omitted). At a bare minimum, this Court should grant a temporary injunction/temporary restraining order to allow Mr. Frishberg to obtain a longer/more permanent injunction before he suffers *even* more harm. Preventing Mr. Frishberg from enrolling in and attending (online) classes constitutes immediate, irreparable harm (assuming there is any availability, which there is not[82]). **No amount of money** can make up for missed educational content and time, and it would leave me at a severe disadvantage compared to my peers.

Any "[a]dministrative [h]old being placed on [the Plaintiffs] student record" constitutes immediate and irreparable harm, and the "hold may affect [Plaintiffs] **ability to register for courses, request academic transcripts**, and receive a degree and diploma." (emphasis added). Mr. Frishberg has applied for transfers to numerous other universities (largely to get away from the retaliation and discrimination), and will be unable to transfer without transcripts.

It seems that the Defendants, at a minimum, attempted to institute an academic hold on Mr. Frishberg's academic account (*See* **Exhibit 3**), since his OASIS (portal where you register for classes, and pay charges, etc) account shows an academic hold, but also says that he is able to register for classes, and does not have any hold.

---

[82] Mr. Frishberg contacted his academic advisor and explained the situation, and asked if there are any alternatives including online only classes which would not cause delays in his education. Mr. Frishberg's academic advisor replied (in relevant part) with: "Unfortunately, what you can see in OASIS [an online portal where you register for classes, among other things] is what is available right now. Online courses get full immediately! Therefore, I advise you [to] keep an eye our [sic] should someone drop a spot. Currently there are no spots in any of the online courses". Hoping that a spot opens up, *and* it is for a class that Mr. Frishberg needs to take, *and* that Mr. Frishberg is able to sign up for it before someone else does, is not a plan. Hoping is not a viable plan. Even if Mr. Frishberg obtained a spot in an online class, it is both only a temporary fix, significantly disadvantageous to Mr. Frishberg, and puts Mr. Frishberg at an even bigger disadvantage compared to his peers (who are attending in person classes).

At this point in the school year, it is effectively impossible to find housing even remotely similar to the one that Defendants purported to kick Mr. Frishberg out of. The Defendants cannot be allowed to use their overwhelming advantage in power (by attempting to charge Mr. Frishberg additional fees, and threatening academic consequences such as expulsion, as well as continuing to prevent Mr. Frishberg from living on campus in his room, etc) to attempt to dissuade Mr. Frishberg from seeking relief from their illegal, and discriminatory actions.

The Plaintiff understands that the fees charged[83] (as retaliation) to the Plaintiffs OASIS account may seem *de minimis* to The Court, but this is not a small amount of money to Mr. Frishberg, and he should not[84] be forced to pay them while the case is pending, as it is an undue burden when combined with the expenses Mr. Frishberg has already had to endure due to the actions of the Defendant.

**3.** <u>**Public Interest**</u>

It is in the public interest to issue this injunction, as it will uphold the law, prevent discrimination, and act as a check on the executive[85] branch of the state government.

---

[83] It is also unclear why the Plaintiffs charged me for 5 keys, when I only took one. If they need spares, they should pay for them themselves. The Defendants also purported to charge me $245 for "abandoned property".

[84] For the avoidance of doubt, I am only requesting that the Court enjoin the Defendants from collecting on any fees they purported to charge in relation to the dispute over the ESA. For example, the door lock changing fee. I will pay the tuition/other related fees, and am only seeking relief over the fees stemming from the discrimination.

[85] The Governor of Florida appointed 5 of the members of the board of Trustees.

42 U.S.C. § 12101[86] also supports the issuance of the injunction, as the "Nation's proper goals" include full inclusion, and preventing discrimination:"The Congress finds that-...(7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals".

## **Requested Relief**

1. An injunction enjoining the Defendants[87], and/or anyone else proceeding with academic sanctions, issuing or enforcing holds on Mr. Frishberg's academic records, or preventing Mr. Frishberg from enrolling in classes (including remote ones), dropping classes (including remote ones) and transferring out of USF in any way, shape or form.

2. An injunction enjoining the Defendants, and/or anyone else associated with them from harassing, intimidating, or retaliating (including monetarily via "fees") against Mr. Frishberg in any and all ways, including (but not limited to) through the so-called "Disciplinary Process", or academically.

3. An injunction enjoining the Defendants from doing anything with the Plaintiff's property which they purportedly removed from his room, other than returning it to the room/preserving the property, or requiring him to pick up said property until the issue is resolved[88]. The Plaintiff would suffer irreparable harm if forced to both travel[89] to the university, and pick up his stuff, as he will be forced to throw away/otherwise dispose of

---

[86]
https://casetext.com/statute/united-states-code/title-42-the-public-health-and-welfare/chapter-126
-equal-opportunity-for-individuals-with-disabilities/section-12101-findings-and-purpose
[87] This includes the University of South Florida as a whole.
[88] The Defendants should also provide a reasonable amount of time (at least 3 days notice) for the Plaintiff to pick up his property when the injunction is lifted, or the case is otherwise resolved.
[89] The irreparable harm from traveling would be missing at a minimum the first few days of class, the majority of the irreparable harm will come from being forced to dispose of most of his property.

a large portion of it. The Defendants gave the Plaintiff until noon on January 8th, 2024[90]

to pick up his belongings. The Plaintiff is unable to pick it up, since flights out of Tampa

are extremely expensive for the 8th (over $800[91]).

4. An injunction enjoining the Defendants from preventing the Plaintiff from living in the

exact same on campus housing (including the specific room[92]) that he was in before this

discrimination started, preventing the Plaintiff from having an Assistance Animal, and

being able to use the common areas (including with his Assistance Animal).

### **Conclusion**

The Defendants' main advantage is the overwhelming amount of power that they hold

over the Plaintiff, and time, as a portion of the non-monetary relief will be moot *if* Mr. Frishberg

transfers to another university for the 2024-2025 academic year. Mr. Frishberg believes that this

case is a clear cut one, and supports his requests strongly. ***Any*** delay will significantly harm the

Plaintiff, due to the forgoing reasons. An injunction will nullify some of the power aspect (such

as preventing further discrimination and retaliation), while preventing significant, imminent

irreparable harm to the Plaintiff. For the aforementioned reasons, this Court should **GRANT** the

Motion, and issue the injunction.

---

[90] I am in contact with the Defendants about storage of the property. They said that they could give me an estimate for the costs of storing it, but I have not heard back as of close of business on Friday 01/05/2024
[91] I am, for lack of a better word, broke, and my family as a whole is in an extremely tight financial situation. My mother is on disability after an extremely serious car accident (and unable to work), and my father has no income due to the war in Ukraine (he lives and works in Kyiv, Ukraine). $800 is a lot of money, and that does not include high fees for checked bags.
[92] Mr. Frishberg had a single room, for a variety of reasons including (but not limited to) previous bad experiences with roommates which included one of said previous roommates physically attacking Mr. Frishberg. Some of the reasons also include his disability, and Mr. Frishberg requested, and was approved for a single room as an accommodation.

Respectfully Signed,

Daniel A. Frishberg. *Pro Se*.

/s/*Daniel A. Frishberg*

Santa Clara County, California

January, 8th 2024

*[Rest of the page is intentionally left blank.]*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court by using the online *pro se* portal. A copy of the foregoing was also immediately served via electronic email upon the Defendants.


Respectfully Signed,

Daniel A. Frishberg. *Pro Se*.

/s/*Daniel A. Frishberg*

Santa Clara County, California

*[Rest of the page is intentionally left blank.]*

**INJUNCTION EXHIBITS:**

**EXHIBIT 1**[93]:

"Dear Daniel,

This letter is to notify you of the outcome of the SCED-University Conduct Board Formal Hearing held on November 21, 2023.

<div align="center">

**Allegations**
</div>

Student Conduct and Ethical Development received a report regarding an alleged incident that occurred on Thursday, October 5, 2023 in Pinnacle Hall at 6:30 PM. Specifically, Resident Daniel Frishberg has openly and repeatedly violated the ESA agreement within Pinnacle Hall.

<div align="center">

**Findings**
</div>

Using the preponderance of the evidence standard and the information presented during the formal hearing, the findings for the violation(s) of the USF Student Code of Conduct in this case are as follows:

- Residence Hall Policies -- Responsible
  Failure to abide by any policy or regulation governing University Housing (e.g. rental agreement, Resident Handbook).

- Failure to Comply -- Responsible
  Failure to comply with an official request or directive of a University Official acting within the scope of their assigned duties. Failure to identify oneself or produce USF identification upon request by a University Official.

**Rationale**

Based on the available information, it is more likely than not that the violation of the Student Code of Conduct occurred. The Housing and Residence Education policy says animals should not leave the area. While this can be interpreted differently, there were several instances where it was explained that the cat must remain inside the charged student's room. According to the relevant information and the charged student's narrative, it was confirmed that the cat was found on several occasions outside the charged student's living space, which caused unease among fellow community residents. The Resident Assistant verbally warned the student to keep the cat inside the charged student's room, to which the student disagreed. Based on the conversation with the Resident Assistant, the student was then invited to meet with the Residence Life Coordinator for an Informational Meeting due to not complying with the Resident Assistant's words. For the above reasons, the University Conduct Board finds the student responsible for the listed charges.

---

[93] The letter was sent via a link only accessible by being logged into my student email account, so I copied and pasted it (in relevant part) as **Injunction Exhibit 1**. The Exhibits in the *Plaintiff's Complaint* (ECF Docket No. 1) are incorporated by reference in the exhibits section. The formatting of the letter may be a bit off, but I have done my best to restructure it as it was. The contents of it were not changed. All of the bolded lettering was not modified or added. (the "Sanctions Letter", sent November 21st, 2023, approximately two hours after the disciplinary hearing ended).

**Learning Outcomes**
The learning outcomes determined for this incident include:
1. The student will be able to acknowledge the housing policies while respecting the wishes of fellow housing community members.
2. The student will be able to improve conflict resolution skills.

**Sanctions**
The sanction(s) assigned to meet the determined learning outcomes include:

**Civility and Community Standards Workshop Part 1**
You must submit your $25 payment (cashier's check or money order) along with the completed section of the attached form to: University of South Florida, P.O. Box 864571, Orlando, FL 32886 or in one of the designated Cashier's Office Drop Boxes (see attached form). A money order can be obtained at Publix. If the form is not submitted, Student Conduct and Ethical Development will not receive credit for the payment and will not be able to consider the payment complete. After proof of payment is received, you will be contacted by Student Conduct and Ethical Development with information regarding available workshop dates and times. The payment must be submitted by December 15, 2023.

**Civility and Community Standards Workshop Part 2**
You must attend and complete the Civility and Community Standards Workshop facilitated by Student Conduct and Ethical Development by February 15, 2024. Once you have completed the Civility and Community Standards Workshop Part 1, you will be contacted by a Student Conduct and Ethical Development staff member to register for the first available workshop. You must attend the workshop on your assigned date, actively participate, and complete all workshop requirements successfully before this sanction will be considered complete.

**Civility and Community Standards Workshop Part 3**
You must submit one (1) of the reflection assignment options provided at the Civility and Community Standards Workshop seven (7) days after your assigned workshop date to Student Conduct and Ethical Development - studentconduct@usf.edu.

Failure to complete the sanction(s) by the date(s) indicated will result in an Administrative Hold being placed on your student record. This hold may affect your ability to register for courses, request academic transcripts, and receive a degree and diploma."

**EXHIBIT 2[94]:**

University of South Florida
Department of Housing & Residential Education
Desk Operations Service Form

<u>For Resident:</u> Fill out completely

Name: Daniel Frishberg    Date: 11/27/23    Time: 1:02 AM PM

ID #: ▮▮▮▮▮▮▮▮▮    Hall and Room: RPN ▮▮▮▮

Email Address: _____    Cell Phone: _____

Please Mark All That Apply:

---

_____ I am requesting to check-out a TEMPORARY ACCESS CARD to my building. I understand that if the access card is not returned within <u>72 hours</u> following the date/time listed above, the access on the card will expire and replacements will be reordered. The replacement access card and key tag charge(s) as indicated below will be posted to my student account.

---

_____ I am requesting to check-out a TEMPORARY KEY to my room. I understand that if the key is not returned by <u>9 a.m. on the morning following</u> the date/time listed above, a lock change will be submitted to the Department of Housing & Residential Education. The lock change and key tag charge(s) as indicated below will be posted to my student account.

---

✓ I am requesting an IMMEDIATE LOCK CHANGE. I understand that the charges as indicated below will be posted to my student account.

Please indicate reason:
_____ Lost Key
✓ Other  Failure to return key _____

Please indicate which door:
_____ Bedroom Door
_____ Front Door (*only applicable to Magnolia, Cypress, Kosove, and Holly Apartments, and Cypress Suites)

---

_____ I am requesting a DUPLICATE KEY REQUEST due to a DAMAGED KEY (bent, broken, etc.). I understand that the charges as indicated below will be posted to my student account.

*Damaged Key must be packaged and attached to form as evidence for the appropriate charges. Without the damaged key, the room will be lock changed and charged accordingly.

---

I understand the terms of this agreement and agree to pay the appropriate charges if applicable as indicated.

Student Signature _____

| Housing Services Fee Schedule | | |
|---|---|---|
| Item | Charge | Explanation |
| Replacement lock core | $50.00 per front & bedroom door | For each core that needs to be replaced |
| Replacement key | $15.00 per resident & backup key | For each key that needs to be replaced |
| | Please Note: Village lock changes include charges for five (5) keys | |
| Temporary access card | $25.00 per card | For each access card not returned by the due date |
| Damaged key | $6.00 per key | For each damaged key (bent, broken etc.) |
| Key Tag | $10.00 per tag | For each tag that needs to be replaced |
| Temporary Card Cover | $10.00 per cover | For each access card cover not returned by the due date |

**EMPLOYEE SECTION:**
Key Code/Serial#: (Front Door)_____ (Bedroom)_____ Card #: _____

Housing Services Employee Name (please print): _____

_____ Returned Temporary Key or Card    Date: _____ Time _____    Student Signature: _____

---

[94] University ID number, and number of the room redacted. Document otherwise unchanged.

Office Use Only:

_____ Adhoc email sent _____/_____/_____ date due back _____/_____/_____ @ _____ AM or PM

   Notes:

If Housing & Residential Education personnel is requesting charges, please indicate reason:
   _____✓  Failure To Return Key
   _____  Failure To Return Temp Card
   _____  Repeated Temporary Key Requests
   _____  Other _____

_✓_ Lock change submitted _11_/_27_/_23_ to be posted to student account: U#███████

_____ Damaged key _____/_____/_____ to be posted to student account: U#_____

_____ Replacement access card _____/_____/_____ to be posted to student account: U#_____

| Item | Charge | Quantity | Total | Notes |
|---|---|---|---|---|
| Replacement front core | $50.00 | 1 | 50 | |
| Replacement bedroom core | $50.00 | | | |
| Replacement front keys | $15.00 | 5 | 75 | |
| Replacement bedroom keys | $15.00 | | | |
| Temporary access card | $25.00 | | | |
| Damaged key | $6.00 | | | |
| Key tag | $10.00 | | | |
| Card Cover | $10.00 | | | |
| Total Billed: | | | 125 | Pinnacle |

Posted to Banner/Mercury _11/27/23_ by _Sheena_____ Term _Fall 2023_

Staff Signature Verifying Charge: _____

**EXHIBIT 3[95]:**

_____

[95] Both screenshots are as of Sunday January 7th, 2024 at approximately 3:37pm EST.

 These are the holds on your record. Registration holds prevent you from adding, dropping and withdrawing from classes. Transcript hol resolve it.

**Administrative Holds**

| Hold Type | From Date | To Date | Amount | Reason | Originator | Processes Affected |
|---|---|---|---|---|---|---|
| Balance Due | Dec 04, 2023 | Dec 31, 2099 | | View balance in OASIS | | Transcripts |
| SCED studentconduct@usf.edu | Jan 02, 2024 | Dec 31, 2099 | | Case # 2023087401 | | Registration |

### *You may register during the following times*

| From | Begin Time | To | End Time |
|---|---|---|---|
| Oct 30, 2023 | 01:00 pm | Mar 29, 2024 | 11:59 pm |

✅ Your Academic Standing is Good Academic Standing which permits registration.

✅ Your Student Status permits registration.

Your Class for registration purposes is Sophomore.

## EXHIBIT 4[96]:

**USF Housing**
To: Daniel Frishberg

Mon 2/13/2023 4:06 PM

████████
Daniel Anatoly Frishberg
████████████

Dear Daniel,

Thank you for contacting the University of South Florida Housing Services Team!

In order to review your request, please provide current documentation (**within the past 90 days/ 3 months**) showing **diagnosis, date of diagnosis, and reasonable accommodations requested from your medical care professional**. This letter needs to be on your **medical care professional's letterhead**. You will need to provide this documentation to the housing assignments office within 5 business days of receipt of this email, in order for us to process your request. Failure to provide this documentation by the stated date will result in a denial of this request. Please make sure that you reference your U# and ticket number on every sheet of documentation. Please note that the deadline for all ADA/Medical Accommodation are as follows:

Fall-Spring Agreement deadline- June 1st
Spring Only Agreement deadline- November 1st
Summer A, AB, C Agreement deadline- April 15th
Summer B, SSS, ACE Agreement deadline- June 1st

If you are applying after the deadlines listed above for the upcoming term, we will still process your request and attempt to honor it. We cannot guarantee placement after the deadline.

If you have any questions, you can contact us via email at housing@usf.edu or by phone at 813-974-0001 during normal business hours, Monday through Friday from 9:00am until 4:00pm. We are located in the Argos Building, 2nd Floor (Above Argos Exchange).

*Sincerely,*

*Housing & Residential Education*
**University of South Florida**
4202 E. Fowler Ave, RAR 229
Tampa, FL 33620
Office: 813-974-0001  Fax: 813-974-5152

---

[96] It was unmodified with the exception of redacting my University ID number, and the ticket number. Sent Monday, February 13th, 2023, at 4:06pm.

**EXHIBIT 4b[97].**

"Dear Daniel,

Thank you for submitting an ADA/Medical Accommodation request form.  Please provide documentation showing diagnosis, date of diagnosis, and reasonable accommodations requested from your medical care professional. This letter needs to be on your medical care professional's letterhead. You will need to provide this documentation to the housing assignments office no later than **5 business days** of the date the request was submitted in order for us to process your request. Failure to provide this documentation by the stated date will result in a denial of this request. You can scan/email all documentation to **housing@usf.edu.**"

**COMPLAINT EXHIBIT I**: (the "required questionnaire" in its entirety. For the avoidance of doubt, it has not been modified in any way:

---

[97] Email sent by USF Housing Department at 12:01am on Monday, May 29th, 2023. It was not modified in any way.

**EMOTIONAL SUPPORT ANIMAL**
**FAIR HOUSING ACT INTERACTIVE PROCESS QUESTIONNAIRE**

From: _____
      Student Name and University ID #

To: _____
      Healthcare Provider Name

<div style="border:1px solid red; color:red;">

**The remainder of this form is to be filled out in its entirety by the health care professional responsible for the above patient. The patient is not to fill out the below section.**

</div>

Please answer and return the following questionnaire to your patient. The questionnaire format is a guide and we would appreciate a response to every question. We need your complete medical opinion, so please feel free to include a more detailed narrative response to any and all questions if needed to answer more fully. Thank you for your anticipated cooperation.

Name of Patient for whom you are completing this questionnaire: _____

Date Patient Started under your care: _____

1. Does this resident have a disability – i.e, a physical or mental impairment that substantially limits one or more major life activities?

                         Yes          No

    a. If yes, please state the type of impairment and what major life activities are the subject of the disability (i.e., the current impact and functional limitations resulting from the disability).

                _____
                _____
                _____

2. Has an Emotional Support Animal been prescribed by you to this resident for treatment purposes?

                         Yes       No

    a. If yes, does the person have a *disability-related need* for this animal? (In other words, does the animal provide some type of disability-related assistance or emotional support that alleviates or mitigates one of more symptoms or effects associated with the person's existing disability, to help the person use and enjoy University housing?)

                         Yes      No

Updated: February 11, 2020

    b. If yes to 2(a), please describe the relation between the requested accommodation (the animal) and the disability (i.e., how the animal will alleviate or mitigate a symptom(s) or effect(s) associated with the person's disability or otherwise assist the resident in using and enjoying University housing?

                _____
                _____
                _____

3. Any additional information of Statement that may assist the University to understand the basis for your professional opinion regarding this accommodation request.

_____

_____

_____

By signing below, you as the Healthcare Provider are confirming that in prescribing this animal for the resident you have (1) considered the impact on the resident if the animal's behavior or reaction to university housing results in the removal or loss of the animal to the resident; (2) discussed the risk to the animal and/or resident in cases of emergency or adverse reaction to the setting and (3) determined with the resident understands, accepts and can manage those risks  Please note that the University Policy (link to Policy) outlines that in the event of emergency the animal is not the responsibility of the university and the animal will be considered abandoned if the resident is not present or able to care for the animal.

Please attach a professional business card or the medical professional completing this questionnaire

_____
Signature

_____
Title

_____
Date

Printed Name and Address:

_____

_____

_____

*[Rest of the page is intentionally left blank.]*

**EXHIBIT D:** (HUD Guidance):

https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf

**EXHIBIT E** (Note from the Plaintiff Appellant's Doctor):



EAST FLORIDA
**BEHAVIORAL**
**HEALTH NETWORK**
BEHAVIORAL HEALTH SPECIALISTS
OF SOUTH FLORIDA

January 10, 2024

Re: Frishberg, Daniel - Emotional Support Animal (ESA)

Date of Birth: ⬤2003

To whom it may concern,

Daniel Frishberg is my patient, and has been under my care since February 2023. I am familiar with this patient's history, and with the functional limitations imposed by their condition.

I am a Licensed Adult, Adolescent and Child Psychiatrist in the state of Florida, my license number is ME116041. In my professional opinion, this patient meets criteria for DSM 5 diagnostic disorder. My patient has had significant functional impairment due to the disorders that has significantly affected patient's quality of life. As result of these disorders, patient has had difficulty performing the usual activities of daily living. The functional "disability" corresponds to the description annotated in the American with Disabilities Act, Air Carrier Access Act and Fair Housing Act.

In order to help alleviate these difficulties and to enhance the patient's ability to live independently within the community, I have prescribed an ESA. Patient would benefit from the assistance and company of his ESA, a grey Russian Blue breed cat in coping with the above-stated conditions. It is my professional opinion that Mr. Frishberg has medical difficulties to function publicly without the assistance of his ESA, and will therefore require the ESA's company in all public locations, that would not cause an inconvenience to other patrons.

I am familiar with the professional literature concerning the assistive and/or therapeutic benefits of the ESAs for people with mental illness. I acknowledge that this letter may be relied upon in determining whether or not to grant reasonable accommodations by making an exception to rules, policies, practices, or services, when such accommodation may be necessary to afford the herein named individual an equal opportunity to use their emotional support/service animal in his daily endeavors. This letter has been issued with the patient's consent and, as per his/her request. Any questions please contact our office directly at (305) 692-3270.

Sincerely,

Samuel A. Neuhut, M.D.

HCA Florida Behavioral Health Specialists

SN/igb

21150 Biscayne Blvd, Suite 202   Aventura, FL 33180    (P) 305-692-3270    (F) 305-792-1425

## EXHIBIT F: (Order On Appeal):

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DANIEL A. FRISHBERG,

     Plaintiff,

v.                                  Case No.  8:24-cv-22-TPB-NHA

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES, et al.,

     Defendants.
_____/

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants University of South Florida

Board of Trustees' and HRSE-Capstone Tampa, LLC's motion to dismiss, filed on

January 15, 2024.  (Doc.  16).  The Court elected to treat Defendants' response to

Plaintiff Daniel A. Frishberg's motion for a temporary restraining order as a motion to

dismiss and directed Plaintiff to respond to the motion.  (Docs. 18; 20).  Plaintiff filed

his response in opposition on February 6, 2024.  (Docs. 24; 25).  After reviewing the

motion, response, court file, and the record, the Court finds as follows:

### Background[1]

Plaintiff Daniel A Frishberg, a student at the University of South Florida

("USF"), owns a cat which he alleges he uses as an emotional support animal.  USF

_____

[1] The Court accepts as true the facts alleged in Plaintiff's amended complaint for purposes of
ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the
factual allegations contained in the complaint.").  The Court is not required to accept as true
any legal conclusions couched as factual allegations.  *See Papasan v. Allain*, 478 U.S. 265, 286
(1986).

initially recognized the cat as an emotional support animal and allowed Plaintiff to have the cat in his dorm building.  USF's policies, however, precluded Plaintiff from taking the cat out of his room.  While Plaintiff's filings do not set forth a clear timeline of events, it appears that after Plaintiff allowed the cat outside of his room and into common areas of the dorm, USF imposed a requirement that Plaintiff pay a fee and take educational courses on civility as a sanction for his violation of the rules.  When Plaintiff failed to comply and failed to comply with a directive to remove the animal, Defendants terminated Plaintiff's lease for the room, changed the lock system so that Plaintiff no longer had access to the room, and removed his personal belongings. Plaintiff alleges that there is no comparable, adequate housing available for him.

Plaintiff contends that Defendants' refusal to accommodate his request to have his emotional support animal outside of his room and other actions – including their imposition of sanctions, termination of his rental agreement, and locking him out of his room – constitute discrimination and retaliation in violation of the federal Fair Housing Act ("FHA"), as well as breaches of Defendants' duties under other statutes and common law principles.

On November 28, 2023, Plaintiff filed suit in small claims court in Hillsborough County making essentially the same allegations presented in this case.  On December 19, 2023, Plaintiff filed an amended complaint in that case and a motion seeking essentially the same injunctive relief sought in the instant motion.  The defendants in that case moved to strike the complaint and motion, arguing that the amended complaint was improperly filed without leave of court and that Plaintiff's claims could not properly be brought in small claims court.

That state court suit remains pending, but on January 3, 2024, Plaintiff brought this suit.[2]  In his complaint, he alleges several claims for relief under the FHA, the Florida Fair Housing Act ("FFHA"), the Americans with Disabilities Act ("ADA"), and breach of contract related to the housing agreement.

<div align="center">

**Legal Standard**

</div>

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face."  *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint.  *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff."  *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case."  *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

---

[2] Plaintiff filed a motion to proceed *in forma pauperis*, which the Court granted.  (Doc. 5).

As Plaintiff in this case proceeds *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se* plaintiff must still conform to procedural rules, and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

## Analysis

### Counts 1, 2, 4, 6, 7, 8, 9, 10, and 13

In Counts 1, 2, 4, and 6, Plaintiff asserts various violations of the FHA by Defendants. In Counts 7, 8, 9, and 10, he asserts various violations of the FFHA. In Count 13, Plaintiff asserts a "retaliation" claim under either the FHA, the FFHA, or both. However, it appears that Eleventh Amendment immunity bars each of these claims.

The Eleventh Amendment provides a state with immunity from suits by private individuals in federal court unless the state has consented to be sued, the state has waived its immunity, or Congress has abrogated the state's immunity. *Doe v. Florida Gulf Coast Univ. Bd. of Trustees*, No. 2:23-cv-245-SPEC-KCD, 2023 WL 5834865, at *2 (M.D. Fla. Sept. 8, 2023). The USF Board, as the governing body of a state university, is an "arm" of Florida and may be entitled to Eleventh Amendment immunity. *See University of South Fla. Bd. of Trustees v. CoMentis, Inc.*, 861 F.3d 1234, 1237 (11th Cir. 2017) (citing *Williams v. District Bd. of Trustees of Edison Cmty. Coll., Fla.*, 421 F.3d 1190, 1195 (11th Cir. 2005)); *Souto v. Fla. Int'l Univ. Found., Inc.*, 446 F. Supp. 3d 983, 990 (S.D. Fla. 2020) (collecting cases). Defendant HRSE may be entitled to Eleventh Amendment immunity because its only role with respect to this matter is

that it owns the dorm building. *See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000) (private corporation that is neither controlled nor funded by state may be protected by immunity when clearly acting as agent of state).

Florida has not consented to suit brought in federal court under the FHA or FFHA. Neither the FHA nor the FFHA contain an explicit waiver of sovereign immunity. *See* 42 § U.S.C. 3613, *et seq.*; § 760.20, *et seq., F.S.*; *Rattner v. 1809 Brickell, LP*, No. 1:21-cv-23426-KMM, 2022 WL 19331241, at *7 (S.D. Fla. Apr. 18, 2022) ("Nor does the Fair Housing Act, 42 U.S.C. §§ 3601-3631, contain a waiver of sovereign immunity."). Moreover, as to the FHA, "the language of the Fair Housing Act does not make 'unmistakably clear' that Congress intended to abrogate. It contains no provision evidencing such intent." *McCardell v. United States HUD*, 794 F.3d 510, 522 (5th Cir. 2015) ("We hold that Congress did not make clear an intent to abrogate States' Eleventh Amendment sovereign immunity from suits brought under the Fair Housing Act. . . .").

Plaintiff argues that Defendants' receipt of federal funds constitutes a waiver of sovereign immunity under the Rehabilitation Act. But Plaintiff's housing discrimination or retaliation claims in these counts are not brought under the Rehabilitation Act. And just because the state may waive immunity for one type of claim (such as the Rehabilitation Act) does not mean that it waives immunity for all possible claims (such as those under the FHA or FFHA).

To try to save his suit, Plaintiff argues that *Ex parte Young* establishes an exception to a state's Eleventh Amendment immunity. However, Plaintiff asserts no §

1983 claims against state officers related to prospective equitable relief and continuing violations of federal law. *See McClendon v. Georgia Dept' of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001). Even if he did, *Ex parte Young* "does not permit suit against state agencies or the state itself, even when the relief is prospective." *Eubank v. Leslie*, 210 F. App'x 837, 844 (11th Cir. 2006).

Therefore, Defendants enjoy Eleventh Amendment immunity as to all of Plaintiff's housing discrimination and retaliation claims. Defendants' motion is granted, and Counts 1, 2, 4, 6, 7, 8, 9, 10, and 13 are dismissed for lack of jurisdiction.

### Count 3 – ADA Sec. 36.302 Violation

In Count 3, Plaintiff appears to assert a claim under Americans with Disabilities Act. Specifically, he cites to 28 C.F.R. § 36.402 and claims that Defendants failed to make "extremely reasonable accommodations" despite numerous requests that would have allowed Plaintiff to have his emotional support animal in the common area. To the extent that Plaintiff's complaint can be interpreted to include a claim under Title II of the ADA, it fails to state a claim as a matter of law.

"Title II of the Americans with Disabilities Act prohibits public entities (which includes instrumentalities of state and local governments . . .) from discriminating against qualified individuals with disabilities." *Sykes v. Cook Cty. Circuit Court Prob. Div.*, 837 F.3d 736, 740 (7th Cir. 2016). The regulations interpreting Title II make a distinction between service animals (for example, "seeing eye" dogs for blind people) and emotional support animals. The regulations specifically provide protections for the use of service animals, but emotional support animals are excluded from coverage. *Maubach v. City of Fairfax*, No. 1:17-cv-921, 2018 WL 2018552, at *6 n.6 (E.D. Va.

Apr. 30, 2018); *see also* 28 C.F.R. §§ 36.104; 36.302.  Consequently, there is no claim under Title II of the ADA related to the denial of an emotional support animal.  *See id*.; *Sykes*, 837 F.3d at 740 ("'Emotional support animals' are not considered service animals which fall under Title II's mandate.") (quotation omitted); *Toma v. 38th Dist. Court*, No. 18-cv-11066, 2019 WL 1897157, at *2 (E.D. Mich. Apr. 29, 2019) (dismissing plaintiff's claim that the defendant failed to reasonably accommodate his disability by prohibiting his emotional support dog from entering courthouse); *Baird v. 1600 Church Rd. Condo Ass'n*, No. 17-4792, 2017 WL 5570333, at *4 (E.D. Pa. Nov. 17, 2017) ("[T]he ADA does not provide protection for emotional therapy dogs as accommodations for disabilities.").

It is undisputed that Plaintiff's cat is not a service animal.  Consequently, any ADA claim fails as a matter of law.  Defendants' motion to dismiss is granted as to this ground.  Because amendment would be futile, Count 3 is dismissed with prejudice.

### Count 5

The complaint contains a scrivener's error in that it does not include a Count 5, skipping from Count 4 to Count 6.  The Court notes this mistake for the purpose of clarity and completeness.

### Count 11

In Count 11, Plaintiff asserts an "intimidation" claim.  This is not a recognized cause of action that can be the basis of a lawsuit.  To the extent that Plaintiff's allegations pertaining to "intimidation" may support some sort of tortious conduct claim, because Florida has not waived immunity for this type of tort claim, the Eleventh Amendment applies.  *See* § 768.28(1), *F.S.* (waiving immunity for actions to

recover damages in tort for "injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee . . . while acting within the scope of the employee's office or employment . . ."); *Terrell v. United States*, 783 F.2d 1562, 1565 (11th Cir. 1986); *Wells*, 2021 WL 883333, at *4 (citing *Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990)).  Consequently, Count 11 is dismissed as an independent cause of action and for lack of subject matter jurisdiction to the extent it alleges any tort claim.

### Count 12

In Count 12, Plaintiff seeks "to enforce the law" and requests relief under 42 U.S.C. §§ 3613(b)(1), (b)(2), and (c)(1).  Enforcement is not an independent cause of action, and this statutory section merely explains how and when to commence civil actions for discriminatory housing practices, along with the type of relief that may sought.  Count 12 is therefore dismissed to the extent it asserts an independent cause of action.

### Counts 14, 15, 16, and 17

In Counts 14, 15, 16, and 17, Plaintiff asserts breach of contract and related claims.[3]  However, Eleventh Amendment immunity bars Plaintiff's breach of contract claims in federal courts.  *See Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1288 (11th Cir. 2003) (holding

---

[3] The Court categorizes Count 14 (fraudulent inducement), Count 15 (breach of implied terms of contract including covenant of good faith), and Count 16 (unconscionability) as contractual claims, although they do not fit perfectly into that category, because Plaintiff essentially asks the Court to find the housing agreement unenforceable against him.  But even if these are not strictly "breach of contract" claims, the Court notes that the state of Florida continues "to enjoy sovereign immunity from quasi-contractual claims such as unjust enrichment" in its own courts.  *Id.* (quoting *Veolia Water N. Am. - S, LLC v. City of Everglades City*, No. 2:18-cv-785-FTM-99UAM, 2019 WL 1921900, at *4 (M.D. Fla. Apr. 30, 2019)).

breach of contract claim in federal court was barred on Eleventh Amendment immunity grounds); *Doe*, 2023 WL 5834865, at *2.  Consequently, Counts 14, 15, 16, and 17 are dismissed for lack of subject matter jurisdiction.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendants' motion to dismiss (Doc. 16) is hereby **GRANTED**.

2. Counts 1, 2, 4, 6, 7, 8, 9, 10, 11 (in part), 13, 14, 15, 16, and 17 are
   **DISMISSED WITHOUT PREJUDICE**, without leave to amend, for lack of
   jurisdiction on the basis of Eleventh Amendment immunity.  If Plaintiff
   wishes to pursue these claims, he may choose to do so in state court to the
   extent possible, but they may not be re-filed in this Court.

3. Count 3 is **DISMISSED WITH PREJUDICE** for failure to state a claim.

4. Count 5, 11 (in part), and 12 are **DISMISSED** as independent causes of
   action, without leave to amend.

5. The Clerk is directed to terminate any pending motions and deadlines, and
   thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 11th day of April, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

Respectfully submitted,

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
July, 16, 2024
Santa Clara County, California


Case No. 24-11175-H.

Frishberg v. University of South Florida

Board Trustees, et al.


*[Rest of the page is intentionally left blank.]*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure as well as Eleventh Circuit Rule 26.1-2, the undersigned Plaintiff Appellant hereby certifies that the following is a complete list of the trial judges, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Adams, Natalie Hirt, United States Magistrate Judge, Middle District of Florida;

2. Barber, Thomas, United States District Judge, Middle District of Florida;

3. Black, Melissa C., County Court Judge, Thirteenth Judicial Circuit, Hillsborough County, Florida

4. Bush Graziano Rice & Hearing, P.A., counsel for Defendants, University of South Florida Board of Trustees and HRSE-Capstone Tampa, LLC, Defendants/Appellees;

5. Capstone Development Partners, LLC;

6. Daniel Frishberg, Pro Se Plaintiff/Appellant;

7. Dyson, Sacha, counsel for Defendants, University of South Florida

Board of Trustees and HRSE-Capstone Tampa, LLC,

Defendants/Appellees;

8. Harrison Street Real Estate Capital LLC;

9. HSRE-Capstone Tampa, LLC, Defendant/Appellee;

10. Sullivan, Kevin M., counsel for Defendants, University of South

Florida Board of Trustees and HRSE-Capstone Tampa, LLC,

Defendants/Appellees

11. University of South Florida Board of Trustees, Defendant/Appellee;

12. Department of Housing and Urban Development;

13. United States of America


No other trial judge, attorney, person, association of persons, firm, partnership,

or corporation known to the Appellant, has any current interest in the

outcome of this matter.


I hereby certify pursuant to 11th Circuit Rule 26.1-3(b) that no publicly traded

company or corporation has an interest in the outcome of the case or appeal.

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg

## <u>Certificate Of Compliance With Rule 27(d)(2)(A)</u>

The Appellant hereby certifies that this Appendix complies with Rule 27(d)(2)(A) as the word count is less than 5200 words (not counting attachments) and has been prepared in a proportionally spaced typeface in fourteen-point font of Times New Roman.


*/s/ Daniel A. Frishberg*
Daniel A. Frishberg


*[Rest of the page is intentionally left blank.]*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2024, a true and correct copy of Daniel A. Frishberg's *Appellant's Appendix For The Opening Brief* was filed in the United States Court for Appeals For The 11th Circuit (via PACER/ECF) and electronically served upon the Defendants in the case.

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
July 16, 2024

*[Rest of the page is intentionally left blank.]*