Appeal No. 24-11175-H

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

**DANIEL FRISHBERG,**

(Plaintiff/Appellant)

vs.

**UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES, ET AL.,**

(Defendants/Appellees)

_____

**An Appeal from the United States District Court
for the Middle District of Florida, Tampa Division**

**District Court Docket No. 8:24-cv-00022-TPB-NHA**

_____

**APPELLEES' SUPPLEMENTAL APPENDIX (Vol. 1)**

_____

Sacha Dyson
Florida Bar No. 509191
Kevin M. Sullivan
Florida Bar No. 1003812
Bush Graziano Rice & Hearing, P.A.
100 S. Ashley Drive, Suite 1400
Tampa, Florida 33602
(813) 228-7000 (telephone)
(813) 273-0091 (facsimile)
sdyson@bgrhlaw.com;
ksullivan@bgrhlaw.com

## INDEX OF APPELLEES' SUPPLEMENTAL APPENDIX

**Docket/Tab #**

### Volume 1

District Court Docket Sheet ................................................................ A

Order Granting Plaintiff's Motion to Proceed In Forma Pauperis ..................... 5

Order Granting in Part and Denying In Part Plaintiff's Emergency
Motion for Temporary Restraining Injunction .................................... 9

Defendants' Response to Plaintiff's Emergency Motion for an Injunction
and Defendants' Motion to Dissolve ............................................. 16

     Exhibit A .......................................................... 16-1
     Exhibit B .......................................................... 16-2
     Exhibit C .......................................................... 16-3

Declaration of Andrew Johnson and exhibits ................................... 17

     Exhibit 1 ...................................................... 17-1 (pg 1-8)
     Exhibit 2 ...................................................... 17-1 (pg 9-12)
     Exhibit 3 ...................................................... 17-1 (pg 13-16)
     Exhibit 4 ...................................................... 17-1 (pg 17)
     Exhibit 5 ...................................................... 17-1 (pg 18)

     Exhibit 6 ...................................................... 17-2 (pg 1-12)
     Exhibit 7 ...................................................... 17-2 (pg 13)
     Exhibit 8 ...................................................... 17-2 (pg 14)
     Exhibit 9 ...................................................... 17-2 (pg 15-17)
     Exhibit 10 ..................................................... 17-2 (pg 18-46)

     Exhibit 11 ..................................................... 17-3 (pg 1-3)
     Exhibit 12 ..................................................... 17-3 (pg 4-5)
     Exhibit 13 ..................................................... 17-3 (pg 6-7)
     Exhibit 14 ..................................................... 17-3 (pg 8-10)
     Exhibit 15 ..................................................... 17-3 (pg 11-12)

Exhibit 16......................................................................17-4 (pg 1-2)
Exhibit 17......................................................................17-4 (pg 3-4)
Exhibit 18......................................................................17-4 (pg 5-10)
Exhibit 19......................................................................17-4 (pg 11-20)
Exhibit 20......................................................................17-4 (pg 21-25)

Exhibit 21......................................................................17-5 (pg 1-4)
Exhibit 22......................................................................17-5 (pg 5-6)
Exhibit 23......................................................................17-5 (pg 7-10)
Exhibit 24......................................................................17-5 (pg 11-16)
Exhibit 25......................................................................17-5 (pg 17-19)
Exhibit 26......................................................................17-5 (pg 20-22)
Exhibit 27......................................................................17-5 (pg 23-24)

## **Volume 2**

Minute Entry re: Preliminary Injunction Hearing ............................................ 18

Endorsed Order Granting Defendants' Motion to Dissolve Temporary
Restraining Order.................................................................................... 20

Plaintiff's Response to The Defendants' Memorandum of Law/
Motion to Dismiss.................................................................................. 24

Declaration of Daniel Frishberg ...................................................... 25

Plaintiff's Notice of Appeal.............................................................. 29

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of December, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

> Daniel Frishberg
> 284 Monroe Drive
> Mountain View, CA 94040
> Pro Se Plaintiff/Appellee

I FURTHER CERTIFY that and an original and two copies of the foregoing were transmitted to the Clerk, Eleventh Circuit, U.S. Court of Appeals, 56 Forsyth Street N.W., Atlanta, GA 30303, 404-335-6100, via Federal Express overnight delivery.

s/ Sacha Dyson
Attorney

# U.S. District Court
# Middle District of Florida (Tampa)
# CIVIL DOCKET FOR CASE #: 8:24-cv-00022-TPB-NHA

| | |
|---|---|
| Frishberg v. University of South Florida Board of Trustees et al | Date Filed: 01/03/2024 |
| Assigned to: Judge Thomas P. Barber | Date Terminated: 04/11/2024 |
| Referred to: Magistrate Judge Natalie Hirt Adams | Jury Demand: None |
| Case in other court: Eleventh Circuit, 24-11175-H | Nature of Suit: 446 Civil Rights: Americans with Disabilities - Other |
| Cause: Americans with Disabilities Act | Jurisdiction: Diversity |

**Plaintiff**

**Daniel A. Frishberg**      represented by    **Daniel A. Frishberg**
284 Monroe Drive
Mountain View, CA 94040
754-237-8472
PRO SE

V.

**Defendant**

**University of South Florida Board of Trustees**      represented by    **Sacha Dyson**
Bush, Graziano, Rice & Platter, P.A.
100 S. Ashley Drive
Suite 1400
Tampa, FL 33602
813-228-7000
Fax: 813-273-5145
Email: sdyson@bgrhlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**HRSE-Capstone Tampa, LLC**      represented by    **Sacha Dyson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/03/2024 | 1 | COMPLAINT against HRSE-Capstone Tampa, LLC, University of South Florida Board of Trustees filed by Daniel A. Frishberg.(AA) (e-portal) (Entered: 01/03/2024) |
| 01/03/2024 | 2 | MOTION to Proceed In Forma Pauperis / Affidavit of Indigency by Daniel A. Frishberg. (AA) Motions referred to Magistrate Judge Natalie Hirt Adams. (e-portal) (Main Document 2 replaced on 1/10/2024 to flatten pdf image.) (AG) (Entered: 01/03/2024) |
| 01/03/2024 | 3 | MOTION to allow Electronic Service and other related relief by Daniel A. Frishberg. (AA) (e-portal) (Entered: 01/04/2024) |

| | | |
|---|---|---|
| 01/08/2024 | 4 | MOTION for Preliminary Injunction, MOTION for Temporary Restraining Order by Daniel A. Frishberg. (AA) (e-portal) (Entered: 01/08/2024) |
| 01/08/2024 | 5 | **ORDER granting 2 Motion to Proceed In Forma Pauperis, and directing Plaintiff to to complete and return the "Summons in a Civil Action" AO 440 form and the "Process Receipt and Return" USM-285 form to the Clerk. Signed by US Magistrate Judge Natalie Hirt Adams on 1/8/2024. (Adams, Natalie)** (Entered: 01/08/2024) |
| 01/08/2024 | 6 | PROPOSED summons to be issued as to University of South Florida by Daniel A. Frishberg. (Attachments: # 1 USM-285)(AA) (e-portal) Modified on 1/10/2024 - summons not issued as missing information on forms.) (AG) (Entered: 01/09/2024) |
| 01/09/2024 | 7 | NOTICE to Counsel of Local Rule 3.02(a)(2), which requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge. (Signed by Deputy Clerk). (SRC) (Entered: 01/09/2024) |
| 01/09/2024 | 8 | NOTICE informing the parties that they may consent to the jurisdiction of a United States magistrate judge by filing Form AO 85 Notice, Consent, and Reference of a Civil Action to a Magistrate Judge using the event **Consent to Jurisdiction of US Magistrate Judge**. (Signed by Deputy Clerk). (SRC) (Entered: 01/09/2024) |
| 01/09/2024 | 9 | **ORDER. "Plaintiff's Emergency Motion for [an] Injunction, or in the Alternative, a Temporary Injunction/Restraining Order." (Doc. 4) is granted in part and denied in part. This matter will be scheduled for a preliminary injunction hearing by separate notice on Tuesday January 16, 2024, at 2:00 p.m. Plaintiff is directed- before noon on January 10, 2024 - to serve on Defendants through email to their counsel, at the email address listed on counsel's filings in the parallel state court case, the following: 1) a copy of the complaint and its exhibits; (2) a copy of the motion and its exhibits; and (3) a copy of this Order. Plaintiff is further directed to file with the Court on or before January 11, 2020, a statement that service on Defendants has been provided as directed. Defendants are directed to file a response to Plaintiff's motion on or before noon on January 15, 2024. Defendants' response should include any affidavits, declarations, or documentary evidence Defendants wish the Court to consider. See Order for details. Signed by Judge Thomas P. Barber on 1/9/2024. (EKB)** (Entered: 01/09/2024) |
| 01/09/2024 | 10 | CERTIFICATE of service by Daniel A. Frishberg re 9 Order on Motion for Preliminary Injunction, Order on Motion for Temporary Restraining Order. (e-portal) (AG) Modified text on 1/10/2024 (AG). (Entered: 01/10/2024) |
| 01/10/2024 | 11 | PROPOSED summons to be issued by Daniel A. Frishberg. (Attachments: # 1 Proposed Summons HRSE-Capstone Tampa, LLC, # 2 USM - 285) (e-portal)(AG) Modified text on 1/10/2024 (AG). (Entered: 01/10/2024) |
| 01/10/2024 | 12 | SUMMONS issued as to HRSE-Capstone Tampa, LLC, University of South Florida Board of Trustees. (AG) (Entered: 01/10/2024) |
| 01/10/2024 | 13 | **ENDORSED ORDER: The second sentence in paragraph 7 on page 7 of the Court's January 9, 2024, "Order Granting in Part and Denying in Part Plaintiff's Motion for Temporary Restraining Order" (Doc. 9) is hereby amended, *nunc pro tunc*, to read as follows: "Plaintiff is further DIRECTED to file with the Court on or before January** |

| | | |
|---|---|---|
| | | 17, 2024, a statement that service on Defendants has been provided as directed." **Signed by Judge Thomas P. Barber on 1/10/2024. (EKB)** (Entered: 01/10/2024) |
| 01/11/2024 | 15 | STATUS report by Daniel A. Frishberg. (Attachments: # 1 Exhibit)(AA) (e-portal) (Entered: 01/12/2024) |
| 01/12/2024 | 14 | NOTICE of hearing: Preliminary Injunction Hearing set for JANUARY 16, 2024, at 02:00 PM in Tampa Courtroom 14 A before Judge Thomas P. Barber. (SRC) (Entered: 01/12/2024) |
| 01/15/2024 | 16 | RESPONSE to Plaintiff's Emergency Motion for an Injunction and Defendant's MOTION to Dissolve by HRSE-Capstone Tampa, LLC, University of South Florida Board of Trustees. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Dyson, Sacha) (Modified on 1/16/2024 to edit docket text) (JDR). (Entered: 01/15/2024) |
| 01/15/2024 | 17 | DECLARATION of Andrew Johnson re 16 MOTION for Miscellaneous Relief, specifically to Dissolve *and Defendants' Response to Plaintiff's Emergency Motion for an Injunction* by HRSE-Capstone Tampa, LLC, University of South Florida Board of Trustees. (Attachments: # 1 Appendix 1-5, # 2 Exhibit 6-10, # 3 Exhibit 11-15, # 4 Exhibit 16-20, # 5 Exhibit 21-27)(Dyson, Sacha) (Entered: 01/15/2024) |
| 01/16/2024 | 18 | Minute Entry. Virtual Proceedings held before Judge Thomas P. Barber: MOTION HEARING held on 1/16/2024 re 4 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order filed by Daniel A. Frishberg. Court Reporter: Rebekah Lockwood (SRC) (Entered: 01/16/2024) |
| 01/16/2024 | 19 | NOTICE by HRSE-Capstone Tampa, LLC, University of South Florida Board of Trustees re 1 Complaint *of Acceptance of Service of Summons and Plaintiff's Complaint* (Dyson, Sacha) (Entered: 01/16/2024) |
| 01/17/2024 | 20 | **ENDORSED ORDER: For the reasons discussed at the January 16, 2024, hearing in this matter, Defendants' motion to dissolve the temporary restraining order (Doc. 16) is granted. The temporary restraining order (Doc. 9) is hereby dissolved. To the extent "Plaintiff's Emergency Motion for [an] Injunction, or, in the Alternative, a Temporary Injunction/Restraining Order" (Doc. 4) seeks a preliminary injunction, ruling is deferred pending resolution of the Eleventh Amendment sovereign immunity and related issues raised by Defendants in their response to Plaintiff's motion (Doc. 16). The Court will treat Defendants' response as a motion to dismiss based on: (1) Eleventh Amendment sovereign immunity as to the Fair Housing Act and state law claims, and (2) failure to state a claim under the Americans with Disabilities Act. *See* (Doc. 16 at 14-15 & nn. 11-12; *id.* at 22 n.13). On or before January 31, 2024, Plaintiff may file a response to Defendants' motion, limited to these issues and complying in all respects with the Local Rules, including Local Rule 3.01(b). Based on the agreement of Defendants' counsel, service of process is deemed to have been made on Defendants as of January 16, 2024. Defendants' time to respond to the complaint is stayed pending resolution of the threshold issues described above. In the event the Court does not dismiss the case on these grounds, the Court will set a deadline for Defendants to respond to the complaint. Defendants may at that point assert by way of answer or motion to dismiss any arguments available to them under Rule 12. Signed by Judge Thomas P. Barber on 1/17/2024. (EKB)** (Entered: 01/17/2024) |
| 01/18/2024 | 21 | RETURN of service executed on 1/17/2024 by Daniel A. Frishberg as to University of South Florida Board of Trustees. (LNR) (Entered: 01/22/2024) |
| 01/28/2024 | 22 | MOTION to Increase Page Limit for Plaintiff's Response to the Defendant's Memorandum of Law/Motion to Dismiss. by Daniel A. Frishberg. (AA) (e-portal) (Entered: 01/29/2024) |

| | | |
|---|---|---|
| 01/30/2024 | 23 | **ENDORSED ORDER: "Plaintiff's Motion to Increase Page Limits for Plaintiff's Response to the Defendants' Memorandum of Law/Motion to Dismiss" (Doc. 22) is granted in part and denied in part. To the extent Plaintiff requests an extension of the 20-page limit for his responsive memorandum, the motion is denied. Plaintiff's response will be limited to "twenty pages inclusive of all parts." *See* Local Rule 3.01(b). The Court notes, however, that any exhibits attached to the responsive memorandum will not be considered part of the memorandum for purposes of the 20-page limit. Construing Plaintiff's motion to additionally or alternatively seek an extension of time to file his response, the motion is granted. Plaintiff may file his response on or before February 6, 2024. The Court notes that for most types of motions, Local Rule 3.01(g) requires that the moving party confer with the opposing party regarding the relief sought and include in the motion a certificate describing the outcome of the conference. Plaintiff's motion fails to include the required certificate of conference. Although the Court has granted the motion in part, any future motions that require but fail to include a certificate of conference will be denied or stricken. As the Court previously reminded Plaintiff (Doc. 9), *pro se* litigants are required to comply with the rules of procedure and Local Rules. Signed by Judge Thomas P. Barber on 1/30/2024. (EKB)** (Entered: 01/30/2024) |
| 02/06/2024 | 24 | REPLY to Response to Motion re 16 MOTION to dismiss filed by Daniel A. Frishberg. (AA) (e-portal) Modified text on 2/14/2024 (AG). (Entered: 02/07/2024) |
| 02/06/2024 | 25 | DECLARATION of Daniel Frishberg re 24 Reply to Response to Motion by Daniel A. Frishberg. (AA)(e-portal) (Entered: 02/07/2024) |
| 03/04/2024 | 26 | **ENDORSED ORDER: Plaintiff's motion to allow electronic service (Doc. 3) is denied. "It is the District's preferred policy to disallow *pro se* litigants access to electronic filing unless extenuating circumstances exist to justify waiving CM/ECF procedures." *Fisher v. District School Bd. of Collier County*, No. 2:10-cv-512-FtM-29SPC, 2010 WL 3522215, at \*1 (M.D. Fla. Sept. 7, 2010). Plaintiff has not shown good cause. In addition, the Court declines to seal the information requested, except to the extent that personal identifying information - as defined in Federal Rule of Civil Procedure 5.2 - may be redacted. Signed by Judge Thomas P. Barber on 3/4/2024. (ANL)** (Entered: 03/04/2024) |
| 04/11/2024 | 27 | **ORDER: Defendants' motion to dismiss (Doc. 16) is hereby granted. Counts 1, 2, 4, 6, 7, 8, 9, 10, 11 (in part), 13, 14, 15, 16, and 17 are dismissed without prejudice, without leave to amend, for lack of jurisdiction on the basis of Eleventh Amendment immunity. If Plaintiff wishes to pursue these claims, he may choose to do so in state court to the extent possible, but they may not be re-filed in this Court. Count 3 is dismissed with prejudice for failure to state a claim. Count 5, 11 (in part), and 12 are dismissed as independent causes of action, without leave to amend. The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case. See Order for details. Signed by Judge Thomas P. Barber on 4/11/2024. (ANL)** (Entered: 04/11/2024) |
| 04/12/2024 | 28 | NOTICE of Local Rule 1.11(e), which provides that, unless an order states another time, a seal under Rule 1.11 expires ninety days after a case is closed and all appeals are exhausted. To prevent the content of a sealed item from appearing on the docket after the seal expires, a party or interested non-party must move for relief before the seal expires. (Signed by Deputy Clerk). (ELM) (Entered: 04/12/2024) |
| 04/15/2024 | 29 | NOTICE OF APPEAL as to 27 Order on Motion for Miscellaneous Relief, by Daniel A. Frishberg. Filing fee not paid. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(AA) (e-portal) (Additional attachment(s) added on 4/16/2024: # 3 Exhibit C) (AA). (Entered: 04/16/2024) |

| 04/16/2024 | [30](#) | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re [29](#) Notice of Appeal. (AA) (Entered: 04/16/2024) |
| 04/21/2024 | [31](#) | MOTION for Leave to File Appeal in Forma Pauperis, MOTION for Clarification by Daniel A. Frishberg. (AA) (e-portal) (Entered: 04/22/2024) |
| 04/23/2024 | [32](#) | **ORDER: Plaintiff's "Request for Leave to Appeal *In Forma Pauperis*/Request for Clarification" (Doc. [31](#)) is denied. See Order for details. Signed by Judge Thomas P. Barber on 4/23/2024. (ANL)** (Entered: 04/23/2024) |
| 04/24/2024 | [33](#) | DESIGNATION of Questions on Appeal and Record on Appeal by Daniel A. Frishberg re [29](#) Notice of Appeal. (e-portal) (GL) (Entered: 04/25/2024) |
| 04/24/2024 | [34](#) | MOTION for Reconsideration re [32](#) Order on Motion for Leave to File Document, Order on Motion for Reconsideration / Clarification by Daniel A. Frishberg. (e-portal) (Attachments: # [1](#) Exhibit B)(GL) (Entered: 04/25/2024) |
| 04/30/2024 | [35](#) | **ORDER: Plaintiff Daniel A. Frishberg's "Motion for Reconsideration" (Doc. [34](#)), in which he seeks to proceed on appeal without costs, is denied. See Order for details. Signed by Judge Thomas P. Barber on 4/30/2024. (ANL)** (Entered: 04/30/2024) |

**PACER Service Center**

**Transaction Receipt**

12/17/2024 09:55:09

| PACER Login: | ghearing | Client Code: | |
| Description: | Docket Report | Search Criteria: | 8:24-cv-00022-TPB-NHA |
| Billable Pages: | 5 | Cost: | 0.50 |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL A. FRISHBERG,

      Plaintiff,

v.                                                                Case No. 8:24-cv-22-TPB-NHA

UNIVERSITY OF SOUTH
FLORIDA BOARD OF TRUSTEES,
and HRSE-CAPSTONE TAMPA,
LLC

      Defendants.
_____/

## ORDER

    This matter comes before the Court upon Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, construed as a motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 (Doc. 2). Upon consideration, it is hereby **ORDERED**:

    1.    Plaintiff's motion to proceed *in forma pauperis* (Doc. 2) is **GRANTED**.

    2.    Plaintiff is **DIRECTED** to complete and return the "Summons in a Civil Action" AO 440 form and the "Process Receipt and Return" USM-285

form[1] to the Clerk, whereupon the United States Marshal is **DIRECTED** to

serve the summons on Defendant.[2]

      **ORDERED** in Tampa, Florida, on January 8, 2024.

*Natalie Hirt Adams*
NATALIE HIRT ADAMS
United States Magistrate Judge

---

[1] These forms are available for download on this Court's website at
https://www.uscourts.gov/forms/notice-lawsuit-summons-subpoena/summons-
civil-action   and   https://www.usmarshals.gov/resources/forms/usm-285-us-
marshals-process-receipt-and-return.   If Plaintiff does not have access to the
Internet, Plaintiff may obtain these forms by contacting the Clerk's Office at
813-301-5400.

[2] Plaintiff is advised that even *pro se* plaintiffs must conform with
procedural rules, including the Federal Rules of Civil Procedure and the
Local Rules of the Middle District of Florida. Litigation - particularly in
federal court - is difficult, and Plaintiff should consider seeking counsel. If he
is unable to afford counsel, he should consider the resources available to *pro
se* litigants, including the Legal Information Program operated by the Tampa
Bay Chapter of the Federal Bar Association, and the Middle District of
Florida's guide to assist *pro se* litigants proceeding in federal court, which is
located on the Court's website.

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DANIEL A. FRISHBERG,

      Plaintiff,

v.                                  Case No. 8:24-cv-22-TPB-NHA

UNIVERSITY OF SOUTH
FLORIDA'S BOARD OF TRUSTEES,
HRSE-CAPSTONE TAMPA, LLC,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

This matter comes before the Court on "Plaintiff's Emergency Motion for [an] Injunction, or in the Alternative, a Temporary Injunction/Restraining Order." (Doc. 4). On the basis of the verified complaint and the motion, the Court finds as follows:

## Background

Plaintiff Daniel A Frishberg, a student at USF, owns a cat which he alleges he uses as an emotional support animal. USF initially recognized the cat as an emotional support animal and allowed Plaintiff to have the cat in his dorm building. Defendant's policies, however, precluded Plaintiff from taking the cat out of his room. While Plaintiff's filings do not set forth a clear timeline of events, it appears that after Plaintiff allowed the cat outside of his room and into common areas of the dorm, Defendants imposed as a sanction a requirement that Plaintiff pay a fee and take educational courses on civility. When Plaintiff failed to comply and failed to

comply with a directive to remove the animal, Defendants terminated Plaintiff's lease for the room, changed the lock system so that Plaintiff no longer had access to the room, and removed his personal belongings.  Plaintiff alleges that there is no comparable, adequate housing available for him, but he does not state where he is currently living.

Plaintiff contends that Defendants' refusal to accommodate his request to have his emotional support animal outside of his room and other actions – including their imposition of sanctions, termination of his rental agreement, and locking him out of his room – constitute discrimination and retaliation in violation of the federal Fair Housing Act as well as breaches of Defendants' duties under other statutes and common law principles.

On November 28, 2023, Plaintiff filed suit in small claims court in Hillsborough County making essentially the same allegations presented in this case.  On December 19, 2023, Plaintiff filed an amended complaint in that case and a motion seeking essentially the same injunctive relief sought in the instant motion. The defendants in that case moved to strike the complaint and motion, arguing that the amended complaint was improperly filed without leave of court and that Plaintiff's claims could not properly be brought in small claims court.

That state court suit remains pending, but on January 3, 2024, Plaintiff brought this suit.[1]  On January 8, 2024, Plaintiff also filed the instant motion seeking a preliminary injunction or temporary restraining order.  Plaintiff filed the

---

[1] Plaintiff filed a motion to proceed *in forma pauperis*, which the Court granted.  (Doc. 5).

motion as an "emergency" motion on the ground that the first business day on which his account was locked preventing him from registering for classes was January 8, 2024, and the last day to register is January 12, 2024.

## **Legal Standard**

A district court is authorized to issue a temporary restraining order without notice to the adverse party only in limited emergency circumstances. *See* Fed. R. Civ. P. 65(b). Under Rule 65(b)(1), a federal court may only issue a temporary restraining order without first giving notice to the enjoined parties if the movant provides:

> (A) specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). If the movant establishes that it is justified in seeking *ex parte* relief, it next bears the burden to establish that injunctive relief is appropriate by showing: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

## **Analysis**

This Court finds that issuing this Order without notice pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure is appropriate, but only to a very

limited extent.  Specifically, the motion is granted to the extent that *Defendants are temporarily enjoined from issuing or enforcing holds on Plaintiff's academic records or preventing him from enrolling in or dropping classes, including remote or online classes, or from transferring out of USF to another educational institution.*  The motion is otherwise denied.

In granting this *temporary* relief, the Court emphasizes the undersigned is currently presiding over a criminal jury trial involving very serious allegations and does not have time to hold a hearing to consider the merits of Plaintiff's claims in detail before expiration of the deadline for registering for classes.  The Court has accepted Plaintiff's factual contentions as true, but it has not determined Plaintiff will in fact succeed on his claims, or that, as Plaintiff argues, he is "extremely" likely to succeed.

The Court assigns significant weight to the potential for irreparable harm to Plaintiff if he is precluded from registering for classes before the January 12 deadline, as alleged, so that he is unable to attend classes in person or remotely or seek transfer to other educational institutions.  On the other hand, there appears to be only a minimal burden or potential harm to Defendants or to the public in allowing registration until such time as the Court can hear this matter after a response from Defendants.  The Court will subject the merits of Plaintiff's claims to greater scrutiny at the time of the preliminary injunction hearing.

The Court's objective in granting this *temporary* relief is simply to preserve the status quo by allowing Plaintiff to register for classes before the expiration of

the registration deadline.  As to the other items of injunctive relief requested, Plaintiff has failed to sufficiently demonstrate the threat of irreparable harm much less irreparable harm that renders notice and a response by Defendants impractical.

The Court will not require a bond at this time because the record does not suggest that Defendants will suffer any injury in the short time frame between this Order and a preliminary injunction hearing, at which time the Court will revisit the issue of requiring a bond, as well as the other requirements for injunctive relief.

Finally, the Court notes that Plaintiff in his filings repeatedly asks the Court to take into account his *pro se* status and appears to suggest that the Court should not require him to comply with the various procedural rules that govern practice in the federal courts.  Plaintiff has chosen not only to file his case in federal court, but also has chosen to file a complaint that is 46 pages long, asserts 17 claims for relief, cites case law and statutes, and sets forth legal argument.  While much of this material is inappropriate in a complaint, it demonstrates a level of legal sophistication on the part of Plaintiff – or perhaps individuals assisting him. Plaintiff should not assume that violations of court rules or other legal requirements will be overlooked.  Even *pro se* plaintiffs must conform with procedural rules, including the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Florida.  Litigation – particularly in federal court – is difficult, and Plaintiff should consider hiring an attorney.  If Plaintiff is unable to afford counsel, he should consider the resources available to *pro se* litigants,

including the Legal Information Program operated by the Tampa Bay Chapter of the Federal Bar Association, and the Middle District of Florida's guide to assist *pro se* litigants proceeding in federal court, which is located on the Court's website.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Plaintiff's Emergency Motion for [an] Injunction, or in the Alternative, a Temporary Injunction/Restraining Order." (Doc. 4) is **GRANTED IN PART and DENIED IN PART**.

2. The motion is **GRANTED** to the extent that Defendants, their officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them, are temporarily enjoined and restrained from issuing or enforcing holds on Plaintiff's academic records or otherwise preventing him from enrolling in or dropping classes, including remote or online classes, or transferring out of USF to another educational institution.

3. The motion is otherwise **DENIED**.

4. Any Defendant or other person that is subject to this Order may appear and move to dissolve or modify the Order as permitted by and in compliance with the Federal Rules of Civil Procedure and Middle District of Florida Local Rules.

5. This temporary restraining order without notice is entered at 3:15 p.m. on this 9th day of January 2024 and shall remain in effect for fourteen (14) days unless otherwise modified or dissolved prior to that time.

6. This matter will be scheduled for a preliminary injunction hearing by separate notice on Tuesday, January 16, 2024, at 2:00 p.m.

7. Plaintiff is **DIRECTED** – before noon on January 10, 2024 – to serve on Defendants through email to their counsel, at the email addresses listed on counsel's filings in the parallel state court case, the following: 1) a copy of the complaint and its exhibits; (2) a copy of the motion and its exhibits; and (3) a copy of this Order.  Plaintiff is further **DIRECTED** to file with the Court on or before January 11, 2020, a statement that service on Defendants has been provided as directed.

8. Defendants are directed to file a response to Plaintiff's motion on or before noon on January 15, 2024.  Defendants' response should include any affidavits, declarations, or documentary evidence Defendants wish the Court to consider.  The Court does not anticipate live testimony at the January 16, 2024, hearing, which will be limited to legal argument and determining whether there are any facts in dispute to be considered at a

further hearing.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 9th day of

January, 2024.

_____

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DANIEL A. FRISHBERG,**

           **Plaintiff,**

**vs.**                                       **Case No.: 8:24-cv-22-TPB-NHA**

**UNIVERSITY OF SOUTH**
**FLORIDA BOARD OF TRUSTEES, et al.**

           **Defendants.**

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR AN INJUNCTION AND DEFENDANTS' MOTION TO DISSOLVE[1]

       Defendants hereby respond in opposition to "Plaintiff's Emergency Motion for [an] Injunction, or in the Alternative, a Temporary Injunction/Restraining Order" (Dkt. No. 4; Injunction Motion) and move to dissolve the temporary restraining order (Dkt. No. 9; Order).  Plaintiff's Motion must be denied and the Order dissolved for the following reasons:  (1) Plaintiff's claims under the FHA are barred by sovereign immunity and the Eleventh Amendment to the United States Constitution;[2] (2) the relief sought related to his registration is moot and was moot at the time of the Court's

---

[1] Defendants file this response pursuant to the Court's order dated January 9, 2024.  Plaintiff has not yet served process on either Defendant, and Defendants reserve the right to assert all arguments under Rule 12 once service is effectuated.

[2] Plaintiff's Injunction Motion appears to be based solely on the Fair Housing Act (FHA).  However, as addressed below, all of Plaintiff's claims fail as a matter of law.  All of the state claims are barred by sovereign immunity, and there is no cognizable claim under the ADA, which is the only other federal claim asserted.

Order;[3] (3) Plaintiff cannot establish subject-matter jurisdiction under Article III because he has made no showing imminent, future injury; and (4) Plaintiff cannot meet the burden to establish the elements of an injunction, including substantial likelihood of success, irreparable harm, or that the injunction serves the public's interest. Accordingly, Plaintiff's Injunction Motion must be denied, and the Court's Order entering a limited temporary restraining order must be dissolved. Defendants' arguments are further set forth in the accompanying memorandum of law.

## MEMORANDUM OF LAW

### I.     Statement of the Facts

#### A.     USF's Policy Regarding Assistance Animals and ESA Agreement

USF maintains a policy regarding animals on campus. (See Declaration of Andrew Johnson ("Johnson Decl."), Ex. 1 at 1). The policy states that "[a]ll animals brought on to any USF campus property must be under physical restraint. The animals must be under the complete control of and physically restrained by the owner/responsible party who is also responsible for ensuring the animal is safe and healthy." (Id. at 1). The policy states that "USF will follow all federal and state laws with regard to accommodations." (Id. at 1). To that end, the policy provides limited exceptions for certain animals, including Assistance Animals:

> Assistance Animals are permitted on campus with approval from the Office of Housing and Residential Education and must be contained within the private residential area (room, suite, and/or apartment) of at all times except when transported outside the private residential area in an animal carrier or

---

[3] Plaintiff previously registered for the Spring term on November 4, 2023, prior to the conduct decision, and the decision had no impact on his registration. (Johnson Decl., ¶ 3).

> controlled by leash or harness. Assistance Animals are not permitted in public spaces, classrooms, or work places unless they also meet the definition of Service Animal as provided by law and as permitted as part of an accommodation as provided in this Policy.

(Id. at 4).  The policy further states that, when an animal is permitted, it must be "under the complete control of and physically restrained by the Responsible Party." (Id.).  The animal is "not permitted to run at-large on any streets, unimproved lots, or premises within the boundaries of USF properties." (Id. at 3).  The policy explains that, "[i]f an animal disrupts the University educational process, administrates processes, or other campus function, the Responsible Party must remove the animal immediately." (Id. at 4).  Furthermore, the policy cautions that, "[s]tudents in violation of this policy may be referred to Student Conduct and Ethical Development [(SCED)] for disciplinary action." (Id. at 7).

On August 18, 2023, Frishberg signed and agreed to the terms of USF's Assistance Animal Housing Protocol & Agreement. (See Johnson Decl., Ex. 2 "ESA Agreement").  Specifically, the Agreement provided that the Assistance Animal must be controlled by him and must be contained within the residential area at all times, "except when transported outside the private residential area in an animal carrier or controlled by leash or harness." (Id. at 1, subsection b).  Further, "Assistance Animals cannot roam freely in common areas." (Id.).  In addition, Frishberg agreed that he "is responsible for assuring that the approved Assistance Animal does not unduly interfere with the routine activities of the residence or cause difficulties for students who reside there," and that "[s]ensitivity to residents with allergies and to those who fear animals

is important to ensure the peace of the residential community." (Id. at 2, subsection l).
Frishberg agreed that he must ensure that the Assistance Animal does not disrupt
others or their personal belongings, display any repeated behaviors or noises that are
disruptive to others, or "[l]eave the owner's room except when accompanied by the
owner."  (Id. at 2, subsection m).  The Agreement explained that "violation of the
above rules or University Policy may result in immediate removal of the Assistance
Animal from USF System premises and the owner being prohibited from continuing
to keep an Assistance Animal on University property." (Id. at 3, subsection t).

### B.    Frishberg Repeatedly Violates the ESA Agreement and Policy 6-033

On Thursday, October 5, 2023, SCED received a report detailing Frishberg's
open and repeated violations of the ESA Agreement and USF Policy.  (See Johnson
Decl., Ex. 3).  Specifically, the report explained that, despite reminders of the policy,
Frishberg had allowed his cat to be unrestrained and unaccompanied in the common
lounge area on the 5th floor of the dorm, the floor where Frishberg resided.  (Id. at 1).
Prior to this report, a number of students complained to the resident advisor (RA)
about the cat entering the common area and climbing on the counters.  (See Johnson
Decl., Exs. 4 and 5).  The RA repeatedly warned Frishberg that he was violating the
Agreement and USF policy.  (Id.).

Despite the complaints and warnings, Frishberg continued to allow his cat to
enter the common area unrestrained and unaccompanied, which resulted in an
argument over text message between Frishberg and a number of other residents on the

floor on October 5, 2023.[4] (Johnson Decl., Ex. 6; Ex. C).  Therein, in response to residents complaining that his cat is loose in the common area, Frishberg asserts that he has to let the cat out, not so that he can use the common area, but to keep the cat happy.[5] (Id.).  Specifically, he asserted:

- "Taking a cat outside is basically torture for it." (000005)

- "He gets freaked out when one person walks quickly past him." (000005)

- "Imagine how much of a sensory overload it is for him to step outside into a ton of noise." (000005)

- "He's gotta come out sometimes, otherwise it leads to issues.  I don't want to chase him down the hallway every time I open the door."[6] (000007)

- "Bruh if he wants to pop out once every two days so he stops trying to escape he will." (000002)

- "Shadow needs to be let out sometimes, or he isn't happy.  It's that simple." (000012)

- "^ if I don't let him out every once in a while, he tries to escape." (Ex. C at 1).

- "He was screaming by the door today so I let him out."  (Ex. C at 1).

- In response to a student's suggestion that Plaintiff take the cat outside, Plaintiff responded:  "Not really possible.  I've tried that and he freaks

---

[4] The text message chain spanned over 200 messages.  Screenshots of a portion of the messages are attached as Exhibit 6 to the Declaration of Andrew Johnson and Exhibit C.

[5] For example, on September 14, 2023, when a complaint was brought to Frishberg about "shadow being out," Frishberg responded: "I won't be so 'touchy' with him trying to socialize him."  (Johnson Decl., Ex. 4).  Thus, Frishberg admits that the cat was out, not to allow Frishberg to use the common area, but to socialize the cat.  (Id.).  A week later, on September 20, 2023, the RA again reminded Plaintiff of the policy prohibiting him from letting his cat loose to which Plaintiff responded: "My ESA is never outside of my room."  (Johnson Decl., Ex. 5).  The RA warned him that, if he lets his cat loose, it can lead to documentation.  (Id.).

[6] The ESA Agreement also required, "When an Assistance Animal is left in the owner's room without its owner, it must be crated or otherwise appropriately contained."  (Johnson Decl., Ex. 2).  Plaintiff's statement further admits that he was violating this provision of the agreement.

out." He also stated: "Yea not happening. He's gonna run away. Also, cats hate change. And new places." (Ex. C at 2).

(Id.). Although the residents also reminded him that he was violating USF's rules, Frishberg maintained that he did not care and would not abide by the policy:

- "Sorry if I'm being too upfront, but I have certain things I'm not compromising. He will come out some times." (000004)

- "Do you want me to lie and tell you I'll do whatever [RA] says? If so, I can." (000006)

- In commenting about USF policy, Frishberg stated: "Yea, I know. And it's a stupid one. He's going to come out – it's a matter of when. If you don't want him out, we can work out times where he will come out. Otherwise I'll switch back to what I used to do, and just let him out late in the evenings." (000007)

- "Yea being honest, I don't care. He's coming out." (000008)

- In response to comments that Plaintiff may be removed from housing for violating policy, Plaintiff responded: "Ehh not really a risk. They'd need to evict me to do that, and the school year will end before then" (000008)

- "Yea and? The school has a lot of rules. Most of them aren't followed or enforced." (000009)

- "And? They can't do anything without a court order. Including limiting my access to the room." (000010)

- I "will let him out in the evenings. It's that simple." (000011)

- In response to a student's statement that Frishberg is violating policy, Frishberg responded: "Yea idc. He's gonna be out there. I'm going to be polite and try to not do it while you're there." (000012)

(Id.). Frishberg refused to abide by the rules, stated that the cat will be let out, and admitted that he had been letting the cat out since last year and normally let the cat our late in the evenings:

- "He was out last year and no one had an issue with it" (000006)

6

- "He's going to come out— it's a matter of when. If you don't want him out, we can work out times where he will come out. Otherwise I'll switch back to what I used to do, and just let him out late in the evenings." (000007)

- "If they don't like it, it's a them problem." (000012)

(Id.).

Frishberg repeatedly asserted to USF and others that he would not follow the rules. (Id.; see also Johnson Decl., Ex. 4, 16). Given Frishberg's complete disregard for USF's policies, the RA informed Frishberg that she would be submitting an incident report. (See Johnson Decl., Ex. 7). Frishberg responded that he "will let [the cat] out no matter what" because the cat needs to be out. (Id.). He also asserted: "I don't back down, no matter what." (Id.). Later that night, a resident complained that the cat was again on the counter. (See Johnson Decl., Ex. 8). The same resident complained multiple times over the next week that Frishberg let his cat loose in the common area. (Id.).

## C.    SCED Formally Charges Frishberg with Conduct Violations

On October 13, 2023, SCED formally charged Frishberg with violations of the USF Student Code of Conduct[7] provisions on Failure to Comply and Residence Hall Policies. (See Johnson Decl., Exs. 9-10). An informational meeting was held on

---

[7] "The Student Code of Conduct describes standards of behaviors that are counteractive to the goals and mission of the University and the process for how the University will hold students and student organizations accountable to these standards of behavior." (Johnson Decl., Ex. 10). The policy identifies the standards of conduct; explains the student conduct process, including the right to appeal; and the range of sanctions that can be imposed with an educational workshop on the low end and including up to expulsion. (Id.). Failure to comply with USF's policies can also result in the cancellation of the housing agreement. (Johnson Decl., Ex. 16, 18).

October 20, 2023.  (Id. at 1; Ex. 11). In this meeting, the charges and allegations were explained, and Frishberg was provided the opportunity to review the available information supporting the charges of violations. (Id. at 3).  Additionally, he was informed of his rights and resolution options.  (Id.).

Under the student conduct process, Frishberg could elect an administrative hearing before a hearing officer or a formal hearing before a UCB conduct board, which was compromised of two trained students and a faculty member.  (Johnson Decl., Ex. 10 at 17-18).  Frishberg elected a UCB hearing on October 20, 2023. (See Johnson Decl., Ex. 11 at 3).  However, he also stated, "I DO NOT CONSENT to any decision by the conduct board, nor do I agree to be bound by it." (Johnson Decl., Ex. 12).

The following day, October 21, 2023, SCED received another report that Frishberg was once again allowing his cat to roam unrestrained in the common area. (See Johnson Decl., Ex. 13).  When an RA instructed Frishberg to comply with USF policy, he said that "he did not care, that [RA] could not do anything, and/or that Resident Frishberg could not get punished." (Id.).  During this interaction, "Frishberg shared that the main reason for letting Shadow out of his room was because Shadow constantly whines whenever Resident Frishberg opens the door or whines in the middle of the night." (Id. at 2).  He said that it was necessary for him to let the cat loose to be able to keep the cat from whining.  (Id.).  He also said that the cat could not be taken outside because the cat does not like it.  (Id.).

On November 2, 2023, SCED informed Frishberg that his formal hearing was

scheduled for November 21, 2023.  (See Johnson Decl., Ex. 14).[8]  On November 4, 2023, Frishberg registered for classes with USF for the 2024 spring semester.  (See Johnson Decl., ¶ 3).

### D.    USF Revokes Frishberg's Waiver Because of His Repeated Violations

On November 9, 2023, Johnson informed Frishberg that his waiver to have an animal on-campus was being rescinded because of his violations of the ESA Agreement, specifically, by allowing his cat to roam freely in the residence hall, including the common areas.  (See Johnson Decl., Ex. 16).  Johnson provided photos showing the cat loose and unaccompanied.  (See Johnson Decl., Ex. 17).  He informed Frishberg that he must remove the cat by 12:00 p.m. on November 13, 2023, which he extended to 8:00 p.m.  (See Johnson Decl., Ex. 16, 18).  Johnson warned that failure to comply with this directive would result in further action, including a referral to SCED and/or the cancellation of his Student Housing Agreement.  (Id.).

On November 9 and 13, 2023, Frishberg exchanged emails with Johnson, claiming that he misunderstood the Agreement and did not violate it.  (See Johnson Decl., Ex. 18).  Johnson explained that the Agreement was reviewed with Frishberg when he signed it, and Frishberg acknowledged that he understood the terms and conditions.  (Id.).  Johnson further explained that the terms clearly state that

---

[8] Frishberg was informed of the procedure for the hearing and his rights, including that the right to review the evidence to be used at the hearing; his right to submit records, exhibits, and written statements for consideration; as well as his ability to present and inquire of the witnesses. (See Johnson Decl., Ex. 14).  A few days later, SCED provided Frishberg with a link to access the relevant information that would be presented at the formal hearing.  (See Johnson Decl., Ex. 15).

"Assistance Animals cannot roam freely in common areas, which leave no room for misinterpretation." (Id.).  Frishberg argued that his cat never roamed freely within the common area, "He mostly was sitting around, and occasionally would peak around a corner/look down the hall with specific intent." (Id.).  Johnson warned Frishberg that if the cat was not removed, then he would be forced to issue an administrative dismissal from USF Housing. (Id.).  Frishberg asserted that USF's only remedy would be a breach of contract action. (Johnson Decl., Ex. 19).  He also stated that "if you go looking for a [legal] fight, you will get a [legal] fight." (Id.).

On November 14, 2023, Frishberg informed Johnson that he unsuccessfully attempted to relocate the cat, and that "[the cat] will be staying here." (See Johnson Decl., Ex. 19).  In response, Johnson extended the deadline (a second time) for Frishberg to remove the cat to November 17, 2023, by 2:00 PM.  (Id.).  Frishberg again failed to remove the cat, contending "he and I will remain here" and he has kept his cat contained even though the cat "has spent 3+ hours a day yelling loudly." (Id.).

On November 17, 2023, after confirming that Frishberg failed to comply with the directive to remove the cat, Johnson informed Frishberg that USF would be administratively cancelling Frishberg's Student Housing Agreement effective Monday, November 27, 2023, at 12:00 p.m. and he needed to checkout by that date. (See Johnson Decl., Ex. 20 at 3–4).  Johnson explained to Frishberg that his rent charges would cease as of November 27, 2023, and "a credit would be issued for the balance of the fall term." (Id. at 4).  Frishberg responded: "I, and my cat will remain in the dorms until the contract expires (so at the end of the spring term)." (Id. at 1).

### E.      USF Finds Frishberg Responsible for Violations of the Student Code

On November 21, 2023, SCED held Frishberg's formal hearing.  (See Johnson Decl., Ex. 21).  Based on the information provided at the hearing, the UCB determined that Frishberg was responsible for the violations of USF policy.  (Id.).  As a sanction, the UCB required that Frishberg complete a one-hour civility workshop and write a reflection assignment.  (Id.).  He was required to pay $25 for the workshop by December 15, 2023.  (Id.).  Frishberg was informed that failure to complete the sanction will result in an administrative hold, which may impact his future ability to register for courses.  (Id.).  However, the sanctions did not cancel any current registration already completed.  (Johnson Decl., ¶ 3).[9]  Frishberg asserted that "regardless of what [the] board decided, I am not 'responsible' until a court says otherwise." (Johnson Decl., Ex. 22).   He also stated, "I will not be attending any of the irrelevant purportedly assigned classes without a court order."  (Id.).

### F.      Frishberg Declines USF's Offer of Emergency Housing

On November 27, 2023, after USF had administratively canceled Frishberg's housing agreement, Frishberg failed to check out of his room.  (See Johnson Decl., Ex. 23 at 3).  Johnson notified Frishberg that, because he failed to check out, USF removed ID card access to the residential hall, rekeyed his former room at his expense, and credited him for rent from November 27–December 8, 2023.  (Id.).   Johnson

---

[9] Frishberg also was informed that he had five business days to appeal the determination of responsibility and sanctions.  (See Johnson Decl., Ex. 21 at 2–3).  He did not submit an appeal.  (See Johnson Decl., ¶ 4).

informed Frishberg that he must contact USF Police to remove his personal property from the room and complete his check-out by November 29, 2023.  (Id.).

Frishberg responded that he and the cat would be returning to campus on November 28 and that USF could not deny him access without a court order.  (Id. at 2-3).  Johnson explained that Frishberg would need to contact the USF Police to access his room to retrieve his belongings.  (Id. at 1).  Frishberg responded that he would not be removing his property.  (Johnson Decl., Ex. 24 at 2).

On November 28, 2023, USF offered Frishberg emergency housing so he could complete the term. (Id. at 2-3).  Frishberg declined USF's offer for emergency housing.  (Id. at 2).  Instead, he stated, "I want access to my legally rented room, and expect to obtain it via the courts."  (Id.).  After declining USF's housing offer, Frishberg filed a complaint and emergency motion for injunction in state court under Chapter 83, Florida's landlord-tenant law.[10]  (See Exhibit B).  On December 4, 2023, USF extended Frishberg's deadline to retrieve his personal belonging to January 8, 2024, to allow him time to secure housing for the Spring term.  (See Johnson Decl., Ex. 25).

### G.   Frishberg Refuses to Complete Workshop Sanction

On December 12, 2023, SCED sent a reminder to Frishberg to complete payment for the one-hour workshop to satisfy the sanctions requirement.  (See Johnson Decl., Ex. 26 at 2).  Frishberg responded, "I will not be doing the workshop,

---

[10] Chapter 83 of the Florida Statutes governs issues related to the Landlord/Tenant relationship. Because Frishberg's residency was incidental to the provision of educational services, Chapter 83 is inapplicable to him.  Fla. Stat. § 83.42(1).

or any other 'sanctions' that I was assigned due to letting my ESA out of my room." (Id.).  USF reminded Frishberg that failure to complete sanctions would result in a hold being placed on his account. (Id. at 1).  On December 13, 2023, after the deadline to file an appeal, Frishberg sent an email to SCED seeking reconsideration of the conduct decision.  (See Johnson Decl., Ex. 27 at 2).  SCED explained that the window to appeal the decision had passed, and again encouraged him to complete the assigned sanction to prevent the hold from being placed on his account.  (Id. at 1).

Since December 13, 2023, Frishberg has pursued his claims against USF in state court, and filed this duplicative action in federal court on January 2, 2024.  Because Frishberg refused to complete the assigned sanctions, the conduct hold was entered on January 2, 2024, as Frishberg was previously warned.  (See Johnson Decl., ¶ 3). Plaintiff did not complain of this hold until January 8, 2024, at 11:12 a.m. (See Exhibit A).  At that time, Frishberg sent the undersigned a copy of this Injunction Motion whereby he represented that he was unable to register for classes due to the conduct hold.  (Id.).  Plaintiff also requested that USF continue to hold his property until January 31, 2024.  (Id.).  A little more than hour later, at 12:29 p.m., the undersigned responded to Plaintiff granting him a third request to extend the time to hold his property and confirming that the conduct hold on his ability to register for classes had been lifted.  (Id.).  This email was provided *before* the emergency motion was docketed by the clerk in this Court.  (Id.).  Yet, Plaintiff made no attempt to inform the Court or correct the representations made in his Injunction Motion.

Moreover, upon review of Plaintiff's records with the USF Registrar, it was

13

discovered that Plaintiff actually registered for classes for the Spring 2024 term on *November 4, 2023*. (Johnson Decl., ¶ 3). Upon receipt of this information, the undersigned counsel brought this to Frishberg's attention and requested that he correct the representations made to the Court, which he refused to do.

## II. Legal Argument

### A. Defendants Are Entitled to Sovereign Immunity

The Eleventh Amendment prohibits federal courts from exercising subject matter jurisdiction in suits brought against a state by a citizen of that state. <u>Pan–Am Tobacco Corp. v. Dep't of Corr.</u>, 471 So.2d 4, 5 (Fla.1984). The Eleventh Amendment extends to state agencies and other arms of the state. <u>Univ. of S. Fla. Bd. of Trustees v. CoMentis, Inc.</u>, 861 F.3d 1234, 1235 (11th Cir. 2017). State agencies are immune from suit under the Eleventh Amendment unless their immunity is either waived by the state or abrogated by Congress. <u>Gamble v. Fla. Dept. of Health and Rehabilitative Services</u>, 779 F.2d 1509, 1511 (11th Cir.1986). The States or their agencies "retain their immunity against *all* suits in federal court." <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146 (1993). Actions for injunctive relief against a state or its instrumentality are also barred by the Eleventh Amendment. <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978).

Florida defines USF to be a part of the state government. <u>See</u> Fla. Stat. § 1000.21(6)(j). Specifically, the state of Florida has declared that the "boards of trustees [of state universities] are a part of the executive branch of state government." <u>Id.</u> § 1001.71(3). The state therefore clearly defines the USF Board to be a part of its

government.  See CoMentis, Inc., 861 F.3d at 1235.  As it is part of the state, USF is entitled to Eleventh Amendment immunity.[11]

Here, Plaintiff seeks injunctive relief pursuant to the federal Fair Housing Act ("FHA").  (See Injunction Motion at 7–12).  Congress has not abrogated Eleventh Amendment immunity for claims brought under the FHA.  See McCardell v. United States HUD, 794 F.3d 510, 522 (5th Cir. 2015) ("We hold that Congress did not make clear an intent to abrogate States' Eleventh Amendment sovereign immunity from suits brought under the Fair Housing Act . . . ."); Rattner v. 1809 Brickell, LP, No. 1:21-cv-23426-KMM, 2022 U.S. Dist. LEXIS 240669, at *21 (S.D. Fla. Apr. 18, 2022) ("Nor does the Fair Housing Act, 42 U.S.C. §§ 3601-3631, contain a waiver of sovereign immunity."); Hunt v. Ga. Dep't of Cmty. Affairs, No. 1:09-CV-3137-RWS, 2010 U.S. Dist. LEXIS 136444, at *5-8 (N.D. Ga. Dec. 23, 2010).[12]  Because Florida has not waived its Eleventh Amendment immunity for Plaintiff's FHA claims, this Court lacks jurisdiction to issue an injunction.

**B.  The Temporary Restraining Order Must Be Dissolved Because Plaintiff Registered for Spring Term Classes on November 4, 2023**

---

[11] Defendant HRSE also is entitled to Eleventh Amendment immunity as its sole role with respect to this matter is that it is the owner of the building.  Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000) ("It is well established that Eleventh Amendment immunity encompasses not only cases in which the State itself is named as a defendant, but also certain actions against state agents and state instrumentalities.").  Plaintiff also has not alleged or provided any evidence that HRSE had any role in or made any of the decisions at issue.  Thus, there is no basis for a claim against Defendant HRSE.

[12] Although Plaintiff does not pursue injunctive relief pursuant to his state law "contract" claims against Defendants, those are also barred by sovereign immunity.  See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287–88 (11th Cir. 2003).  The only other claim arguably made in the Complaint is a claim under Title II of the ADA.  However, as set forth below, there is no cognizable claim under the ADA for refusal to accommodate an emotional support animal.  And thus, all of Plaintiff's claims fail as a matter of law.

In accordance with Rule 65(b)(4) and the Court's Order (Dkt. No. 9), Defendants seek to dissolve the limited temporary restraining order entered in this case.  For the same reasons that Plaintiff's claim for injunctive relief fails, the Court should dissolve the temporary restraining order, including the Court's lack of subject-matter jurisdiction over this action.

Moreover, as set forth above, Plaintiff failed to accurately represent the facts in this case.  Notably, Plaintiff represented that he was unable to register for classes (see Order at 3-5), but he was, in fact, already registered for classes (Johnson Decl., ¶ 3). Prior to the docketing of his motion, and approximately 90 minutes after he first raised the issue, the undersigned counsel also informed Frishberg that the conduct hold had been lifted.  (See Exhibit A).  While Frishberg failed to inform the Court, it nonetheless establishes that the relief requested was moot and Plaintiff could not establish "the irreparable nature of the threatened injury"; "clearly show that immediate and irreparable injury, loss, or damage will result to the movant"; or establish the "harm that might result absent a restraining order," which are mandatory prerequisites for the order.  Local Rule 6.01(b); Rule 65(b)(1).  Therefore, the temporary restraining order must be dissolved.

### C.    This Court Lacks Subject Matter Jurisdiction to Enter Injunction

The irreducible constitutional minimum of Article III standing consists of three elements, as the plaintiff must have: (1) an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that

the injury "will be redressed by a favorable decision."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016).

Thus, to establish standing, Frishberg must show: "(1) he is likely to suffer a future injury; (2) he is likely to suffer the injury at the hands of the defendant; and (3) the relief he seeks will likely prevent the injury from occurring."  Navellier v. Fla., 672 F. App'x 925, 928 (11th Cir. 2016).  Indeed, "because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury."  Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (recognizing that, in an ADA case, to seek injunctive relief, the plaintiff must show he will suffer future discrimination) (emphasis added); see also United States v. Oregon State Med. Soc., 343 U.S. 326, 333 (1952); Koziara, 392 F.3d at 1305.  "Injury in the past, however, does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment."  Shotz, 256 F.3d at 1082; see also City of Los Angeles v. Lyons, 461 U.S. 95, 102-03, 105, 108, 111 (1982); Alabama v. U.S. Army Corps of Eng'rs., 424 F.3d 1117, 1133 (11th Cir. 2005); Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994).  Further, even when past injuries are irremediable, injunctive relief is not available.  Alabama, 424 F.3d at 1133.  Plaintiff also cannot seek an injunction that simply compels Defendants to obey the law.  See Elend v. Basham, 471 F.3d 1199, 1209 (11th Cir. 2006).

Here, Plaintiff only complains about the actions taken by USF in the past.  Even if Plaintiff could show that these past actions resulted in an irremediable injury, which he has not done, that is not a basis for an injunction.  See Alabama, 424 F.3d at 1133. Plaintiff has not marshalled any evidence to show or even sufficiently alleged that Defendant will violate the law in the future—or that such action is imminent or real. Instead, he is merely seeking injunctive relief to purportedly remedy *past* acts. (Injunction Motion at 16–17), which the Eleventh Circuit clearly has held does not provide jurisdiction for this Court to act.  Alabama, 424 F.3d at 1133.

### D.    Plaintiff Cannot State a Claim for a Preliminary Injunction

To obtain a preliminary injunction, the movant must show that: (1) he has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest.  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000).  A preliminary injunction is an extraordinary remedy not to be granted unless the movant clearly carries his burden as to the four prerequisites.  United States v. Jefferson Cty., 720 F.2d 1511, 1519 (11th Cir. 1983).

### 1.    Plaintiff Failed to Show a Substantial Likelihood of Irreparable Injury

Plaintiff has failed to demonstrate that he will be irreparably harmed absent an injunction.  Because a showing of irreparable injury is "the sine qua non of injunctive relief," Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990), the absence of a substantial likelihood of

irreparable injury, standing alone, makes preliminary injunctive relief improper, <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000).  To qualify as irreparable, the injury or harm must be actual and imminent, not remote or speculative.  <u>City of Jacksonville</u>, 896 F.2d at 1285.  Further, an injury is "irreparable" only if it cannot be undone through monetary remedies.  <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974).  Moreover, it is well settled that avoidable harm is not irreparable harm.  <u>See</u> <u>Scroos LLC v. AG</u>, No. 6:20-cv-689-Orl-78LRH, 2020 U.S. Dist. LEXIS 171747, at *7 (M.D. Fla. Aug. 27, 2020) ("Self-inflicted wounds do not constitute irreparable harm.").  If Plaintiff can mitigate the threatened "irreparable harm," he cannot refuse to do so and yet still claim that he would be irreparably injured absent an injunction.  <u>See, e.g.</u> <u>Salt Lake Trib. Publ'g Co. v. AT & T Corp.</u>, 320 F.3d 1081, 1106 (10th Cir. 2003); <u>Air Transp. Int'l LLC v. Aerolease Fin. Group, Inc.</u>, 993 F. Supp. 118, 123 (D. Conn. 1998) ("Even if [the plaintiff] could demonstrate that it would be irreparably harmed, it must also show that it could not prevent such harm."); <u>see also</u> <u>Am. Brands, Inc. v. Playgirl, Inc.</u>, 498 F.2d 947, 950 (2d Cir. 1974) (affirming district court's denial of preliminary injunction to plaintiff seeking to compel defendant to publish plaintiff's ad in its magazine because plaintiff failed to show other, similar advertising space was unavailable).

Here, Plaintiff argues that USF has excluded him from on-campus housing, which he claims is causing him irreparable harm because he is unable to attend university classes in-person due to lack of any housing near campus.  (Injunction Motion at 4, 6).  He also argues that he will suffer irreparable harm in the form of "missed educational content and time" if USF is allowed to prevent him from enrolling

in and attending classes. (Injunction Motion at 14). As an initial matter, USF did not exclude Plaintiff from obtaining housing in the area and did not prevent him from registering for classes. USF even offered Plaintiff emergency housing to complete the fall term and give him additional time to obtain alternative housing, but he declined the offer. (See Johnson Decl., Ex. 24 at 4). Additionally, Plaintiff registered for classes with USF for the 2024 spring semester on November 4, 2023, and remained registered for those classes on January 8, 2024. (See Johnson Decl., ¶ 3). The University did not take any action to cancel this registration. (Id.). The conduct hold, which was entered on January 2, 2024, and lifted on January 8, 2024, did not impact Plaintiff's registration for these classes. (Id.). Further, the conduct hold was entered only because Plaintiff refused to complete a one-hour workshop. (See Johnson Decl., Ex. 21). Plaintiff could have appealed the determination of responsibility and sanctions (see Johnson Decl., Ex. 21 at 2–3), but he failed to do so. (See Johnson Decl., ¶ 4). Plaintiff has not provided any evidence that housing is unavailable, or that he even searched for alternative housing. A simple Google search reveals several available housing vacancies near the USF campus. All of Plaintiff's alleged harms could have been avoided by him.

Additionally, Plaintiff cannot show that monetary damages are inadequate to remedy any alleged harm. As Plaintiff was registered for classes with USF at the time he filed his Injunction Motion, at bottom, the only injury identified is a financial one— the difference in cost between his USF housing and alternative housing in Tampa. Plaintiff's voluntary decision not to search for alternative housing on his own, does

not establish irreparable harm.  See, e.g., Bellin v. La Pensee Condo. Ass'n, No. 05-80071-CIV-MARRA/SELTZER, 2005 U.S. Dist. LEXIS 59287, at *23-24 (S.D. Fla. Oct. 12, 2005) (rejecting plaintiff's assertion "that she will be irreparably harmed if [the association] is permitted to foreclose on her condominium [because] Plaintiff can take a simple step to avoid such an outcome: she can pay the assessments levied by [the association]").  Plaintiff also claims he will suffer irreparable harm if forced to travel to USF "and pick up his stuff," as flights are expensive.  (Injunction Motion at 16).  Obviously, the fact that Plaintiff attaches a dollar amount to the harm (Injunction Motion at 17) proves that it is not irreparable as a matter of law, even if he cannot afford it.  Sampson, 415 U.S. at 90.   Plaintiff has not and cannot identify any future injury that could not be remedied by monetary relief, which is fatal to his claim.

### 2. An Injunction Does Not Serve the Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).  Here, Plaintiff's disregard and disdain for USF, its rules, and the effect his behavior had on his peers shows that the public interest would be disserved by an injunction.

Plaintiff repeatedly asserted that he would not follow the rules of the University, even though he expressly agreed to do so when seeking University housing.  He taunted other students when they asked him to comply.  And he repeatedly asserted that he could not be required to follow the University's rules without a court order. This behavior is directly contrary to fundamental requirements of community living at

any university, including USF. Given Plaintiff's behavior, it certainly would not serve the public's interest to re-house him when he expressly refuses to recognize the authority of USF or to abide by the rules that all other members of the community must honor. Thus, an injunction, based on these circumstances, does not serve the interests of the public, even if Plaintiff could establish a lawful basis for his claims or irreparable harm. This evidence also establishes that the balance of harm favors USF.

### 3. Plaintiff Failed to Show a Substantial Likelihood of Success on the Merits

Although the Court need not consider the merits of Plaintiff's FHA claims because his claim for a preliminary injunction fails for all of the above reasons, even if considered, Plaintiff failed to show a substantial likelihood of success on the merits of his FHA claims.[13] His FHA claims appear to be attempting to state a claim for failure to accommodate. To prevail on a reasonable accommodation claim, a plaintiff must

---

[13] To the extent that Plaintiff's Complaint could be interpreted to include a claim under Title II of the ADA, it also fails to state a claim as a matter of law. The regulations interpreting Title II of the ADA specifically provide protections for the use of service animals and "exclude emotional support animals from coverage under the ADA." Maubach v. City of Fairfax, No. 1:17-cv-921, 2018 U.S. Dist. LEXIS 73815, at *17 n.6 (E.D. Va. Apr. 30, 2018); see also 28 C.F.R. § 36.104. The regulations expressly exclude emotional support animals. Id. Further, in discussing the modification in policies, practices, or procedures that must be made by public entities under Title II of the ADA, the regulation excludes emotional support animals. 28 C.F.R. § 36.302. Thus, several courts have recognized that there is no protection or claim under Title II of the ADA related to the denial of an emotional support animal. See Sykes v. Cook Cty. Circuit Court Prob. Div., 837 F.3d 736, 740 (7th Cir. 2016) ("'Emotional support animals' are not considered service animals which fall under Title II's mandate."); Toma v. 38th Dist. Court, No. 18-CV-11066, 2019 U.S. Dist. LEXIS 72148, at *4 (E.D. Mich. Apr. 29, 2019) (holding that "plaintiff's claim that defendant failed to reasonably accommodate his disability by prohibiting him from bringing his emotional support dog into court shall be dismissed"); Cohen v. Howard, Civil Action No. 23-cv-02104-SBP, 2023 U.S. Dist. LEXIS 204750, at *4-5 (D. Colo. Nov. 9, 2023); Baird v. 1600 Church Rd. Condo. Ass'n, No. 17-4792, 2017 U.S. Dist. LEXIS 191533, at *7 (E.D. Pa. Nov. 17, 2017) (finding that "the ADA does not provide protection for emotional therapy dogs as accommodations for disabilities"). Here, it is undisputed that Plaintiff's cat is not a service animal. See 28 C.F.R. § 35.104; (Complaint at 3). As a result, any claim under the ADA fails as a matter of law and cannot support Plaintiff's Motion.

establish that: (1) he is disabled or handicapped within the meaning of the FHA; (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling; and (4) the defendants refused to make the requested accommodation. Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218-19 (11th Cir. 2008).

"To succeed on a failure-to-accommodate claim, a plaintiff must demonstrate that its requested accommodation is 'necessary.'" Rood v. Town of Ft. Myers Beach, Fla., No. 2:20-CV-981-SPC-KCD, 2022 WL 3544398, at *9 (M.D. Fla. Aug. 18, 2022) (citations omitted). "[A] 'necessary' accommodation is one that alleviates the effects of a disability." Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277, 1288 (11th Cir. 2014). However, "[i]f accommodations go beyond addressing [the needs created by the disability] and start addressing problems not caused by a person's handicap, then the handicapped person would receive not an 'equal,' but rather a better opportunity to use and enjoy a dwelling." Schwarz, 544 F.3d at 1226. The law "cannot support" such preferential treatment. Id.; see also Schaw v. Habitat for Human. of Citrus Cnty., Inc., 938 F.3d 1259, 1272 (11th Cir. 2019); Philippeaux v. Apartment Inv. & Mgmt., 598 F. App'x 640, 644 (11th Cir. 2015); Terrell v. USAir, 132 F.3d 621, 627 (11th Cir. 1998). "The inquiry is whether the requested accommodation would provide a disabled person an opportunity . . . that would otherwise—due to his disability—elude him." Schaw, 938 F.3d at 1273. The accommodation must (1) actually alleviate the effects of the plaintiff's disability and (2) address the needs created by the plaintiff's disability. Sailboat Bend Sober Living

23

LLC v. City of Ft. Lauderdale, 46 F.4th 1268, 1280 (11th Cir. 2022).

Here, Plaintiff cannot show that Defendants failed to accommodate him or that his requested accommodation (allowing the cat to roam or be unrestrained) was necessary.  USF provided Plaintiff a waiver of its policy regarding animal on campus, and allowed Plaintiff's Assistance Animal according to the rules provided in the Agreement.  "[N]othing in the FHA precludes the imposition of appropriate rules and regulations designed to lessen the impact of housing a pet in a no pet building." Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua, 304 F. Supp. 2d 1245, 1259 n.29 (D. Haw. 2003); see also Stevens v. Hollywood Towers & Condo. Ass'n, 836 F. Supp. 2d 800, 809 (N.D. Ill. 2011).  Thus, Plaintiff would need to show not only that he has a handicap that requires him to have his cat, but that his handicap makes it necessary, as a reasonable accommodation, to allow the cat to roam the common area unaccompanied or unrestrained.  Id.  Plaintiff has provided no evidence that this was necessary for him due to an alleged disability.

Plaintiff repeatedly asserted to his fellow students and others that he needed to let the cat out of the room for the comfort of *the cat*, not so he could access a common area.  (See Johnson Decl., Ex. 6, 7, 13; Ex. C).  Indeed, he was not even present as he has admitted.  (Id.).  He did not assert that it was necessary for *his use* of the common areas, but to stop his cat from escaping or whining and because his cat refused to go outside for exercise.  (Id.; see also Johnson Decl., Ex. 13 at 2).  Indeed, the evidence shows that he repeatedly did not accompany the cat, as depicted in pictures, as well as the reports of students who found the cat in the lobby or on the counters.  (Id.).  There

is no right under the FHA for Plaintiff to allow his cat to roam the hallway, counters, or other common areas.  Indeed, to allow Plaintiff to do so, and overtly flout the University's reasonable restrictions, would provide Plaintiff will preferential, not equal, treatment, which is not required under the FHA.  Plaintiff was not precluded from having his cat in his private room, nor was he precluded from accessing all of the common areas of the building with a restrained animal.  He simply did not want to follow the rules in USF's policy or his Agreement.  As such, he has not shown and cannot show a substantial likelihood of success on the merits of his FHA claim.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned hereby certifies that counsel for Defendant has attempted to confer with Plaintiff, but Plaintiff has not responded.  Thus, counsel for Defendant has been unable to determine Plaintiff's position regarding this motion.  In accordance with the undersigned's obligation pursuant to Local Rule 3.01(g), counsel for Defendant will continue to attempt to confer with Plaintiff and will supplement this certificate when appropriate.

Dated this <u>15th</u> day of January, 2024.

Respectfully submitted,

*s/ Sacha Dyson*
SACHA DYSON
Florida Bar No.: 509191
sdyson@bgrplaw.com

BUSH GRAZIANO RICE & HEARING, P.A.
100 S. Ashley Drive, Suite 1400
Tampa, Florida 33602
TEL:  (813) 228-7000
FAX: (813) 273-0091
Attorneys for Defendants

| | |
|---|---|
| **From:** | CalifornianKing |
| **To:** | Sacha Dyson |
| **Cc:** | Analisa Whiteside; Kevin Sullivan; Michelle McLeod |
| **Subject:** | Re: Notice of Filing Of Emergency Motion in Case Number 8:24-cv-00022-TPB-NHA |
| **Date:** | Monday, January 8, 2024 12:42:40 PM |

Dear Mrs. Dyson,

Thank you for the information about the storage of property. I will register for classes once they become available. I cannot remove my property by the end of the business day today (5pm EST) since that is in approximately 4 1/2 hours. I am currently in California. Even if I was already sitting on a plane taking off, I wouldn't be there before 6-7pm (assuming there was a direct one available). So storing it is the only option.

As of now my need for relief still exists, since the classes I need are NOT available (lack of space) online. I still am enrolled in the in person ones.

We should figure out what facts USF disputes.

I was not allowing my ESA to roam "unaccompanied". I was with my ESA in the common area. The ESA was not using the common area, I was. I was not, nor am I asking you to allow my assistance animal free access to the common area. I am asking that you allow ME to use the common area with my assistance animal. My ESA did slip out a few times when I didn't notice, but that was a small handful of times over the semester (usually when I was making food with the microwave and was focused on the hot bowl of food in my hand). My assistance animal helps reduce my anxiety, and stress.

If this is a matter of putting a leash on my assistance animal, I can do that assuming you're willing to settle this matter.

In regards to the sanctions, the policy that they stem from is illegal and discriminatory. I'm sure you're aware that USF committed numerous unlawful acts which constitute discrimination (including in writing).

Best Regards,

Daniel Frishberg

On Mon, Jan 8, 2024 at 9:29 AM Sacha Dyson <sdyson@bgrplaw.com> wrote:

> Dear Mr. Frishberg:
>
> Reiterating that currently there is no room assignment and no housing agreement for Spring Term 2024, USF has asked HRE for a storage/removal cost for continued storage of your personal property until Jan. 31, 2024. On January 31, 2024, any property not retrieved will be considered abandoned with NO extension possible. USF

**EXHIBIT A**

is working on that estimate based on the established abandoned property protocols and will provide that cost of the storage and add to your OASIS at the end of business today OR you can remove your property by the end of business today.

As to the recent demand for immediate relief to register for courses, the Office of Student Conduct and Ethical Development (SCED) has advised that you have indicated you will not be complying with the sanctions as issued. To facilitate your registration for courses, SCED has lifted the hold on registration for courses for non-compliance to permit registration for Spring Term 2024 with the hold being reactivated after registration. This will enable you an opportunity to complete the sanctions before next term without delay to academic progress.

As indicated earlier, USF will not permit free access by a ESA to common areas (as you know, you were allowing your ESA to roam unaccompanied and unrestrained in these areas) and will enforce the ESA agreement and the current restriction from housing.

Thanks,

Sacha

**Sacha Dyson | Bush Graziano Rice & Platter, P.A.**

**Board Certified in Labor & Employment Law**

(813) 204-2853 (Direct Dial)

sdyson@bgrplaw.com

**From:** CalifornianKing <dannyfrishberg@gmail.com>
**Sent:** Monday, January 8, 2024 11:12 AM
**To:** Sacha Dyson <sdyson@bgrplaw.com>; Michelle McLeod <mmcleod@bgrplaw.com>; Kevin Sullivan <ksullivan@bgrplaw.com>; Analisa Whiteside <awhiteside@bgrplaw.com>
**Subject:** Notice of Filing Of Emergency Motion in Case Number 8:24-cv-00022-TPB-NHA

Dear BGRP Team,

The attached emergency motion was just filed in the District Court, it has not yet been docketed, but I am serving it immediately anyways.

Best Regards,

Daniel Frishberg,

Pro Se

HILLSBOROUGH COUNTY CCC
NOV 28 2023 PM 12:51

# IN THE CIRCUIT/COUNTY COURT OF THE THRTEENTH JUDICIAL CIRCUIT, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

Daniel A. Frishberg

Case Number: 23 - 125005

Division: S

**Plaintiff(s)**

vs

University of South Florida care of Andrew Johnson and ~~associated parties~~ HRSE Capstone Management care of Jana Faro

**Defendant(s)**

Address 4202 E Fowler Ave, and 8588 Potter Park Driv
(number)      (street)

Tampa, FL, 33620   Suite 500, Sarasota, FL
(city)   (state)   (zip code)   34238

Phone: 813-974-0001   991-554-8838
4 DF

## STATEMENT OF CLAIM

Plaintiff(s) sues defendant(s) for damages which do not exceed $8,000.00 exclusive of costs and interest for (check one category below):

☐ Auto Accident occurring on or about _____ in the vicinity of _____ _____, in _____ County, Florida caused by negligent operation of a vehicle operated by _____ and owned by _____ resulting in damages, described below.

☐ Goods sold by Plaintiff; goods and prices and credits listed below.

☐ Work done and materials furnished; time and materials, showing charges and credits, listed below.

☐ Money lent to defendant on _____ with interest owed since _____.

☐ Promissory Note executed on _____, copy attached; defendant failed to either pay the note, or an installment payment, and interest is owed since _____, plus attorney's fees.

☐ Account Stated for an agreed balance owed on business transactions between the parties, the defendant did not object to the statement of account presented, a copy of which is attached.

☑ Other claim - Please specify: Wrongful eviction / breach of contract

Explain below the details (what happened, dates, times, place, etc.) of your claim. This section must be completed. Attach additional pages if needed.

_____
_____
_____
_____

# EXHIBIT B

[✓] Attached is a copy of any written document(s) that is/are the basis of this claim.

**WHEREFORE**, the Plaintiff(s) demand judgment in the principal sum of $ _8000_ DF
Plus costs, if known, (summons, service) in the amount of $ ~~less than $500~~
Plus interest in the amount of $ _1% monthly_
TOTAL $ ~~$8000 $8000~~
DF

Plaintiff Address: _284 Monroe drive,_
_Mountain View, CA,_
_94040_

Signature of Plaintiff(s) _[signature]_

Print name of Plaintiff(s) _Daniel Frishberg_

Telephone Number
Email Addresses: _danielfrishberg@usf.edu_

Title (if applicable)

## STATE OF FLORIDA
## COUNTY OF HILLSBOROUGH

The foregoing instrument was sworn to or affirmed and signed before me this _NOV 28 2023_ day of _____,
_____, by _DANIEL ANATOLY FRISHBERG_ who is personally known to me or who has produced
_FL DL_ identification and who did [✓] did not [ ] take an oath.

**CINDY STUART**
As Clerk of the Court

_[signature]_

As Deputy Clerk

_Jessica Saladin_

_____
Notary Public

_____
Typed or Printed Name

**Hillsborough County Court**

Case Number:

Plaintiff: Daniel A. Frishberg

Defendant: University of South Florida and all associated parties including HSRE-Capstone

Tampa, LLC.

# COMPLAINT

Daniel A. Frishberg (a tenant at the University of South Florida's dorms), the Plaintiff ("Mr. Frishberg", "I", "Plaintiff") respectfully files this lawsuit (the "Complaint") against the University of South Florida ("USF") due to their (attempted) illegal eviction of the Plaintiff, including violations of Florida Statute Section 83.64, 83.67(2), and a stated intent to violate Sections 83.67(5). Plaintiff seeks relief under Sections 83.67(6) and 83.67(7). The Plaintiff has filed an emergency motion for injunctive relief simultaneously with the filing of the Complaint.

## Preliminary Statement

Mr. Frishberg is a tenant of USF, and has a lease for a room extending from August 2023, to May 2024 (the room will be unoccupied[1] during most of December, but it is contractually considered occupied until Mr. Frishberg checks out). The Defendants purport to have terminated for cause Mr. Frishberg's rental agreement, and have prevented Mr. Frishberg from accessing his

---

[1] This is addressed in the Housing Agreement. All Housing Agreements by default have the rented space unoccupied over the winter break, unless an additional rent is paid. The rooms are kept as is, and not to be distributed.

room by both disabling his key card that allows him access to the building, and changing the locks on his room. Mr. Frishberg intends to amend this complaint after injunctive relief is granted, since this complaint has been drafted on an extremely short timeline.

The Defendants illegally and wrongfully prevented Mr. Frishberg from accessing his room, and have purported to have evicted him. They also purported to charge the Plaintiff fees, and threatened sanctions against him, including "additional sanctions up to permanent removal and restriction from the University" (expulsion). This further highlights the extreme power disbalance. They took all of these actions *without **any** court order*, and without even initiating *any* court process.

The dispute arose over the Defendants' purported revocation of Mr. Frishberg Emotional Support Animal ("ESA") Agreement. Mr. Frishberg's ESA is a *hypoallergenic* cat. The Defendants allege that Mr. Frishberg breached the ESA Agreement by allowing his ESA to leave his room. **Not so**.

The Defendants' actions constitute irreparable harm under Florida Statutes Section 83.67(7).

The Defendants' counsel stated that my property was removed from the room, and that "you will not be permitted back into your previously assigned room. Your belongings have been removed and are available to you and may be retrieved by contacting the University Police".

The Plaintiff seeks injunctive relief to permanently enjoin the Defendants from taking any more actions to attempt to evict the Plaintiff, and permanently enjoin them from taking any retaliatory actions against the Plaintiff.

## REQUEST FOR *PRO SE* RELIEF

As I am a *pro se* filer, and have not gone to law school, I do not understand the law as well as a lawyer would. I ask that the Court interpret my filings liberally, and to allow me to correct any mistakes in my pleadings, and to give me a clear opportunity to have my exhibits entered into the record. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) ("This policy of liberally construing pro se submissions is driven by the understanding that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.").

As the Supreme Court of the United States said in *Haines v. Kerner*, "a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 404 U.S. 519, 520-521 (1972), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

This Court has the ability to "liberally" construe my requests. I ask that if anything is in the wrong format, or cites the wrong state statute/code or the wrong subsection or law, or I make

citation mistakes, or my filings do not perfectly set forth all facts needed to plead my claims, that you allow me to correct any deficiencies.

As the Supreme Court of the United States said in *Haines v. Kerner*, "the district judge should have explain[ed] the correct form to the *pro se* plaintiff so that [he] could have amended his pleadings accordingly. Instead of simply dismissing the complaints for naming federal agencies as the defendants, it would have been appropriate for the district judge to explain the correct form to the *pro se* plaintiff so that [he] could have amended his pleadings accordingly." 404 U.S. 519, 521 (1972), citing *Henry Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991). Thank you for your consideration.

## Argument

The Defendants' claim that Mr. Frishberg violated the ESA Agreement is materially false. The relevant section (subsection b) of the agreement states: "The approved Assistance Animal must be controlled by its owner and must be contained within the residential area (room, suite, apartment, **building**, enclosed balcony or yard spaces) at all times, except when transported outside the private residential area in an animal carrier or controlled by leash or harness. Assistance Animals cannot roam freely in common areas." (Emphasis added). At no time did my ESA "roam freely" in the common area. The Webster Dictionary's[2] best definition of "roam" as "to go from place to place without purpose or direction". The burden of the proof to prove that my ESA went from "place to place without purpose or direction" is on the defendants.

---

[2] https://www.merriam-webster.com/dictionary/roam

I contend that my ESA did not "roam", but sulked with purpose to investigate what was going on down the hallway, and investigate what was under various chairs/couches (as cats do).

Other potentially relevant parts (subsection i) of the agreement states: "The owner is responsible for assuring that the approved Assistance Animal does not unduly interfere with the routine activities of the residence or cause difficulties for students who reside there.  Assistance Animals must not make excessive noise or display behavior that will disrupt other community members.  Individuals with disabilities who are accompanied by Assistance Animals must comply with the same rules regarding noise, safety, disruption, and cleanliness as people without disabilities.  Sensitivity to residents with allergies and to those who fear animals is important to ensure the peace of the residential community". My ESA did not "unduly interfere with the routine activities of the residence or cause difficulties for students who reside there". One resident complained about my ESA walking on counters/tables, and I promptly resolved that issue by ensuring that he never was on counters or tables. USF has alleged that at least one resident had an issue with my ESA, but has failed to both specify who it was, and what their issues were. They allege that several students have allergies to cats, but (and this is the key part) *no one has had an allergic reaction* to my ESA since he is hypoallergenic. I also attempted to compromise with the student(s) who had issues with my ESA by attempting to work out a schedule as to when my ESA would leave my room. They refused.

My ESA did not "unduly interfere" with anyone. He mostly (as cats do) just sat/lay at various spots such as a couch. Subsection m of the ESA agreement states: "The owner must ensure that the Assistance Animal does not: Attack, harass, sniff, jump on/at or disrupt others or

their personal belongings[.] Display any repeated behaviors or noises that are disruptive to others. Block evacuation routes or egress in case of an emergency. Leave the owner's room except when accompanied by the owner." (slight format change, including removing bullet points). The Defendants did not allege that my ESA "unduly interfere[d]" with anyone, or harassed anyone. To the contrary, he usually liked to hide from people as he is (sometimes literally) scared of his own shadow. A large number of people enjoyed him being out, and liked petting him.

Florida Statutes Section 83.64(3) states: "In any event, this section does not apply if the landlord proves that the eviction is for good cause". The Defendants have not proven the purported eviction is "for good cause". The Defendants have not proven that the contract was materially breached by me. They have not *proven **anything***, let alone met the burden required for an eviction.

### RESERVATION OF RIGHTS

I reserve any and all rights, and request that This Court "liberally interpret" this Reservation of Rights as including the most stringent, strong, broad, and effective/appropriate reservations of rights. Nothing contained herein shall be considered as an admission of the validity of any claim or claims against the Plaintiff, nor shall it be construed as a waiver of any right.

Respectfully Signed,

Daniel A. Frishberg. *Pro Se*.

/s/*Daniel A. Frishberg*

Hillsborough County, Florida

November 28th, 2023,

**HOUSING & RESIDENTIAL EDUCATION**

## 2023-24 FALL-SPRING
## STUDENT HOUSING AGREEMENT

**Name:** Daniel Anatoly Frishberg
**University ID:** U50082127
**Email:** ██████████@usf.edu
**Address:** ███████████████████████ 1016
███████ States

## 2023-24 FALL-SPRING USF STUDENT HOUSING AGREEMENT
### TERMS, CONDITIONS, AND RESPONSIBILITIES

**USF Student Housing Agreement ("Agreement")**: The USF Student Housing Agreement is a financially and legally binding Agreement between the University of South Florida's Board of Trustees, a public body corporate and a prospective or enrolled Student who is, and intends to remain, enrolled at the University of South Florida ("**University**"). This is an Agreement for the use of Space in the Residence Halls located in Tampa and all terms including length of the Agreement, Cancellation terms and other terms as set forth herein.

The Village property, including Beacon, Endeavor, Horizon, Pinnacle and Summit Halls, is owned by HSRE-Capstone Tampa, LLC. For a seamless student experience, the University provides administrative services for the Village including, but not limited to, managing Applications, assignments, and billing on the Owner's behalf. Students choosing to reside in the Village may be subject to additional requirements set forth below.

Any alterations by the Student to the terms contained in the Agreement will neither be honored nor deemed valid without specific written approval from the Assistant Vice President for Housing & Residential Education, recognizing acceptance of and identifying the proposed alterations. By signing the Agreement, electronically or otherwise, the Student is acknowledging notice of all of the Agreement terms.

### I.  TERMS OF AGREEMENT:

1. **Definitions**

    **Application:** The online form that is completed to initiate the Agreement and/or Dining Contract.

    **Application Fee:** A $50 non-refundable fee that is assessed to a Student account upon submission of an Application.

    **Cancellation:** The act of ending the Agreement and the assignment. Fees may apply.

    **Consideration:** The Student's Consideration is the payment form made by the Student as outlined in Section I.3. The Department Consideration is the processing of the Application for Room assignment. Either party may cancel the Agreement before assignment of housing as set forth in Section IV below.

    **Department:** USF Housing & Residential Education and/or the Assistant Vice President for Housing & Residential Education or the designee. This term includes the Owner of the Village, as applicable.

    **Hall Rates:** Charge associated with a Space and term.

    **Housing Portal:** An interactive web page that provides authenticated users online access to Department housing management system including Applications, assignments, forms, and information.

    **Living-Learning Community Program Charges**: Additional charges associated with enhanced program offerings for Students living in select communities.

**Owner:** The Owner refers to HSRE-Capstone Tampa, LLC, principal owner of the Village.

**Residence Halls:** All traditional room, suite, and apartment style halls, unless otherwise specified, including the Village, as applicable.

**Room:** A traditional room, suite, or apartment in the Residential Halls, including the Village, as applicable.

**Space:** A bed in a traditional, suite, or apartment in the Residence Hall, including the Village, as applicable.

**Standby Process/List:** The process initiated when demand for on-campus housing exceeds supply and Application or room selection process has closed.  To join the Standby list, Students submit a request via the Housing Portal and agree to be assigned to any Space if one becomes available.

**Student:** An individual that has been admitted to the University.

**Village:** The residential property owned by HSRE-Capstone Tampa, LLC. Beacon, Endeavor, Horizon, Pinnacle and Summit Residence Halls are collectively known as the Village.

**University:** University of South Florida

2. **Application Fee:** Upon submission of the Application, the Application Fee will be assessed to the Student account. The Application Fee will be considered paid for purposes of assignment when one of the conditions below has been exercised:

   a. The Application Fee payment is submitted using University payment processes; or
   b. The Department processes and approves a deferral of the required Application Fee. The Application Fee will not be waived.

3. **Effective Date:** The Agreement shall become effective upon the Department receiving the housing Application, the Application Fee (by one of the two methods specified in Section I.2), and meet the terms listed in Section I.4. Once this Agreement becomes effective, the Student is eligible for an assignment.

4. **Eligibility Requirement for Housing:**

   a. Students who have been accepted to the University by the University Office of Admissions are eligible to apply for housing. The Student must submit both the Application and Application Fee (see Section I.2) which is Consideration for this Agreement.

   b. Student must remain enrolled in University courses during each semester covered by the terms of this Agreement. Should Student fail to meet this enrollment requirement, the Department, on behalf of the University, may cancel the Agreement and require Student to vacate their assigned Space in accordance with applicable University policies or other applicable laws, regulations, policies, or procedures.

   c. **Assignment Prerequisites:**

      i. **Orientation Requirement:** Undergraduate Students must comply with University orientation requirements by registering for appropriate orientation program with the Office of Orientation. Continuing Students have already satisfied the orientation requirement.  The Department will not refund the Application Fee if the Agreement is cancelled due to non-compliance with the orientation requirement.

      ii. **Availability for Housing:**

         1. The Department may initiate a Standby Process if the availability of housing becomes limited.  To be considered for a Space, the Student must register for the Standby List via the Housing Portal.  Registration for the Standby List indicates that the Student will accept the Space assigned, regardless of Room

type preference. Students assigned from the Standby List waive the 48 hours Cancellation eligibility described in Section IV.2.a. ii.

2. The Department may cancel the Agreement if a Room is not available or appropriate for assignment to the Student.

5. **Inability to Perform:** If the Department is unable to assign a Student a Space due to:

   a. the Student's failure to meet the assignment prerequisites; the Agreement will be considered cancelled by the Student without refund of the Application Fee; or
   b. the Department's inability to identify available Space; the Agreement will be considered cancelled and the Department will credit the Application Fee to the Student's account.

6. **Length of Agreement:** The Agreement dates covered by these terms, conditions, and responsibilities are for the Fall 2023 and Spring 2024 terms.  The dates for each semester are available on the USF Housing website. The Agreement start and end dates and the length of Agreement may be adjusted with notice to the Student to align with the University academic calendar.  Occupancy during break periods is limited to specific locations and incurs an additional charge.

7. **Occupancy Status:** Occupancy occurs when a Student is issued the keys to the Space or is checked-in via the student housing software.  If either condition exists, then the Space is considered occupied. Occupancy will remain in effect until the check-out procedure is followed to depart the Space.  Removing personal belongings and vacating the assigned Space without completing the proper check-out process will be considered an improper check-out and the Student will be financially responsible for the terms of the Agreement and all associated fees.

8. **Occupancy Requirements and Transferability**: ONLY the Student with whom the Agreement is made may inhabit Student's assigned Space, and such Space is not transferable. Spaces may not be sublet to another person(s). Appropriate monetary charges, as determined by the Department, will be assessed, and/or disciplinary action will be taken, against violators of this section.

9. **Guest and Visitor Access**: Guest/Visitor access may be prohibited or restricted within Room or building. Students are responsible for the actions and any damages incurred by their guests. A Student is prohibited from inviting or hosting a person in their Room, Residence Hall, or on campus when the Student knows that the University Police or other University official has barred that person from campus. Any Student or person who knowingly violates this section may be subject to all applicable University, civil and criminal penalties.

10. **Entry Rights:**  Authorized Department personnel may enter Student's Space without the Student's permission (but following prior notice to Student) for maintenance/housekeeping purposes and for fire/safety inspections. When authorized Department personnel have reasonable belief that a violation of a University Policy, or violation of any local, state, or federal law, regulation, or ordinance is in progress, or in the event of an emergency, such personnel may enter Student's Space without notice to Student. Students living in the Village also grant similar rights prescribed to the University above to personnel authorized by the Owner (including, without limitation, personnel of Owner's property manager).

11. **Condition of Space:**  The Student acknowledges their responsibility to keep Space and Room in a clean and orderly condition and to adhere to sanitation standards in shared spaces. University staff retain the right to conduct health and safety inspections of the Room. Charges may be assessed to Students for damage to, unauthorized use of, or alterations to, buildings, rooms, furnishings, appliances, equipment, or locks, and for special cleaning necessitated by improper care of buildings, rooms, furnishings, appliances, or equipment either within Student's Room or on the floor or in the building wherein Student's Space is located.  In the event additional expenses are incurred associated with the foregoing, the Student will be assessed such expenses.

12. **Room Assignment:** The Department does not guarantee an assignment to a specific complex, building, Room, roommate, room type, or room occupancy (single, double, or triple).  The Department reserves the right to consolidate, change the occupancy designation, or change the assignment either in advance of

check-in or after the start of the term. If one of the occupants of a double occupancy Room moves out, the Department will assign another occupant to that Room. If no such assignment can be made, upon notification by the Department, the remaining occupant will exercise one of the following options: (a) locate another roommate who agrees to be reassigned to the occupant's Room; or (b) be reassigned to a double occupancy Room chosen by the Department; or (c) be reassigned to single occupancy, if available, and pay the single occupancy Rate.  In the event there is maximum utilization of facilities and no assignment can be made, the Department will notify the Student at which time any fees paid by the Student will be credited to the Student's account.

   a.  The University reserves the right to contract for comparable student housing accommodations in the event of excessive occupancy, available facilities, natural disaster, etc.  The Student agrees that all terms and conditions of this Agreement are applicable in the event that additional student housing accommodations must be secured.
   b.  Students who have not properly occupied their Room by 12 p.m. on the first day of classes and have not notified the Department of their late arrival may be reassigned based on the needs of the Department.

13. **Room Change/Reassignment:** The Student may, after written approval from the Department, move to another Residence Hall Space in accordance with the Department's reassignment policies, which are incorporated herein by reference.  Those Students living in the Village may also need additional approval to be eligible transfer to a Room outside of the Village.

   A Student shall not be permitted to transfer to another Space without the approval of the Department. If the Student does occupy another Space without the approval of the Department, they will be responsible for the Hall Rates of both the Space they moved to and the Space they are assigned.

14. **Use of Spaces:** The Department reserves the right to determine the need for and the use of all Rooms, lounges, and other common or public areas in and around the Residence Halls. At the discretion of the Department, the Department may limit or restrict the use of the common areas and multipurpose spaces. Residential Hall lounges may be converted and assigned as Residence Hall Space when deemed necessary by the Department.

15. **Meal Plan Requirement:** All First Time in College Students residing in the USF Residence Halls located in Tampa are required to purchase a meal plan.  More information on meal plan options can be found at USF Dining.

16. **Health and Safety.**
   a.  The Student acknowledges the inherent risk associated with living in a community environment and the Student's shared obligation to prioritize health and safety for the benefit of the entire community.
   b.  The Student acknowledges they have considered their own personal health status and risk factors inherent with community living.
   c.  The Student agrees to adhere to University expectations intended to minimize risk of exposure of transmissible diseases consistent with health and safety guidance as determined by the University (for example practicing physical distancing and wearing appropriate face covering, etc.).
   d.  The Student acknowledges they may be required to submit to symptom checking or testing to access and remain in the residential community.
   e.  The Student agrees to disclose to the appropriate University medical official immediately upon notification of a transmissible disease test status (i.e., COVID-19, meningitis, tuberculous, etc.) or contact about high-risk exposure and instruction to isolate.
   f.   The Student agrees to comply with University direction requiring isolation.  Isolation may require removal from assigned Space, Room, building, or campus.  Isolation does not constitute Cancellation of the Agreement.
   g.  Students are required to comply with all health and safety law, orders, ordinances, policies, regulations, and guidance adopted by the University or Department as it relates to transmissible diseases.  This guidance may evolve as circumstances warrant.  University may require the

Student to leave University housing in the event the Student's continued presence poses a health or safety risk to the housing community.

17. **Accessibility:** A variety of facilities is available for Students with accessibility needs and other medical considerations. Students requesting reasonable accommodations for housing based on an accessibility need or a medical condition must submit their request for said accommodations in writing to the Department by July 1 for the fall semester; November 1 for the spring semester; and April 1 for the summer semester(s). Department staff may confer with the Office of Student Accessibility Services and/or Student Health Services to determine any reasonable and appropriate accommodations. Any information provided to the Department substantiating an accessibility need or medical condition will be maintained in strict confidence pursuant to Federal and Florida laws.

18. **Utilities:** The Department is not liable for interruption or failure of utilities such as heating, air conditioning, water, electricity, internet, etc. The Department reserves the right to assess additional charges and/or Hall Rate during the Agreement period to offset increased utility and/or other operational costs, provided the Department gives written notification to the Student at least 30 days prior to any increase in Hall Rate or charges.

19. **Damage Liability:** The University is not liable for damage to or loss of personal property, failure or interruption of utilities, or for injury or inconvenience to persons (except to the extent set forth in Florida Statutes, Sec. 768.28) Students are encouraged to provide their own personal property loss insurance.

20. **Department Reservation:** The Department reserves the right to make additional and/or modify existing rules and regulations. The Department agrees to make every reasonable effort to inform Student of any regulation changes or pertinent policy information.

21. **Departmental Discretion:** The Department may cancel the Agreement or change Student's Space assignment in the interest of order, discipline, health, safety, security, maximum utilization of Department facilities and resources, and/or educational delivery, or for the Student's failure to pay Hall Rate or charges in a timely manner.

22. **Adherence to USF Restrictions and Compliance with USF Regulations:** Student agrees to comply with, and uphold, all University policies, procedures, regulations, as well as all local, state, and federal laws.

23. **Provisional Removal for Behavior:** Student(s) who have been determined to create an immediate danger, threat, or disruption to the residential community may be provisionally removed from the Residence Halls until an investigation and a resolution can occur. Students will remain financially responsible for the Agreement during the provisional removal.

24. **Correspondence:** Correspondence from the Department will be emailed to Student at their official University email account.

## II.   RATES AND PAYMENT OPTIONS:

1. **Residence Hall Rates:** Rates are listed on the Department's website and are subject to change following approval by the University Board of Trustees. Students receiving Financial Aid will have any outstanding housing charges deducted from their aid prior to receiving a reimbursement check regardless of their payment option. The Agreement is separate from, and not contingent upon, financial aid or scholarship award notification.

2. **Living Learning Community Program Charges**: Student acknowledges that Living Learning Community Program Charges are non-refundable and assessed in full by semester to the OASIS account of all Students in a Living-Learning Community Space for any portion of the semester. These charges are published on the Department's website for reference.

3. **Student's Payment Obligation:** The Student acknowledges that Spaces have different Hall Rates. The Hall Rate a Student will be obligated to pay will depend on the Space assigned to Student. The Student

acknowledges that they will be bound by the Agreement and any change in Rates, fees, or other financial obligation.

4. **Unpaid Charges:** Any unpaid Hall Rate, Cancellation fee, or other charges accrued under the Agreement may be applied to Student's University account and may result in a hold being placed on Student's record and/or academic transcripts. Please see section III.2. and III.3. for additional details.

5. **Method of Payment:** The methods of payment are listed below:

   a. **Payments Online:** Online payments, via credit card or e-check, for housing, may be completed via the USF payment gateway available at MyUSF. *Online payments made via the OASIS payment link will be processed as per the USF Cashier's Office protocols.*

   b. **Payments by Check:** Housing payments by paper check/money order may be mailed to the USF Payment Center at:

   > USF Student Payments
   > PO Box 946571
   > Atlanta, GA 30394-6571

## III.   PAYMENT SCHEDULE

1. **Payment Schedule:** All housing fees are due by the financial aid deferment date for the term in which the housing is effective. Please refer to the University Scholarships and Financial Aid Services website for information on the deferment date for each term.

2. **Default Process:** If a Student defaults in the payment of Hall Rate or other housing charges, the Student may be charged a 5% late fee on the outstanding balance, remain liable for the agreed amount and any other housing charges. In addition, the Student's University records may be placed on administrative hold.

3. **Collection Process:** Students failing to make payment within the appropriate time frame, as set by the University Controller's Office, will be subject to the University's collections policy (please see the University Controller's website for more information).

## IV.   CANCELLATION: Notwithstanding anything contained herein, and even when Student's Cancellation is permitted under the terms of the Agreement, the Agreement may not be canceled without the prior written approval of the Department. The Department may, within its sole discretion, deny any Cancellation requests. Where Cancellation of the Agreement is subject to the Cancellation fees set forth in the Agreement, any fees will be added to the Student's financial account and will be due and owing immediately.   Non-payment of the fees may result in a Student registration hold or restriction on graduation and ability to obtain a transcript. Late payments may also include collection fees.  Students should refer to Section III of this Agreement for more information regarding the Payment Schedule.

1. **Cancellation by Department:** The Department may, in accordance with applicable rules of the University, initiate reassignment or cancel the Agreement if deemed necessary by the Department in the best interest of order, health, conduct, safety, security, disaster, failure to comply with any and all University regulations, policies, or directives.

   a. **Cancellation Due to Non-Enrollment**: The Department may cancel the Agreement for any individual who is not enrolled at the University for the duration of the Agreement.  Students whose Agreement has been cancelled will be required to vacate the Room within 24 hours from notification unless otherwise indicated.  Any and all Cancellation fees will be charged to the Student, as applicable (see section IV. 3. for the Cancellation fee schedule) and a registration hold will be placed on their record for the remainder of the Agreement term.  A Student who desires to re-enroll in classes during the term of the Agreement will be required to secure a new Agreement for an available Space before registering for classes.

b. **Cancellation Due to Academic Dismissal:** Students who are academically dismissed by the University will not be charged a Cancellation fee, provided they cancel the Agreement, vacate the Room, and complete the prescribed check out procedures at least five (5) business days prior to the opening of the Residence Halls for the upcoming term. Students who are academically dismissed and fail to complete these steps by the deadline noted above will be charged a $1,500 Cancellation fee and a daily-prorated Rate.

c. **Cancellation Due to Conduct Dismissal:** Students who are removed from the Residence Halls and/or dismissed from the University as a result of Student conduct sanction or are currently a subject of an ongoing investigation by Student Conduct & Ethical Development, will be subject to all full fees set forth in the Agreement and their account will be charged full Hall Rate through the term of the Agreement.

d. **Cancellation Due to Administrative Dismissal:** Students who are removed from the Residence Halls and/or dismissed from the University for administrative reasons will be responsible for a daily-prorated Hall Rate.

2. **Cancellation Request by Student:**

   a. **Eligibility:** The Student may request a Cancellation of the Agreement if one of the following conditions is met (documentation will be required and fees may be assessed as more particularly set forth below):

      i. The Student has not been assigned a Space;
      ii. The Student has been assigned a Space but a Cancellation request is submitted in Housing Portal within 48 hours of the timestamp of the assignment;
      iii. Non-Enrolled Student:
         a. The Student graduates and does not continue in another USF program;
         b. The Student receives military order for active duty;
         c. The Student has a USF medical withdrawal; or
         d. The Student withdraws and is no longer enrolled at USF.
      iv. Enrolled Student:
         a. The Student participates in an academic program that requires residence outside Hillsborough, Pasco, or Pinellas county;
         b. The Student participates in a USF sponsored and/or approved study abroad program headquartered or stationed outside of Hillsborough, Pasco, or Pinellas counties;
         c. The Student relocates to USF St. Petersburg campus, submits a USF St. Petersburg Housing Agreement, and is assigned a Space for a Residence Hall located in St. Petersburg; or
         d. The Student is newly married during the term of the Agreement.

      *A Student living in the Village agrees that early Cancellation of this Agreement may not be permissible.*

   b. **Procedure:** Students who meet one of the eligibility requirements as set forth above in Section 2(a) may request the Cancellation of the Agreement. The Student must submit a written request via the 2023-24 Student Housing Cancellation Request Form (available in the Housing Portal under Requests) indicating which of the conditions set forth in Section 2(a) applies and provide the required documentation. **Requests for Cancellation over the phone, in-person, or via email will not be accepted.**

   c. **Cancellation Request without Assignment:** Any Cancellation request received before an assignment is made will be approved with no fee. *Please note that the Application Fee will not be refunded.*

   d. **Cancellation Request Due to Graduation:** A Student may request Cancellation of their Agreement and will not be charged a Cancellation fee provided that the following conditions are

met: (1) the Student is no longer registered for any academic program, degree-seeking or not, at the University; and (2) the Student submits the request before the priority registration deadline posted on the Office of the Registrar website; and (3) the Student completes the Room check-out process at the end of the term (semester) in which graduation occurs.  Failure to properly follow the steps above will result in a fee of $1500.

e.  **Cancellation Request Due to Non-Enrollment:** A Student, who receives an assignment prior to the opening of the Residence Halls and cancels for non-enrollment, shall be considered a Cancellation for Non-Enrollment (see Section IV.1.a).  A Student, who receives an assignment and has their courses dropped for any reason after the opening of the Residence Halls, shall have their Agreement cancelled, be charged a daily pro-rated Hall Rate plus one half of the remaining Rate on the Agreement. A registration hold will be placed on their record for the remainder of the Agreement term.

f.  **Cancellation Request Due to Deferred Admission/Enrollment Status:** A Student, who has received an assignment and cancels their Application due to an approved deferred enrollment request, may be charged a Cancellation fee in accordance with Section IV. 3.  If the Student enrolls in the approved term, submits an Application to live on-campus, and assumes occupancy of the Room, then the Spring portion of the Cancellation fee will be adjusted on the Student's OASIS account and the hold lifted. The original Application Fee will not be applied towards the new Application.

g.  **Cancellation Request Due to Military Orders:** A Student, who receives lawful orders to report for military service during the term of the Agreement, shall be permitted to cancel their Agreement without a Cancellation fee provided that the following conditions are met: (1) the orders were received after the Student was assigned to the Residence Halls; and (2) the order require the Student to report for duty prior to the end of the semester in which the order were received.  The Student will be charged a pro-rated Hall Rate for the time of occupancy.

h.  **Cancellation Request Due to a Medical Withdrawal:** The Student must provide a medical withdrawal that has been accepted and approved by the University to be considered for a Cancellation due to a medical withdrawal. Medical withdrawal terminates the Agreement for any semesters commencing after the medical withdrawal date, and the Student will receive a credit for a portion of the Hall Rate for the semester the Student withdraws for medical reasons, based upon the Student's move out date.

i.  **Cancellation Request Due to Campus Change (Tampa/St. Petersburg):** Student may submit a request for Cancellation along with proof of an active Agreement for the equivalent term for the campus to which they are transferring (destination campus).  Any Student submitting a Cancellation request after the University's add/drop period (5:01 p.m. EST of the first Friday of the semester) will be consider for a Cancellation at the start of the Spring semester.  If the Student is transitioning to a USF residence hall in St. Petersburg in the Spring and moves out of their current assignment at the end of the Fall term, then the Student shall be released from the Agreement at the conclusion of the term without penalty when both of the following conditions are met: (1) a current housing Application and requirements have been submitted to the destination Housing Department within 3 business days of the approved Cancellation request; and (2) the Student assumes Occupancy of the assigned Space at the destination location.

j.  **Cancellation Request Due to Marriage:**  The University does not provide student housing for families.  A Student may submit a Cancellation request due to marriage when a legal union occurs during the period of the Agreement.  The Student shall be charged the appropriate Cancellation fee as outlined in the Agreement (Section IV. 3.). Upon submitting the Cancellation request, the Student must submit a copy of the marriage license as a supporting document to process the Cancellation request.

k.  **Cancellation Request Due to Consideration of Extenuating, Unforeseen Circumstances:** A Student may submit a Cancellation request for consideration of extenuating, unforeseen circumstances that arise after the Effective Date of the Agreement. The Student must submit all

supporting documentation they wish to have considered when Cancellation request is reviewed. If the Cancellation of the Agreement is approved, the Student will be subject to posted fees. If the Cancellation of the Agreement is approved after Student has checked into the Space, Student will be responsible for a prorated Hall Rate for time assigned to the Room, plus one-half of the remaining Hall Rate charges on the Agreement *(this may include fall and/or spring charges)*. If the Cancellation request is denied, the Student remains responsible for the terms of the Agreement. Online class modality is not considered an extenuating circumstance.

3. **Cancellation Fee:** Unless a different Cancellation fee is specifically stated above (Section IV.1 or 2), a Student whose Cancellation request is approved after a Space has been assigned will be charged a Cancellation fee of:
   a. $500 if Cancellation request was submitted in the Housing Portal before May 1, 2023; or
   b. $750 if Cancellation request was submitted in the Housing Portal May 1-31, 2023; or
   c. $1,000 if Cancellation request was submitted in the Housing Portal June 1-30, 2023; or
   d. $1,250 if Cancellation request was submitted in the Housing Portal July 1-31, 2023; or
   e. $1500 if Cancellation request was submitted in the Housing Portal August 1-16, 2023; or
   f. Half the remaining Hall Rate for the Agreement if Cancellation request was submitted in the Housing Portal August 17, 2023 or after.

## V.   APPEALS

**Appeals:**  Student may submit to the Department an appeal regarding the application of the Agreement if there is additional relevant information to be considered not available at the time of the original request for Cancellation or if additional documentation supporting change in circumstances is provided.  Appeals must be submitted in writing using the Appeal Form (located in the Housing Portal under Requests). Appeals are reviewed by the Appeals Officer/Committee.  Appeals are not to be given or heard verbally. Decisions by the Appeals Officer/ Committee are final and cannot be further appealed.

## VI.   GENERAL PROVISIONS:

1. **Department Interpretation Controls:** Department shall make the final interpretation of, or determination under, all provisions of the Agreement, as well as any related University Policies.

2. **Department Not Liable:** The University is not liable for loss of or damage to Student's personal property kept in Student's assigned Space or on or about any of Department's facilities.

3. **Modifications:** The Agreement may not be modified or amended, except by a further written instrument executed by Department.

4. **No Waiver:** Any failure by either party hereto to exercise any of its rights hereunder shall not be construed as a waiver of such rights, nor shall any such failure preclude exercise of such rights at a later time.

5. **Severability:** Whenever possible, each part of the Agreement shall be interpreted in such a manner as to be valid under the applicable law. However, if it shall be found that any part of the Agreement is illegal and unenforceable, such part or parts shall be of no force and effect to the extent of such illegality or unenforceability, without invalidating the legal and enforceable remainder of such part or parts or any other part of this Agreement.

6. **Assignment:** The Agreement shall not be assigned by either University or Student without the express written consent of the other party, which consent may be given in each party's sole discretion.

7. **Headings:** Section headings used in the Agreement are for convenience only and are not to be construed as part of the Agreement.

8. **Construction:** The Agreement shall not be construed more strongly against any party, regardless of who is responsible for its preparation.

9.  **Public Records:** The Agreement is subject to the Public Records Law of the State of Florida, Chapter 119, Florida Statutes.

10. **Student Information:** Those living in The Village hereby agree that the Owner shall receive all Student information provided in the Agreement and waives and releases Owner from any duty of confidentiality that may apply to such information.

11. **Governing Law; Venue:** The Agreement and all transactions governed by the Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without regard to principles of conflicts of laws. In the event of any legal or equitable action arising under the Agreement, the parties agree that the jurisdiction and venue of such action shall lie exclusively within the courts of record of the State of Florida located in Hillsborough County, Florida, and the parties specifically waive any other jurisdiction and venue.

12. **Sovereign Immunity:** Nothing contained herein shall be construed or interpreted as (a) denying to either party any remedy or defense available to such party under the laws of the State of Florida; (b) the consent of University or the State of Florida or their agents and agencies to be sued; or (c) a waiver of either University's or the State of Florida's sovereign immunity beyond the limited waiver provided in section 768.28, Florida Statutes.

13. **Merger:** The Agreement is the complete, entire, final, and exclusive statement of the terms and conditions of the Agreement between the parties as of the Effective Date, but subject to any addendum or amendment entered into between University and Student subsequent to the Effective Date (including an addendum pertaining to the Village, if applicable). This Agreement supersedes, and the terms of this Agreement govern, any prior collateral Agreements, whether written or oral, between the parties with respect to the subject matter hereof.

14. **Time of the Essence:** Time is of the essence of the Agreement.

15. **Electronic Signature; Counterparts:** The Agreement may be executed by electronic signature in accordance with Florida law, and in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*The University of South Florida is an equal opportunity institution and, as such, assigns Residence Hall Space to qualified enrolled Students without regard to race, color, marital status, religion, national origin, disability, age, Vietnam Era or disabled veteran status, sexual orientation, or gender identity, as provided by law and in accordance with the University's respect for personal dignity.*

**Animals on Campus**   Exhibit B,   **HOUSING &**
**Assistance Animal**   **RESIDENTIAL EDUCATION**
**Housing Protocol & Agreement**

Daniel Frishberg

Resident Name: _____

A University housing resident, student or staff, with a disability may be entitled to keep a Service or an Assistance Animal with or without training that provides emotional support. Please see USF System Policy 6-033, Animals on Campus, for the definitions of Service Animal and Assistance Animal.  To qualify for such an accommodation, the Assistance Animal must be necessary to afford the individual an equal opportunity to use and enjoy a dwelling or participate in the housing services and programs.  Individuals living in an on campus residence hall may request a waiver to permit an Assistance Animal to live in the University residence halls.  This request must be made in advance of bringing the animal onto University property, through the Office of Housing and Residential Education (HRE) in consultation with Student Disability Services (SDS).  The animals under this section shall meet all of the criteria set forth for other animals on campus, including Service Animals.  In addition, the University housing resident must demonstrate that he or she has a disability and the Assistance Animal is prescribed to the individual by a health care or mental health professional to play an integral part of the person's treatment process. The housing resident must have been under the care of the health care or mental health professional for a minimum of 90-days. This is an EXCEPTION to a given policy and HRE must specifically approve the Service/Assistance Animal.  Once the approval has been granted, the resident/owner of the Assistance Animal must meet with an appointed member of HRE, sign this Agreement, and adhere to its terms.

University housing residents who receive a waiver to keep an Assistance Animal in University housing (also referenced in this document as the animal's "owner") should review and understand USF System Policy 6-033, Animals on Campus. Any Animal in On Campus Housing must meet the criteria as articulated in USF System Policy 6-033 Animals on Campus and the additional criteria below:

a.  Non-domesticated, wild, dangerous, poisonous, and/or illegal animals are not permitted

b.  The approved Assistance Animal must be controlled by its owner and must be contained within the residential area (room, suite, apartment, building, enclosed balcony or yard spaces) at all times, except when transported outside the private residential area in an animal carrier or controlled by leash or harness.  Assistance Animals cannot roam freely in common areas.

c.  When an Assistance Animal is left in the owner's room without its owner it must be crated or otherwise appropriately contained. Suite or apartment bathrooms are not sufficient containment of the animal an should not be used. Assistance Animals and equipment necessary for the safe keeping of the Assistance Animal must not pose a threat to the safety of others.

d.  An Assistance Animal may not be left alone in the owner's room for more than a reasonable amount of time, which shall never exceed 24 hours.  Any exceptions must be requested and approved in advance through the HRE office and, in such cases, determination of a reasonable amount of time is left to the discretion of the HRE Representative, whose decision is final.

e.  In a case of an emergency and you cannot care for your Assistance Animal, the HRE staff will communicate with the Animal Emergency Contact provide to come pick up your animal during the duration of your absence. Your emergency contact listed will have four hours to come pick-up the Assistance Animal. If your Emergency Contact cannot come within the four hour period, Animal Control will be called to come pick up the Assistance Animal. If at any time your emergency contact information changes, you will need to contact the HRE office (housing@usf.edu) immediately so we have the most accurate information. Your emergency contact cannot be a current resident who lives on campus or an HRE staff member (RA, RLC ect).

f.   For dogs and other animals requiring exercise and outside toileting, the animal may be walked on University grounds, excluding athletic fields.  At all other times Assistance Animals shall be kept in the residence, unless also registered and approved as a Service Animal.  Assistance Animals (as opposed to Service Animals) may not be taken into classrooms or other buildings on campus.

g.   The expense and responsibility for feeding, providing health care and necessary bathing and grooming of the Assistance Animal is the sole responsibility of the owner.  It is also the responsibility of the owner to ensure that the Assistance Animal is in compliance with state and local licensing, tagging and vaccination laws and rules.

h.   The USF System reserves the right to request proof of compliance with all terms of this Agreement at any time during the approved Assistance Animal's residency.

i.   All approved Assistance Animals, if taken outside the residence, must wear identification tags with home address and, if applicable, vaccination information.

j.   The Assistance Animal must be housebroken.  Owners are responsible for properly containing and disposing of all waste.

k.   The owner's residence may be inspected for fleas, ticks or other pests once per semester or as needed.  The Housing staff will schedule the inspection, normally done during routine Health and Safety inspections.  If fleas, ticks or other pests are detected through inspection, the residence will be treated using approved fumigation methods by a university-approved pest control service.  The owner will be billed for the expense of any pest treatment above and beyond normal required pest management.

l.   The owner is responsible for assuring that the approved Assistance Animal does not unduly interfere with the routine activities of the residence or cause difficulties for students who reside there.  Assistance Animals must not make excessive noise or display behavior that will disrupt other community members.  Individuals with disabilities who are accompanied by Assistance Animals must comply with the same rules regarding noise, safety, disruption, and cleanliness as people without disabilities.  Sensitivity to residents with allergies and to those who fear animals is important to ensure the peace of the residential community.

m.  The owner must ensure that the Assistance Animal does not:
    • Attack, harass, sniff, jump on/at or disrupt others or their personal belongings
    • Display any repeated behaviors or noises that are disruptive to others.
    • Block evacuation routes or egress in case of an emergency.
    • Leave the owner's room except when accompanied by the owner.

n.   The owner is financially responsible for the actions of the approved Assistance Animal including bodily injury or property damage, including but not limited to any replacement of furniture, carpet, window or wall covering, personal belongings of others, etc.  The owner is expected to cover these costs upon repair and/or move-out.

o.   The owner is responsible for any expenses that are required due to costs incurred for cleaning which is above and beyond a normal cleaning or for repairs to University premises that are assessed after vacating the residence.  For student residents, the USF System shall have the right to bill the Student account of the owner for unmet obligations. For residents who are administrative employees, the USF System shall have the right to deduct any moneys owed for expenses from any leave payout after separation, and the resident can be billed for any additional monies owed.

p. The owner must notify the HRE Representative and, if applicable, the Students with Disabilities Office in writing if the approved Assistance Animal is no longer needed as an Assistance Animal or is no longer in residence. To replace an approved Assistance Animal, the owner must file a new Assistance Animal request.

q. It is the expectation of the Assistance Animal owner that sufficient notice to roommates/suitemates is provided that the animal will be present in the room/unit. In the event that one or more roommates or suitemates do not approve, either the owner and animal or the non-approving roommates or suitemates, as determined by the HRE Representative, may be moved to a more suitable location. Housing and Residential Education has the ability to relocate owner and approved Assistance Animal as necessary per current contractual agreements.

r. There is a 14-day grace period from date of approval that the Assistance Animal is allowed on campus. The date the animal is allowed to be on-campus will be provided either in your approval notification or during the meeting with HRE staff.

s. Owner agrees to continue to abide by all other residential policies. An exception to a policy that otherwise would prohibit having an Assistance Animal does not constitute an exception to any other policy.

t. Any violation of the above rules or University Policy may result in immediate removal of the Assistance Animal from USF System premises and the owner being prohibited from continuing to keep an Assistance Animal on University property. For students, such removal may be reviewed through USF Student Rights and Responsibilities and the student will be afforded all rights of due process and appeal as outlined in that process.

u. Should the approved Assistance Animal be removed from the premises for any reason, the owner is expected to fulfill his/her housing obligations for the remainder of the housing contract. The resident may be required to sign affirmatively acknowledging an understanding and willingness to abide by the established guidelines and to provide the additional information as requested.

v. The University is not responsible for an Assistance Animal during a fire alarm, fire drill, natural disaster, or other emergency situation.

w. Housing & Residential Education may have additional terms and conditions throughout the year as different situations arise. If there are any additional terms that must be met, those will be provided to you in writing through your USF e-mail account.

x. In the case of a fellow resident with a conflicting accommodation for a registered disability, HRE will consider the needs of both persons in meeting its obligations to reasonable accommodate all disabilities and to resolve the problem as efficiently and expeditiously as possible.

By signing this document you are confirming that you have read and understand USF System Policy 6-033 (Animals on Campus) and the above Agreement on Assistance Animals. You also agree to adhere to these terms.

Daniel Frishberg

U50082127

_____

PRINTED NAME OF RESIDENT

USF ID #

8/18/2023 | 21:29 EDT

_____

SIGNATURE OF RESIDENT

DATE OF MEETING

Cat, Russian Blue

08/11/2023

_____

ANIMAL TYPE/BREED

ANIMAL NAME

tnW2GORRWEZOMDJKWVON

Shadow

_____

ESA REQUEST TICKET NUMBER

DATE OF APPROVAL

8/16/2023 | 08:53 EDT

Molli Keller

_____

SIGNATURE OF HRE REPRESENTATIVE

DATE OF MEETING

Molli Keller

Assistant Director

_____

PRINTED NAME OF HRE REPRESENTATIVE

TITLE

08/19/2023

_____

DATE OF ANIMAL ON-CAMPUS

OWNERS INITIALS



**EXHIBIT C**



DocuSign Envelope ID: 653801F9-08AB-4AAE-B4CF-24A1BE95306F

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL A. FRISHBERG,

          Plaintiff,

vs.                           Case No.: 8:24-cv-22-TPB-NHA

UNIVERSITY OF SOUTH
FLORIDA BOARD OF TRUSTEES,
HRSE-CAPSTONE TAMPA, LLC

          Defendants.

_____/

## DECLARATION OF ANDREW JOHNSON

I, Andrew Johnson, verify the following information under 28 U.S.C. § 1746, and under the penalty of perjury:

1.     The facts set forth in this declaration are true and correct. Unless otherwise indicated, the facts set forth below are based on my personal knowledge.

2.     My name is Andrew Johnson, and I am over eighteen (18) years of age. I am employed as Director for Operations & Outreach for Housing & Residential Education for the University of South Florida.

3.     The records of the USF Registrar show that Frishberg registered for classes with USF for the 2024 spring semester on November 4, 2023, and remained registered for those classes on January 8, 2024. The University did not take any action to cancel this registration. The conduct hold, which was entered on January 2, 2024,

DocuSign Envelope ID: 653801F9-08AB-4AAE-B4CF-24A1BE95306F

and lifted on January 8, 2024, did not impact Mr. Frishberg's registration for these classes.

4.     On November 21, 2023, USF Student Conduct and Ethical Development held Frishberg's Formal Hearing.  Based on the information provided at the hearing, the University Conduct Board determined that Frishberg was responsible for the charged violations of the USF Student Code of Conduct.  As a sanction, the University Conduct Board required that Frishberg complete a Civility and Community Standards Workshop.  Frishberg was informed that he had five business days to appeal the determination of responsibility and sanctions.  He did not submit an appeal.

5.     I have authority to certify that the following exhibits attached to this declaration are true and correct copies of original records maintained by USF, are kept in the course of the regularly conducted business activity of USF, and were prepared or maintained as a regular practice of USF:

- Exhibit 1 – USF Policy-6-033, Animals on Campus

- Exhibit 2 – Assistance Animal Housing Protocol & Agreement signed by Frishberg on August 18, 2023

- Exhibit 3 – Student Conduct RA/CM Incident Report dated October 5, 2023

- Exhibit 4 – Resident Complaint regarding Frishberg's Assistance Animal, and warning to Frishberg, dated September 14, 2023

- Exhibit 5 – Resident Complaint regarding Frishberg's Assistance Animal, and warning to Frishberg, dated September 20, 2023

- Exhibit 6 – Text messages with Frishberg and other residents regarding Frishberg's Assistance Animal

DocuSign Envelope ID: 653801F9-08AB-4AAE-B4CF-24A1BE95306F

- Exhibit 7 – Text messages between Resident Advisor and Frishberg dated October 5, 2023

- Exhibit 8 – Complaints from resident to Resident Advisor regarding Frishberg's Assistance Animal

- Exhibit 9 – Correspondence to Frishberg dated October 13, 2023

- Exhibit 10 – USF Regulation 6.0021, Student Code of Conduct

- Exhibit 11 – Student Conduct and Ethical Development Informational Meeting Form

- Exhibit 12 – Correspondence from Frishberg dated October 20, 2023

- Exhibit 13 – Student Conduct RA/CM Incident Report dated October 21, 2023

- Exhibit 14 – Correspondence to Frishberg dated November 2, 2023

- Exhibit 15 – Correspondence to Frishberg dated November 6, 2023

- Exhibit 16 – Correspondence to Frishberg dated November 9, 2023

- Exhibit 17 – Photos of Frishberg's Assistance Animal loose and unaccompanied in common area

- Exhibit 18 – Correspondence with Frishberg dated November 9, 2023, and November 13, 2023

- Exhibit 19 – Correspondence with Frishberg dated November 14, 2023

- Exhibit 20 – Correspondence with Frishberg dated November 17, 2023

- Exhibit 21 – Correspondence to Frishberg dated November 21, 2023

- Exhibit 22 – Correspondence from Frishberg dated November 21, 2023

- Exhibit 23 – Correspondence with Frishberg dated November 27, 2023

- Exhibit 24 – Correspondence with Frishberg dated November 28, 2023

- Exhibit 25 – Correspondence with Frishberg dated December 4, 2023

- Exhibit 26 – Correspondence with Frishberg dated December 12, 2023

DocuSign Envelope ID: 653801F9-08AB-4AAE-B4CF-24A1BE95306F

- Exhibit 27 – Correspondence with Frishberg dated December 13, 2023

DATED this <u>12th</u> day of January, 2024.

DocuSigned by:

*Andrew Johnson*

Andrew Johnson



**POLICY**

| | |
|---|---|
| **Number:** | **6-033** |
| **Title:** | **Animals on Campus** |
| **Responsible Office:** | **Administrative Services** |

**Date of Origin:** 3-20-13      **Date Last Amended:** 9-28-21 (technical)      **Date Last Reviewed:** 9-28-21

---

### I.   PURPOSE & INTENT

This policy is designed to protect the health, safety, and welfare of the University of South Florida (USF) students, faculty, staff and the general public.

### II.   STATEMENT OF POLICY

**A.** All animals brought on to any USF campus property must be under physical restraint. The animals must be under the complete control of and physically restrained by the owner/responsible party who is also responsible for ensuring the animal is safe and healthy.

**B.** Pet animals are to remain only on public places and are not permitted in University patio areas adjacent to swim facilities, in or on the spectator areas or recreational fields or facilities, such as racquetball and tennis courts, in dining or residence halls, inside USF buildings, or at special events, except as provided in Section V, Exceptions.

**C.** USF will follow all federal and state laws with regard to accommodations.

### III.   DEFINTION OF TERMS

**A. Approved Animal:** Student Accessibility Services or Human Resources has determined the person with a disability has established their eligibility for reasonable accommodation and the animal's qualifications as a "Service or Assistance" Animal. The animal is an ***Approved Accommodation*** for the Eligible Person under the applicable laws.

**B. Assistance Animals:** As defined by The Fair Housing Act, ***Assistance Animals*** are animals that work, provide assistance, or perform tasks for the benefit of a person with a disability, or animals that provide emotional support that alleviates one or more identified

**EXHIBIT 1**

symptoms or effects of a person's disability.  Assistance Animals perform many disability-related functions, including but not limited to guiding individuals who are blind or have low vision, alerting individuals who are deaf or hard of hearing to sounds, providing minimal protection or rescue assistance, pulling a wheelchair, fetching items, alerting persons to impending seizures, or providing emotional support to persons with disabilities who have a disability-related need for such support.  Some, but not all, animals that assist persons with disabilities are professionally trained.  Other assistance animals are trained by the owners themselves and, in some cases, no special training is required.  The question is whether or not the animal performs the assistance or provides the benefit needed as a reasonable accommodation by the person with the disability.  Assistance Animals are not considered Service Animals and are not permitted in public spaces, classroom or work places.

C.  **Eligible Person:** A person with a disability who because of a functional limitation of his/her disabling condition requires a Service Animal to perform a task or function.

D.  **Emotional Support Animal:** An animal whose sole function is to provide **emotional support. Emotional support animals** do not qualify as service animals under ADAAA and are not permitted on campus except to the extent the animals are considered Assistance Animals under the FHA as provided in Section (B) above.

E.  **Public Place –** Areas on the University campus that have no restricted access and are open to the general public. Employee office areas and residence halls require contractual arrangements with access permitted only within the terms of the contracts. Students with a disability may bring Service Animals to classrooms, labs or other academic areas necessary for the student to meet the terms of their academic program as an Academic Accommodation without seeking formal approval through the University process described in Section III. A.

F.  **Responsible Party**: Any person who owns the animal, brings the animal to campus, is training a service animal or is an Eligible Person as defined in section (C) above (there may be more than one Responsible Party and each or all may be held fully responsible for the animal). For SAIT the Responsible Party is the animal's trainer and for Service Animals the Responsible Party is the Eligible Person as defined by this Policy.

G.  **Service Animal in Training:** (SAIT) – A dog undergoing training by an approved trainer.

H.  **Service Animal:** As defined by the Americans with Disabilities Act Amendment Act (ADAAA), Service Animals are dogs or miniature horses that are individually trained to do work or perform tasks for people with disabilities. Examples of such work or tasks include guiding people who are blind, alerting people who are deaf, pulling a wheelchair, alerting and protecting a person who is having a seizure, reminding a person with mental

2

illness to take prescribed medications, calming a person with Post Traumatic Stress Disorder (PTSD) during an anxiety attack, or performing other duties.  Service Animals are working animals, not pets.  The work or task an animal has been trained to provide must be directly related to the person's disability and must always be with and under the control of the Eligible Person.  The Service Animal may not be left unattended.  Animals whose sole function is to provide comfort or emotional support do not qualify as service animals under the ADAAA.

**I.   Therapy Animal:** Therapy Animals are trained and registered by qualified Handlers/Responsible Parties who use the dogs for comfort and companionship and may be permitted on campus if (1) a dog is registered through Therapy Dogs International, Therapy Dogs Incorporated or Pet Partners and/or; (2) a dog is prescribed by a licensed Mental Health Professional, as a part of an ongoing psychotherapeutic treatment or therapy program, and the individual provides the required specific documentation. Therapy Animals do not assist individuals with a disability to perform the activities of daily living and are not covered by statutes protecting and giving rights to Service Animals.

**J.   University Official:** USF employees with responsibility for the administrative operations or maintenance of any area classroom or any USF properties.

**K.   Work or Tasks** – Examples of Work or Tasks include guiding people who are blind, alerting people who are deaf, pulling a wheelchair, alerting and protecting a person who is having a seizure, reminding a person with mental illness to take prescribed medications, calming a person with Post Traumatic Stress Disorder (PTSD) during an anxiety attack, or performing other duties. Service Animals are working animals, not pets. The Work or Task an animal has been trained to provide must be directly related to the person's disability.

**IV.   PROCESS STEPS/GENERAL GUIDELINES**

**A.** In parts of the campuses where animals may be permitted, such animals must be kept securely controlled by a harness or leash not to exceed ten (10) feet in length (unless there is an exception granted based on disability).  Animals are not permitted to run at-large on any streets, unimproved lots or premises within the boundaries of USF properties. Animals should not be tethered and left unattended.

**B.** Animals must be registered, vaccinated and/or must comply with legal requirements set by the local, state or federal government.

**C.** An animal left unattended in a vehicle or any other area is to be reported to the Police Department for appropriate response. A person who leaves an animal unattended may be prosecuted.

**D.** The Responsible Party who wishes to bring an animal on campus for a one time display or special circumstance approved by or at the request of the USF, must comply with USF regulations or policies. This approval may require a certificate of insurance and animal health certificates.

**E.** If an animal disrupts the University educational process, administrative processes, or other campus function, the Responsible Party must remove the animal immediately. In addition, the owner or responsible party will be held liable for any damage to person or property caused by the animal's presence on the property.

**F.** The Responsible Party must clean up all animal waste and dispose of that waste in outdoor trash receptacles. Individuals unable to do so may request specific accommodations. Animal waste is not to be disposed of in indoor trash receptacles.

**G.** Removal of dead or injured animals is the responsibility of the Responsible Party; however, in the event immediate action is necessary, the facilities manager may take appropriate action to remove the animal.  Any and all costs  associated with such removal will, when possible, be at the Responsible Party's expense.

**H.** Wild or feral animals are to be left alone.  In the event the wild or feral animals appear to be a threat to human safety or property, the facilities manager may take appropriate action.

**V.** **EXCEPTIONS**

Types of Animals with Exceptions: The following animals and specific instances are an exception to [II. B.] above as they are permitted on USF properties so long as they are under the complete control of and physically restrained by the Responsible Party and/or maintained as provided below:

**A.** **Assistance Animals** are permitted on campus with approval from the Office of Housing and Residential Education and must be contained within the private residential area (room, suite, and/or apartment) of at all times except when transported outside the private residential area in an animal carrier or controlled by leash or harness. Assistance Animals are not permitted in public spaces, classrooms, or work places unless they also meet the definition of Service Animal as provided by law and as permitted as part of an accommodation as provided in this Policy.

**B.** **Law Enforcement Animals**: Animals used for law enforcement or investigations on campus.

4

C. **Research Animals:** Animals identified and approved for designated research-related activity.

D. **Service Animals:** Animals will be permitted in public spaces and in classrooms as noted in this Policy (see Section (V)(.I.)).  Service Animals must be accompanied by the Eligible Person at all times and must not be left unattended either on campus, in a residence hall or place of employment. Service Animals in Training (SAIT) are permitted in or on public places pursuant to §413.08, Florida Statute and must be with the Responsible Party (for SAIT the Responsible Party must be the person training the animal).   A SAIT may not be left unattended and must be accompanied by the Responsible Party at all times while on any USF property. This is to be distinguished from an Assistance Animals which may be left alone in a residential hall.

E. **Therapy Animals:** Therapy Animals used as a therapy tool may be permitted on campus for a therapy session if the therapy is an integral part of a treatment process as prescribed by a licensed mental health professional with specific documentation required.  Therapy Animals do not assist individuals with a disability to perform the activities of daily living. They are not covered by statutes protecting and giving rights to service animals.  Approval of the presence of a therapy animal falls within the authority of USF regarding accommodations to a disability or the counseling center.  Therapy Animals are defined as animals with a good temperament and reliable, predictable behavior.  Therapy Animals used as an accommodation normally will be permitted within campus housing areas for their periodic visits.  This is in addition to other areas where USF programs are offered, as identified by the requestor and will need to meet all requirements of a Service Animal.

F. **Special Events:** As specific special events or limited programs approved by the University may require animals on campus, individuals may request approval for a special event or exception to this Policy using the Event Request process or contacting Human Recourses or Student Disability Services to request exceptions or permission to bring animals on to campus for the purposes of limited programs including those for stress relief, educational programs or limited special presentations.

Guidelines for Animals with Exceptions: The following guidelines are provided as referenced in [V.] above:

G. **Accommodation Requests:** USF is committed to compliance with state and federal laws regarding individuals with disabilities. Members of the University community who seek reasonable accommodation for disabilities should contact Student Accessibility Services (SAS), Human Resources (employees) or Diversity & Equal Opportunity (visitors).

H. **Approved Accommodations on Campus:** USF officials will determine, on a case-by-case basis, and in accordance with applicable laws and regulations, whether an animal

meets the definition of Service or Assistance Animal and the terms of any reasonable accommodation on campus. In doing so, USF must balance the needs of the individual with the impact of animals on other campus patrons. Where it is not readily apparent that an animal is a Service Animal as defined by the Americans with Disabilities Act Amendment Act (ADAAA), or an Assistance Animal under the Fair Housing Act (FHA), USF may require sufficient information and documentation to enable Student Accessibility Services (SAS) (student requests) or Human Resources (employee requests) to establish eligibility for reasonable accommodations and the animal's qualification as a Service or Assistance animal under the applicable laws.

I.  **Registration:** The University encourages persons with Service Animals that will be on campus more than five (5) consecutive or non-consecutive days (within an academic year) to register with USF as follows: Students register with Student Accessibility Services (SAS); employees register with Human Resources; and visitors may contact Diversity & Equal Opportunity. In the event the Service Animal is needed in residence halls or office areas not open to the general public the Service Animal must be registered as an accommodation with the appropriate office*. All Service Animals must meet the criteria set by those offices which may include documentation of current applicable immunizations and vaccinations; documentation of a clean bill of health from a licensed veterinarian; and requirements that the animal display valid rabies vaccination tag and state and/or county license or registration. Registration must be complete 30 days prior to occupancy for residential student requests. [* Students with a disability may bring Service Animals to classrooms, labs or other academic areas necessary to facilitate their academic program as an Academic Accommodation without seeking formal approval through the University Student Disability or other registration processes].

J.  **Verification of Service Animal Status:** To determine if an animal meets the Service Animal exception of this Policy, a USF official may ask two questions:

(1) Is the animal a Service Animal required because of a disability; and

(2) What work or task has the animal been trained to perform?

USF officials cannot ask about a person's disability, require medical documentation, require a special identification card or training documentation for the animal, or ask that the animal demonstrate ability to perform the work or task described. However, if a person is requesting a specific accommodation that includes a service animal, the University may request appropriate documentation and medical verification to process the accommodation request.

K.  **Behavior and Supervision:** All animals including any of the animals falling in the Exceptions section of this Policy must not be unruly or disruptive, be in ill health or

unclean. An animal may be removed from USF property if the animal is a direct threat to the health and safety of others, or if the animal is disruptive or out of control.  USF may temporarily or permanently exclude any animal including any of those listed as Exceptions at the discretion of the facilities manager, EH&S or emergency personnel.

**L. Responsible Party Duties:** The Responsible Party shall bear the full costs associated with any injury to persons, or damage to property, caused by a service animal and bear full liability for any action of the service animal.

## EMERGENCY ACTION

If an animal on campus is exhibiting dangerous or destructive behavior, or if an animal appears to be stray or abandoned, please notify the appropriate USF Law Enforcement Officer (LEO). The LEO will notify the appropriate Agency (Hillsborough County Animal Services, Florida Wildlife Control or other appropriate party).  If the animal is deemed a threat, the LEO will take appropriate emergency action.

## VII.   COMPLAINTS

Any complaints regarding the application of this policy with regard to the ADA or other equitable application of this process may be made to the Office of Diversity and Equal Opportunity.

## VIII.   CONSEQUENCES

The consequences for violation of this policy include but are not limited to:

**A.** Students in violation of this policy may be referred to Student Conduct and Ethical Development for disciplinary action in accordance with the University's student disciplinary procedure.

**B.** Staff violators may be referred to their supervisor. Faculty violators may be referred to their chair or appropriate unit head. In addition, all other Human Resources policies will apply.

**C.** Non University violators or any University person may be referred to the USF Police and restricted from University property.

**\*Current Responsible Office: Administrative Services**

**\*Refer to the appropriate Responsible Office website for a current name of the Vice President or other Responsible Officer.**

*History: New 3-20-13, Amended 8-18-15 (technical), 7-13-17, 9-6-18 (technical), 11-30-18 (technical), 9-28-21 (technical).*

*Consolidation Amendments Effective: 7-1-20*

# Animals on Campus
## Assistance Animal
## Housing Protocol & Agreement



Daniel Frishberg

Resident Name: _____

A University housing resident, student or staff, with a disability may be entitled to keep a Service or an Assistance Animal with or without training that provides emotional support. Please see USF System Policy 6-033, Animals on Campus, for the definitions of Service Animal and Assistance Animal.  To qualify for such an accommodation, the Assistance Animal must be necessary to afford the individual an equal opportunity to use and enjoy a dwelling or participate in the housing services and programs.  Individuals living in an on campus residence hall may request a waiver to permit an Assistance Animal to live in the University residence halls.  This request must be made in advance of bringing the animal onto University property, through the Office of Housing and Residential Education (HRE) in consultation with Student Disability Services (SDS).  The animals under this section shall meet all of the criteria set forth for other animals on campus, including Service Animals.  In addition, the University housing resident must demonstrate that he or she has a disability and the Assistance Animal is prescribed to the individual by a health care or mental health professional to play an integral part of the person's treatment process. The housing resident must have been under the care of the health care or mental health professional for a minimum of 90-days. This is an EXCEPTION to a given policy and HRE must specifically approve the Service/Assistance Animal.  Once the approval has been granted, the resident/owner of the Assistance Animal must meet with an appointed member of HRE, sign this Agreement, and adhere to its terms.

University housing residents who receive a waiver to keep an Assistance Animal in University housing (also referenced in this document as the animal's "owner") should review and understand USF System Policy 6-033, Animals on Campus.  Any Animal in On Campus Housing must meet the criteria as articulated in USF System Policy 6-033 Animals on Campus and the additional criteria below:

a.  Non-domesticated, wild, dangerous, poisonous, and/or illegal animals are not permitted

b.  The approved Assistance Animal must be controlled by its owner and must be contained within the residential area (room, suite, apartment, building, enclosed balcony or yard spaces) at all times, except when transported outside the private residential area in an animal carrier or controlled by leash or harness.  Assistance Animals cannot roam freely in common areas.

c.  When an Assistance Animal is left in the owner's room without its owner it must be crated or otherwise appropriately contained. Suite or apartment bathrooms are not sufficient containment of the animal an should not be used. Assistance Animals and equipment necessary for the safe keeping of the Assistance Animal must not pose a threat to the safety of others.

d.  An Assistance Animal may not be left alone in the owner's room for more than a reasonable amount of time, which shall never exceed 24 hours.  Any exceptions must be requested and approved in advance through the HRE office and, in such cases, determination of a reasonable amount of time is left to the discretion of the HRE Representative, whose decision is final.

e.  In a case of an emergency and you cannot care for your Assistance Animal, the HRE staff will communicate with the Animal Emergency Contact provide to come pick up your animal during the duration of your absence. Your emergency contact listed will have four hours to come pick-up the Assistance Animal. If your Emergency Contact cannot come within the four hour period, Animal Control will be called to come pick up the Assistance Animal. If at any time your emergency contact information changes, you will need to contact the HRE office (housing@usf.edu) immediately so we have the most accurate information. Your emergency contact cannot be a current resident who lives on campus or an HRE staff member (RA, RLC ect).

**EXHIBIT 2**

DocuSign Envelope ID: 18B2EEAE-1749-40B3-A8F6-7F1961CBFB18

Case 8:24-cv-00022-TPB-NHA    Document 17-1    Filed 01/15/24    Page 10 of 18 PageID 186
USCA11 Case: 24-11175    Document: 36-1    Date Filed: 12/19/2024    Page: 86 of 201

f.  For dogs and other animals requiring exercise and outside toileting, the animal may be walked on University grounds, excluding athletic fields.  At all other times Assistance Animals shall be kept in the residence, unless also registered and approved as a Service Animal.  Assistance Animals (as opposed to Service Animals) may not be taken into classrooms or other buildings on campus.

g.  The expense and responsibility for feeding, providing health care and necessary bathing and grooming of the Assistance Animal is the sole responsibility of the owner.  It is also the responsibility of the owner to ensure that the Assistance Animal is in compliance with state and local licensing, tagging and vaccination laws and rules.

h.  The USF System reserves the right to request proof of compliance with all terms of this Agreement at any time during the approved Assistance Animal's residency.

i.  All approved Assistance Animals, if taken outside the residence, must wear identification tags with home address and, if applicable, vaccination information.

j.  The Assistance Animal must be housebroken.  Owners are responsible for properly containing and disposing of all waste.

k.  The owner's residence may be inspected for fleas, ticks or other pests once per semester or as needed.  The Housing staff will schedule the inspection, normally done during routine Health and Safety inspections.  If fleas, ticks or other pests are detected through inspection, the residence will be treated using approved fumigation methods by a university-approved pest control service.  The owner will be billed for the expense of any pest treatment above and beyond normal required pest management.

l.  The owner is responsible for assuring that the approved Assistance Animal does not unduly interfere with the routine activities of the residence or cause difficulties for students who reside there.  Assistance Animals must not make excessive noise or display behavior that will disrupt other community members.  Individuals with disabilities who are accompanied by Assistance Animals must comply with the same rules regarding noise, safety, disruption, and cleanliness as people without disabilities.  Sensitivity to residents with allergies and to those who fear animals is important to ensure the peace of the residential community.

m.  The owner must ensure that the Assistance Animal does not:
    • Attack, harass, sniff, jump on/at or disrupt others or their personal belongings
    • Display any repeated behaviors or noises that are disruptive to others.
    • Block evacuation routes or egress in case of an emergency.
    • Leave the owner's room except when accompanied by the owner.

n.  The owner is financially responsible for the actions of the approved Assistance Animal including bodily injury or property damage, including but not limited to any replacement of furniture, carpet, window or wall covering, personal belongings of others, etc.  The owner is expected to cover these costs upon repair and/or move-out.

o.  The owner is responsible for any expenses that are required due to costs incurred for cleaning which is above and beyond a normal cleaning or for repairs to University premises that are assessed after vacating the residence.  For student residents, the USF System shall have the right to bill the Student account of the owner for unmet obligations. For residents who are administrative employees, the USF System shall have the right to deduct any moneys owed for expenses from any leave payout after separation, and the resident can be billed for any additional monies owed.

Update: February 11, 2020

DocuSign Envelope ID: 18B2EEAE-1749-40B2-A8F6-7F1961CBFB18

p.    The owner must notify the HRE Representative and, if applicable, the Students with Disabilities Office in writing if the approved Assistance Animal is no longer needed as an Assistance Animal or is no longer in residence. To replace an approved Assistance Animal, the owner must file a new Assistance Animal request.

q.    It is the expectation of the Assistance Animal owner that sufficient notice to roommates/suitemates is provided that the animal will be present in the room/unit. In the event that one or more roommates or suitemates do not approve, either the owner and animal or the non-approving roommates or suitemates, as determined by the HRE Representative, may be moved to a more suitable location.  Housing and Residential Education has the ability to relocate owner and approved Assistance Animal as necessary per current contractual agreements.

r.    There is a 14-day grace period from date of approval that the Assistance Animal is allowed on campus. The date the animal is allowed to be on-campus will be provided either in your approval notification or during the meeting with HRE staff.

s.    Owner agrees to continue to abide by all other residential policies.  An exception to a policy that otherwise would prohibit having an Assistance Animal does not constitute an exception to any other policy.

t.    Any violation of the above rules or University Policy may result in immediate removal of the Assistance Animal from USF System premises and the owner being prohibited from continuing to keep an Assistance Animal on University property. For students, such removal may be reviewed through USF Student Rights and Responsibilities and the student will be afforded all rights of due process and appeal as outlined in that process.

u.    Should the approved Assistance Animal be removed from the premises for any reason, the owner is expected to fulfill his/her housing obligations for the remainder of the housing contract.  The resident may be required to sign affirmatively acknowledging an understanding and willingness to abide by the established guidelines and to provide the additional information as requested.

v.    The University is not responsible for an Assistance Animal during a fire alarm, fire drill, natural disaster, or other emergency situation.

w.    Housing & Residential Education may have additional terms and conditions throughout the year as different situations arise. If there are any additional terms that must be met, those will be provided to you in writing through your USF e-mail account.

x.    In the case of a fellow resident with a conflicting accommodation for a registered disability, HRE will consider the needs of both persons in meeting its obligations to reasonable accommodate all disabilities and to resolve the problem as efficiently and expeditiously as possible.

DocuSign Envelope ID: 18B2EEAE-1749-40B2-A8E6-7E1961CBEB18

Case 8:24-cv-00022-TPB-NHA   Document 17-1   Filed 01/15/24   Page 12 of 18 PageID 188
USCA11 Case: 24-11175   Document: 36-1   Date Filed: 12/19/2024   Page: 88 of 201

By signing this document you are confirming that you have read and understand USF System Policy 6-033 (Animals on Campus) and the above Agreement on Assistance Animals.  You also agree to adhere to these terms.

Daniel Frishberg

U50082127

_____
PRINTED NAME OF RESIDENT

_____
USF ID #

8/18/2023 | 21:29 EDT

_____
SIGNATURE OF RESIDENT

_____
DATE OF MEETING

Cat, Russian Blue

08/11/2023

_____
ANIMAL TYPE/BREED

_____
ANIMAL NAME

tnW2GORRWEZOMDJKWVON

Shadow

_____
ESA REQUEST TICKET NUMBER

_____
DATE OF APPROVAL

8/16/2023 | 08:53 EDT

Molli keller

_____
SIGNATURE OF HRE REPRESENTATIVE

_____
DATE OF MEETING

Molli Keller

Assistant Director

_____
PRINTED NAME OF HRE REPRESENTATIVE

_____
TITLE

08/19/2023

_____
DATE OF ANIMAL ON-CAMPUS

_____
OWNERS INITIALS

Update: February 11, 2020

## University of South Florida
## Student Conduct RA/CM Incident Report

*Submitted on October 5, 2023 at 11:02:24 pm EDT*

| | |
|---|---|
| Nature | **RA Conduct Referral** |
| Urgency | **Normal** |
| Incident Date and Time | **2023-10-05 6:30 PM** |
| Incident Location | **Pinnacle Hall 5th Floor** |

Reported by
Name:          Residential Advisor
Title:
Email:          Residential Advisor
Phone
Address:

**[Authenticated as U19708337]**

Involved Parties
**Daniel Frishberg (          )**          2003-          danielfrishberg@usf.edu
Alleged                                                       Pinnacle Hall 527 527

Residential Advisor          2003-          Residential Advisor          Residential Advisor
Witness

Questions
Please provide a detailed description of the incident/concern using specific, concise, objective language written in third person.
**On Thursday, October 5th, 2023 at around 6:40 pm several messages were sent in between residents in the 5th floor group chat. The messages were in regard to an ESA Cat that belongs to Resident Daniel Frishberg, that was saw seen outside of the room in the common lounge area on the 5th floor.**

**To preface, Resident Frishberg had been given a few verbal warnings and a message sent through GroupMe by RA Residential Advisor (on September 14th, and September 20th) informing the resident of ESA policies, and Housing policies because the cat had been previously sighted in the 5th floor lounge (see pictures attached). A few residents on the 5th floor have also been complaining of seeing Resident Frishberg's cat outside in the lounge.**

**RLC Shanale Cordero was made aware of the situation by RA Residential Advisor on September 14th, 2023. When RA Residential Advisor contacted RLC Cordero on October 5th with new information from the 5th floor groupchat (please see pictures attached), RLC Cordero informed RA Residential Advisor to proceed with submitting an incident report.**

Select any of the following that apply:


Please list additional agencies or departments that were present:


Name of contacted RLOC/LVL2


Police Report Number


Attachments
img6132.png
img6133.png

**EXHIBIT 3**

img6134.png
img6135.png
img6136.png
img6140.png
img6143.png
img6144.png
img6145.png
img6146.png
img6147.png
img6148.png
img6149.png
img6150.png
img6151.png
img6153.png
img6154.png
img6155.png
img6156.png
img6157.png
img6158.png
img6159.png
img6160.png
img6161.png
img6162.png
img6163.png
img6164.png
img6165.png
img6166.png
93dbdb03b786415dbeeb599e5c07defe.jpg

*Pending IR #00001454*
*Submitted from 131.247.226.163. Processed by routing rule #97. Routed to Jimmy Surin, Assistant Director, SCED.*
*Copies to: shanalec@usf.edu,garciaw4@usf.edu,sfindley@usf.edu,keller14@usf.edu*

## University of South Florida
## Student Conduct RA/CM Incident Report

*Submitted on October 5, 2023 at 11:02:24 pm EDT. Last modified October 6, 2023 at 4:30:10 pm EDT.*

| | |
|---|---|
| Nature | **RA Conduct Referral** |
| Urgency | **Normal** |
| Incident Date and Time | **2023-10-05 6:30 PM** |
| Incident Location | **Pinnacle Hall 5th Floor** |

Reported by
Name:          Residential Advisor
Title:
Email:         Residential Advisor
Phone
Address:

Involved Parties

**Daniel Frishberg**                2003-            danielfrishberg@usf.edu
Alleged                                               Pinnacle Hall 527 527

Residential Advisor               2003-            Residential Advisor          Residential Advisor
Witness

Questions

Please provide a detailed description of the incident/concern using specific, concise, objective language written in third person.

**On Thursday, October 5th, 2023 at around 6:40 pm several messages were sent in between residents in the 5th floor group chat. The messages were in regard to an ESA Cat that belongs to Resident Daniel Frishberg, that was saw seen outside of the room in the common lounge area on the 5th floor.**

**To preface, Resident Frishberg had been given a few verbal warnings and a message sent through GroupMe by RA Residential Advisor (on September 14th, and September 20th) informing the resident of ESA policies, and Housing policies because the cat had been previously sighted in the 5th floor lounge (see pictures attached). A few residents on the 5th floor have also been complaining of seeing Resident Frishberg's cat outside in the lounge.**

**RLC Shanale Cordero was made aware of the situation by RA Residential Advisor on September 14th, 2023. When RA Residential Advisor contacted RLC Cordero on October 5th with new information from the 5th floor groupchat (please see pictures attached), RLC Cordero informed RA Residential Advisor to proceed with submitting an incident report.**

Select any of the following that apply:

Please list additional agencies or departments that were present:

Name of contacted RLOC/LVL2

Police Report Number

Attachments
93dbdb03b786415dbeeb599e5c07defe.jpg
img6132.png

img6133.png
img6134.png
img6135.png
img6136.png
img6140.png
img6143.png
img6144.png
img6145.png
img6146.png
img6147.png
img6148.png
img6149.png
img6150.png
img6151.png
img6153.png
img6154.png
img6155.png
img6156.png
img6157.png
img6158.png
img6159.png
img6160.png
img6161.png
img6162.png
img6163.png
img6164.png
img6165.png
img6166.png

*Pending IR #00001454*
*Submitted from 131.247.226.163 and routed to Jimmy Surin (Assistant Director, SCED)*
*Modified by Jimmy Surin on October 6, 2023 at 4:30:10 pm EDT from 131.247.135.15*
*Copies originally to: shanalec@usf.edu,garciaw4@usf.edu,sfindley@usf.edu,keller14@usf.edu*



**EXHIBIT 4**





**EXHIBIT 5**



**EXHIBIT 6**























USCA11 Case: 24-11175   Document: 36-1   Date Filed: 12/19/2024   Page: 107 of 201



**EXHIBIT 7**









**EXHIBIT 8**

UNIVERSITY of
**SOUTH FLORIDA**

October 13, 2023

Daniel Frishberg
Sent electronically to danielfrishberg@usf.edu

Regarding Case Number: 2023087401

Dear Daniel,

Student Conduct and Ethical Development (SCED) has received a report regarding an alleged incident that occurred on Thursday, October 5, 2023 in Pinnacle Hall at 6:30 PM. Specifically, Resident Daniel Frishberg has openly and repeatedly violated the ESA agreement within Pinnacle Hall.

Based on the received report, you are formally charged with the following conduct violation(s) of the USF Student Code of Conduct:

- Residence Hall Policies
  Failure to abide by any policy or regulation governing University Housing (e.g. rental agreement, Resident Handbook).

- Failure to Comply
  Failure to comply with an official request or directive of a University Official acting within the scope of their assigned duties. Failure to identify oneself or produce USF identification upon request by a University Official.

You are invited to participate in an informational meeting that has been scheduled for **Friday, October 20, 2023 at 3:30pm in Microsoft Teams Video Conference**. You will receive an additional email with a calendar invite and a link to join the video conference. An informational meeting is an opportunity to explain the Student Conduct Process, your due process rights, the allegations, and charges, and review all available information supporting the charges.

You may have an Advisor present during any meeting or hearing with Student Conduct and Ethical Development. Students must provide the identity of the person and complete this Release of Information form at least two (2) business days in advance.

Bulls Student Advisors (BSA) provides free, trained advisors to students throughout the Student Conduct Process. BSA is an agency of Student Government, which is independent and unaffiliated with Student Conduct and Ethical Development. Students seeking the support of a peer student advisor, may contact BSA at sg-bsad@usf.edu or visit Bulls Student Advisors.

**STUDENT CONDUCT AND ETHICAL DEVELOPMENT**
University of South Florida ǀ Tampa, St. Petersburg, Sarasota-Manatee campuses
usf.edu/sced

EXHIBIT 9

You have the option to attend this meeting in person. If you would like to attend and participate in person, please contact me at shanalec@usf.edu no later than one (1) business day in advance of the scheduled meeting. The location of the in-person meeting will be communicated following your outreach.

To reschedule this meeting, you must contact me at shanalec@usf.edu no later than one (1) business day in advance of the scheduled informational meeting. If you do not attend or re-schedule the informational meeting, you will have waived your opportunity to participate in an informational meeting, and SCED will proceed with scheduling a Formal Hearing.

SCED is committed to providing reasonable accommodations. If you require accommodations in order to fully participate in this process, please notify Shanale Cordero at shanalec@usf.edu in advance of your scheduled meeting. For additional information about the Student Conduct Process visit the Student Code of Conduct at www.usf.edu/sced.

Sincerely,



Shanale Cordero
Pinnacle Hall Residence Life Coordinator



## Student Conduct and Ethical Development
## Charged Student and Student Organization Due Process Rights

Any student or student organization who has allegedly violated the Student Code of Conduct has the following rights during the Student Conduct Process:

1. To be accompanied by an advisor of their choice and expense throughout the Student Conduct Process. For cases under the jurisdiction of Policy 0-004, the University will appoint an advisor for the purposes of cross-examination during a Formal Hearing, if one is not chosen.
2. Written notice of the charges and allegations.
3. A fair and impartial student conduct process.
4. The right to presumption that no violation has occurred. The burden of proof is on the University, and the standard of proof is the preponderance of the evidence.
5. The opportunity to present relevant information.
6. The opportunity to present and question witnesses.
7. To not provide self-incriminating testimony. Invoking the right against self-incrimination will not be considered as a negative factor in the decision of the Hearing Officer or Hearing Body.
8. The opportunity to review all available information supporting the charges of violations of the Code prior to resolution.
9. To receive written notice of the outcome of the selected resolution option within five (5) days of the Resolution Agreement of Formal Hearing.
10. To submit a written appeal.

In addition to the above, a charged student has the following rights in cases of alleged sexual harassment, stalking, and violence:

11. The ability to request alternate arrangements for participation in the Formal Hearing via audio or live-video from another location, and/or to participate in a manner that avoids direct contact with the complainant as long as such participation does not infringe on the charged student's right to question the complainant during the Formal Hearing or infringe on the implementation of Formal Hearing procedures.
12. To submit a written impact statement in advance of the Formal Hearing.
13. To not have prior sexual history considered, except for the testimony offered by the complainant or charged student about their shared sexual history that the Hearing Officer or Hearing Body deems relevant, when determining if a conduct violation has occurred.

## STUDENT CONDUCT AND ETHICAL DEVELOPMENT
### University of South Florida | usf.edu/sced
### Tampa | St. Petersburg | Sarasota-Manatee



**REGULATION**

| | |
|---|---|
| **Number:** | **USF6.0021** |
| **Title:** | **Student Code of Conduct** |
| **Responsible Office:** | **Student Success** |

Date of Origin: 9-23-85          Date Last Amended: 9-7-22 (technical)          Biennial Review: See Policy 0-001

## I.    <u>PURPOSE AND INTENT</u>

Student Conduct and Ethical Development (further referred to as "SCED" supports the goals, mission, values, and visions of the University of South Florida ("University" or "USF") by promoting responsibility and adherence to the standards of behavior outlined in this Regulation ("Student Code of Conduct" or "Code").

SCED collaborates with the USF community to advocate for a safe environment that promotes personal accountability and supports student success. SCED facilitates educational opportunities through meaningful interactions with students to encourage their academic, emotional, and professional development. The goal of SCED is to create environments that empower students to engage as ethical citizens in a diverse global society.

## II.    <u>STATEMENT OF REGULATION</u>

The USF President has designated SCED, or designee, to administer and maintain this Regulation ("Student Code of Conduct" or "Code"). The Student Code of Conduct describes standards of behaviors that are counteractive to the goals and mission of the University and the process for how the University will hold students and student organizations accountable to these standards of behavior.

## III.    <u>STANDARDS OF BEHAVIOR</u>

Students and student organizations are responsible for knowing the information, policies, and procedures outlined in the Code. There is an expectation that students and student organizations adhere to the following standards of behavior.

1

**EXHIBIT 10**

**Commitment to Honor**

The Code supports and seeks to put into practice the USF Commitment to Honor. As an ethical community, USF is dedicated to the ideals of excellence in student development, academic learning, scholarship, and research. Each member of this community is expected to accept and live these commitments:

1. I resolve to maintain honor and integrity of the university community in pursuit of student development, academic learning, scholarship and research.
2. I resolve to respect the dignity and intrinsic value of all persons.
3. I resolve to contribute to the progress and greater good of the community.
4. I resolve to strive for excellence and discovery for myself, others, and the University.

**Academic Disruption**

Disruptive students in the academic setting hinder the educational process. Instructors have the primary responsibility for managing the classroom environment whether in person or online in accordance with USF 3.025 Disruption of Academic Process. The Disruption of Academic Process Regulation provides the steps an instructor may take to immediately address a student disrupting a class or academic setting including restricting a student from class. If a student disrupts the classroom or academic setting, the instructor should submit a report in writing using the Academic Disruption Incident Report Form. References to "instructor" include course instructors, faculty, administrators, and staff.

**Amnesty**

*Medical*

The University encourages students to seek emergency medical assistance when faced with an alcohol and/or drug-related emergency and in any situation where a reasonable person believes medical treatment to be appropriate. Students who seek or receive emergency medical assistance for themselves or students who seek assistance for another student experiencing an emergency related to the consumption of alcohol and/or drugs may qualify for amnesty. Any student who qualifies for amnesty under the USF 30-004 Medical Amnesty (Student Reporting) Policy, may not be charged with violations of the Student Code of Conduct as those conduct violations relate to the consumption and/or use of alcohol and/or drugs. Although students who qualify for amnesty may be exempt from the Student Conduct Process, they may be required to complete educational measures.

*Hazing*

A student may not be charged with a violation of the Code if the student establishes that, before medical assistance or law enforcement arrived on the scene of the hazing event, the student rendered aid to the hazing victim(s) and establishes all of the following:

1. The student was present at an event where, as a result of hazing, an individual appeared to need immediate medical assistance.

2

2. The student was the first individual to call 911 or USF Police to report the need for immediate medical assistance.

3. The student provided their own name, the address where the immediate medical assistance was needed, and a description of the medical issue to the 911 or USF Police dispatcher at the time of the call.

4. The student remained at the scene with the individual in need of immediate medical assistance until such medical assistance or law enforcement arrived and that the student cooperated with such personnel at the scene of the incident.

For more information about hazing and hazing amnesty, reference 6.0023 Prohibition of Hazing Regulation.

## IV.   APPLICABILITY & AUTHORITY

The University of South Florida is one institution with branch campuses.  An incident will be referred to the campus where the incident occurred or as designated by the director of SCED, or designee.

Students and student organizations are responsible for having read and abiding by the standards of behaviors of the Code. The University reserves the right to make changes to the Code as necessary. The most updated version of all USF policies and regulations can be found at:
http://regulationspolicies.usf.edu.

The Code and Student Conduct Process apply to the behaviors of any student and student organization regardless of location or forum that are inconsistent to the goals and mission of USF. This includes (1) conduct that may present a danger or threat to the health and/or safety of students or others, (2) conduct that adversely affects the University community and/or the pursuit of its mission, (3) and/or conduct that violates state or federal laws. Students and student organizations are responsible for their guests and may be held accountable for their guests' behavior.

The Student Conduct Process is educational and designed to address student and student organization behavior; therefore, the University will address any alleged violations of the Code independently of any criminal or civil court process. The Student Conduct Process may be carried out prior to, concurrently with, or following civil or criminal proceedings. Determinations made or sanctions(s) imposed as a result of the Student Conduct Process will not be subject to change because criminal charges were dismissed, reduced, or resolved in favor of the charged student. The University is not required to postpone the Student Conduct Process pending the outcome of any civil or criminal case. Student conduct cases that may result in suspension or expulsion must be resolved prior to the awarding of any degree or certificate.

## V.   DEFINITION OF TERMS

**Administrative Hold** – A restrictive hold placed on a student's record at any point in the Student

Conduct Process to assure compliance with sanctions or pending the resolution of conduct matters.

3

This hold may impact the ability of a student to register for courses, request academic transcripts, and receive a degree and diploma.

**Advisor** – Any individual chosen by the charged student, student organization, and complainant to accompany the party to meetings related to the Student Conduct Process.

**Charge(s)** – Alleged violation(s) of the Student Code of Conduct.

**Charged Student** – Any student who has allegedly violated the Student Code of Conduct. This term may also refer to a student identified as a respondent as defined in USF Policy 0-004.

**Complainant** – Any individual who may have been the subject of sexual harassment, stalking, or violence by the charged student. This may not be the individual who reported the violation(s). This term may also refer to a student identified as a complainant as defined in USF Policy 0-004.

**Conduct Standing** – A student's status related to University conduct.

**Day** – A day when the University is open for regular business operations. This excludes Saturday, Sunday, legal/University administrative holidays or when the campus is closed for business. For emailed correspondence, the day of delivery is not included in a designated time period.

**Hearing Officer** – University official, as determined by the Director of SCED, or designee, authorized to make decisions about alleged violations of the Student Code of Conduct.

**Impact Statement** – A written statement provided by the charged student and complainant that explains how the incident has impacted their personal and educational experiences. These statements may be considered in cases of alleged sexual harassment, stalking, and violence.

**Interim Suspension –** An immediate temporary separation from the University. Conditions may include restriction from University premises and participation in academic endeavors, and/or other and University-related activities. Interim suspensions will be expedited through the Student Conduct Process.

**May** – Is used in the permissive sense.

**Member of the University Community** – Any individual who currently employed by the University, any student of the University, and any third party working on University premises or any participant in a University-sponsored program or activity regardless of the location of the program or activity.

**Policy** – All written and published policies and regulations of the University. Reference USF Regulations and Policies for specific policies and regulations.

4

**Preponderance of the Evidence** – The evidence/information presented supports the finding that it is more likely than not that the conduct violation occurred. This standard is used in adjudicating all cases through the Student Conduct Process.

**Student** – Student is an individual admitted, enrolled, or registered for any University course or program, regardless of the medium of the course or program, or degree-seeking status, or when not enrolled or registered for a particular term, who is eligible to enroll in future terms without seeking readmission. A student who withdraws, is academically dismissed after allegedly violating the Student Code of Conduct, or has a continuing relationship with the University is still considered a student. For the purpose of this Regulation, the term "student" may be interchangeable with "student organization" when the term "student organization" is not directly specified.

**Student Organization** – A student group that is officially registered or recognized by the University, including, but not limited to, political groups, social groups, honor and professional societies, fraternities and sororities, and sport clubs.

**Temporary Restrictions** – Actions that SCED may take upon receipt of an incident report or during the Student Conduct Process. These actions may include, but are not limited to, interim suspension, a removal from on-campus housing, no contact orders, restrictions from clubs, events, and organizational activities, and/or restrictions from specific areas on University premises. Temporary restrictions may be amended or lifted throughout the Student Conduct process.

**Transcript Overlay –** Notation on a student's academic transcript that states the student is not in good conduct standing resulting from suspension or expulsion.

**University** –All campuses of the University of South Florida.

**University Activity or University Program** - Any function or event that is hosted, sponsored, or organized by any University member when acting in their official capacity, group, or organization, including but not limited to, student organizations. This includes, but is not limited to, coursework and other academic activities, education abroad, field trips, retreats, social events, philanthropies, and community service events.

**University Conduct Board** - A panel of faculty, staff, and students who have been trained to participate in the adjudication of student conduct cases.

**University Official** – Any individual the University employs, contracts, or appoints to perform assigned teaching, research, administrative, professional, or other responsibilities (e.g. faculty, staff, administrators, student staff, USF Police).

**University Premises** – Any building or property owned or controlled by the University within the same reasonably contiguous geographic area and used by the University in direct support of, or in a manner related to, the University's educational purposes, including residence halls; and any building or property that is within or reasonably contiguous to that previously described in this paragraph that is owned by the University, but that is controlled by another individual, is frequently used by students, and supports University purposes (e.g., a food or other retail vendor).

**Will** – Is used in the imperative sense.

**Witness** – An individual with direct knowledge about or involvement in an alleged violation of the Student Code of Conduct.

**Written Notice** –Communication regarding the student conduct process will be sent to the charged student or student organization, and in specific cases the complainant, by e-mail to their official University of South Florida e-mail address, which will be SCED's primary means of communication with students. The delivery of written notice through the official University email will constitute full and adequate notice under the Code. Students are responsible for all communications delivered to their University email address. Written notice to student organizations will be sent to the USF email address on file with the University. If the student is under 18 years of age, written notice will be sent to the student's parent or guardian.

## VI.    CONDUCT VIOLATIONS

The behaviors outlined below are prohibited by this Regulation. The following conduct violations are broadly defined and are not exhaustive in terms.

**Aiding and Abetting** - The prompting, facilitating or encouraging of others to violate standards of behavior.

**Alcohol**

1. Possession or consumption of alcohol when under the legal drinking age as defined by Florida law.
2. Unlawful sale, distribution, and/or manufacturing of alcohol.
3. Public consumption and/or intoxication according to local ordinance.
4. Hosting or sponsoring a gathering at which the underage consumption of alcohol may or has occurred.
5. Control or operation of any mode of transportation while impaired by alcohol.
6. Use and/or possession of devices with the intent to use for rapid or excessive consumption of alcohol, including but not limited to funnels, ice luges, and beer bongs.
7. Possession and/or use of kegs, coolers, party balls and/or other common source containers.

6

8. Reporting to class, an organizational meeting or other University event that is specific to the educational mission while under the influence of alcohol.

9. Failure to abide by 30-023 Alcohol Policy and all University protocols, state, and federal laws regarding alcohol.

**Bribery** – Offering or accepting a bribe or inducement that would impinge upon or compromise the integrity of academic work, student performance, or the unbiased and professional duty of faculty, staff, or students of the University.

**Complicity** – To be associated with a violation of any University policy or regulation including, but not limited to, failure to remove oneself from the area or incident where a violation is being committed or attempted.

**Damage to Property** - Destruction or vandalism of University buildings or property, private property, and/or personal property.

**Dating Violence** – Violence, on the basis of sex, committed by a person, who is in or has been in a social relationship of a romantic or intimate nature with the complainant. The existence of such a relationship shall be determined based on the complainant's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. For the purposes of this definition, dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse. Dating violence does not include acts covered under the definition of domestic violence.

**Disruptive Conduct**

1. Actions and/or behaviors that disrupt, disturb, impair, or interfere with the processes and/or functions of the University or the rights of members of the University community.

2. Actions and/or behaviors that disrupt, disturb, impair, or interfere with the academic environment, and/or failure to abide by USF 3.025 Disruption of Academic Process.

3. Actions and/or behaviors that disrupt, disturb, impair, or interfere with the freedom of movement and speech, and/or academic freedom of any member or guest of the University community.

4. Actions and/or behaviors that disrupt, disturb, impair, or interfere with the student conduct process.

5. Actions and/or behaviors that are disorderly, unruly, and/or disturb the peace.

**Domestic Violence** – Violence, on the basis of sex, committed by a current or former spouse or intimate partner of the complainant, by a person with whom the complainant shares a child in common, or by a person who is cohabitating with, or has cohabitated with, the complainant as a spouse or intimate partner, or by a person similarly situated to a spouse of the complainant under the domestic or family

violence laws of the state of Florida, or by any other person against an adult or youth complainant who is protected from that person's acts under the domestic or family violence laws of the state of Florida. To categorize an incident as domestic violence, the relationship between the respondent and complainant must be more than just two people living together as roommates. The people cohabitating must be current or former spouses or have an intimate relationship.

**Drugs** -Includes, but is not limited to, any narcotic, central nervous system stimulant, hallucinogenic, barbiturate, or other substance treated as such.

1. Misuse or illegal possession of a regulated or controlled substance.
2. Manufacturing, distributing, selling, or attempting to obtain any controlled substance that is prohibited by law.
3. Un-prescribed use, possession, distribution, selling, or attempting to obtain any prescription drug (one's own or another's) that is prohibited by laws.
4. Possession of paraphernalia used for the consumption and/or use of drugs that may include, but not limited to bongs, hookahs, rolling papers, baggies, scales, and pipes.
5. Knowingly inhaling or ingesting a substance (e.g. nitrous oxide, glue, paint, etc.) that may alter a student's mental state.
6. Control or operation of any mode of transportation while impaired by a regulated or controlled substance.
7. Reporting to class, an organizational meeting or other University event that is specific to the educational mission while under the influence of drugs.
8. Failure to abide by 0-610 Drug-Free Workplace Policy and all University protocols, state, and federal laws regarding drugs.

**Failure to Comply** – Failure to comply with an official request or directive of a University Official acting within the scope of their assigned duties. Failure to identify oneself or produce USF identification upon request by a University Official.

**False Information**

1. Knowingly withholding related information or making a false or misleading oral or written statement to the University and/or any University Official.
2. Unauthorized alteration, possession, purchase, forgery, or misuse of any document, record, or instrument to be used as identification or as part of a request for support or excuse from academic assignment or other University service. The University has the right to authenticate or research the reliability of any document provided by a student.
3. Knowingly providing false or misleading information during proceedings under the Student Code of Conduct, including knowingly submitting a false complaint for any University process.
4. Failure to provide complete and accurate responses to the prior conduct section of the admissions application.

**Fire and Safety**

1. Inappropriate activation of any emergency warning equipment or the false reporting of any emergency.
2. Removing, damaging, interfering, or tampering with any fire safety equipment (e.g. smoke detectors, sprinklers, fire alarms).
3. Failure to evacuate during a fire alarm in any University facility or at any University event.
4. Engaging in action(s) that cause or attempt to cause a fire or explosion including but not limited to the release of chemicals or substances that can cause harm to another individual's health.

**Gambling** – Engaging in or offering games of chance for the exchange of money or other gain that may be in violation of Florida laws.

**Harassment** – Unwelcome conduct that a reasonable person would determine to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity.

Bullying conduct that meets the standard for harassment set forth above is included in this violation and are not protected by freedom of expression.

Failure to abide by 0-007 Diversity and Equal Opportunity: Discrimination and Harassment Policy and all University protocols and federal/state laws regarding discrimination.

**Hazing** - Any action or situation that recklessly or intentionally endangers the mental or physical health or safety of an individual(s) for purposes of initiation and/or admission into, or association with and/or the perpetuation or furtherance of a tradition or ritual of any recognized student organization or non-affiliated organization. The consent or permission of the individual(s) does not eliminate responsibility.

1. Hazing includes, but is not limited to pressuring or coercing an individual(s) into violating state or federal laws; any brutality of a physical nature, such as whipping, beating, branding, exposure to the elements, forced consumption of any food, liquor, drug, or other substance, or other forced physical activity that could adversely affect the physical health or safety of an individual(s); or any activity that would subject an individual(s) to extreme mental stress, such as sleep deprivation, forced exclusion from social contact, forced conduct that could result in extreme embarrassment, or other forced activity that could adversely affect the mental health or dignity of an individual(s). Additionally, any hazing that results in permanent and/or serious bodily injury or death.
2. Soliciting an individual(s) to commit or is actively involved in the planning of any act of hazing.
3. Failure to abide by 6.0023 Prohibition and Prevention of Hazing Regulation and all University protocols, state, and federal laws regarding hazing.

**Health and Safety** – Conduct non-compliant with University policies, guidelines, or directives related to

the health and safety of the University community.

**Physical Violence**
1. Intentional touching or striking of an individual(s) against their will, or any action causing or attempting to cause potential damage, injury, or harm. This includes, but is not limited to, punching, slapping, scratching, or striking with one's body or with any object.
2. Unintentional touching or striking of an individual(s) against their will, or any action causing or attempting to cause potential damage, injury, or harm that is with conscious disregard for consequences.

**Residence Hall Policies** – Failure to abide by any policy or regulation governing University Housing (e.g. rental agreement, Resident Handbook).

**Retaliation** – Words or action(s) taken against an individual because of the individual's participation in a protected activity that would discourage a reasonable person from engaging in a protected activity. Retaliation may include intimidation, threats, coercion, physical harm and/or adverse employment or educational actions. Protected activity includes an individual's participation in the reporting, investigation, and/or resolution of an alleged violation of the Student Code of Conduct. Additionally, protected activity includes an individual's opposition to policies, practices and/or actions that the individual reasonably believes are in violation of the Student Code of Code. Retaliation may be found even when an underlying report made in good faith was not substantiated. Retaliation may be committed by the charged student, the complainant, or any other individual or group of individuals.

**Sexual Assault (defined as Sex Offenses, Forcible)** – Any sexual act directed against another individual, without the consent of the complainant, including instances in which the complainant is incapable of giving consent.
1. Forcible Rape: Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person forcibly or against that person's will (non-consensually) or in instances in which the Complainant is incapable of giving consent.
2. Forcible Sodomy: Oral or anal sexual intercourse with another person, forcibly or against that person's will (non-consensually) or in instances in which the Complainant is incapable of giving consent.
3. Sexual Assault with an Object: The use of an object or instrument to penetrate, however slightly, the genital or anal opening of the body of another person forcibly or against that person's will or in instances in which the Complainant is incapable of giving consent.
4. Forcible Fondling: The touching of the private body parts of another person (buttocks, groin, breasts), for the purpose of sexual gratification, forcibly, or against that person's will (non-consensually), or when the Complainant is incapable of giving consent.

**Sexual Exploitation –** Taking non-consensual or abusive sexual advantage of an individual for their

10

own benefit or for the benefit of anyone other than the individual being exploited, and that the conduct does not otherwise constitute sexual harassment under this policy. Examples of sexual exploitation include, but are not limited to:

1. Sexual voyeurism (such as observing or allowing others to observe an individual undressing or using the bathroom or engaging in sexual acts, without the consent of the individual being observed).

2. Invasion of sexual privacy.

3. Taking pictures, videos, or audio recording of another in a sexual act, or in any other sexually-related activity when there is a reasonable expectation of privacy during the activity, without the consent of all involved in the activity, or exceeding the boundaries of consent (such as allowing another individual to hide in a closet and observe sexual activity, or disseminating sexual pictures without the photographed individual's' consent), including the making or posting of revenge pornography.

4. Prostituting another individual.

5. Engaging in sexual activity with another individual while knowingly infected with human immunodeficiency virus (HIV) or a sexually-transmitted disease (STD) or infection (STI), without informing the other individual of the infection.

6. Causing or attempting to cause the incapacitation of another individual (through alcohol, drugs, or any other means) for the purpose of compromising that individual's ability to give consent to sexual activity, or for the purpose of making that individual vulnerable to non-consensual sexual activity.

7. Misappropriation of another individual's identity on apps, websites, or other venues designed for dating or sexual connections.

8. Forcing an individual to take an action against their will by threatening to show, post, or share information, video, audio, or an image that depicts the individual's nudity or sexual activity.

9. Knowingly soliciting a minor for sexual activity.

10. Engaging in sex trafficking,

11. Creation, possession, or dissemination of child pornography.

**Sexual Harassment –** Conduct on the basis of sex/gender or that is sexual that satisfies one or more of the following:

1. Quid Pro Quo: A USF employee, conditions the provision of an aid, benefit, or service of the University, on an individual's participation in unwelcome sexual conduct. Refer to Policy 0-004 Sexual Misconduct/Sexual Harassment.

2. Unwelcome conduct, determined by a reasonable individual, to be so severe, and pervasive, and objectively offensive, that it effectively denies an individual equal access to the University's education program or activity.

**Sex Offenses, Non-Forcible**

1. Incest - non-forcible sexual intercourse, between individuals who are related to each other,

within the degrees wherein marriage is prohibited by Florida law.

2. Statutory Rape – non-forcible sexual intercourse, with an individual who is under the statutory age of consent as defined by Florida law.

**Stalking**- Engaging in a course of conduct directed at a specific individual that would cause a reasonable individual to fear for the individual's safety, or the safety of others; or suffer substantial emotional distress. For the purposes of this definition, course of conduct means two or more acts, including,  but not limited to, acts in which the charged student directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about an individual, or interferes with an individual's property. Reasonable person means a reasonable person under similar circumstances and similar identities to the complainant. Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.

**Student Organization Misconduct** – Failure to abide by any University and/or department policy or protocol governing the operation of student organizations, sport clubs, teams, etc.

**Technology** – Improper use of technology hardware or software including but not limited to computers, e-mail, cell phones, video cameras, and drones.

1. Unauthorized downloading or facilitating others to download copyrighted music, films, and other documents without authorization.
2. Non-consensual recording of wire, oral, or electronic communication acquired by any device when such communication is uttered by an individual exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation (i.e. an individual has a reasonable expectation of privacy). University facilities, including but not limited to, classrooms, labs, and lecture halls during course delivery are not open to the public and students may not engage in recording class sessions except as provided by law.
3. Failure to abide by Policy 0-502 Appropriate Use of Information Technology Resources.
4. Failure to abide by Policy 6-036 Unmanned Aircraft (Drone) Operations.

**Theft** – Taking, attempting to take, or keeping in its possession property or services not belonging to the individual.

**Threats of Violence** - A threat by word or act to do violence to an individual(s).

**Unauthorized Access and/or Use**

1. Unauthorized access or entry to University facilities or any property of any member of the University community without permission.
2. Duplication or use of University keys or access cards without permission.
3. Accessing, duplicating, photographing, altering, disseminating, and/or misusing any University

material (including University intellectual property), files document or record, computer records, software, data files, and similar entities owned or maintained by any member of the University faculty, administration, staff or student body.

4. Misuse of the official University brand to include, but not limited to the logo, mark, monogram, seal, or other graphic identity symbol.

**University Policy and/or Local Ordinance, State, or Federal Law (as determined by the University)** – Failure to adhere or abide by policies, including but not limited to, local ordinance, state law or federal law. Adjudicating by an outside entity is not a prerequisite to a determination of responsibility by the University.

**Weapons, Firearms, or Explosive Devices** – The illegal possession, storage, use or sale of any weapon (lethal or non-lethal), firearm, ammunition, or any incendiary, explosive or destructive device. This includes, but is not limited to, fireworks, switchblade knives, air soft guns, dangerous chemicals, corrosive and/or biological chemicals or agents as restricted by University policies and/or protocols. This also covers any item used as a weapon to cause actual physical harm or threaten physical harm. Reference Policy 6-009 Weapons on USF Property.

## VII.   STUDENT CONDUCT PROCESS

### Filing an Incident Report

A student and student organization's conduct may be reported to SCED by any individual or entity for review of a potential conduct violation(s). A report may be submitted in writing using the designated referral form. Currently the form is the Student Conduct and Ethical Development Referral Form. Incident reports must be submitted within six (6) months following the incident or obtaining knowledge about the incident, whichever is later. Exceptions to this filing time include, but are not limited to, cases involving sexual harassment, dating violence, domestic violence, and stalking and may include other extraordinary cases, as determined by the Director of SCED, or designee.

All reported information will be reviewed by the Director of SCED, or designee, to determine appropriate next steps to include, but are not limited to, further fact gathering, issuance of charges, referral to another department, or an information meeting to determine resolution of the report and potential conduct violations.

### Temporary Restrictions

Temporary restrictions may be issued to ensure a safe environment that promotes personal accountability and supports student success. SCED can issue temporary restrictions to any student and student organization involved in an incident, regardless of whether a determination of potential violations has been made. These may include, but are not limited to, interim suspension, removal from on-campus housing, no contact orders, restrictions from clubs, events, and organizational activities,

13

and/or restrictions from specific areas on University premises. The student and student organization will receive written notice detailing the issued temporary restrictions.

The charged student's enrollment status will remain unchanged pending the outcome of a Formal Hearing, except in cases of interim suspension. The hearing outcome will indicate if enrollment status will be changed between written notice of outcome of a Formal Hearing and the conclusion of an Appeal, if applicable.

### Issuance of Charges

The Director of SCED, or designee, will review the incident report to determine if further fact gathering is necessary or if sufficient information exists for the issuance of charges of violations of the Code.  In general circumstances, a review of the incident report will be completed to make a determination to issue charges within fifteen (15) days of receipt of the incident report unless further fact gathering is determined necessary by the Director of SCED, or designee.

If sufficient information exists, the student and student organization will receive written notice of charges. The written notice will include date, time, and location of the Informational Meeting, as well as the specific charges of violations of the Code, a brief description of the allegation(s), an invitation to attend an informational meeting, and any other detail to prepare for the Student Conduct Process.

### Informational Meeting

The charged student or student organization, and in specific cases, complainant will be invited to attend an Informational Meeting with a Hearing Officer. An informational meeting is an opportunity for the Hearing Officer to explain the Student Conduct Process, due process rights, allegations and charges, and review all available information supporting the charges of violations of the Code. Following the Informational Meeting, the Hearing Officer may collect additional relevant information regarding the incident. The charged student or student organization, and in specific cases, complainant will receive written notice of and be provided the reasonable opportunity to review any relevant information gathered after the Informational Meeting prior to resolution. This is a private meeting and will be closed to spectators, unless otherwise specified (e.g. advisor).

A student or student organization, and in specific cases, complainant has up to three (3) days after the Informational Meeting to choose a resolution option. If the charged student or student organization fails to select a resolution option, SCED will proceed with scheduling a Formal Hearing. The type of Formal Hearing forum will be determined by the Director of SCED, or designee, based on the severity of charges, information gathered, and/or possible sanctions (e.g. suspension/expulsion).

If the charged student or student organization, and in specific cases, complainant fails to attend or re-schedule an informational meeting, they will have waived their opportunity to participate in an Informational Meeting, and SCED will proceed with scheduling a Formal Hearing. The type of Formal

14

Hearing forum will be determined by the Director of SCED, or designee, based on the severity of charges and/or possible sanctions (e.g. suspension or expulsion).

**Due Process Rights**

*Charged Student/Student Organization*

The charged student and student organization has the following rights during the Student Conduct Process:

1. Written notice of the charges and allegations
2. A fair and impartial hearing.
3. The right to presumption that no violation occurred. The burden of proof is on the University, and the standard of proof is the preponderance of the evidence.
4. To be accompanied by an advisor of their choice and expense throughout the Student Conduct Process. For cases under the jurisdiction of Title IX of the Education Amendments of 1972, the University will appoint an advisor for the purpose of cross-examination during a Formal Hearing, if one is not chosen.
5. The opportunity to review all available information supporting the charges of violations of the Code, including all known witnesses who have or may provide information prior to resolution.
6. The opportunity to present relevant information and witnesses at the Formal Hearing.
7. To not provide self-incriminating testimony. Invoking the right against self-incrimination will not be considered as a negative factor in the decision of the Hearing Officer or Hearing Body.
8. The opportunity to question witnesses and in specific cases, complainants in accordance with the Formal Hearing procedure.
9. To receive written notice of the outcome of the Formal Hearing within five (5) days of the hearing.
10. To submit a written appeal (*See Appeal*).

*In addition to the above, a charged student has the following rights in cases of alleged sexual harassment, stalking, and violence:*

1. The ability to request alternate arrangements for participation in the Formal Hearing via audio or live-video from another location, and/or to participate in a manner that avoids direct contact with the complainant as long as such participation does not infringe on the charged student's right to question the complainant during the Formal Hearing or infringe on the implementation of Formal Hearing procedure.
2. To submit a written impact statement in advance of the Formal Hearing.
3. To not have prior sexual history considered, except for the testimony offered by the complainant or respondent about their shared sexual history that the panel deems relevant, when determining

if a conduct violation has occurred.

*Complainant*

A complainant has the following rights during the Student Conduct Process:

1. Written notice of the charge(s) and allegations.
2. A fair and impartial hearing.
3. To be accompanied by an advisor of their choice and expense throughout the Student Conduct Process. For cases under the jurisdiction of Title IX of the Education Amendments of 1972, the University will appoint an advisor for the purpose of cross-examination during a Formal Hearing, if one is not chosen.
4. The opportunity to review all available information supporting the charges of violations of the Code, including all known witnesses who have or may provide information prior to resolution.
5. The opportunity to present relevant information and witnesses at the Formal Hearing.
6. To not provide self-incriminating testimony. Invoking the right against self-incrimination will not be considered as a negative factor in the decision of the Hearing Officer or Hearing Body.
7. The opportunity to question witnesses and the charged student in accordance to the Formal Hearing procedure.
8. To receive written notice of the outcome of the Formal Hearing within five (5) days of the hearing.
9. To submit a written appeal (*See Appeals*).
10. The ability to request alternate arrangements for participation in the Formal Hearing via audio or live-video from another location, and/or participate in a manner that avoids direct contact with the charged student as long as such participation does not infringe on the complainant's right to question the charged student during the Formal Hearing or infringe on the implementation of Formal Hearing procedure.
11. To submit a written impact statement in advance of the Formal Hearing.
12. To not have prior sexual history considered, except for the testimony offered by the complainant or respondent about their shared sexual history that the panel deems relevant, when determining if a conduct violation has occurred.

*Advisor*

The charged student, student organization, and in specific cases, complainant (unless the conduct violation is under the jurisdiction of Title IX of the Education Amendments of 1972) may be accompanied by an advisor of their choice and expense throughout the Student Conduct Process with the following guidelines:

1. The advisor cannot have a potential conflict of interest between the University and/or the case or create an unreasonable conflict with the fair administration of the Student Conduct Process. For example, the advisor cannot serve in any other role, including as a witness, an investigator, decider of fact, hearing officer, member of a committee or panel convened to hear or decide the

16

charge or any appeal.

2. The advisor may be present to advise the student and may participate in all aspects of the proceeding but shall not testify for the student. If the advisor is an advocate or legal representative, they must adhere to the same guidelines as any other advisor.

3. It is the student, student organization, and complainant's responsibility to make appropriate arrangements for their advisor to accompany them throughout the Student Conduct Process. The conduct process will not be delayed due to scheduling conflicts of the chosen advisor.

4. The advisor may be dismissed from the Student Conduct Process for failure to adhere to the parameters of their role. This dismissal will not affect the process and all proceedings will continue.

In cases under the jurisdiction of Title IX of the Education Amendments of 1972,, the charged student, student organization, and complainant may be accompanied by an advisor of their choice* throughout the Student Conduct Process. The following pertains to the role of the advisor in these specific cases.

The advisor must conduct cross-examination of the charged student, student organization, complainant, and witness(es). If the charged student, student organization, or complainant does not have an advisor of their choosing present at the Formal Hearing, the University shall appoint an advisor of the University's choosing for the sole purpose of conducting cross-examination. The University cannot guarantee the appointed advisor will be equal to the chosen advisor of the charge student, student organization, or complainant. Specifically, should the charge student, student organization, or complainant's chosen advisor be an attorney, the University is not obligated to appoint an advisor who is an attorney. A party may reject the University's appointment of an advisor, but they may not proceed without an advisor.

If the party's advisor will not conduct the cross-examination , the University will appoint an advisor who will do so thoroughly, regardless of the participation or non-participation of the advised party in the hearing itself.

*Choosing an advisor who is also a witness in the Student Conduct Process creates potential for bias and conflict of interest. A charge student, student organization, or complainant who chooses an advisor who is also a witness can anticipate the issues of potential bias will be explored by the Hearing Officer/Hearing Body.

**Resolution Options**

A student or student organization has the right to a resolution of any alleged violation of the Code through the Student Conduct Process unless waived as outlined below. The Student Conduct Process provides two resolution options. Cases involving allegations of sexual harassment, stalking, and violence will be resolved by a Formal Hearing, consistent with state and federal guidelines.

**Resolution Agreement**

(except in cases that could result in separation from the University) Available when the charged student or student organization waives their right to a Formal Hearing and appeal, and requests that the Hearing

Officer, conducting the Informational Meeting, determine the findings and applicable sanctions. The Hearing Officer reserves the right to collect additional relevant information to make an informed decision. The meeting will not be audio-recorded, and the written outcome will serve as the official record of the Resolution Agreement. The student or student organization will receive written notice of the Resolution Agreement within five (5) days, except in the case of extraordinary circumstances. Written notice of the Resolution Agreement will include the determination regarding responsibility for conduct violations and applicable sanctions.

### Formal Hearing

Formal Hearings include two types of forums 1) Administrative Hearing and 2) University Conduct Board.

**Administrative Hearing** - Conducted by a single Hearing Officer who serves as the Hearing Body. If the charged student elects an Administrative Hearing, the charged student waives their right to the University Conduct Board.

**University Conduct Board (UCB)** – Conducted by a panel which serves as the Hearing Body. The UCB consists of two (2) students and one (1) faculty or staff member. A non-voting Hearing Officer will moderate the hearing and be excluded from deliberations. If the charged student elects a University Conduct Board, the charged student waives their right to an Administrative Hearing.

The panel is selected from a pool of trained students, faculty, and staff who are members of the UCB. UCB members go through a formal recruitment, selection, and training process facilitated by SCED.

## VIII.  <u>FORMAL HEARING PROCEDURES</u>

### Scheduling

SCED will make a good-faith effort to schedule Formal Hearings around academic class schedules considering the availability of individuals involved in the hearing procedures and the normal operations of SCED.

### Hearing Notice

The charged student or student organization will receive written notice no later than ten (10) days prior to the date of the Formal Hearing. The written notice will include date, time, and location of the hearing, as well as the specific charges of violations of the Code, a brief description of the allegation(s), names of witnesses to be called by the University, a list of available information to be used in the hearing, an outline of the Formal Hearing proceeding, and the name(s) of the Hearing Officer and Hearing Body. In cases involving sexual harassment, stalking, and violence, or under the jurisdiction of Title IX of the Education Amendments of 1972, the charged student or student organization, and complainant will receive similar written notice no later than fifteen (15) days prior to the date of the Formal Hearing.

18

**Witnesses and Relevant Information**

The charged student or student organization can request the participation of additional witness to provide relevant information during a Formal Hearing. The charged student or student organization must provide the names of additional witnesses at least five (5) days prior to the hearing to the Hearing Officer. Acceptance or denial of additional witnesses is at the discretion of the Hearing Officer. Character witnesses or witnesses who cannot provide relevant information regarding the specific incident will not be permitted to participate in the Formal Hearing.

The charged student or student organization, and in specific cases, complainant is responsible for contacting and notifying additional witnesses they request to participate in the Formal Hearing. The Formal Hearing shall not be delayed due to a scheduling conflict of the witness.

In the event a witness is unable to participate in the scheduled Formal Hearing, the witness may submit a written statement at least five (5) days prior to the hearing to the Hearing Officer for consideration. A late witness statement submission will not be considered. The charged student or student organization, and in specific cases, complainant has the opportunity to respond to the written statement and may offer information to rebut the witness statement and other information presented at the Formal Hearing. The inability of the charged student or student organization, and in specific cases, complainant to question a witness who has provided a written statement is not a violation of the charged student, student organization, or complainant's due process rights. If a submitted statement is deemed relevant, it will be considered during the Formal Hearing, as well as any existing relevant information submitted by the witness however may not be solely relied upon for determining responsibility by the Hearing Officer/Hearing Body. In absence of a submitted statement, any existing relevant information submitted by the witness would be considered during the Formal Hearing, however may not be solely relied upon for determining responsibility by the Hearing Officer/Hearing Body.

The charged student, student organization, or in specific cases, complainant has the opportunity to review all relevant information to be used in the Formal Hearing supporting the charges of violations of the Code at least ten (10) days prior to the hearing. Relevant records, exhibits, and written statements may be submitted by the charged student or student organization for review and acceptance to the Hearing Officer. Acceptance or denial of information is at the discretion of the Hearing Officer. Any information the charged student, student organization, or in specific cases the complainant intends to use must be submitted to SCED at least five (5) days prior the Formal Hearing, except in cases under the jurisdiction of Title IX of the Education Amendments of 1972, in which the information must be submitted at least ten (10) days prior to the Formal Hearing.

**Challenging Impartiality in a Formal Hearing**

The charged student or student organization may challenge the inclusion of any member of the Hearing Body. The challenge must be submitted in writing to the Director of SCED and must detail an actual bias (such as conflict of interest) that would significantly impact their right to a fair and impartial hearing.

The challenge must be submitted at least five (5) days prior to the Formal Hearing. The Director of SCED, or designee, will review the challenge and make a final decision that is not appealable.

## Postponements

Any request to postpone a Formal Hearing must be submitted in writing to the Director of SCED as least five (5) days prior to the hearing. The request must state the reason(s) for the postponement. The Director of SCED, or designee, will review the request and make a final decision. The University is not required to postpone the Student Conduct Process pending the outcome of any civil or criminal case.

## Failure to Attend

If a charged student, student organization and in specific cases, complainant fails to attend a scheduled Formal Hearing, the hearing will occur, and an outcome will be made in their absence.

If a witness(es)/Complainant fail to appear, statements given prior to the Formal Hearing may be reviewed at the Hearing in their absence; however, the statements may not be sufficient to determine a finding of responsibility.

## General Principles of Formal Hearings

The following general principles apply to all Formal Hearings regardless of hearing forum. The charged student or student organization and in specific cases, complainant will receive information that outlines the Formal Hearing proceeding prior to the hearing.

1. Formal Hearings are private and will be closed to spectators, unless otherwise specified (e.g. advisor).
2. The burden of proof in a Formal Hearing is on the University. The standard of proof is the preponderance of the evidence. The finding of responsible or not responsible on the charges is solely based on the information presented at a Formal Hearing.
3. Formal Hearings, excluding deliberations, will be recorded by audio or video. The Formal Hearing may only be recorded by the University and the recording will be the property of the University.
4. Formal Hearings are not subject to the formal rules of evidence and procedures governing criminal and civil court proceedings.
5. A charged student or student organization and in specific cases, complainant have the opportunity to present relevant information.
6. No irrelevant information, including character statements, should be discussed or considered in the Formal Hearing.
7. The Hearing Officer has the discretion to limit the number of witnesses whose testimony may be redundant or not in dispute.
8. The Hearing Officer may limit the length of testimony and may provide advice regarding the

20

scope, direction or tone of questioning.

9. For cases under the jurisdiction of Title IX of the Education Amendments of 1972, all cross-examination of the charged student, student organization, complainant, and witnesses must be conducted directly and orally by the individual's advisor. At the Formal Hearing, before the charged student, student organization, complainant, or witness can respond to a question posed by an advisor, the decision-maker(s) must first determine whether the question is relevant, and if not, explain the basis for disallowing the question.

10. Prior student conduct may only be considered in determining appropriate sanctions.

11. In cases involving multiple charged students, information presented at a Formal Hearing may be used in a related case as long as all Formal Hearing procedures contained within the Code are satisfied.

12. The Hearing Body will make a recommendation of the decision and sanctions to the Hearing Officer. The Hearing Officer may adopt or modify the recommendation of the Hearing Body. If the recommendation is not adopted, the Hearing Officer will include the reason for modifying the recommendation in the Formal Hearing outcome letter.

13. The charged student or student organization and in specific cases, complainant will receive written notice of the formal hearing outcome within five (5) days of the Formal Hearing. The formal hearing outcome will include the determination regarding responsibility for conduct violations and applicable sanctions.

**Interim Suspension**

An interim suspension is an immediate temporary separation from the University. Conditions may include restriction from University premises, participation in academic endeavors, and University-related activities. Interim suspensions will be expedited through the Student Conduct Process.

An interim suspension may be imposed at the discretion of the Vice President for Student Success, or designee, to ensure one or all of the following:

1. The safety and well-being of members of the USF community or preservation of USF property;

2. The student's continued presence or the student organization's continued activities, or use of privileges, is likely to pose an ongoing threat, disruption or interference with the normal operation of USF.

When an interim suspension is imposed, the charged student or student organization will receive written notice to attend a scheduled Informational Meeting with a Hearing Officer. The written notice will include date, time, and location of the meeting, as well as the specific charges of violations of the Code, a brief description of the allegation(s), the conditions of interim suspension, and any other detail to prepare for the Student Conduct Process.

An Informational Meeting will occur (see Informational Meeting) and the Hearing Officer will review available information to determine if the interim suspension will remain, be modified, or lifted. The

charged student or student organization will receive written notice within two (2) days after the Informational Meeting regarding the status of interim suspension.

If the charged student or student organization fails to attend the Informational Meeting, they will have waived their opportunity to participate in the Informational Meeting, and SCED will proceed with scheduling a Formal Hearing. The type of Formal Hearing forum will be determined based on the severity of charges and/or possible sanctions (e.g. suspension or expulsion).

If a charged student is placed on an interim suspension, but the charged student is subsequently found not responsible for the conduct violation, the University must:

1. Correct any record of the change in enrollment status in the charged student's permanent records, and report in a manner compliant with state and federal laws, and
2. Refund the charged student: a pro rata portion of any charges for tuition and out of-state fees, as appropriate, if the temporary revocation or suspension of the charged student's ability to attend classes lasts for more than ten (10) days.

In cases where the President determines that the health, safety, or welfare of the charged student or the University community is involved, a charged student's privileges within the University, including the ability to attend classes or engage in University activities, may be suspended on an interim basis.

## IX.    BASIS FOR APPEAL AND APPEAL PROCESS

The charged student or student organization and in specific cases, complainant may appeal in writing the outcome of a Formal Hearing within five (5) days of the date of the Formal Hearing outcome letter. The appeal must be in writing to the Dean of Students, or designee, and the burden of proof rests with the individual or organization appealing to clearly demonstrate the basis for appeal.

**Basis for Appeal**

The basis for appeal includes:

1. A violation of due process rights or failure of the University to follow the Student Conduct Process established in this Code that substantially affected the outcome.
2. The introduction of new information that was not available and could not be presented at the time of the Formal Hearing. The individual appealing must demonstrate how the new information could have substantially affected the outcome. The outcomes of a criminal or civil case is not considered new information for the purpose of an appeal.
3. The severity of sanction(s) imposed was disproportionate to the responsible conduct violations. Additionally, for cases under the jurisdiction of Title IX of the Education Amendments of 1972:
4. The Title IX Coordinator, investigators, or Hearing Officer/Hearing Body had a conflict of interest or bias for or against charged students or complainants generally or the specific charged student, student organization, or complainant that affected the outcome.

22

An appeal is not a rehearing of the conduct case and will not be accepted simply because the individual is dissatisfied with the outcome of the Formal Hearing.

**Appeal Process**

The Dean of Students, or designee, will serve as the Appellate Officer for all appeals of the Student Conduct Process. The Appellate Officer will determine if there is sufficient information to substantiate the basis for appeal. If so, the Appellate Officer may either deny the appeal, therefore upholding the original outcome of the Formal Hearing, or do one of the following:

If the basis of the appeal is that there was a violation of due process rights or failure to follow the Student Conduct Process which would have substantially affected the outcome, and the Appellate Officer accepts the appeal, the Appellate Officer may request the case be remanded for a new Formal Hearing.

If the basis of the appeal is new information that could not be presented at the time of the Formal Hearing which would have substantially affected the outcome, and the Appellate Officer accepts the appeal, the Appellate Officer may request that the case be remanded for a new Formal Hearing.

If the basis of the appeal is the severity of sanction(s) imposed was disproportionate to the responsible conduct violations, and the Appellate Officer accepts the appeal, the Appellate Officer may modify the sanction(s).

For cases of sexual harassment, stalking, and violence, if the basis of the appeal is the Title IX Coordinator, investigators, or Hearing Officer/Hearing Body had a conflict of interest or bias for or against charged students or complainants generally or the specific charged student, student organization, or complainant that affected the outcome, and the Appellate Officer accepts the appeal, the charged student, student organization, or complainant, and in specific cases, the Title IX Coordinator, investigators, and Hearing Officer/Hearing Body will be provided a copy of the submitted appeal and permitted up to five (5) days to submit a response to the Appellate Officer, if applicable. The Appellate Officer may request that the case be remanded for a new investigation, Formal Hearing, or modify the sanction(s).

Except as required to explain the basis of new information, the review of an appeal is limited to the record of the Formal Hearing and supporting documents.

The charged student or student organization or in specific cases, complainant will receive a written notice of their appeal outcome within ten (10) days of receipt of the appeal, except in extraordinary circumstance as determined by the Dean of Students, or designee. The appeal outcome is the final University decision and there are no further internal University appeals.

23

A student may seek outside judicial review pursuant to Florida Rule of Appellate Procedure 9.190(b)(3) of a final University decision. If a student seeks a review with the court, a copy of the petition must also be officially served to the University of South Florida Office of the General Counsel at 4202 E. Fowler Avenue, CGS 301, Tampa, Florida 33620-4301.

## X.    <u>SANCTIONS</u>

Students and student organizations found responsible for conduct violations will be assigned sanctions. Sanctions will be commensurate with the responsible conduct violations considering any mitigating circumstances, including but not limited to the charged student or student organization's prior conduct record. Assigned sanctions may include, but are not limited to:

**Alcohol and/or Substance Use Education Sanctions** - Online educational modules, assessments, and/or meeting with a staff member. The charged student or student organization is responsible for any associated fee(s).

**Assignments/Seminar/Workshops**: Requirement to attend, present, and/or participate in an in-person or online, workshop, module, and/or seminar. Written research assignments, behavioral reflection papers, or other educational activities may also be a requirement. These sanctions are intended to provide a student with opportunities that achieve specific learning objectives such as engaging in meaningful reflection on their behavior and the impact on others. The charged student or student organization is responsible for any associated fee.

**Conduct Probation**: A specified period of time when the charged student or student organization is considered not in good conduct standing with the University. Conduct probation may result in restrictions of privileges and/or activities which may include, but are not limited to, being prohibited from participating in study abroad, serving in specific student leadership roles (e.g. resident assistant, student government). Conduct probation is a period of reflection on behavior and an opportunity to demonstrate satisfactory citizenship. Further conduct violations while on conduct probation may impact the severity of future sanctions.

**Deferred Suspension**: A specified period of time in which suspension is temporarily withheld pending completion of other sanctions by a specified deadline and the demonstration of satisfactory citizenship. A student or student organization on deferred suspension is considered not in good conduct standing with the University. If the charged student or student organization fails to comply with assigned sanctions, the student or student organization will no longer be on deferred suspension and will be immediately suspended with no further appeal.

**Expulsion**: Permanent separation from the University. The student or student organization is considered not in good conduct standing permanently with the University. The charged student and student organization will not have the ability to return as a student or student organization at any point in

time. Expulsion may include a restrictive or no trespass order for all University premises. A transcript overlay will be placed on the charged student's academic transcript and an administrative hold will be permanently placed on the student's account. A record of expulsion will be maintained in the student's permanent conduct file in Student Conduct and Ethical Development.

A student assigned this sanction may forfeit tuition, housing rent and fees, and other University fees. A student will be withdrawn from classes and forfeit academic credit accordingly. Students living in University Housing must contact Housing and Residential Education to determine the financial impact of the cancelled contract.

**Housing Restriction:** A specified period of time in which a student is restricted from living in and/or visiting all USF residential facilities (which may include dining halls), including the Greek Village. If applicable, a student may be financially liable for any costs associated with the restriction from living in on-campus housing as outlined in the Cancellation section of the University Student Housing Agreement or Greek Housing Agreement.

**No Contact Order:** Official directive requesting a student refrain from making contact with another individual(s). Contact may include communication by telephone, in writing, electronically, by third party, or in person both on and off campus.

**Restrictions**: Specific loss of privileges that may limit participation in student activities and University events or access and use of University premises (e.g. athletic teams, leadership positions, certain buildings and/or locations).

**Restitution**: Requirement to reimburse the University and/or an individual for the damage, destruction, or vandalism of University buildings or property, private property, and/or personal property. Restitution will be limited to the actual cost of repair or replacement.

**Suspension**: Separation from the University for a specified period of time. The student or student organization is considered not in good conduct standing during the period of suspension with the University. The student or student organization will not have the ability to return as a student or student organization until the end of the suspension. Suspension may include a restrictive or no trespass order for all University premises. A transcript overlay will be placed on the student's academic transcript, and an administrative hold will be placed on the student's account during the period of suspension. A record of suspension will be maintained in the student's permanent conduct file in Student Conduct and Ethical Development.

A student affected by this sanction may forfeit tuition, housing rent and fees, and other University fees. A student will be withdrawn from classes and forfeit academic credit accordingly. Students living in University Housing must contact Housing and Residential Education to determine the financial impact of the cancelled contract.

25

**Written Reprimand** – An official notice of conduct that is not in accordance with the University's standards of behavior. Further conduct violations may impact the severity of future sanctions.

## XI.   AUXILIARY AIDS AND SERVICES

Students may request reasonable accommodations as required in Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. The student must be registered with the USF Student Accessibility Services  and notify SCED in writing a minimum of three (3) days prior to a meeting or hearing.

## XII.   PARENTAL NOTIFICATION

The University considers the student the primary contact for University communications and may restrict communication to the student only. SCED has the discretion to inform any parent or legal guardian of a dependent student under the age of 21 (as provided in Parental Notification Policy 30-020) when their student has been found responsible for a conduct violation in regard to the use or possession of alcohol or a controlled substance. A student whose parents or legal guardian are to be notified will be informed prior to such notification and given the opportunity to initiate contact with their parents, if and when possible.

## XIII.   CONDUCT RECORD MAINTENANCE AND RETENTION

**Maintenance**
1. Student and student organization conduct records are maintained in SCED.
2. All student conduct records in all formats (paper, computer, audio, etc.) resulting in formal charges will be kept in compliance with General Records Schedule GS5, but not for less than seven (7) years from the date of the last incident that the charged student or student organization was involved in that resulted in conduct charges.
3. If a student is suspended or expelled, a record of a violation of University regulations and/or policies will be permanently maintained in the student's or student organization's conduct file in SCED and a record of separation may be maintained in the Office of the Registrar.
4. SCED maintains all student conduct records in accordance with the Family Education Rights and Privacy Act (FERPA). SCED will abide by all laws requiring privacy with regard to the Student Conduct Process. In addition, as FERPA does not protect the names of students

   found responsible for crimes of violence, including forcible sex offenses, or an alleged perpetrator of a non-forcible sex offense when the allegations support a finding that a student has committed a violation of the University's rules or policies, the University may be required to release that information upon a Chapter 119 public record request.
5. A student may choose to sign a release form granting SCED staff permission to discuss

26

information related to the Student's disciplinary file with any individual that the student designates. This form is available in SCED. Although this form may provide access to information to a third party, the student remains the primary responsible party for compliance.

6. Any educational institution requesting conduct information about a current or former University student is required to submit the request in writing. If a non-educational agency is requesting information, those requests must include the signature of the student granting the release of information related to the student's conduct record.

7. Transcripts of recorded hearings may be prepared and provided by the University upon request by the student. The student may contact the Office of General Counsel to arrange for the preparation of the written transcript by a court reporting service on the student's behalf and at the expense of the requestor. The court reporting service will provide the transcript to the Office of the General Counsel, which will perform a confidentiality review of the transcript and redact any confidential or exempt information pursuant to state or federal law. The requestor will be responsible for the cost of the transcript preparation and confidentiality review.

**Retention**

1. Records resulting in an educational sanction of expulsion or suspension from the University will be permanently maintained in SCED.

2. No personally identifiable record(s) will be kept after a record has been designated for destruction. Statistical data will be maintained but all information that would identify an individual is removed.

3. All paper records will be destroyed by shredding or other similar process. Computer files will be modified in a manner so that only statistical data that cannot identify an individual is kept. Non-paper information (i.e. audio recordings) will be destroyed in a manner that will ensure that the information cannot be traced to any individual or any disciplinary case.

**Record Expungement**

Record expungement allows a student conduct record on file with SCED to be sealed. This includes all information related to the student's documentation, investigation, hearing, and disposition. In general, when completing background check inquiries, expunged records will not be reported as an incident when the student was found responsible. The student will not need to report the record based on the language/definitions of the requesting institution or agency in a background check that the incident ever occurred. The record will still be used for federal, state, and local University reporting requirements but will not be associated with the student name or student ID.

*Eligibility*

If the student has only had one disciplinary incident during their enrollment, a request for expungement will be available for consideration:

1. One year after the resolution of a conduct case or in the last term of enrollment,

2. All assigned sanctions have been successfully completed,

27

3.  An expungement has not previously granted, and

The conduct violation(s) did not:
1.  Cause personal injury.
2.  Cause significant property damage.
3.  Include a drug violation that could qualify as a felony charge in the legal system.
4.  Disrupt the orderly operation of the University.
5.  Violate the firearm, explosives, dangerous chemicals, and ammunition or weaponry regulations of the University.
6.  Involve behavior prohibited under Title IX of the Education Amendments of 1972, or any behavior related to sexual assault, sexual harassment, stalking, and/or sexual exploitation, no matter the location of incident.
7.  Result in a suspension or expulsion.
8.   Occur within the last 30 calendar days.

**Petition Requirements**

A student meeting the eligibility requirements must submit their petition to the Dean of Students, or designee. The student must submit a signed statement explaining the justification for the request, a description of what occurred in the conduct incident, and what they learned from the incident. The statement must also include:

1.  Student's name
2.  University identification number (U number)
3.  E-mail address
4.  Phone number
5.  Date of incident
6.  Incident report number
7.  Documentation of an application to graduate or a signed letter from the student's academic advisor stating the intent to graduate and a list of all remaining coursework.

**Process**

The Dean of Students, or designee, will review the statement, the conduct record, and any other pertinent information they choose to request and/or consider. The decision is at the discretion of the Dean of Students, or designee. The student will receive written notice regarding their petition within ten (10) days of receipt of petition. The decision of the Dean of Students, or designee, regarding the expungement of the conduct record is final and not appealable.

**XIV.   INTERPRETATION AND REVISION**

This Regulation applies to all campuses of the University of South Florida; however, non-

substantive procedural modifications to reflect the particular circumstances of each campus are permitted. Any questions about the interpretation of the Code should be directed to any of the SCED offices: https://www.usf.edu/student-affairs/student-conduct-ethical-development/about-us/contacts.aspx

The University reserves the right to make changes to the Student Code of Conduct as necessary. The Code shall be reviewed periodically by a committee which shall include student representation under the direction of the Director of SCED.

*History–New 9-23-85, Formerly 6C4-6.021, Amended 5-27-92, 7-26-92, 12-2-92, 12-29-94, 4-11-99, 9-27-05, Formerly 6C4-6.0021 F.A.C., Amended 6-5-08, 6-25-09, 9-22-11, 12-02-13, 1-6-14 (technical), 6-23-14 (technical), 5-14-15 (technical), 8-19-16 (technical), 9-28-18, 4-12-19 effective 5-6-19 (technical), 5-16-19 (technical), 8-26-19 (technical), 6-2-20 (Amended), 8-14-20 (Amended), 8-24-21 (Amended), 9-9-21 (technical)..*

*Consolidation Amendments Effective: 7-1-20*

*Biennial Review: See Policy 0-001*

*Certification: USF certifies that it has followed the Florida Board of Governors Regulation Development Procedure and has a record of written notices, comments, summaries and responses as required.*



UNIVERSITY of
SOUTH FLORIDA

## Student Conduct and Ethical Development Informational Meeting Form

| Name | Daniel Frishberg | U-Number | U50082127 |
|---|---|---|---|
| Preferred Name | Daniel | Pronouns | He/Him |
| Phone | 7542378472 | Email | danielfrishberg@usf.edu |
| Case Number | 2023087401 | Date | 10/20/2023 | 15:35 EDT |

### Purpose
An Informational Meeting is an opportunity for the Hearing Officer to explain the Student Conduct Process, due process rights, allegations and charges, review all available information supporting the charges of violations of the Student Code of Conduct, and discuss resolution options.

### Due Process Rights
The charged student has the following rights throughout the Student Conduct Process. By initialing each statement, you acknowledge that you have been made aware of your rights and resolution options, had the opportunity to ask questions, and understand these rights. *For more information regarding these rights, visit the Student Code of Conduct at* *www.usf.edu/sced*.

_____ 1. To be accompanied by an advisor of their choice and expense throughout the Student Conduct Process.

_____ 2. Written notice of the charges and allegations.

_____ 3. A fair and impartial student conduct process.

_____ 4. The right to presumption that no violation has occurred. The burden of proof is on the University, and the standard of proof is the preponderance of the evidence.

_____ 5. The opportunity to present relevant information.

_____ 6. To not provide self-incriminating testimony. Invoking the right against self-incrimination will not be considered as a negative factor in the decision of the Hearing Officer or Hearing Body.

_____ 7. The opportunity to review all available information supporting the charges of violations of the Code prior to resolution.

_____ 8. To receive written notice of the outcome of the selected resolution option within five (5) days of the Resolution Agreement or Formal Hearing.

**If a Formal Hearing is the selected resolution option, the charged student has the following additional rights.**

_____ 9. The opportunity to present and question witnesses.

_____ 10. To submit a written appeal.

*At this time, the Hearing Officer will provide the opportunity for the charged student to review all available documentation, including charges and allegations.*

---

## Resolution Options

The charged student has the right to a resolution of any alleged violation of the Student Code of Conduct through the Student Conduct Process unless waived as outlined below. The Student Conduct Process provides two resolution options. *Cases involving allegations of sexual harassment, stalking, and violence or that may result in separation from the University (Suspension or Expulsion) will be resolved by a Formal Hearing, consistent with state and federal guidelines.*

_____ **Resolution Agreement:** The charged student or student organization waives their right to a Formal Hearing and appeal, and requests that the Hearing Officer, conducting the Informational Meeting, determine the findings and applicable sanctions.

Finding:

Sanctions:

The charges and allegations have been explained to me and I was provided the opportunity to review the available information supporting the charges of violations. Additionally, I was informed of my rights during the Student Conduct Process and the available resolution options. I understand that by selecting a Resolution Agreement, that it is an agreement to any applicable conditions and waivers as outlined in the Student Code of Conduct. Further, I understand that this Informational Meeting Form is only a summary of the Student Code of Conduct and the Student Conduct Process. For a complete version of the Student Code of Conduct, visit www.usf.edu/sced.

_____         _____
**Student Signature**                                          **Date**

_____         _____
**Staff Signature**                                             **Date**

_____         _____
**Printed Staff Name**                                       **Staff Email**

Student Conduct and Ethical Development Informational Meeting Form (*Last Revised 1/2/2023*)                    2

DocuSign Envelope ID: 28F03143-D936-4886-B478-308734653606F

___X___ **Formal Hearing**

_____ **Administrative Hearing:** Conducted by a single Hearing Officer who serves as the Hearing Body. If the charged student elects an Administrative Hearing, the charged student waives their right to the University Conduct Board.

___X___ **University Conduct Board (UCB):** Conducted by a panel which serves as the Hearing Body. The Hearing Body consists of two (2) students and one (1) faculty or staff member. A non-voting Hearing Officer will moderate the hearing and be excluded from deliberations. The Hearing Body will make a recommendation of the decision and sanctions to the Hearing Officer. If the charged student elects a University Conduct Board, the charged student waives their right to an Administrative Hearing.

If a formal hearing forum was not selected, the charged student has up to three (3) days after the Informational Meeting ( October 25, 2023 ) to choose a formal hearing forum. If the charged student fails to select a formal hearing forum, SCED will proceed with scheduling the Formal Hearing. The Formal Hearing forum will be determined by the Director of SCED, or designee, based on the severity of charges and/or possible sanctions (e.g. suspension/expulsion).

The charges and allegations have been explained to me and I was provided the opportunity to review the available information supporting the charges of violations. Additionally, I was informed of my rights during the Student Conduct Process and the available resolution options. I understand that by selecting a Formal Hearing, that it is an agreement to any applicable conditions and waivers as outlined in the Student Code of Conduct. Further, I understand that this Informational Meeting Form is only a summary of the Student Code of Conduct and the Student Conduct Process. For a complete version of the Student Code of Conduct, visit www.usf.edu/sced.

DocuSigned by:

59F1129FEA8D4A7...
**Student Signature**

10/20/2023 | 16:18 EDT
**Date**

DocuSigned by:

Shanale Cordero
594ADF4D78A44FA...
**Staff Signature**

10/20/2023 | 16:16 EDT
**Date**

Shanale Cordero
**Printed Staff Name**

shanalec@usf.edu
**Staff Email**

**From:** Daniel Frishberg
**To:** Shanale Cordero
**Subject:** Re: Completed: Complete with DocuSign: SCED Informational Meeting Form
**Date:** Friday, October 20, 2023 4:20:50 PM

For the record, and the avoidance of doubt, the signature on that page is not a waiver of anything, all rights are reserved. I DO NOT CONSENT to any decision by the conduct board, nor do I agree to be bound by it.

Best Regards,

Daniel Frishberg

**From:** DocuSign System <dse_na2@docusign.net> on behalf of Shanale Cordero via DocuSign <dse_na2@docusign.net>
**Sent:** Friday, October 20, 2023 4:18 PM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Subject:** Completed: Complete with DocuSign: SCED Informational Meeting Form



Your document has been completed

**VIEW COMPLETED DOCUMENT**

**Shanale Cordero**
shanalec@usf.edu

All parties have completed Complete with DocuSign: SCED Informational Meeting Form.

Powered by

**EXHIBIT 12**

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
59AE4CA6C75D4D2C992944A207111B712

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

 Download the DocuSign App

This message was sent to you by Shanale Cordero who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

**University of South Florida**
**Student Conduct RA/CM Incident Report**

*Submitted on October 21, 2023 at 11:27:02 pm EDT. Last modified November 13, 2023 at 2:31:11 pm EST.*

| | |
|---|---|
| Nature | **RA Conduct Referral** |
| Urgency | **Normal** |
| Incident Date and Time | **2023-10-21 10:00 PM** |
| Incident Location | **Pinnacle Hall 5th Floor Active Lounge** |

Reported by
| | |
|---|---|
| Name: | Res Advisor 3 |
| Title: | |
| Email: | Res Advisor 3 |
| Phone | |
| Address: | |

Involved Parties
| | | | |
|---|---|---|---|
| **Daniel Frishberg** | 2003- | danielfrishberg@usf.edu | |
| Alleged | | Pinnacle Hall 527 527 | |
| | | | |
| Residential Advisor 2 | 2001- | Residential Advisor 2 | Residential Advisor 2 |
| Witness | | | |
| | | | |
| Residential Advisor 3 | 2001 | Residential Advisor 3 | Residential Advisor 3 |
| Witness | | | |

Questions
Please provide a detailed description of the incident/concern using specific, concise, objective language written in third person.

**On October 21 around 10pm, RA Residential Advisor 3 and RA Residential Advisor 2 were sitting in the 5th floor Pinnacle active lounge. RA Res Advisor 3 was hosting a door decorating event. Resident Daniel Frishberg exited his room (427), which is adjacent to the lounge. As Resident Frishberg exited his room, Resident Frishberg's ESA cat named Shadow exited the room with him. RA Res Advisor 3 noticed this and informed Resident Frishberg that Shadow could not be in the lounge and needed to go back into Resident Frishberg's room. Resident Frishberg said he did not care. RA Res Advisor 3 explained that this could affect people with allergies, potentially even for people visiting who did not live on the floor. Resident Frishberg said he did not think of that and brought Shadow back into his room. Resident Frishberg then came back out and stayed at RA Res Advisor 3's event.**

**During the event, Resident Frishberg entered and exited his room a few times and on three additional occasions Shadow exited and started walking around the lounge. Each time RA Res Advisor 3 informed Resident Frishberg that Shadow needed to stay in his room, and Resident Frishberg would say that he did not care, that RA Res Advisor 3 could not do anything, and/or that Resident Frishberg could not get punished.**

**Around 10:30pm Resident Frishberg was in the lounge alone with RA Res Advisor 3 and RA Res Advisor 2 (Shadow was in Resident Frishberg's room at this time). Resident Frishberg began questioning the policy for not having ESAs in the lounge and RA Res Advisor 3 and RA Res Advisor 2 explained the policy to Resident Frishberg. Resident Frishberg shared multiple beliefs during the discussion including:**
**• Resident Frishberg said that having Shadow in the lounge caused no real health issues because the people on the floor with cat allergies told him they hadn't reacted to Shadow.**
**• When RA Res Advisor 3 told Resident Frishberg that RA Res Advisor 3 would need to write an incident report about the situation, Resident Frishberg said that he would make it easy on RA Res Advisor 3 and only bring Shadow out while nobody was around so RA Res Advisor 3 wouldn't have to see it. Resident Frishberg also said that anything Resident Frishberg said would be hearsay and inadmissible in court if RA Res Advisor 3 put it in the report.**
**• RA Res Advisor 3 and RA Res Advisor 2 explained that the student conduct policy was not the same as going to court and Resident Frishberg said that USF Housing would not be able to punish him or evict him for breaking policy unless they went to court.**

EXHIBIT 13

**• Resident Frishberg said that he was aware he was breaking policy but did not care. He elaborated that this was because he was "rebelling" against other residents on the floor telling him what to do. Resident Frishberg said that other residents had told him he needed to keep Shadow in his room and Resident Frishberg did not want to be told what to do by them. Resident Frishberg also shared that one of those other residents had sent Resident Frishberg memes of dead cats (3 dead cats on a barbecue), which made the "war" between them personal.**

**o Upon RA** Res Advisor 3 **asking if Resident Frishberg felt there was a threat to Shadow, Resident Frishberg said he did not believe Shadow was at risk of being harmed.**

**• Resident Frishberg shared that the main reason for letting Shadow out of his room was because Shadow constantly whines whenever Resident Frishberg opens the door or whines in the middle of the night. Resident Frishberg said that letting Shadow out is necessary for him to be able to keep Shadow from whining and for Resident Frishberg to get good sleep. Resident Frishberg said that Shadow does not like being let outside, so taking Shadow outside is not an option. Resident Frishberg also shared that he believed Resident Frishberg getting good sleep was more important than a hypothetical situation where someone gets hospitalized due to a severe allergic reaction to Shadow having been in the lounge. This is because Resident Frishberg does not believe that situation could ever happen due to Shadow being "hypoallergenic."**

**At about 11:00pm, Resident Frishberg said goodnight and went back into his room to sleep.**

Select any of the following that apply:

Please list additional agencies or departments that were present:

Name of contacted RLOC/LVL2

Police Report Number

*Pending IR #00001893*
*Submitted from 131.247.226.206 and routed to Jimmy Surin (Assistant Director, SCED)*
*Modified by Jimmy Surin on November 13, 2023 at 2:31:11 pm EST from 47.204.252.33*
*Copies originally to: shanalec@usf.edu,garciaw4@usf.edu,sfindley@usf.edu,keller14@usf.edu*

**UNIVERSITY of**
**SOUTH FLORIDA**

November 2, 2023

Daniel Frishberg
Sent electronically to danielfrishberg@usf.edu

Regarding Case Number: 2023087401

Dear Daniel,

Student Conduct and Ethical Development (SCED) has scheduled a Formal Hearing for **Tuesday, November 21, 2023 at 10:00 AM in Microsoft Teams Video Conference**. You will receive an additional email with a calendar invite and a link to join the video conference. If a charged student fails to attend a scheduled Formal Hearing, the hearing will occur and an outcome will be made in their absence. For your review, the Formal Hearing agenda is attached.

**Allegations**

SCED received a report regarding an alleged incident that occurred on Thursday, October 5, 2023 in Pinnacle Hall at 6:30 PM. Specifically, Resident Daniel Frishberg has openly and repeatedly violated the ESA agreement within Pinnacle Hall.

**Formal Charges**

- Residence Hall Policies
  Failure to abide by any policy or regulation governing University Housing (e.g. rental agreement, Resident Handbook).

- Failure to Comply
  Failure to comply with an official request or directive of a University Official acting within the scope of their assigned duties. Failure to identify oneself or produce USF identification upon request by a University Official.

**Hearing Body**

Jan Serpan, Hearing Officer
Student 18      Student University Conduct Board Member
Student 19      Student University Conduct Board Member
Meghan Yacinthe, Faculty/Staff University Conduct Board Member

**STUDENT CONDUCT AND ETHICAL DEVELOPMENT**
University of South Florida | Tampa, St. Petersburg, Sarasota-Manatee campuses
usf.edu/sced

EXHIBIT 14

You may challenge the inclusion of any member of the Hearing Body. The challenge must be submitted in writing to the Director of SCED Melissa Graham, melissan1@usf.edu, and must detail an actual bias (such as conflict of interest) that would significantly impact their right to a fair and impartial hearing. The challenge must be submitted at least five (5) business days prior to the Formal Hearing, by November 14, 2023. The Director of SCED, or designee, will review the challenge and make a final decision. The decision of the SCED Director, or designee, may not be appealed.

**Witnesses**

Residential Advisor , Resident Assistant

You can request the participation of additional witnesses to provide relevant information during a Formal Hearing. You must provide the names of additional witnesses at least five (5) business days prior to the hearing to the Hearing Officer, by November 14, 2023. The acceptance or denial of additional witnesses is at the discretion of the Hearing Officer.

**Questions**

You will be provided the opportunity to ask questions of any witness. If you choose to ask questions, they should be submitted in writing to the Hearing Officer five (5) business days prior to the Formal Hearing, by November 14, 2023. Submission of questions does not prevent your ability to ask additional questions during the Formal Hearing.

**Relevant Information**

Case No. 2023087401
Snapchat of a group chat

Relevant records, exhibits, and written statements may be submitted by the charged student for review to the Hearing Officer. Acceptance or denial of information is at the discretion of the Hearing Officer. The University has the right to review any information the student intends to use at least five (5) business days prior to the Formal Hearing, by November 14, 2023. You have the opportunity to review all relevant information to be used in the Formal Hearing supporting the charges of violations of the Code at least ten (10) business days prior to the hearing. You will receive another email with a link to review the relevant information that will be presented at the Formal Hearing.

**Advisor**

You may have an Advisor present during any meeting or hearing with Student Conduct and Ethical Development. Students must provide the identity of the person and complete this Release of Information form at least two (2) business days in advance. The advisor may be present to advise you and may participate in all aspects of the proceeding but shall not testify for you. If you choose to have an advisor present, they will receive an email with a link to join the Formal Hearing.

**Postponements**

You may submit a request to postpone the scheduled Formal Hearing. The request must be submitted in

writing to the Director of SCED Melissa Graham, melissan1@usf.edu at least five (5) business days prior to the Formal Hearing, by November 14, 2023. The request must state the reason(s) for the postponement. The Director of SCED, or designee, will review the request and make a final decision. The University is not required to postpone the Student Conduct Process pending the outcome of any civil or criminal case.

SCED is committed to providing reasonable accommodations. If you require accommodations in order to fully participate in this process, please notify the Hearing Officer in advance of your scheduled Formal Hearing. For additional information about the Student Conduct Process visit the Student Code of Conduct at www.usf.edu/sced.

Please direct submissions of the above information to serpan@usf.edu.

Sincerely,

Jan Serpan
Graduate Assistant

UNIVERSITY of
**SOUTH FLORIDA**

November 6, 2023

Daniel Frishberg
Sent electronically to danielfrishberg@usf.edu

Regarding Case Number: 2023087401

Dear Daniel,

I am writing as a follow-up to recent correspondence regarding a scheduled Formal Hearing on Tuesday, November 21, 2023 at 10:00 AM. This email includes a link to access the relevant information that will be presented at the Formal Hearing.

The University of South Florida has a responsibility to protect students, including information pertaining to conduct files as defined by the Family Educational Rights and Privacy Act (FERPA). This document is on a protected university drive that requires your USF Net ID log-in to access. This link cannot be shared and is for you to review. Once you open the document it is locked and cannot be downloaded. You may not take photos, screenshots, or print this information. By clicking on the link you are agreeing to the USF Information Technology Acceptable Use Policy and USF Policy 0-502 Appropriate Use of Information Technology Resources, You may review the document using the following link:

https://usf.box.com/s/bonh1gr0d3ni4pij9e11jeulo84k7kot

I have provided you access to the document until the conclusion of the scheduled Formal Hearing. Following the Formal Hearing, the link will expire and you will be unable to access the documents. If you encounter issues accessing the document, please contact me at serpan@usf.edu.

Student Conduct and Ethical Development is committed to providing reasonable accommodations. If you require accommodations in order to fully participate in this process, please notify me in advance of your scheduled meeting. For additional information about the Student Conduct process, visit the Student Code of Conduct at www.usf.edu/sced.

**STUDENT CONDUCT AND ETHICAL DEVELOPMENT**
University of South Florida | Tampa, St. Petersburg, Sarasota-Manatee campuses
usf.edu/sced

EXHIBIT 15

Sincerely,

Jan Serpan
Graduate Assistant

| | |
|---|---|
| **From:** | Andrew Johnson |
| **Sent:** | Thursday, November 9, 2023 9:05 AM |
| **To:** | Daniel Frishberg |
| **Cc:** | Sherrelle Findley; Willie Garcia; Ana Hernandez; Jimmy Surin; Shanale Cordero; Xiomara Talavera Mercedes; Amy Chilcutt; David Kloiber |
| **Subject:** | IMPORTANT - Animal On-Campus Policy Violation Notice |
| **Attachments:** | U50082127 Animal on Campus Agreement.pdf; '[RPN 5TH FLOOR ELEVATOR 39-3045] 2023-10-21 10-07-03-117 PM GMT-04 00.jpeg; '[RPN 5TH FLOOR ELEVATOR 39-3045] 2023-10-21 10-07-30-633 PM GMT-04 00.jpeg; '[RPN 5TH FLOOR ELEVATOR 39-3045] 2023-10-21 10-07-15-626 PM GMT-04 00.jpeg |

Dear Daniel Frishberg,

My name is Dr. Andy Johnson and I'm the Director for Operations & Outreach with Housing & Residential Education (HRE). I've received information regarding a continuous pattern of disregarding HRE's Emotional Support Agreement Terms (see attached) that you agreed to in August 2023. These reports include:

- September 14, 2023 – Resident complaint to the RA about Shadow being loose in the common area and on the countertops.
- September 20, 2023 – A text between you and the RA about the cat being outside of the room and reminding you of the policy. You stated that "Shadow [cat] is never outside of my room."
- October 5, 2023 – An extensive text thread from the floor that expressed concern about the cat being outside of the room and roaming in the common areas.
- October 5, 2023 – Resident complaint to the RA that the cat was on the countertop.
- October 10, 2023 - Resident complaint to the RA that the cat was loose in the common area.
- October 20, 2023 – You met with RLC Shanale to review the ESA policy again. You stated that "[you will] be doing whatever he wants" regarding having the cat loose in the common areas.
- October 21, 2023 – An incident report was filed regarding the cat being loose in the common areas on October 21, 2023. I've attached photos for your reference which include a date/time stamp in the file title.

Section B of the ESA Agreement states that *"Assistance Animals cannot roam freely in common areas."*

Given your disregard for the ESA Agreement Terms that were reviewed with you several times, I'm rescinding your waiver to have an animal on-campus due to the violations section B of the attached agreement. You must remove your cat by 12:00 p.m. on Monday, November 13, 2023. You are prohibited from allowing the cat to roam freely in the residence hall, including the common areas. Failure to comply with this directive will result in further action, including but not limited to, a referral to the Office of Student Conduct & Ethical Development and/or the cancellation of your 2023-24 Student Housing Agreement. Please inform RLC Cordero when the cat has been removed. RLC Cordero can be reached via email at shanalec@usf.edu.

I appreciate your assistance in this matter.

Sincerely,

**Dr. Johnson**
**CRA-USF/Advanced**
Director for Operations & Outreach

1

**EXHIBIT 16**

Housing & Residential Education
University of South Florida
4202 East Fowler Avenue, RAR 229
Tampa, FL 33620
813-974-2150
Facebook | Twitter | Instagram | Pinterest | YouTube



*Due to Florida's broad open records law, email to or from university employees is public record, available to the public and the media upon request.*



**EXHIBIT 17**



| | |
|---|---|
| **From:** | Andrew Johnson |
| **To:** | Daniel Frishberg |
| **Cc:** | Sherrelle Findley; Willie Garcia; Ana Hernandez; Jimmy Surin; Shanale Cordero; Xiomara Talavera Mercedes; Amy Chilcutt; David Kloiber |
| **Subject:** | Re: IMPORTANT - Animal On-Campus Policy Violation Notice |
| **Date:** | Monday, November 13, 2023 2:38:38 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |
| | 2023-24 Student Housing-Dining Agreement.pdf |

Mr. Frishberg,

Your animal must be removed by 8:00 PM today for violating the terms of the ESA Agreement.  I would advise calling one of the individuals listed on your Animals On-Campus Emergency Contact form.  Please inform RLC Cordero by 8am tomorrow via email confirming that the animal has been removed from the residence hall.

If the animal is not removed by 8:00 PM today and confirmed by the instructions above, then I will be forced to issue an administrative dismissal from USF Housing for non-compliance under the 2023-24 Student Housing Agreement Section IV.1.d.  I have a attached a copy of your 2023-24 Student Housing Agreement for your reference.  Please see below for a quick reference to Section IV.1.d.

*IV. CANCELLATION: Notwithstanding anything contained herein, and even when Student's Cancellation is permitted under the terms of the Agreement, the Agreement may not be canceled without the prior written approval of the Department. The Department may, within its sole discretion, deny any Cancellation requests. Where Cancellation of the Agreement is subject to the Cancellation fees set forth in the Agreement, any fees will be added to the Student's financial account and will be due and owing immediately. Non-payment of the fees may result in a Student registration hold or restriction on graduation and ability to obtain a transcript. Late payments may also include collection fees. Students should refer to Section III of this Agreement for more information regarding the Payment Schedule.*

1. *Cancellation by Department: The Department may, in accordance with applicable rules of the University, initiate reassignment or cancel the Agreement if deemed necessary by the Department in the best interest of order, health, conduct, safety, security, disaster, failure to comply with any and all University regulations, policies, or directives.*

   *d. Cancellation Due to Administrative Dismissal: Students who are removed from the Residence Halls and/or dismissed from the University for administrative reasons will be responsible for a daily-prorated Hall Rate.*

I appreciate your cooperation in this matter.

Sincerely,

**EXHIBIT 18**

**Dr. Johnson**
**CRA-USF/Advanced**
Director for Operations & Outreach

Housing & Residential Education
University of South Florida
4202 East Fowler Avenue, RAR 229
Tampa, FL 33620
813-974-2150
Facebook | Twitter | Instagram | Pinterest | YouTube



University of South Florida

*Due to Florida's broad open records law, email to or from university employees is public record, available to the public and the media upon request.*

---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Date:** Monday, November 13, 2023 at 11:45 AM
**To:** Andrew Johnson <ajohnson15@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>, Willie Garcia <garciaw4@usf.edu>, Ana Hernandez <ahernandez@usf.edu>, Jimmy Surin <jsurin@usf.edu>, Shanale Cordero <shanalec@usf.edu>, Xiomara Talavera Mercedes <xiomara5@usf.edu>, Amy Chilcutt <achilcutt@usf.edu>, David Kloiber <dkloiber@usf.edu>
**Subject:** Re: IMPORTANT - Animal On-Campus Policy Violation Notice

CONFIDENTIAL UNDER FRE 408 // LOCAL EQUIVALENTS // STATE EQUIVALENTS

Dear Mr. Johnson,

I interpreted it as in the animal cannot be left to roam *unsupervised*. Also, my cat was not roaming. The definition of roaming is: "moving about aimlessly or unsystematically, especially over a wide area." (emphasis added). He mostly was sitting around, and occasionally would peak around a corner/look down the hall with specific intent. I controlled my cat at all times simply by being there (he is very well trained). I feel quite confident that this

interpretation of the contract will be ruled to be valid. As you know, when a contract is ambiguous, it MUST be interpreted in the favor of the party which had the least say in it. We can argue about specific contractually language later, but I have met the criteria in my interpretation. I would appreciate another chance after this clarification, because frankly there is nowhere for him to go.

Best Regards,
Daniel

---

**From:** Andrew Johnson <ajohnson15@usf.edu>
**Sent:** Monday, November 13, 2023 9:42 AM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Ana Hernandez <ahernandez@usf.edu>; Jimmy Surin <jsurin@usf.edu>; Shanale Cordero <shanalec@usf.edu>; Xiomara Talavera Mercedes <xiomara5@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; David Kloiber <dkloiber@usf.edu>
**Subject:** Re: IMPORTANT - Animal On-Campus Policy Violation Notice

Dear Mr. Frishberg,

The ESA agreement was reviewed with you and it contains your signature outlining that you understood the terms and conditions.  It clearly states that "Assistance Animals cannot roam freely in common areas," which leave no room for misinterpretation.  You will need to remove your animal by noon today.  Please confirm with RLC Cordero when the animal has been removed from the residence hall.

Any previous or pending matters you have with the Office of Student Conduct and Ethical Development is separate from this decision.

Sincerely,

**Dr. Johnson**
**CRA-USF/Advanced**
Director for Operations & Outreach

Housing & Residential Education
University of South Florida
4202 East Fowler Avenue, RAR 229
Tampa, FL 33620
813-974-2150
Facebook | Twitter | Instagram | Pinterest | YouTube



University of South Florida

*Due to Florida's broad open records law, email to or from university employees is public record, available to the public and the media upon request.*

---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Date:** Thursday, November 9, 2023 at 3:46 PM
**To:** Andrew Johnson <ajohnson15@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>, Willie Garcia <garciaw4@usf.edu>, Ana Hernandez <ahernandez@usf.edu>, Jimmy Surin <jsurin@usf.edu>, Shanale Cordero <shanalec@usf.edu>, Xiomara Talavera Mercedes <xiomara5@usf.edu>, Amy Chilcutt <achilcutt@usf.edu>, David Kloiber <dkloiber@usf.edu>
**Subject:** Re: IMPORTANT - Animal On-Campus Policy Violation Notice

CONFIDENTIAL UNDER FRE 408 // LOCAL EQUIVALENTS // STATE EQUIVALENTS


Dear Dr. Johnson,

I was under the impression that there is a hearing on the 21st of November for this matter. I am unable to get rid of Shadow for numerous reasons, primarily logistical. There simply is nowhere for him to go. The only potential place for him to go would be my grandmas, but she broke her hip/wrist recently and will have over a year of recovery. There is also the issue of me needing him for emotional support reasons. Without him, my mental health isn't the greatest to put it mildly. Is there any way we can not withdraw the waiver?


Thank you for sending me a copy of the ESA agreement. After I re-read it, I realized that (all rights reserved, this is not to be interpreted as an admission of anything) I misunderstood it. Going forward I will be extra vigilant to ensure I comply with the rule about him not "roam[ing] freely in the residence hall, including the common areas" [since this is the one at issue here] to the letter.

For the avoidance of doubt the statement about how I allegedly "stated that "[you will] be doing whatever he wants" regarding having the cat loose in the common areas" is without merit, and there is no proof of it. I would like it stricken from the record (assuming there is one).

All rights are reserved.

I look forward to hearing from you at your earliest convenience.

Happy early Veterans Day.

Best Regards,

Daniel Frishberg

---

**From:** Andrew Johnson <ajohnson15@usf.edu>
**Sent:** Thursday, November 9, 2023 9:05 AM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Ana Hernandez <ahernandez@usf.edu>; Jimmy Surin <jsurin@usf.edu>; Shanale Cordero <shanalec@usf.edu>; Xiomara Talavera Mercedes <xiomara5@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; David Kloiber <dkloiber@usf.edu>
**Subject:** IMPORTANT - Animal On-Campus Policy Violation Notice

Dear Daniel Frishberg,

My name is Dr. Andy Johnson and I'm the Director for Operations & Outreach with Housing & Residential Education (HRE).  I've received information regarding a continuous pattern of disregarding HRE's Emotional Support Agreement Terms (see attached) that you agreed to in August 2023.  These reports include:

- September 14, 2023 – Resident complaint to the RA about Shadow being loose in the common area and on the countertops.
- September 20, 2023 – A text between you and the RA about the cat being outside of the room and reminding you of the policy.  You stated that "Shadow [cat] is never outside of my room."
- October 5, 2023 – An extensive text thread from the floor that expressed concern about the cat being outside of the room and roaming in the common areas.
- October 5, 2023 – Resident complaint to the RA that the cat was on the countertop.
- October 10, 2023 - Resident complaint to the RA that the cat was loose in the common area.
- October 20, 2023 – You met with RLC Shanale to review the ESA policy again.  You stated that "[you will] be doing whatever he wants" regarding having the cat loose in the common areas.
- October 21, 2023 – An incident report was filed regarding the cat being loose in the common areas on October 21, 2023.  I've attached photos for your reference which include a date/time stamp in the file title.

Section B of the ESA Agreement states that "*Assistance Animals cannot roam freely in common areas.*"

Given your disregard for the ESA Agreement Terms that were reviewed with you several times, I'm

rescinding your waiver to have an animal on-campus due to the violations section B of the attached agreement.  You must remove your cat by 12:00 p.m. on Monday, November 13, 2023.  You are prohibited from allowing the cat to roam freely in the residence hall, including the common areas.  Failure to comply with this directive will result in further action, including but not limited to, a referral to the Office of Student Conduct & Ethical Development and/or the cancellation of your 2023-24 Student Housing Agreement.  Please inform RLC Cordero when the cat has been removed.  RLC Cordero can be reached via email at shanalec@usf.edu.

I appreciate your assistance in this matter.

Sincerely,

**Dr. Johnson**
**CRA-USF/Advanced**
Director for Operations & Outreach

Housing & Residential Education
University of South Florida
4202 East Fowler Avenue, RAR 229
Tampa, FL 33620
813-974-2150
Facebook | Twitter | Instagram | Pinterest | YouTube



University of South Florida

*Due to Florida's broad open records law, email to or from university employees is public record, available to the public and the media upon request.*

| From: | Daniel Frishberg |
|---|---|
| To: | Andrew Johnson |
| Cc: | Sherrelle Findley; Willie Garcia; Ana Hernandez; Jimmy Surin; Shanale Cordero; Xiomara Talavera Mercedes; Amy Chilcutt; David Kloiber; Molli Keller |
| Subject: | Re: IMPORTANT - Animal On-Campus Policy Violation Notice |
| Date: | Tuesday, November 14, 2023 7:36:32 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |

Dear Andrew,

Thank you.

To be clear, I made this good faith effort (and will continue to see if a miracle happens) to avoid a confrontation/conflict, and it should NOT be interpreted as admission of guilt, or a recognition that your allegations are true.

There is a high chance that I will not be able to find a willing immediate family member who can do it, in which case he and I will remain here. As you may notice, I have not let him out of my room in a long time (and he has spent 3+ hours a day yelling loudly). I want to work something out, such as allowing me to follow the contract we signed. I believe it is ambiguous, and I have not violated it, but you may believe that I have.

Best Regards,

Daniel Frishberg

---

**From:** Andrew Johnson <ajohnson15@usf.edu>
**Sent:** Tuesday, November 14, 2023 4:51 PM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Ana Hernandez <ahernandez@usf.edu>; Jimmy Surin <jsurin@usf.edu>; Shanale Cordero <shanalec@usf.edu>; Xiomara Talavera Mercedes <xiomara5@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; David Kloiber <dkloiber@usf.edu>; Molli Keller <keller14@usf.edu>
**Subject:** Re: IMPORTANT - Animal On-Campus Policy Violation Notice

Mr. Frishberg,

I appreciate your attempts to relocate your animal and I'm sorry for the challenges that your family is facing; however, the animal still needs to be removed from the residence hall. Understanding that you may need a little more time to remove your animal, I'm extending the deadline to remove your animal to Friday, November 17 by 2:00 PM. This is a one-time extension.

**EXHIBIT 19**

Please confirm with RLC Cordero once the animal has been removed from the residence hall.

Sincerely,

**Dr. Johnson**
**CRA-USF/Advanced**
Director for Operations & Outreach

Housing & Residential Education
University of South Florida
4202 East Fowler Avenue, RAR 229
Tampa, FL 33620
813-974-2150
Facebook | Twitter | Instagram | Pinterest | YouTube



University of South Florida

*Due to Florida's broad open records law, email to or from university employees is public record, available to the public and the media upon request.*

---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Date:** Tuesday, November 14, 2023 at 12:38 PM
**To:** Andrew Johnson <ajohnson15@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>, Willie Garcia <garciaw4@usf.edu>, Ana Hernandez <ahernandez@usf.edu>, Jimmy Surin <jsurin@usf.edu>, Shanale Cordero <shanalec@usf.edu>, Xiomara Talavera Mercedes <xiomara5@usf.edu>, Amy Chilcutt <achilcutt@usf.edu>, David Kloiber <dkloiber@usf.edu>
**Subject:** Re: IMPORTANT - Animal On-Campus Policy Violation Notice

Dear Mr. Johnson/everyone else,

Last night and this morning I attempted to see if my mom/dad/grandparents could take Shadow. They could not. My grandma is in the hospital and cannot walk due to a broken hip so she is obviously out, my other grandma is in Russia (so that's a non-starter), my

dad is having missiles shot at him + it is very hard to get in and out of Ukraine (especially for animals), my mom is unable to take Shadow for lease/financial reasons.

He will be staying here. I once again request that you reconsider your decision. I promise that I will follow the contract to the letter. I still maintain that I never breached the contract.

Best Regards,

Daniel

---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Sent:** Monday, November 13, 2023 3:55 PM
**To:** Andrew Johnson <ajohnson15@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Ana Hernandez <ahernandez@usf.edu>; Jimmy Surin <jsurin@usf.edu>; Shanale Cordero <shanalec@usf.edu>; Xiomara Talavera Mercedes <xiomara5@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; David Kloiber <dkloiber@usf.edu>
**Subject:** Re: IMPORTANT - Animal On-Campus Policy Violation Notice

Dear Mr. Johnson,

I did not break the rules under the ESA agreement. If you believe I did, you can sue me for breach of contract, but that is your only remedy. I will not be moving out as I have nowhere else to go. To be crystal clear, I reserve all rights. I am currently going through a bit of a rough patch, so if you go looking for a [legal] fight, you will get a [legal] fight. Without Shadow my mental health would be in a horrible position, which would affect my academics, etc.

"The approved Assistance Animal must be controlled by its owner and must be contained within the residential area (room, suite, apartment, building, enclosed balcony or yard spaces) at all times, except when transported outside the private residential area in an animal carrier or controlled by leash or harness.  Assistance Animals cannot roam freely in common areas." In my reading of the contract within its written words, is that the "residential area"  includes the common area. My cat never "roam[ed] freely" within the common area. Not only was I supervising him at all times, but he was not roaming. He mostly was sitting on the couch, and at times he was with purpose (the opposite of the definition of roam) walking to look down the hallways.

The contract states: "Any violation of the above rules or University Policy may result in

immediate removal of the Assistance Animal from USF System premises and the owner being prohibited from continuing to keep an Assistance Animal on University property. For students, such removal may be reviewed through USF Student Rights and Responsibilities and the student will be afforded all rights of due process and appeal as outlined in that process". Thus far there has been zero due process.

I was bullied a lot when I was younger, and I do not tolerate bullying. What you are doing right now it attempting to push me around. That will not fly. If anyone was not fulfilling their obligations, it was USF. USF has failed to clean the bathroom for 2 weeks in a row. I submitted a work order, but it was marked completed without the bathroom being disturbed, let alone cleaned. Your so-called "due process" system is fatally flawed since you have made up your mind and attempted to remove me/shadow from the dorm. That will not happen. If a multibillion-dollar company with an army of the worlds best lawyers with an almost unlimited budget cannot push me around, neither can you.

You are a public university, so due process applies, the fourth amendment applies.

I would like to formally notify you that if you attempt in any way to lock me out of my room, or turn off the power, harass me, etc, you will not only be sued and a injunction will almost certainly be issued (balance of the harms test is clearly in my favor) but I will be seeking significant punitive damages.

Ambiguity must be interpreted in favor of the party with the least influence in the contract, and the contract currently is ambiguous.

Berkowitz v. Automation Aids, Inc. (11th Cir.)

A contract is unambiguous if "on its face [it] is reasonably susceptible of only one meaning." Greenfield v. Philles Records, 98 N.Y.2d 562, 570 (2002). Conversely, "[a] contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc., 28 A.D.3d 175, 177 (1st Dept. 2006).

Best Regards,
Daniel

---

**From:** Andrew Johnson <ajohnson15@usf.edu>
**Sent:** Monday, November 13, 2023 2:37 PM

**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Ana Hernandez
<ahernandez@usf.edu>; Jimmy Surin <jsurin@usf.edu>; Shanale Cordero <shanalec@usf.edu>;
Xiomara Talavera Mercedes <xiomara5@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; David Kloiber
<dkloiber@usf.edu>
**Subject:** Re: IMPORTANT - Animal On-Campus Policy Violation Notice

Mr. Frishberg,

Your animal must be removed by 8:00 PM today for violating the terms of the ESA Agreement.  I
would advise calling one of the individuals listed on your Animals On-Campus Emergency Contact
form.  Please inform RLC Cordero by 8am tomorrow via email confirming that the animal has been
removed from the residence hall.

If the animal is not removed by 8:00 PM today and confirmed by the instructions above, then I will
be forced to issue an administrative dismissal from USF Housing for non-compliance under the 2023-
24 Student Housing Agreement Section IV.1.d.  I have a attached a copy of your 2023-24 Student
Housing Agreement for your reference.  Please see below for a quick reference to Section IV.1.d.

*IV. CANCELLATION: Notwithstanding anything contained herein, and even when Student's
Cancellation is permitted under the terms of the Agreement, the Agreement may not be canceled
without the prior written approval of the Department. The Department may, within its sole discretion,
deny any Cancellation requests. Where Cancellation of the Agreement is subject to the Cancellation
fees set forth in the Agreement, any fees will be added to the Student's financial account and will be
due and owing immediately. Non-payment of the fees may result in a Student registration hold or
restriction on graduation and ability to obtain a transcript. Late payments may also include collection
fees. Students should refer to Section III of this Agreement for more information regarding the
Payment Schedule.*

1. *Cancellation by Department: The Department may, in accordance with applicable rules
   of the University, initiate reassignment or cancel the Agreement if deemed necessary by
   the Department in the best interest of order, health, conduct, safety, security, disaster,
   failure to comply with any and all University regulations, policies, or directives.*

   *d. Cancellation Due to Administrative Dismissal: Students who are removed
   from the Residence Halls and/or dismissed from the University for administrative
   reasons will be responsible for a daily-prorated Hall Rate.*

I appreciate your cooperation in this matter.

Sincerely,

**Dr. Johnson**
**CRA-USF/Advanced**
Director for Operations & Outreach

Housing & Residential Education
University of South Florida
4202 East Fowler Avenue, RAR 229
Tampa, FL 33620
813-974-2150
Facebook | Twitter | Instagram | Pinterest | YouTube



University of South Florida

*Due to Florida's broad open records law, email to or from university employees is public record, available to the public and the media upon request.*

---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Date:** Monday, November 13, 2023 at 11:45 AM
**To:** Andrew Johnson <ajohnson15@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>, Willie Garcia <garciaw4@usf.edu>, Ana Hernandez <ahernandez@usf.edu>, Jimmy Surin <jsurin@usf.edu>, Shanale Cordero <shanalec@usf.edu>, Xiomara Talavera Mercedes <xiomara5@usf.edu>, Amy Chilcutt <achilcutt@usf.edu>, David Kloiber <dkloiber@usf.edu>
**Subject:** Re: IMPORTANT - Animal On-Campus Policy Violation Notice

CONFIDENTIAL UNDER FRE 408 // LOCAL EQUIVALENTS // STATE EQUIVALENTS

Dear Mr. Johnson,

I interpreted it as in the animal cannot be left to roam *unsupervised*. Also, my cat was not roaming. The definition of roaming is: "moving about **aimlessly** or unsystematically, especially over a wide area." (emphasis added). He mostly was sitting around, and occasionally would peak around a corner/look down the hall with specific intent. I controlled my cat at all times simply by being there (he is very well trained). I feel quite confident that this interpretation of the contract will be ruled to be valid. As you know, when a contract is ambiguous, it MUST be interpreted in the favor of the party which had the least say in it. We can argue about specific contractually language later, but I have met the criteria in

my interpretation. I would appreciate another chance after this clarification, because frankly there is nowhere for him to go.

Best Regards,
Daniel

---

**From:** Andrew Johnson <ajohnson15@usf.edu>
**Sent:** Monday, November 13, 2023 9:42 AM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Ana Hernandez <ahernandez@usf.edu>; Jimmy Surin <jsurin@usf.edu>; Shanale Cordero <shanalec@usf.edu>; Xiomara Talavera Mercedes <xiomara5@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; David Kloiber <dkloiber@usf.edu>
**Subject:** Re: IMPORTANT - Animal On-Campus Policy Violation Notice

Dear Mr. Frishberg,

The ESA agreement was reviewed with you and it contains your signature outlining that you understood the terms and conditions.  It clearly states that "Assistance Animals cannot roam freely in common areas," which leave no room for misinterpretation.  You will need to remove your animal by noon today.  Please confirm with RLC Cordero when the animal has been removed from the residence hall.

Any previous or pending matters you have with the Office of Student Conduct and Ethical Development is separate from this decision.


Sincerely,


**Dr. Johnson**
**CRA-USF/Advanced**
Director for Operations & Outreach

Housing & Residential Education
University of South Florida
4202 East Fowler Avenue, RAR 229
Tampa, FL 33620
813-974-2150
Facebook | Twitter | Instagram | Pinterest | YouTube

 

University of South Florida



*Due to Florida's broad open records law, email to or from university employees is public record, available to the public and the media upon request.*

---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Date:** Thursday, November 9, 2023 at 3:46 PM
**To:** Andrew Johnson <ajohnson15@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>, Willie Garcia <garciaw4@usf.edu>, Ana Hernandez <ahernandez@usf.edu>, Jimmy Surin <jsurin@usf.edu>, Shanale Cordero <shanalec@usf.edu>, Xiomara Talavera Mercedes <xiomara5@usf.edu>, Amy Chilcutt <achilcutt@usf.edu>, David Kloiber <dkloiber@usf.edu>
**Subject:** Re: IMPORTANT - Animal On-Campus Policy Violation Notice

CONFIDENTIAL UNDER FRE 408 // LOCAL EQUIVALENTS // STATE EQUIVALENTS

Dear Dr. Johnson,

I was under the impression that there is a hearing on the 21st of November for this matter. I am unable to get rid of Shadow for numerous reasons, primarily logistical. There simply is nowhere for him to go. The only potential place for him to go would be my grandmas, but she broke her hip/wrist recently and will have over a year of recovery. There is also the issue of me needing him for emotional support reasons. Without him, my mental health isn't the greatest to put it mildly. Is there any way we can not withdraw the waiver?

Thank you for sending me a copy of the ESA agreement. After I re-read it, I realized that (all rights reserved, this is not to be interpreted as an admission of anything) I misunderstood it. Going forward I will be extra vigilant to ensure I comply with the rule about him not "roam[ing] freely in the residence hall, including the common areas" [since this is the one at issue here] to the letter.

For the avoidance of doubt the statement about how I allegedly "stated that "[you will] be doing whatever he wants" regarding having the cat loose in the common areas" is without merit, and there is no proof of it. I would like it stricken from the record (assuming there is one).

All rights are reserved.

I look forward to hearing from you at your earliest convenience.

Happy early Veterans Day.

Best Regards,

Daniel Frishberg

---

**From:** Andrew Johnson <ajohnson15@usf.edu>
**Sent:** Thursday, November 9, 2023 9:05 AM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Cc:** Sherrelle Findley <sfindley@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Ana Hernandez
<ahernandez@usf.edu>; Jimmy Surin <jsurin@usf.edu>; Shanale Cordero <shanalec@usf.edu>;
Xiomara Talavera Mercedes <xiomara5@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; David Kloiber
<dkloiber@usf.edu>
**Subject:** IMPORTANT - Animal On-Campus Policy Violation Notice

Dear Daniel Frishberg,

My name is Dr. Andy Johnson and I'm the Director for Operations & Outreach with Housing &
Residential Education (HRE).  I've received information regarding a continuous pattern of
disregarding HRE's Emotional Support Agreement Terms (see attached) that you agreed to in August
2023.  These reports include:

- September 14, 2023 – Resident complaint to the RA about Shadow being loose in the
  common area and on the countertops.
- September 20, 2023 – A text between you and the RA about the cat being outside of the
  room and reminding you of the policy.  You stated that "Shadow [cat] is never outside of my
  room."
- October 5, 2023 – An extensive text thread from the floor that expressed concern about the
  cat being outside of the room and roaming in the common areas.
- October 5, 2023 – Resident complaint to the RA that the cat was on the countertop.
- October 10, 2023 - Resident complaint to the RA that the cat was loose in the common area.
- October 20, 2023 – You met with RLC Shanale to review the ESA policy again.  You stated that
  "[you will] be doing whatever he wants" regarding having the cat loose in the common areas.
- October 21, 2023 – An incident report was filed regarding the cat being loose in the common
  areas on October 21, 2023.  I've attached photos for your reference which include a
  date/time stamp in the file title.

Section B of the ESA Agreement states that "*Assistance Animals cannot roam freely in common
areas.*"

Given your disregard for the ESA Agreement Terms that were reviewed with you several times, I'm
rescinding your waiver to have an animal on-campus due to the violations section B of the attached
agreement.  You must remove your cat by 12:00 p.m. on Monday, November 13, 2023.   You are
prohibited from allowing the cat to roam freely in the residence hall, including the common areas.
 Failure to comply with this directive will result in further action, including but not limited to, a
referral to the Office of Student Conduct & Ethical Development and/or the cancellation of your

2023-24 Student Housing Agreement.  Please inform RLC Cordero when the cat has been removed.
RLC Cordero can be reached via email at shanalec@usf.edu.

I appreciate your assistance in this matter.

Sincerely,

**Dr. Johnson**
**CRA-USF/Advanced**
Director for Operations & Outreach

Housing & Residential Education
University of South Florida
4202 East Fowler Avenue, RAR 229
Tampa, FL 33620
813-974-2150
Facebook | Twitter | Instagram | Pinterest | YouTube



University of South Florida

*Due to Florida's broad open records law, email to or from university employees is public record, available
to the public and the media upon request.*

**Andrew Johnson**                                  **Monday, November 20, 2023 at 09:44:34 Eastern Standard Time**

---

**Subject:**     Re: IMPORTANT - NOTICE OF ADMINISTRATIVE CANCELLATION
**Date:**        Friday, November 17, 2023 at 5:28:17 PM Eastern Standard Time
**From:**        Daniel Frishberg <danielfrishberg@usf.edu>
**To:**          Andrew Johnson <ajohnson15@usf.edu>
**CC:**          Ana Hernandez <ahernandez@usf.edu>, David Kloiber <dkloiber@usf.edu>, Amy
                 Chilcutt <achilcutt@usf.edu>, Megan Bucalos <meganbucalos@usf.edu>, Xiomara
                 Talavera Mercedes <xiomara5@usf.edu>, Jimmy Surin <jsurin@usf.edu>, Jan Serpan
                 <serpan@usf.edu>, Sherrelle Findley <sfindley@usf.edu>, Willie Garcia
                 <garciaw4@usf.edu>, Molli Keller <keller14@usf.edu>, Shanale Cordero
                 <shanalec@usf.edu>
**Priority:**    High
**Attachments:** image001.png, image002.png, image003.png

Dear Mr. Johnson,

Respectfully, I, and my cat will remain in the dorms until the contract expires (so at the end of
the spring term). I have ensured compliance (as a show of good faith) with your requests to not
let shadow into the common areas, even when the agreement allows him to be outside of the
room, regardless of what you insisted on after the signing of the contract. I have done my best
to engage with you, and USF in good faith. The actions of you and the university of attempting
to remove Shadow (who I need to emotionally support me) for no reason (as the agreement
was not violated) are unacceptable, and unless they cease immediately, I will be seeking
significant puntaive damages. The USF employees (please give me their names) who showed up
outside of my door today at ~2pm attempted to fraudulently induce me into vacating the
premises by Monday by stating that I would be "dragged out" by the police if I did not
vacate the premises by Monday. I have numerous causes of action against the University, as well
as against potentially against individuals personally.

Subsection B of the animals on campus agreement:
"The approved Assistance Animal must be controlled by its owner and must be contained within
the residential area (room, suite, apartment, building, enclosed balcony or yard spaces) at all
times, except when transported outside the private residential area in an animal carrier or
controlled by leash or harness.  Assistance Animals cannot roam freely in common areas." As
previously stated, he did not "roam" anywhere. He was walking with intent, and mostly sitting
around. You have shown no evidence that he was roaming in the common areas. If you believe
that I have violated the agreements, you must prove that in a court of law (when suing me for a
breach of contract). You may not just unilaterally decide that, especially since the
4th amendment was pretty clear about due process from the government (and you are
employees of the government).

I have not violated the rental agreements. I did not violate any housing rules, especially none
that I was aware of, which were included within the contract.

**EXHIBIT 20**   1 of 5

At no times did Shadow leave the residential area, which was defined as "room, suite, apartment, **building**, enclosed balcony or yard spaces" (emphasis added). Also as previously stated, at all times I was controlling him. Several times he did slip out without me noticing it, but when I saw he slipped out, I promptly returned him to the room.

I sent the housing department an email on the 7th of November stating that I will be withholding 2 weeks of rent for failure to clean the bathrooms, as is my right under 83.201. Shortly thereafter (early in the morning on the 9th of November, which is ~ a day and a half after the email was sent) you sent me an email purporting to cancel my ESA waiver. That is retaliatory behavior. The failure to clean the bathroom for two weeks in a row constituted a violation of Florida Statutes Section 83.67(1). Your stated intent to prevent me from accessing my room via removing access via the keycard constitutes a violation of Florida Statutes Section 83.67(2). I believe that this constitutes Discrimination under Florida Statutes Section 83.64.

Please give me your legal department's contact information. I will not be vacating the premises (before moving out in May, 2023) without a valid court order (I reserve all rights to appeal and intend to appeal). I am the worst person in this building that you could have chosen to attempt to push around and attempt walk all over. I know my rights, and will vigorously defend them (or as Kirkland would say[1] "doggedly").

Best Regards,
Daniel Frishberg

---

[1]In the several pages of text that they were complaining about how I was purportedly wasting hundreds of thousands of dollars of estate resources. It should be noted that they are extremely biased since I caught their error which will cost them millions of dollars since they need to compensate the estate. I am also a net gain to the estate, and substantially contributed to the Celsius case.

[I will be sending this part separately as well]:

**PLEASE TAKE NOTICE** that I am writing to inform you of the critical need to implement a Litigation Hold concerning my ESA animal, your purported eviction, and purported recission of the ESA agreement.

**PLEASE TAKE FURTHER NOTICE** that this hold is crucial to preserving relevant information that may be pertinent to future potential litigation.

**PLEASE TAKE FURTHER NOTICE** That effective immediately I am instructing you to please take

the following actions: identify relevant documents, identify and safeguard all documents, emails, records, or any other information related to the aforementioned matter.

**PLEASE TAKE FURTHER NOTICE** that you **MUST** Cease Deletion or Modification of any of the aforementioned information.

**PLEASE TAKE FURTHER NOTICE** that you are to instruct all relevant personnel to refrain from deleting, modifying, or destroying any records or documents pertaining to the aforementioned subject matter.

**PLEASE TAKE FURTHER NOTICE** you are instructed to communicate the aforementioned request to all relevant parties, and ensure that all employees involved in the aforementioned subject matter are aware of this litigation hold and understand their responsibility to comply with it.

**From:** Andrew Johnson <ajohnson15@usf.edu>
**Sent:** Friday, November 17, 2023 4:31 PM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Cc:** Ana Hernandez <ahernandez@usf.edu>; David Kloiber <dkloiber@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; Megan Bucalos <meganbucalos@usf.edu>; Xiomara Talavera Mercedes <xiomara5@usf.edu>; Jimmy Surin <jsurin@usf.edu>; Jan Serpan <serpan@usf.edu>; Sherrelle Findley <sfindley@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Molli Keller <keller14@usf.edu>; Shanale Cordero <shanalec@usf.edu>
**Subject:** IMPORTANT - NOTICE OF ADMINISTRATIVE CANCELLATION

Dear Mr. Frishberg,

Following my correspondence dated November 14, 2023, Residential Education staff members contacted you on or around 2:00 PM to confirm that you complied with USF's directive to remove your animal from the residence hall.  I was informed by the USF Housing and Residential Education staff that you stated that the animal was still present in your residential room.  Given that you have not complied with USF Housing and Residential Education department's directives, USF is administratively cancelling your 2023-24 Student Housing Agreement effective Monday, November 27, 2023 at 12:00 PM under section IV.1.d as stated in the excerpt below.
*IV. CANCELLATION: Notwithstanding anything contained herein, and even when Student's Cancellation is permitted under the terms of the Agreement, the Agreement may not be canceled without the prior written approval of the Department. The Department may, within its sole discretion, deny any Cancellation requests. Where Cancellation of the Agreement is subject to the Cancellation fees set forth in the Agreement, any fees will be added to the Student's financial account and will be due and owing immediately. Non-payment of the fees may result in a Student registration hold or restriction on graduation and ability to obtain a transcript. Late payments may also include collection fees. Students should refer to Section III of this Agreement for more information regarding the Payment Schedule.*

1. *Cancellation by Department: The Department may, in accordance with applicable rules of the University, initiate reassignment or cancel the Agreement if deemed necessary by the Department in the best interest of order, health, conduct, safety, security, disaster, failure to comply with any and all University regulations, policies, or directives.*

*d. Cancellation Due to Administrative Dismissal: Students who are removed from the Residence Halls and/or dismissed from the University for administrative reasons will be responsible for a daily-prorated Hall Rate.*

Please schedule your check-out with RLC Cordero and return your keys to the HUB Service Desk by 12:00 PM on Monday, November 27, 2023.  Failure to complete these steps by the deadline may result in additional fees or referrals to the Office of Student Conduct and Ethical Development.  ID card access to any residential space will also end at that time.  Your rent charges will cease on Monday, November 27, 2023 and a credit will be issued for the balance of the fall term.  The credit will be issued to your OASIS account.

You are expected to comply with the rules, policies, regulations of the University of South Florida and all applicable laws until your check-out from housing.  Failure to comply with the previous statement will result in your immediately removal from housing and a referral to the Office of Student Conduct and Ethical Development.

Sincerely,

Dr. Johnson


Sincerely,

**Andy Johnson, Ed.D.**
**CRA-USF/Advanced**
Director for Operations & Outreach

Housing & Residential Education
University of South Florida
4202 East Fowler Avenue, RAR 229
Tampa, FL 33620
813-974-2150
Facebook | Twitter | Instagram | Pinterest | YouTube






*Due to Florida's broad open records law, email to or from university employees is public record, available to the public and the media upon request.*

**4 of 5**

UNIVERSITY of
SOUTH FLORIDA

November 21, 2023

Daniel Frishberg
Sent electronically to danielfrishberg@usf.edu

Regarding Case Number: 2023087401

Dear Daniel,

This letter is to notify you of the outcome of the SCED-University Conduct Board Formal Hearing held on November 21, 2023.

**Allegations**

Student Conduct and Ethical Development received a report regarding an alleged incident that occurred on Thursday, October 5, 2023 in Pinnacle Hall at 6:30 PM. Specifically, Resident Daniel Frishberg has openly and repeatedly violated the ESA agreement within Pinnacle Hall.

**Findings**

Using the preponderance of the evidence standard and the information presented during the formal hearing, the findings for the violation(s) of the USF Student Code of Conduct in this case are as follows:

- Residence Hall Policies -- Responsible
  Failure to abide by any policy or regulation governing University Housing (e.g. rental agreement, Resident Handbook).

- Failure to Comply -- Responsible
  Failure to comply with an official request or directive of a University Official acting within the scope of their assigned duties. Failure to identify oneself or produce USF identification upon request by a University Official.

**Rationale**

Based on the available information, it is more likely than not that the violation of the Student Code of Conduct occurred. The Housing and Residence Education policy says animals should not leave the area. While this can be interpreted differently, there were several instances where it was explained that the cat must remain inside the charged student's room. According to the relevant information and the charged student's narrative, it was confirmed that the cat was found on several occasions outside the charged

**STUDENT CONDUCT AND ETHICAL DEVELOPMENT**
University of South Florida | Tampa, St. Petersburg, Sarasota-Manatee campuses
usf.edu/sced

EXHIBIT 21

student's living space, which caused unease among fellow community residents. The Resident Assistant verbally warned the student to keep the cat inside the charged student's room, to which the student disagreed. Based on the conversation with the Resident Assistant, the student was then invited to meet with the Residence Life Coordinator for an Informational Meeting due to not complying with the Resident Assistant's words. For the above reasons, the University Conduct Board finds the student responsible for the listed charges.

**Learning Outcomes**

The learning outcomes determined for this incident include:

1. The student will be able to acknowledge the housing policies while respecting the wishes of fellow housing community members.
2. The student will be able to improve conflict resolution skills.

**Sanctions**

The sanction(s) assigned to meet the determined learning outcomes include:

**Civility and Community Standards Workshop Part 1**
You must submit your $25 payment (cashier's check or money order) along with the completed section of the attached form to: University of South Florida, P.O. Box 864571, Orlando, FL 32886 or in one of the designated Cashier's Office Drop Boxes (see attached form). A money order can be obtained at Publix. If the form is not submitted, Student Conduct and Ethical Development will not receive credit for the payment and will not be able to consider the payment complete. After proof of payment is received, you will be contacted by Student Conduct and Ethical Development with information regarding available workshop dates and times. The payment must be submitted by December 15, 2023.

**Civility and Community Standards Workshop Part 2**
You must attend and complete the Civility and Community Standards Workshop facilitated by Student Conduct and Ethical Development by February 15, 2024. Once you have completed the Civility and Community Standards Workshop Part 1, you will be contacted by a Student Conduct and Ethical Development staff member to register for the first available workshop. You must attend the workshop on your assigned date, actively participate, and complete all workshop requirements successfully before this sanction will be considered complete.

**Civility and Community Standards Workshop Part 3**
You must submit one (1) of the reflection assignment options provided at the Civility and Community Standards Workshop seven (7) days after your assigned workshop date to Student Conduct and Ethical Development - studentconduct@usf.edu.

Failure to complete the sanction(s) by the date(s) indicated will result in an Administrative Hold being placed on your student record. This hold may affect your ability to register for courses, request academic transcripts, and receive a degree and diploma.

**Appeals**

The charged student and, in specific cases, the complainant may appeal in writing the outcome of a Formal Hearing within five (5) days of the date of the Formal Hearing outcome letter, by November 30,

2023. The appeal must be in writing to the Dean of Students, or designee, and the burden of proof rests with the individual or organization appealing to clearly demonstrate the basis for appeal. The basis for appeal includes:

1. A violation of due process rights or failure of the University to follow the Student Conduct Process established in this Code that substantially affected the outcome.

2. The introduction of new information that was not available and could not be presented at the time of the Formal Hearing. The individual appealing must demonstrate how the new information could have substantially affected the outcome. The outcomes of a criminal or civil case is not considered new information for the purpose of an appeal.

3. The severity of sanction(s) imposed was disproportionate to the responsible conduct violations.

To submit an appeal, click here. Your appeal must be submitted within five (5) days of the date of this letter, by November 30, 2023. The Dean of Students, or designee, will serve as the Appellate Officer for all appeals of the Student Conduct Process. Additional information about the Appeal Process is in Section IX of the Student Code of Conduct. For additional information about the Student Conduct Process and the Student Code of Conduct, visit www.usf.edu/sced.

Student Conduct and Ethical Development is committed to providing reasonable accommodations for disabilities. If you require accommodations, please notify us at 813-974-9443 or studentconduct@usf.edu.

If you have any questions, please contact me at serpan@usf.edu.

Sincerely,

Jan Serpan
Graduate Assistant



## Student Conduct and Ethical Development

**REFERRAL FOR CIVILITY AND COMMUNITY STANDARDS WORKSHOP (CCWP)**

You have been referred to the USF Civility and Community Standards Workshop for a violation of the University Of South Florida Student Code Of Conduct. To complete the Civility and Community Standards Workshop you must complete the following requirements:

- Payment of $25 Educational Program Fee
- Completion of a one (1) hour workshop
- Completion of a reflection assignment after attending the workshop
- If applicable: A follow up meeting with a Student Conduct and Ethical Development (SCED)

**Payment: Make check or money order payable to the University of South Florida.** Submit payment along with the completed bottom section of this form to ONE of the following locations:

**Mail:**
University of South Florida
P.O. Box 864571
Orlando, FL  32886-4571

**Drop box locations*:**
**Tampa**: Next to main entrance Student Services Building (SVC) breezeway
**St. Petersburg:** East end of Bayboro Hall main entrance
**Sarasota-Manatee:** Rotunda main entrance door
*Payments with checks or money orders for exact amounts only*

**If the form is not submitted, our department will not get credit for the payment, and we will not be able to consider the payment complete.**

**Scheduling the Workshop:** After proof of payment is received, you will be contacted by SCED to schedule the workshop. You will only be allowed to reschedule the workshop one (1) time. If you are not able to keep your scheduled workshop date and time and fail to give 24-hour notice, you will be responsible for repaying the $25 Educational Program Fee.

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

## Student Conduct and Ethical Development

**REFERRAL FORM FOR CIVILITY AND COMMUNITY STANDARDS WORKSHOP (CCWP)**

Educational Program Fee: $25

**NOTE TO CASHIER:  For deposit into:  USF01-TPA-040201-04311-44580-000000-000000**
**A notation including "CCWP" must be placed in the notes section of the student's payment.**

_____          _____
Student Name (print)                                            Student U Number

**CASHIER'S OFFICE: Please forward the receipt via email to Student Conduct and Ethical Development**
studentconduct@usf.edu **as proof of payment.**

**From:**      Jan Serpan <serpan@usf.edu>
**Sent:**      Tuesday, November 21, 2023 1:14 PM EST
**To:**      "2023087401+usf@efc.maxient.com" <2023087401+usf@efc.maxient.com>
**Subject:**      Fw: General Counsel
**Attachment(s):**

---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Sent:** Tuesday, November 21, 2023 1:00 PM
**To:** Jan Serpan <serpan@usf.edu>
**Subject:** Re: General Counsel

Dear Mr. Serpan,

Thank you for this information, it has been most helpful.

Out of respect for you, I will tell you this now, regardless of what your board decided, I am not "responsible" until a court says otherwise. If this does go to court (which it seems it will, since the housing department decided that they were going to violate numerous Florida statutes), what the contract says will be determined. As I clearly and unambiguously stated, I reserved all rights, and am contractually in the right. The case law on this matter is crystal clear. You are not allowed to take into account extrinsic evidence, which you did.

I will not be attending any of the irrelevant purportedly assigned classes without a court order.

Best Regards,

Daniel Frishberg

---

**From:** Jan Serpan <serpan@usf.edu>
**Sent:** Tuesday, November 21, 2023 12:04 PM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Subject:** Re: General Counsel

Good afternoon, Daniel,

You may find the contact information on the following website: https://www.usf.edu/general-counsel/about-us/contact-us.aspx

I hope this helps. Have a good day,
Jan

Contact Us | General Counsel | USF

Find contact information for the USF Office of the General Counsel.

www.usf.edu

--

**EXHIBIT 22**

With best regards,

**Jan Serpan, M.A.T.** (He|Him)
Graduate Assistant
Student Conduct and Ethical Development
University of South Florida

John and Grace Allen Building (ALN), Suite 109
4202 E. Fowler Ave, Tampa, FL 33620
Phone: (813) 974-9443
Fax: (813) 974-7383
www.usf.edu/sced



**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Sent:** Tuesday, November 21, 2023 10:45 AM
**To:** Jan Serpan <serpan@usf.edu>
**Subject:** General Counsel

Dear Mr. Serpan,

During the hearing today you mentioned USF's general counsel. Do you have the contact information for the legal department for housing matters?

It would be very appreciated.

Best Regards,

Daniel Frishberg

**Andrew Johnson**
 **Wednesday, November 29, 2023 at 13:10:01 Eastern Standard Time**

| | |
|---|---|
| **Subject:** | Re: IMPORTANT - Follow-up to November 17, 2023 Administrative Cancellation Notice |
| **Date:** | Monday, November 27, 2023 at 4:46:35 PM Eastern Standard Time |
| **From:** | Daniel Frishberg <danielfrishberg@usf.edu> |
| **To:** | Andrew Johnson <ajohnson15@usf.edu> |
| **Attachments:** | image001.png, image002.png, image003.png, image004.png, image005.png, image006.png |

I emailed Joanne already in regards to electronic service.

Best Regards,


Daniel Frishberg

---

**From:** Andrew Johnson <ajohnson15@usf.edu>
**Sent:** Monday, November 27, 2023 4:45 PM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Subject:** Re: IMPORTANT - Follow-up to November 17, 2023 Administrative Cancellation Notice

Mr. Frishberg,

You will need to contact University Police to schedule an appointment to access your room, remove your belongings, and exit the residence halls.  The University will not be extending access to residence hall access.

Any legal correspondence should be directed to the Office of the General Counsel.  An appropriate contact person can be found below.

Joanne M. Adamchak (Jodi)
Deputy General Counsel
University of South Florida
Office of the General Counsel
4202 E. Fowler Avenue, CGS 301
Tampa, FL 33620
813-974-1683
813-974-5236 (Facsimile)
jadamcha@usf.edu


Sincerely,


**Andy Johnson, Ed.D.**
**CRA-USF/Advanced**

**EXHIBIT 23**

1 of 4

Director for Operations & Outreach

Housing & Residential Education
University of South Florida
4202 East Fowler Avenue, RAR 229
Tampa, FL 33620
813-974-2150
Facebook | Twitter | Instagram | Pinterest | YouTube



*Due to Florida's broad open records law, email to or from university employees is public record, available to the public and the media upon request.*

---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Date:** Monday, November 27, 2023 at 4:39 PM
**To:** Andrew Johnson <ajohnson15@usf.edu>
**Subject:** Re: IMPORTANT - Follow-up to November 17, 2023 Administrative Cancellation Notice

Dear Mr. Johnson,

As I said, I would not be back on campus until the 28th (tomorrow). You have chosen to ignore my countless warnings, and have chosen to blatantly violate state law (Section 83.67(2)) by locking me out of my room, and preventing me access to my room. I strongly suggest you google me before you brush away the threat of a lawsuit.

Shadow and I will be returning to campus tomorrow. If I do not hear back from you that you will allow me access to the room, I will (as stated previously) filing a lawsuit and an emergency motion for an injunction. I will also be seeking significant monetary damages for the damage you caused me. Including ruining my birthday (today) and my holidays, as well as the ton of mental and emotional distress (eggshell skull theory) you caused. I have been unable to do my school work or studying for exams due to your negligent, and illegal acts. You picked the wrong person to attempt to push around.

Do you consent to electronic service?

Could you extend my access to the room until Friday (leaving around the fifth I think for winter break) so I will have sufficient time to get an injunction. USF will be responsible for any and all costs I have incurred (in addition to my hourly rate + punitive damages + court ordered sanctions) because of this,

**2 of 4**

so I recommend you allow me access, otherwise those costs will increase.

You cannot flagrantly violate state law and prevent me from accessing my room without a court order.

Best Regards,

Daniel Frishberg

---

**From:** Andrew Johnson <ajohnson15@usf.edu>
**Sent:** Monday, November 27, 2023 3:51 PM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Subject:** IMPORTANT - Follow-up to November 17, 2023 Administrative Cancellation Notice

Dear Mr. Frishberg,

This notice is following-up on the email I sent on November 17, 2023 notifying you that the University has administratively canceled your housing agreement and you were to check-out by 12:00 PM today. Members of the Residential Education team attempted to contact you at approximately 12:00 PM today to confirm that you've checked out of your room.  USF records indicate that you have not checked out of your room with RLC Cordero, or any member of the Residential Education team, nor have you returned your key to the HUB Services Desk.  As your 2023-24 Student Housing Agreement has been administratively canceled and the required check-out process was not followed, the USF has taken the following steps:  (1) your ID card access to the residential hall has been removed; (2) the Pinnacle 527a room has been rekeyed at your expense; and (3) your OASIS account has been credited for rent from November 27 – December 8, 2023.  The credit will take up to 2 business days to show-up on your OASIS account.

You will need to contact University Police at 813-974-2628 to schedule an appointment to remove your personal property from Pinnacle 527 and complete your check-out by November 29, 2023. Failure to complete your check-out by November 29, 2023 will result in USF implementing our Abandoned Property protocol which will result in additional charges being to applied to your OASIS account.

You will be responsible for any damages as noted upon your check-out.  Any damage costs will be charged to your OASIS account.

Sincerely,

**Dr. Johnson**

**CRA-USF/Advanced**
Director for Operations & Outreach

Housing & Residential Education

University of South Florida

4202 East Fowler Avenue, RAR 229

Tampa, FL 33620

813-974-2150

Facebook | Twitter | Instagram | Pinterest | YouTube



*Due to Florida's broad open records law, email to or from university employees is public record, available to the public and the media upon request.*

**Andrew Johnson**                    **Wednesday, November 29, 2023 at 13:28:51 Eastern Standard Time**

| | |
|---|---|
| **Subject:** | Re: Emergency housing process |
| **Date:** | Tuesday, November 28, 2023 at 11:14:02 AM Eastern Standard Time |
| **From:** | Joanne Adamchak <JAdamcha@usf.edu> |
| **To:** | Daniel Frishberg <danielfrishberg@usf.edu> |
| **Attachments:** | image001.png |

You are correct that you have been removed from housing and do not have access to your previously assigned room. As to notices, please refer to the University communications for details and prior notices all of which clearly stated the date and time for final action in this regard.

Unless you request emergency housing, no further email responses will be sent regarding this prior housing assignment and emails will be maintained without response.

In the event you do receive notice from SCED, responses to that office should be direct to the sender as that is a separate student process.

Joanne M. Adamchak (Jodi)
Deputy General Counsel
University of South Florida
Office of the General Counsel
4202 E. Fowler Avenue, CGS 301
Tampa, FL 33620
813-974-1683
813-974-5236 (Facsimile)
jadamcha@usf.edu

---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Sent:** Tuesday, November 28, 2023 11:06 AM
**To:** Joanne Adamchak <JAdamcha@usf.edu>
**Subject:** Re: Emergency housing process

Thank you for the information. What do you mean that my belongings have been removed? USF said that it would do that tomorrow and not today. If (when) I get an injunction, you will allow me access (per the court order).

Best Regards,

Daniel

---

**From:** Joanne Adamchak <JAdamcha@usf.edu>

**EXHIBIT 24**

1 of 6

**Sent:** Tuesday, November 28, 2023 11:04 AM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Subject:** Re: Emergency housing process

You certainly do not need to accept the emergency housing.  As you know, you will not be permitted back into your previously assigned room.  Your belongings have been removed and are available to you and may be retrieved by contacting the University Police.

As to service, electronic service is not accepted. Service must be made at the OGC office

Joanne M. Adamchak (Jodi)
Deputy General Counsel
University of South Florida
Office of the General Counsel
4202 E. Fowler Avenue, CGS 301
Tampa, FL 33620
813-974-1683
813-974-5236 (Facsimile)
jadamcha@usf.edu

---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Sent:** Tuesday, November 28, 2023 11:00 AM
**To:** Joanne Adamchak <JAdamcha@usf.edu>
**Subject:** Re: Emergency housing process

Thank you for the short-term housing offer. I want access to my legally rented room, and expect to obtain it via the courts. You cannot lock me out. I have rights. You know this as a lawyer, I am sure that you are aware of Demps v. Hogan, 48 So. 998 (1909).

Does USF consent to electronic service?

Best Regards,

Daniel Frishberg, Pro Se

---

**From:** Joanne Adamchak <JAdamcha@usf.edu>
**Sent:** Tuesday, November 28, 2023 10:58 AM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Subject:** Emergency housing process

As you are aware you elected not to comply with the University directive and lease terms, the University completed the steps regarding removal from housing.

In the event you are in need of an emergency space for the remainder of the academic term, the University will work to locate such short term housing for you. As you have demonstrated

that you cannot comply with the guidelines for an ESA the emergency space will be for you only.

Please advise me directly if you wish to explore the emergency space option.

Joanne M. Adamchak (Jodi)
Deputy General Counsel
University of South Florida
Office of the General Counsel
4202 E. Fowler Avenue, CGS 301
Tampa, FL 33620
813-974-1683
813-974-5236 (Facsimile)
jadamcha@usf.edu

---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Sent:** Tuesday, November 28, 2023 9:48 AM
**To:** Megan Bucalos <meganbucalos@usf.edu>; SA HRE SAP <sa-hre-sap@usf.edu>
**Cc:** Andrew Johnson <ajohnson15@usf.edu>; Sherrelle Findley <sfindley@usf.edu>; David Kloiber <dkloiber@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Molli Keller <keller14@usf.edu>; Joanne Adamchak <JAdamcha@usf.edu>; dannyfrishberg@gmail.com <dannyfrishberg@gmail.com>
**Subject:** Re: Key/Card Charge Confirmation

Dear Megan
Thank you for the clarification. "10" day (not fully 10 days due to weekends and holidays) so-called notice is insufficient. The law requires a minimum of 45 day notice for at will termination for quarter to quarter terms. Ours is a semester, but there is no semester listed in the statute, and since it's less than a year, it at a minimum falls within the 45 day notice. I will not be removing my property (and neither will you after the injunction is issued), since your illegal attempt to evict me will be resolved through the courts.

You cannot evict me without a court order.

If you wish to discuss this in person, I can do that.

Best Regards,

Daniel Frishberg

---

**From:** Megan Bucalos <meganbucalos@usf.edu>
**Sent:** Tuesday, November 28, 2023 9:44 AM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>; SA HRE SAP <sa-hre-sap@usf.edu>
**Cc:** Andrew Johnson <ajohnson15@usf.edu>; Sherrelle Findley <sfindley@usf.edu>; David Kloiber <dkloiber@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Molli Keller <keller14@usf.edu>; Joanne Adamchak <JAdamcha@usf.edu>; dannyfrishberg@gmail.com <dannyfrishberg@gmail.com>

**Subject:** RE: Key/Card Charge Confirmation

Daniel,

As of 12pm yesterday, your locks were changed and access revoked per the email sent by Dr. Andy Johnson on November 17. You may access your room and belongings by contacting University Police.

Best,

**Megan Bucalos**
Assistant Director for Housing Services
Housing & Residential Education
University of South Florida
813-974-7271
usf.edu/housing



---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Sent:** Tuesday, November 28, 2023 9:42 AM
**To:** Megan Bucalos <meganbucalos@usf.edu>; SA HRE SAP <sa-hre-sap@usf.edu>
**Cc:** Andrew Johnson <ajohnson15@usf.edu>; Sherrelle Findley <sfindley@usf.edu>; David Kloiber <dkloiber@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Molli Keller <keller14@usf.edu>; Joanne Adamchak <JAdamcha@usf.edu>; dannyfrishberg@gmail.com
**Subject:** Re: Key/Card Charge Confirmation

Dear All,

I thought the locks were already changed and the keycard access revoked? Please confirm as soon as possible because I do not want to state it incorrectly in my complaint/emergency motion for an injunction. Your actions are a direct violation of Florida law. I believe it is Florida Statutes 83.67(2) but I could be wrong (off the top of my head).

I'm on my way to campus, and after that I'll head down to the courthouse. Since you've locked me out of my room, I'm stuck with my current clothes (didn't realize it would be cold here so all I've got is shorts/a tshirt + a spare set of the same + underwear etc with me).

As I told you numerous times, I do not consent to the lock being changed, or any charges. You do not have the right to lock me out of my room without a court order, nor can you evict me without one. Hopefully the injunction is issued today so I can grab a jacket.

Best Regards,

Daniel Frishberg

**From:** Megan Bucalos <meganbucalos@usf.edu>
**Sent:** Tuesday, November 28, 2023 9:02 AM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>; SA HRE SAP <sa-hre-sap@usf.edu>
**Cc:** Andrew Johnson <ajohnson15@usf.edu>; Sherrelle Findley <sfindley@usf.edu>; David Kloiber <dkloiber@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Molli Keller <keller14@usf.edu>
**Subject:** RE: Key/Card Charge Confirmation

Daniel,

Due to not vacating your room by 12pm on Monday, November 27, 2023 per the email from Dr. Andy Johnson, it stated "Please schedule your check-out with RLC Cordero and return your keys to the HUB Service Desk by 12:00 PM on Monday, November 27, 2023.  Failure to complete these steps by the deadline may result in additional fees or referrals to the Office of Student Conduct and Ethical Development.  ID card access to any residential space will also end at that time.  Your rent charges will cease on Monday, November 27, 2023 and a credit will be issued for the balance of the fall term.  The credit will be issued to your OASIS account."
Failure to turn in your keys resulted in a lock change and the charge to your account is correct. If you wish to appeal the charge you may do so through your Housing Portal.

Please refer to the email that Dr. Johnson sent you on November 17, 2023.

Best,

**Megan Bucalos**
Assistant Director for Housing Services
Housing & Residential Education
University of South Florida
813-974-7271
usf.edu/housing



**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Sent:** Monday, November 27, 2023 3:28 PM
**To:** SA HRE SAP <sa-hre-sap@usf.edu>
**Subject:** Re: Key/Card Charge Confirmation

Hi,

I have major concerns as I did not consent to this, and did not authorize this.  You will be in direct violation of Florida law if you change the locks (preventing me from accessing my room).

You may not change the locks without a court order.

---

**From:** SA HRE SAP <sa-hre-sap@usf.edu>
**Sent:** Monday, November 27, 2023 3:06 PM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Subject:** Key/Card Charge Confirmation

Daniel Anatoly Frishberg
U50082127

Dear Daniel,

This email serves as a confirmation that charges had been made on your student account. Please reference the attached **Key/Card Check-Out Form** for more information. If you have any questions or concerns, please feel free to contact Housing and Residential Education by calling (813) 974-0001, emailing housing@usf.edu or visiting our office Monday-Friday, 8 AM-5 PM in RAR 229.

*Housing & Residential Education- Housing Services*
**University of South Florida**
4202 E. Fowler Ave, RAR 229
Tampa, FL 33620

**From:** Joanne Adamchak <JAdamcha@usf.edu>
**Sent:** Monday, December 4, 2023 12:36 PM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Subject:** Required pick up of property and document requests

Thank you for reaching out again to confirm your understanding that you must secure independent housing for Spring 2024 as you have been removed from USF housing for failure to follow the terms of the housing agreement.

USF has agreed to hold your personal property at the UP offices until January 8, 2024 at 5 PM to enable you to secure alternative housing off campus for this Spring 2024 term. Although USF offered emergency housing for the remaining weeks of Fall 2023, no emergency housing will be available after this current term.

As to your student record request, the Student Record Regulation may be accessed at https://usf.app.box.com/v/usfregulation20021.  Students may request to view their records at the University by contacting the Office of the Registrar.

As to your public record request, the  USF Policy may be accessed at https://usf.app.box.com/v/usfpolicy0-106.  Requestors need to provide parameters of specific documents or search terms and provide a deposit for the search and review.  Upon receipt of a specific search and the necessary deposit if applicable, the University would ask for an IT search to ensure all documents were located.  To assist, there is a suggested form included in the Policy or you may email your specific request as indicated.

Public Records Law Compliance and
Record Confidentiality-Policy 0-106.pdf |

**EXHIBIT 25**



Joanne M. Adamchak (Jodi)

Deputy General Counsel

University of South Florida

Office of the General Counsel

4202 E. Fowler Avenue, CGS 301

Tampa, FL 33620

813-974-1683

813-974-5236 (Facsimile)

jadamcha@usf.edu



CONFIDENTIALITY WARNING:  Records from this office may be legally privileged and intended only for the use of the Addressee(s) named above.  If the reader of this electronic mail transmission is not the intended recipient, distribution or copying of this electronic transmission is prohibited. If the records are not exempt from disclosure, the records of the University of South Florida are subject to disclosure under the Florida Public Records law and any sender or recipient's email address and email content may be subject to public disclosure. Please notify the sender if you have received this email in error.

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Sent:** Sunday, December 3, 2023 11:50 PM
**To:** USF Office of General Counsel <USFLegal@usf.edu>; Joanne Adamchak <JAdamcha@usf.edu>; Andrew Johnson <ajohnson15@usf.edu>
**Cc:** dannyfrishberg@gmail.com <dannyfrishberg@gmail.com>
**Subject:** IMPORTANT Requested Discovery

Dear All,

As you know, I previously issued a litigation hold, which I hope was complied with.

I am requesting discovery, and I reserve the right to request more.

I would like any and all documents, information, communications, relevant information, etc in regard to my specific case. This includes the surveillance camera footage from November 17th when I was threatened by USF Employees (audio as well please). Though for the avoidance of doubt there is some stuff that I do not want entered into the **public** record (for obvious reasons, you know what it is assuming you have access to it), including the note from my doctor, and other sensitive information.

I also would like information (it is fine if it is anonymized, such as by replacing the names with John Doe 1, letters, numbers, etc) of all evictions/instances of when someone someone's agreement was  "administratively canceled", or USF in any other way forced them to vacate the room of individuals who have registered with SAS (or its predecessor department), had any mental disabilities/disorders, emotional support animals, service animals and/or in the past ten (10) years.

Please also provide any examples and accompanying information/documentation of ESA agreements being terminated non-consensually, revoked, or "administratively canceled" by USF within the past 10 years (it is fine if it is anonymized, such as by replacing the names with John Doe 1, letters, numbers, etc).

Please also provide any examples and accompanying information/documentation of evictions (or as you call it, purporting to terminate/"administratively cancel" the rental agreement and changing the locks) without a court order that occurred within the past 5 years.

Best Regards,

Daniel Frishberg

**From:** Ian Carroll <icarroll@usf.edu>
**Sent:** Tuesday, December 12, 2023 1:36 PM EST
**To:** "2023087401+usf@efc.maxient.com" <2023087401+usf@efc.maxient.com>
**Subject:** FW: SCED Civility Workshop Updated Information
**Attachment(s):**

---

**From:** Ian Carroll
**Sent:** Tuesday, December 12, 2023 1:36 PM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Cc:** Tammy Moscato <tammymoscato@usf.edu>; Student Conduct & Ethical Development <studentconduct@usf.edu>
**Subject:** RE: SCED Civility Workshop Updated Information

Hi Daniel,

Thank you for your email, I understand there is a lot going on for you.

The address I mentioned is the mailing address to submit payment to the USF Cashier's Office. The Cashier's Office mailing address has changed to a new location and payments mailed to the old address are being marked "Return to Sender".

I appreciate your honesty but I will remind you that failure to complete sanctions from our office will result in a hold being placed on your account which will prevent you from registering for classes or changing classes until the hold is resolved. I encourage you to complete your sanctions as outlined in your outcome letter until you have resolved the situation with USF Housing.

Thank you and best of luck,
Ian


--
**Ian Carroll**
Pronouns: he/him/his
Adaptability | Ideation | Deliberative | Analytical | Intellection
Assistant Director
Student Conduct and Ethical Development
University of South Florida
Tampa campus
4202 E. Fowler Avenue
Tampa, FL 33620
813-974-9443
icarroll@usf.edu



Note: Florida has a very broad public records law. Most written communications to or from state employees regarding state business are public records available to the public and media upon request. Your e-mail communications may therefore be subject to public disclosure.

**EXHIBIT 26**

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Sent:** Tuesday, December 12, 2023 12:52 PM
**To:** Ian Carroll <icarroll@usf.edu>
**Cc:** Tammy Moscato <tammymoscato@usf.edu>; Student Conduct & Ethical Development
<studentconduct@usf.edu>
**Subject:** Re: SCED Civility Workshop Updated Information

Dear Ian, and everyone else,

(I do not mean this to come across as rude, etc, I apologize if it does).

I will not be doing the workshop, or any other "sanctions" that I was assigned due to letting my ESA out of
my room. I am both contractually allowed to, as well as by law. Section 760 (Florida Statutes/Fair
Housing Act) allows my ESA to be in all common areas of the dwelling. HUD guidance was also crystal
clear on how allowing ESA's into common areas is a "reasonable accommodation".

See: https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf

I will likely circle back to the schools disciplinary actions against me later, as I am focused currently on
getting my room back (after I was evicted due to my ESA and exercising my rights).

What do you mean the payment address was changed? Like on USF's end? Or on my end?

Best Regards,

Daniel Frishberg

---

**From:** Ian Carroll <icarroll@usf.edu>
**Sent:** Tuesday, December 12, 2023 10:05 AM
**Cc:** Tammy Moscato <tammymoscato@usf.edu>; Student Conduct & Ethical Development
<studentconduct@usf.edu>
**Subject:** SCED Civility Workshop Updated Information

Good morning,

You are receiving this email because you have been assigned the Civility and Community Standards
Workshop from Student Conduct and Ethical Development. We have received word that the payment
address to mail your payment to the Cashier's Office has been changed. If you have not yet submitted
your payment, please either drop your payment in the drop box in the SVC building or mail it to the new
address in the attached form.

Thank you,
Ian

--
**Ian Carroll**
Pronouns: he/him/his
Adaptability | Ideation | Deliberative | Analytical | Intellection
Assistant Director
Student Conduct and Ethical Development
University of South Florida
Tampa campus

4202 E. Fowler Avenue
Tampa, FL 33620
813-974-9443
icarroll@usf.edu



Note: Florida has a very broad public records law. Most written communications to or from state employees regarding state business are public records available to the public and media upon request. Your e-mail communications may therefore be subject to public disclosure.

**From:**           Jan Serpan <serpan@usf.edu>
**Sent:**            Thursday, December 14, 2023 10:20 AM EST
**To:**               "20230874+usf@efc.maxient.com" <20230874+usf@efc.maxient.com>
**Subject:**       Fw: Upcoming due date for your case
**Attachment(s):**

---

**From:** Jan Serpan <serpan@usf.edu>
**Sent:** Thursday, December 14, 2023 10:17 AM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Subject:** Re: Upcoming due date for your case

Good morning, Daniel,

Thank you for your email. I appreciate you providing the additional information; however, the Hearing Body's decision remains final since the window to appeal their decision has passed.

As my colleague Ian Carrol has shared, I also encourage you to complete the assigned sanctions to prevent the hold from being placed on your account.

Have a good day,
Jan

--
With best regards,

**Jan Serpan, M.A.T.** (He|Him)
Graduate Assistant
Student Conduct and Ethical Development
University of South Florida

John and Grace Allen Building (ALN), Suite 109
4202 E. Fowler Ave, Tampa, FL 33620
Phone: (813) 974-9443
Fax: (813) 974-7383
www.usf.edu/sced



---

**From:** Daniel Frishberg <danielfrishberg@usf.edu>
**Sent:** Wednesday, December 13, 2023 4:56 PM
**To:** Jan Serpan <serpan@usf.edu>
**Subject:** Re: Upcoming due date for your case

Dear Jan Serpan,

**EXHIBIT 27**

I do not mean to be rude, or come across that way, so please do not interpret it that way. I am laying out the facts.

I understand that you purport I have sanctions for letting my ESA out of my room and into the common area. I disagree, the HUD disagrees, Section 760 (Fair Housing Act), and potentially the ADA disagrees. See this guidance issued by HUD: https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf.

USF is in the wrong. I understand you have policies and rules, and all that, but what occurred when USF refused to make that "reasonable accommodation" was disability discrimination, and illegal. USF *has* to make that accommodation. These sanctions constitute retaliatory action.

(From the above link, page 3): "The Fair Housing Act (FHA) makes it unlawful for a housing provider3 to refuse to make a reasonable accommodation that a person with a disability may need in order to have equal opportunity to enjoy and use a dwelling.4 One common request housing providers receive is for a reasonable accommodation to providers' pet or no animal policies so that individuals with disabilities are permitted to use assistance animals in housing,5 including public and common use areas."

Footnote five states "For purposes of this guidance, the term "housing" refers to all housing covered by the Fair Housing Act, including apartments, condominiums, cooperatives, single family homes, nursing homes, assisted living facilities, group homes, domestic violence shelters, emergency shelters, homeless shelters, dormitories, and other types of housing covered by the FHA."

USF falls under that definition. It is against both state and federal law.

Will you reconsider you decision in light of this information?

Best Regards,
Daniel

---

**From:** Jan Serpan (via Maxient) <notifications@maxient.com>
**Sent:** Monday, December 11, 2023 3:01 AM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Subject:** Upcoming due date for your case

To: Daniel Frishberg
Regarding: Case 2023087401

This email serves as a friendly reminder that you have an obligation due within the next few days in the above referenced case. Please refer to your previous letters and correspondence for further details.

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.