**No. 24-11175-H**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

Daniel Frishberg, *Plaintiff-Appellant,*

v.

University Of South Florida Board Of Trustees, HRSE-Capstone Tampa, LLC, *et. al, Defendant-Appellee(s)*

Appeal from the United States District Court for the Middle District of Florida

No. 8:24-cv-00022-TPB-NHA[1]

---

# APPELLANT'S AMENDED[2] REPLY BRIEF TO APPELLEES' REPLY BRIEF

---

Daniel Frishberg, *Pro Se*

danielfrishberg@usf.edu[3]

754-237-8472

---

[1] https://ecf.flmd.uscourts.gov/cgi-bin/DktRpt.pl?422507
[2] On January 16th, 2025, a Notice of Deficiency was issued. This amendment corrects those deficiencies.
[3] The Plaintiff-Appellant does not have an "Office Address", so he has put an email instead.

1

# I

## Statement Regarding Oral Argument

The Plaintiff Appellant requests oral arguments. The Appellees' flagrant misrepresentations would be far easier to deal with in oral arguments. The Appellees purport that "oral argument is unnecessary because the issues have been authoritatively decided and the facts and legal arguments are adequately presented in the briefs and record". They are incorrect. The facts that the Appellees rely on are both fatally flawed, and incorrect. To put it another way, the Appellants' Reply Brief is filled with inaccuracies, misrepresentations and boldfaced lies[4]. When compared with the Appellees' own previous statements, both in court filings (including a sworn declaration), and in communications with the Appellant, it is apparent that the Appellees are both attempting to deceive this Court, and making knowingly false statements, including blatant lies.

Among other reasons, oral arguments will allow the Plaintiff Appellant to make clear his arguments, in case his lack of legal training leads to any potential confusion in his written arguments. The oral arguments would also allow the Plaintiff Appellant to clarify any misunderstandings, should they arise.

---

[4] The Plaintiff Appellant understands that many non-lawyers think that lawyers' arguments which strain the truth are lies. The Plaintiff Appellant is not talking about this. The Plaintiff Appellant is talking about blatant lies, which contradict the Appellees' previous statements, and the evidence at hand. The Plaintiff Appellant will not include specifics in the Statement Regarding Oral Arguments, but will include them in the Reply Brief.

# <u>TABLE OF CONTENTS</u>

I.    **Statement Regarding Oral Arguments**

II.    **Table Of Contents**

III.    **Table Of Authorities**

IV.    **Introduction**

V.    **Argument**

      1.   **Appellees' Provably False Statements**

      2.   **Student Conduct Process Is Separate From Housing Determination**

VI. **Conclusion**

**Certificate Of Interested Persons And Corporate Disclosure Statement**

**Certificate Of Compliance With Rule 27(d)(2)(A)**

**Certificate Of Service**

*[Rest of the page is intentionally left blank.]*

### III

Table Of Authorities

**Cases**                                                                                    **Page**

Boag v. MacDougall.,

454 U.S. 364 (1982) ...................................................................................24, 25

Cf. Dussouy v. Gulf Coast Inv. Corp.,

660 F.2d 594, 598 (5th Cir. 1981) ....................................................................25

Cooter & Gell v. Hartmarx Corp.,

496 U.S. 384 - Supreme Court 1990 .............................................................16, 19

Freeman v. Department of Corrections.,

949 F.2d 360 (10th Cir. 1991) ..........................................................................26

Haines v. Kerner, quoting Conley v. Gibson.,

404 U.S. 519, 520-521 (1972), 355 U.S. 41, 45-46 (1957) ............................25

Holland v. Gee.,

677 F.3d 1047, 1066 (11th Cir. 2012) .............................................................22

Oliveri v. Thompson.,

803 F.2d 1265 - Court of Appeals, 2nd Circuit 1986 .....................................27

Reynoldson v. Shillinger.,

907 F.2d 124 - Court of Appeals, 10th Circuit 1990 ......................................24

Smith v. U.S. District Court.,

956 F.2d 295 (D.C. Cir. 1992) ..........................................................................20, 26

United States ex rel. Montgomery v. Bierley.,

141 F.2d 552, 555 (3d Cir. 1969) .....................................................................25

United States v. Padgett.,

917 F.3d 1312, 1317 (11th Cir. 2019) ..............................................................26

United States v. Willis.,

649 F.3d 1248, 1254 (11th Cir. 2011) ..............................................................23

**Other**                                                                                      **Page**

6 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure,*

Civil 2d § 1483 (West 1990)..............................................................................23

# IV

# <u>Introduction</u>

The Appellees' Reply Brief is filled with misrepresentations and outright lies. These misrepresentations and outright lies are both intentional, and known to be incorrect to the Appellees, as they contradict the Appellees' previous positions, statements, and even sworn statements. The Plaintiff Appellant does not mean "outright lie" in the way that the Appellees are twisting words, but in the way that they are making *blatantly* false statements, including ones which their own previous statements contradict. These statements are so misleading and false that no amount of mental gymnastics or word twisting will make them true. Short of the Appellees possessing a functioning time machine, it is a lie for them to claim that they terminated the Appellants housing agreement (on November 17th, 2023) because he refused to complete sanctions, four (4) days before the sanctions were even issued (on November 21st, 2023). The Appellees evicted the Appellant because he refused to "get rid of" his assistance animal. It is that simple. The Appellees have attempted to argue that it was because the Appellant broke policies, but not only were those policies about the Assistance Animal, they were also themselves discriminatory.

The Appellees' arguments that the Appellant had his housing agreement terminated because of non-compliance with sanctions is both unsubstantiated by the actual evidence at hand, as well as by the Appellees' own representatives' repeated statements, including USF's General Counsel. (*See* **Argument (2) Student Conduct Process Is Separate From Housing Determination**). USF made it unambiguously clear that completing the sanctions would have no impact on the Appellants ability to live on campus.

The Appellees' Reply Brief selectively omits the Appellant's arguments regarding the Rehabilitation Act, mischaracterizing the scope of the claims. This omission is crucial as it misleads the Court about the Appellant's position.g (*See* **Argument (3) Appellees' Misleading Summary Of Appellants Arguments**).

The Appellees also incorrectly argue that simply because the Appellant is not appealing the dismissal of claim 3, it means that he is not appealing the dismissal of all claims. For the avoidance of doubt, the statement states that the Appellant is (as is laid out in the Notice of Appeal and Opening Brief) appealing the dismissal of claims that are not claim 3. The Appellant is appealing all issues as laid out in the Designation of Issues on Appeal, and the Opening Brief/other filings.

The Appellees also erroneously claim that the Appellant "provides no argument of substance as to how the District Court erred or how any error in interpreting the facts effected the District Court's dismissal of his claims". There is an entire section dedicated to this in the Appellants Opening Brief. The timeline and order of events is critical for most cases, this case included. The timeline shows that the Appellees discriminated against the Appellant because of his Assistance Animal.

This entire case should be reversed and retried[5], as the Defendants' repeated lies have both muddied the waters, and made the decision rendered by the District Court fatally flawed. The reason why the timeline is so important, is because, among other things, the Appellees are attempting to make it seem that they provided the Appellant an opportunity to remain in the dormitory, if he completed assigned sanctions, but in fact that is not the case.

---

[5] If that is the proper way of doing it. The Appellant is unsure of the terminology.

The Appellees should be sanctioned[6] for their repeated, provably false lies, as they have caused massive delays, and unnecessary expense to the Appellant. The Appellees' statements and arguments have been so detached from reality, that it leaves the Appellant wondering if the Appellees and the Appellant are referencing the same document.

# V

## Argument

The idea that a state entity, such as a university, can avoid having to follow federal law (while accepting federal funding), such as the Fair Housing Act, is unconscionable. The Rehabilitation Act was passed for this very reason, to prevent state entities from using Sovereign Immunity as a shield to be allowed to continue with discrimination. At the end of the day, the Appellant has a right to have his case adjudicated on the merits of the case, and not dismissed based on a hyper technicality due to his lack of skill in pleading the case.

---

[6] The Appellant sent the Appellees a Rule 11 Safe Harbor letter on December 30th, 2024. As of the time of this filing, the Appellees have both not stated that they intend to correct their misrepresentations, and have not replied to it. The Appellant intends to file a Motion for Sanctions, but will wait the 21 day Safe Harbor period before doing so (after serving them a copy of the Motion). The Appellant had to file this Reply Brief before the deadline (21 days after the Appellees filed their Reply Brief), and was unsure of the exact procedural steps.

### 1. Appellees' Provable False Statements[7]

The Appellees purport that "USF allowed Frishberg to have the cat in his dorm building pursuant to an Emotional Support Animal Agreement". The Appellees "allowed" the Appellant to have an ESA because they were required to under both the Fair Housing Act, and the Florida Fair Housing Act. The Appellees' next misrepresentation is part of what this case largely is about (USF's discriminatory policies): The Appellees purport that "USF's policies, however, precluded Frishberg from taking the cat out of his room unrestrained", which while technically correct is a misrepresentation[8] when combined with their argument, as the Appellees never told the Appellant that he could be in the common area with his ESA if the ESA was "restrained" with a leash. To the contrary, the Appellees' representatives told the Appellant on numerous occasions that the only way the ESA can be in the common area of the dwelling is if it was in a carrier. It also is irrelevant, as neither the FHA, nor the FFHA include provisions allowing housing providers to set restrictions like this.

---

[7] In case the Appellees claim that this is a new line of argument, it is not. Footnote 8 of the Appellants Opening Brief mentioned the discrepancy with dates, as well as other parts of the Opening Brief.

[8] It also is irrelevant, as both state and federal law are crystal clear that Assistance Animals are allowed to be in common areas of the dwelling as a reasonable accommodation. HUD's Guidance lays this out clearly: "A reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have equal opportunity to use and enjoy a dwelling, *including* **public and common use spaces**." (emphasis added).

The most egregious lie that the Appellees attempted to hoodwink this Court with was that the Appellees somehow "administratively cancelled" the Appellants' Housing Agreement for an event that didn't even occur until **four days _after_ the cancellation took place**. The Appellees purport that "After Frishberg allowed the cat outside of his room and into common areas of the dorm unrestrained, USF imposed a requirement that Frishberg pay a fee and take educational courses on civility as a sanction for his violation of the rules. (R1:5–6, 37–38, 41). When Frishberg failed to comply and failed to comply with a directive to remove the animal, in November of 2023, USF terminated Frishberg's lease for the room, changed the lock system so that Frishberg no longer had access to the room, and removed his personal belongings. (R1:4, 6, 35)." This is a blatant lie which is directly contradicted by **_not only_** the evidence, but by the Appellees' previous own statements. The Appellees are barred by the doctrine of judicial estoppel from arguing this, as according to the Johnson Declaration "On November 21, 2023, USF Student Conduct and Ethical Development held Frishberg's Formal Hearing. Based on the information provided at that hearing, the University Conduct Board determined that Frishberg was responsible for the charged violations of USF Student Code Of Conduct. As a sanction, the University Conduct Board Required that Frishberg Complete a Civility and Community Standards Workshop". On Page 3 of 5 of Exhibit 20 of the Johnson Declaration, it shows that on **November 17th,**

**2023**, Johnson unambiguously wrote that "USF is administratively cancelling your 2023-2024 Housing Agreement". There is no other way to interpret that as something other than USF purporting to "administratively cancel[]" the 2023-2024 Housing Agreement.

The Defendant Appellees have doubled down on their previous misrepresentations, and have turned them into boldfaced lies. The Appellant previously raised the Appellees' misrepresentations in his opening brief, *See* excerpt from **III. Factual Errors With The District Court's Interpretation Of The Events/Facts, a. Timeline According To Defendant Appellees,** from the Appellants Opening Brief:

"According to the Defendant Appellees, "<u>On November 9, 2023</u>, Johnson informed Frishberg that his waiver to have an animal on-campus was being rescinded" (District Court Dkt. No. 16). According to the Defendants Appellees, "**<u>On November 17, 2023</u>**, after confirming that Frishberg failed to comply with the directive to remove the cat, Johnson informed Frishberg that USF would be administratively cancelling [sic] Frishberg's Student Housing Agreement effective Monday, November 27, 2023, at 12:00 p.m. and he needed to checkout by that date." (District Court Dkt. No. 16). ***As confirmed by the Defendant Appellees' statements, the SCED hearing did not occur until after the purported termination of the Housing Agreement, so the Plaintiff Appellant could not have been evicted due to his refusal to complete the sanctions since the sanctions would not have been issued yet:*** "**<u>On November 21, 2023</u>**, SCED held Frishberg's formal hearing. (See Johnson Decl., Ex. 21). Based on the information provided at the hearing, the UCB determined that Frishberg was responsible for the violations of USF policy. " (District Court Dkt. No. 16)

To summarize, on November 9th, 2023, USF told the Plaintiff Appellant to "remove" his ESA. The Plaintiff Appellant refused. On November 17th, 2023,

USF purported to terminate the Housing Agreement, because of the Plaintiff Appellants' failure to "get rid of" his ESA. On November 21st, 2023, the SCED hearing was held, and without much deliberation found the Plaintiff Appellant "responsible", and then assigned sanctions. **This timeline which is undisputed by both the Plaintiff Appellant, and the Defendant Appellees**, does not line up with the findings of the District Court." (emphasis added)

The Appellees purport that the reason the Appellant had his lease terminated was because he "failed to comply" with the "requirement that Frishberg pay a fee and take educational courses on civility as a sanction for his violation of the rules".

**This is a boldfaced lie**. The "sanctions" were issued on **November 21st, 2023**, after the hearing[9] held by the USF's Student Conduct and Ethical Development board (on the same day). The agreement was purportedly **terminated** on **November 17th, 2023**. *See* screenshot of Exhibit 20 of the Johnson Declaration below:

---

[9] The fairness of the hearing is extremely questionable at best, but that is not the point. The Plaintiff Appellant would like to note that it took the Board less than 20 minutes to assign him the sanctions.

**From:** Andrew Johnson <ajohnson15@usf.edu>
**Sent:** Friday, November 17, 2023 4:31 PM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>
**Cc:** Ana Hernandez <ahernandez@usf.edu>; David Kloiber <dkloiber@usf.edu>; Amy Chilcutt <achilcutt@usf.edu>; Megan Bucalos <meganbucalos@usf.edu>; Xiomara Talavera Mercedes <xiomara5@usf.edu>; Jimmy Surin <jsurin@usf.edu>; Jan Serpan <serpan@usf.edu>; Sherrelle Findley <sfindley@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Molli Keller <keller14@usf.edu>; Shanale Cordero <shanalec@usf.edu>
**Subject:** IMPORTANT - NOTICE OF ADMINISTRATIVE CANCELLATION

Dear Mr. Frishberg,

Following my correspondence dated November 14, 2023, Residential Education staff members contacted you on or around 2:00 PM to confirm that you complied with USF's directive to remove your animal from the residence hall. I was informed by the USF Housing and Residential Education staff that you stated that the animal was still present in your residential room. Given that you have not complied with USF Housing and Residential Education department's directives, USF is administratively cancelling your 2023-24 Student Housing Agreement effective Monday, November 27, 2023 at 12:00 PM under section IV.1.d as stated in the excerpt below.

*IV. CANCELLATION: Notwithstanding anything contained herein, and even when Student's Cancellation is permitted under the terms of the Agreement, the Agreement may not be canceled without the prior written approval of the Department. The Department may, within its sole discretion, deny any Cancellation requests. Where Cancellation of the Agreement is subject to the Cancellation fees set forth in the Agreement, any fees will be added to the Student's financial account and will be due and owing immediately. Non-payment of the fees may result in a Student registration hold or restriction on graduation and ability to obtain a transcript. Late payments may also include collection fees. Students should refer to Section III of this Agreement for more information regarding the Payment Schedule.*

1. *Cancellation by Department: The Department may, in accordance with applicable rules of the University, initiate reassignment or cancel the Agreement if deemed necessary by the Department in the best interest of order, health, conduct, safety, security, disaster, failure to comply with any and all University regulations, policies, or directives.*

**3 of 5**

     *d. Cancellation Due to Administrative Dismissal: Students who are removed from the Residence Halls and/or dismissed from the University for administrative reasons will be responsible for a daily-prorated Hall Rate.*

Please schedule your check-out with RLC Cordero and return your keys to the HUB Service Desk by 12:00 PM on Monday, November 27, 2023.  Failure to complete these steps by the deadline may result in additional fees or referrals to the Office of Student Conduct and Ethical Development.  ID card access to any residential space will also end at that time.  Your rent charges will cease on Monday, November 27, 2023 and a credit will be issued for the balance of the fall term.  The credit will be issued to your OASIS account.

You are expected to comply with the rules, policies, regulations of the University of South Florida and all applicable laws until your check-out from housing.  Failure to comply with the previous statement will result in your immediately removal from housing and a referral to the Office of Student Conduct and Ethical Development.

Sincerely,

Dr. Johnson


Sincerely,

**Andy Johnson, Ed.D.**
**CRA-USF/Advanced**
Director for Operations & Outreach


The Appellees are judicially estoppel from this line of argument, as not only is it a blatant lie, but it is in direct contradiction of the timeline presented by them in the Johnson Declaration. This is not the first time that the Appellees have lied to the Court, as they made numerous misrepresentations to the trial court. This is just the most brazen lie (yet). The Appellant has been forced to dedicate this much of this Reply Brief to addressing the misrepresentations and outright lies made by the Appellees, instead of addressing the other arguments within their Reply Brief. The Appellant did not have the time, nor the resources to address both their arguments, and their plethora of falsehoods.

A reading of the Defendant Appellees' own court filings will show numerous inconsistencies which contradict themselves, and that is even without external evidence such as emails from the Appellees' representatives needing to be referenced. Looking at what the Appellees told the Appellant before this case was initiated, and after this case was initiated, would also show numerous inconsistencies with what the Appellees have been telling the Trial Court, and this Court. The Appellees evicted the Appellant because he refused to "get rid of" his assistance animal. It is that simple.

The evidence at hand shows that the District Court abused its discretion because it based its ruling on an erroneous assessment of the evidence and facts, in part at least due to the misrepresentations of the Appellees. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 US 384 - Supreme Court 1990.

## 2. Student Conduct Process Is Separate From Housing Determination

Contrary to the claims made in the Appellees' Reply Brief, the Appellees' representatives, including their General Counsel, have made it abundantly clear that completing the sanctions would have **no impact** on the Appellants ability to return to live on campus. In an email dated June 21st, 2024, USF's General Counsel, Joanne Adamchak stated unambiguously that: "As you have been advised, the USF **decision rendered in the student conduct process by SCED is <u>separate</u>** from the housing and HRE determination. The completion of the SCED sanction will ensure you may register for courses.  However, the HRE status regarding your failure to abide by the terms of the lease which resulted in a **termination of the lease and future restriction regarding on campus housing <u>remains unchanged</u>**." (emphasis added).



Joanne Adamchak
JA   To: Daniel Frishberg
Fri 6/21/2024 10:03 AM

As you have been advised, the USF decision rendered in the student conduct process by SCED is separate from the housing and HRE determination. The completion of the SCED sanction will ensure you may register for courses.  However, the HRE status regarding your failure to abide by the terms of the lease which resulted in a termination of the lease and future restriction regarding on campus housing remains unchanged.

To avoid duplication and confusion, any future inquiries in this regard to any office will be maintained without direct response.

Joanne M. Adamchak (Jodi)
Deputy General Counsel
University of South Florida
Office of the General Counsel
4202 E. Fowler Avenue, CGS 301
Tampa, FL 33620
813-974-1683
813-974-5236 (Facsimile)
jadamcha@usf.edu

The Appellees' Reply Brief is either misrepresenting this to the Court, or the Appellees' General Counsel is making fraudulent misrepresentations to the Appellant. Only a single one of these statements can be simultaneously true. If it is indeed the position of the Appellees that the SCED sanctions are not separate from the HRE determination, than the Appellees have not acted like it, as they did not allow the Appellant to live in on campus housing after the completion of the sanctions. It is the Appellants position that the Appellees statement in their Reply Brief is misleading and a lie, as the Appellees' previous statement have made it overwhelmingly clear that "As you have been advised, the USF **decision rendered in the student conduct process by SCED is <u>separate</u>** from the housing and HRE determination." (emphasis added).

The Appellees' attempt to conflate the SCED sanctions with housing decisions not only undermines their own argument but also demonstrates their intention to mislead the court, particularly in light of USF General Counsel's explicit statement that the two processes were ***separate***.

The District Court erred because of the Appellees arguments that made it seem that the Appellant was given an opportunity to complete sanctions before being evicted. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp*., 496 US 384 - Supreme Court 1990

### 3. Appellees' Misleading Summary Of Appellants' Arguments

The Appellees also state that "Frishberg did not seek leave to amend the Complaint to assert any new claims". The Appellant considers this claim incorrect and misleading, as the Appellant clearly stated in a footnote that "This Court may interpret this as a request to amend the complaint under FRCP Rule 15, but the Plaintiff is unsure if that is necessary." That was the Plaintiff Appellant seeking leave to amend if it was necessary. At the time, the Appellant thought that it was sufficient to simply include the footnote. The Plaintiff Appellant' lack of legal training caused him to believe that it was the best course of action, to not delay the case, as he was unsure if amending the complaint was necessary. Despite the Appellant's limited legal knowledge, the issues raised in the Opening Brief are valid, substantial, and should be considered on their merits, as the Appellant has clearly outlined his claims and the factual errors that necessitate reversal. The

Appellant's filings should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C.Cir. 1992).

The District Court erred in not granting leave to amend the complaint, as an amendment would have corrected the defect within the complaint. Alternatively, the District Court could have interpreted the complaint to be brought under the Rehabilitation Act, as reading the pleadings would have made it clear that the Plaintiff Appellant intended to bring a claim under the Rehabilitation Act, but made a mistake due to his lack of legal training. Contrary to the Appellees' claims, interpreting the claims as being brought under the Rehabilitation Act would not be "re-writ[ing]" the complaint. It would be rewriting the complaint in the same way that changing the title of a book would be rewriting the book (in other words, not at all).

### 4. Appellees' Incorrect Arguments About Appellant's Purported Abandoning Of Arguments On Appeal

A simple reading of the Appellants Opening Brief, and other pleadings in this case should be sufficient to dispel the Appellees' false claims. The Appellees erroneously state that: "In his Initial Brief, Frishberg fails to advance any argument that the District Court erred in granting the Appellees' Motion to Dismiss". **Not**

so. The literal first line of the Argument section states: "The District Court's ruling is fatally flawed, and must be overturned, in part because it misunderstands several key details[10] of the case, including the timeline/order of events."  The Appellees erroneously claim that the Appellant "provides no argument of substance as to how the District Court erred or how any error in interpreting the facts effected the District Court's dismissal of his claims." To the contrary, the Appellant provided over five full pages of "argument of substance" and explained "how any error in interpreting the facts effected the District Court's dismissal of his claims". The Appellees continue with the same inaccurate misrepresentations/lies that they told the District Court in their Reply Brief. Under **III. Factual Errors With The District Court's Interpretation Of The Events/Facts, a. Timeline Errors,** from the Appellants Opening Brief, the Appellant laid out the errors, and how they affected the dismissal of his claims:

"The "requirement that Plaintiff pay a fee and take educational courses on civility as a sanction for his violation of the rules" was both implemented *after* USF purported to have terminated the Plaintiff Appellants' Housing Agreement, *and* **would have no impact on the eviction** (so the Plaintiff Appellant completing the "sanction" would **not** enable him to be able to live in on campus housing). As can be seen hereinafter, the District Court, at a bare minimum, misunderstood the order of events, and why the termination of the lease occurred. While the Plaintiff Appellant's filings may have not made the timeline clear, the Defendant Appellees' filings did. The termination of the lease, and subsequent eviction did not occur

---

[10] "The majority of these details are not disputed by either the Defendant Appellees, or the Plaintiff Appellant". [Footnote unmodified from Opening Brief]

because of the Plaintiff Appellants' refusal to complete the "sanctions", *but occurred because of* **the Plaintiff Appellant's ESA."**[11]

Despite their best efforts, the Appellees cannot simply gaslight The Court when reality does not support their arguments. The Appellees cannot invent facts when the facts of the case do not suit them. The Appellees can continue to attempt to mislead the court, and make irrelevant arguments, but it does not change the facts of the case.

The Appellees included a quote from *Holland v. Gee*: "A party abandons a claim on appeal when he fails to "plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims"." The usage of the quote is misleading, as the Plaintiff Appellant did not fail to "plainly and prominently raise" his issues on appeal, including in his Opening Brief. To the contrary, the Appellant made a plethora of arguments, with supporting evidence, and case law to support his claims on appeal. The Appellant also laid out arguments in his Motion To Proceed In Forma Pauperis, as to why his appeal was not frivolous.

---

[11] Excerpt from Page 16 of the Appellants Opening Brief.

The Plaintiff Appellants Opening Brief clearly did not abandon "whether the District Court erred in granting the Motion To Dismiss". In *United States v. Willis*, 649 F.3d 1248, 1254 (11th Cir.2011), this court mentions a "brief perusal of the relevant section" of the brief[12]. A "brief perusal" of the Appellants Opening Brief will clearly show that the issue on appeal was not abandoned. A "brief perusal" of the Appellant's Designation of Questions on Appeal will clearly show the questions on appeal, and when read in harmony with the Appellants Opening Brief, it makes the Plaintiff Appellants intentions with the appeal crystal clear.

The Appellees claim that "Yet, Frishberg does not assert that he should have been granted leave to correct deficiencies in the claims pled, but to bring an entirely new cause of action." This is incorrect. A simple reading of the Plaintiff's Opening Brief would show this. For example: on page 7 of the Opening Brief, the Appellant stated that:"[t]he Plaintiff Appellants complaint *may* be deficient, but [if] it is deficient [it is so] *because he was not allowed to amend it to correct the minor deficiencies which exist*. **He should be allowed to amend it**." (emphasis added). The Appellant's claims should be read not solely as the claim that is stated on the page, but as the underlying facts, and the requested relief are, as the Appellant mixed up the Fair Housing Act and the Rehabilitation Act due to his lack of legal

---

[12] This may not be a legal doctrine/test, but the idea is still valid. By reading the Appellants Opening Brief, it becomes clear that the Appellant did not abandon issues on appeal.

training, and a confusion of legal theories. "If the court can ***reasonably* read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories**, poor syntax and sentence construction, or **litigant's unfamiliarity with pleading requirements**." (emphasis added). *Boag v. MacDougall*, 454 U.S. 364 (1982).

### 5. The District Court Erred In Denying Leave To Amend

The District Court erred by denying leave to amend, as the defect in the Plaintiff Appellants' complaint can be corrected by an amendment.  "*[If] it is **at all** possible* that the party against whom the dismissal is directed can <u>correct the defect in the pleading</u> *or* state a claim for relief, **the court should dismiss with leave to amend**." 6 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure,* Civil 2d § 1483 (West 1990)." (emphasis added) *Reynoldson v. Shillinger*, 907 F. 2d 124 - Court of Appeals, 10th Circuit 1990. The District Court should have dismissed with leave to amend, regardless of if the Appellant specifically filed a motion for leave to amend. The Appellant made his intention of amending the Complaint, ***if required***, clear.

### 6. This Case Should Be Adjudicated On Its Merits

The purpose of the Federal Rules of Civil Procedure is to encourage final dispositions on the **merits** of a case, and ***not*** the skill (or the lack thereof) of the person pleading the case. *See Cf. Dussouy v. Gulf Coast Inv. Corp*., 660 F.2d 594, 598 (5th Cir.1981) ("The policy of the federal rules is to permit **liberal amendment** to facilitate determination of claims ***on the merits*** and ***to prevent litigation from becoming a technical exercise in the fine points of pleading***"). (emphasis added.) The Appellant may have made procedural errors, or mistakes with his pleadings, but that does not change the fact that his claims have merit. *Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner*, 404 U.S. 519, 520-521(1972), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "If the court can ***reasonably* read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories**, poor syntax and sentence construction, or **litigant's unfamiliarity with pleading requirements**." (emphasis added). *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a

prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C.Cir. 1992); *Freeman v. Department of Corrections*, 949 F.2d 360 (10th Cir. 1991). The District Court could have "***reasonably* read pleadings to state a valid claim on which the litigant could prevail**", to interpret the claims as being brought under the Rehabilitation Act. Doing so would ***not*** require the court to "act as de facto counsel" on behalf of the Plaintiff Appellant. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019). Nor would it require the District Court to "rewrite an otherwise deficient pleading in order to sustain an action". The District Court either interpreting the claims as being brought under the Rehabilitation Act, or allowing the Plaintiff Appellant to amend the complaint to bring the claims under the Rehabilitation Act would **not** require the District Court to act as de facto counsel. In fact, the District Court's interpretation of the claims being brought under the Rehabilitation Act would not be rewriting anything[13].

*[Rest of the page is intentionally left blank.]*

---

[13] It is like how changing the title of an essay would not constitute "rewriting" of the essay, this is much more like what would occur in this case. The Plaintiff Appellant was not asking for the Court to act as his counsel, but to simply allow the Plaintiff Appellant to correct his (relatively minor) mistake(s).

## **CONCLUSION**

A reading of the Appellants Opening Brief will be sufficient to dispute the allegations made by the Appellees about the arguments made by the Appellant. At the end of the day, regardless of how much the Appellees attempt to distract from this, this case is both about, and was brought because of the Appellees' discriminatory policies, and actions against the Appellant because of his Assistance Animal. The Appellees evicted the Appellant because of his Assistance Animal, and not because of a failure to complete sanctions that were assigned four days after the Appellees purported to terminate the Housing Agreement, but because he had an Assistance Animal that he refused to "get rid of". An attorney's job is to be "advancing claims and defenses with the zeal of a trained advocate" on behalf of their clients, but they must also be "properly tempering enthusiasm for a client's cause with **careful regard for the obligations of truth, candor, accuracy**, and professional judgment that are expected of them as officers of the court" (emphasis added). *See Oliveri v. Thompson*, 803 F. 2d 1265 - Court of Appeals, 2nd Circuit 1986. The Appellees have repeatedly crossed the line, and their actions show a wanton disregard for the truth at a minimum, and at worst, a malicious intent to deceive the Court. The Appellees' Reply Brief (and other filings in this case generally) were filled with misrepresentations, and most importantly of all, outright

lies which are provably false, and are **knowingly false** to the Appellees. The

Appellants appeal should be **GRANTED**.


Respectfully submitted,

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
January 20th, 2025
Hillsborough County, Florida


Case No. 24-11175-H.

Frishberg v. University of South Florida

Board Trustees, et al.


*[Rest of the page is intentionally left blank.]*

## CERTIFICATE OF INTERESTED PERSONS

## AND CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure as well as Eleventh Circuit Rule 26.1-2, the undersigned Plaintiff Appellant hereby certifies that the following is a complete list of the trial judges, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Adams, Natalie Hirt, United States Magistrate Judge, Middle District of Florida;

2. Barber, Thomas, United States District Judge, Middle District of Florida;

3. Black, Melissa C., County Court Judge, Thirteenth Judicial Circuit, Hillsborough County, Florida

4. Bush Graziano Rice & Hearing, P.A., counsel for Defendants, University of South Florida Board of Trustees and HRSE-Capstone Tampa, LLC, Defendants/Appellees;

5. Capstone Development Partners, LLC;

6. Daniel Frishberg, Pro Se Plaintiff/Appellant;

7. Dyson, Sacha, counsel for Defendants, University of South Florida

Board of Trustees and HRSE-Capstone Tampa, LLC,

Defendants/Appellees;

8. Harrison Street Real Estate Capital LLC;

9. HSRE-Capstone Tampa, LLC, Defendant/Appellee;

10. Sullivan, Kevin M., counsel for Defendants, University of South

Florida Board of Trustees and HRSE-Capstone Tampa, LLC,

Defendants/Appellees

11. University of South Florida Board of Trustees, Defendant/Appellee;

12. Department of Housing and Urban Development;

13. United States of America


No other trial judge, attorney, person, association of persons, firm, partnership, or corporation known to the Appellant, has any current interest in the outcome of this matter.


I hereby certify pursuant to 11th Circuit Rule 26.1-3(b) that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg

## <u>Certificate Of Compliance With Rule 27(d)(2)(A)</u>

The Appellant hereby certifies that this Motion complies with Rule

27(d)(2)(A) as the word count is less than 13,000 words and has been prepared in a

proportionally spaced typeface in fourteen-point font of Times New Roman.


<u>*/s/ Daniel A. Frishberg*</u>
Daniel A. Frishberg

*[Rest of the page is intentionally left blank.]*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20th, 2025, a true and correct copy of Daniel

A. Frishberg's *Appellant's Amended Reply Brief To Appellees' Reply Brief* was

filed in the United States Court for Appeals For The 11th Circuit (via

PACER/ECF) and electronically served upon the Defendants in the case.

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
January 20th, 2025

*[Rest of the page is intentionally left blank.]*